# 23-258(L)

## 23-263(CON), 23-304(CON), 23-346(CON), 23-444(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

FIONA HAVLISH, RUSSA STEINER, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF WILLIAM STEINER, DECEASED, CLARA CHIRCHIRILLO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF PETER CHIRCHIRILLO, TARA BANE, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL A. BANE, GRACE M. PARKINSON-GODSHALK, IN HER OWN RIGHT AND ADMINISTRATIX OF THE ESTATE OF WILLIAM R. GODSHALK, ELLEN L. SARACINI, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF VICTOR J. SARACINI, DECEASED, THERESAANN LOSTRANGIO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF JOSEPH LOSTRANGIO, DECEASED, DEENA BURNETT, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF THOMAS E. BURNETT, JR., DECEASED, THOMAS E. BURNETT, SR.,

(*Caption continued on inside cover*)

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR PLAINTIFFS-APPELLANTS KATHLEEN ASHTON, JOSEPHINE ALGER, ANGELICA ALLEN, GEORGE ANDRUCKI AND MARY ANDRUCKI

---

ANDREW J. MALONEY, III
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
(212) 687-8181

NOAM BIALE
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Plaintiffs-Appellants Kathleen Ashton, Josephine Alger, Angelica Allen, George Andrucki and Mary Andrucki*

AS THE PARENT AND ON BEHALF OF THE FAMILY OF THOMAS E. BURNETT, JR., JUDITH REISS, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JOSHUA SCOTT REISS, DECEASED, WILLIAM COALE, IN HIS OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JEFFREY ALAN COALE, DECEASED, PATRICIA J. PERRY, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JOHN WILLIAM PERRY, DECEASED, BARBARA A. MINERVINO, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF LOUIS J. MINERVINO, DECEASED, MATTHEW T. SELLITTO, IN HIS OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF LOUIS J. MINERVINO, DECEASED, RALPH MAERZ, JR., AS PARENT AND ON BEHALF OF THE FAMILY OF NOELL MAERZ, DECEASED, LINDA PANIK, AS PARENT AND ON BEHALF OF THE FAMILY OF LT. JONAS MARTIN PANIK, DECEASED, MARTIN PANIK, AS PARENT OF AND ON BEHALF OF THE FAMILY OF LT. JONAS MARTIN PANIK, DECEASED, MARTINA LYNE-ANN PANIK, AS THE SISTER OF LT. JONAS MARTIN PANIK, STEPHEN L. CARTLEDGE, AS HUSBAND OF SANDRA WRIGHT CARTLEDGE, DECEASED, LOISANNE DIEHL, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL DIEHL, DECEASED, TINA GRAZIOSO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF JOHN GRAZIOSO, DECEASED, JIN LIU, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF LIMING GU, DECEASED, ALL PLAINTIFFS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, MICHAEL EDWARD PAIGE, SPECIAL ADMINISTRATOR OF THE ESTATE OF TIMOTHY RAYMOND WARD, DECEASED., BRIANNA L. GOMES, ADMINISTRATOR OF THE ESTATE OF DOYLE RAYMOND WARD, DECEASED, JOHN DOES 1 THROUGH 7, RAYMOND ANTHONY SMITH, AS ADMINISTRATOR OF THE ESTATE OF GEORGE ERIC SMITH, DECEASED, FEDERAL INSURANCE COMPANY, PACIFIC INDEMNITY COMPANY, CHUBB CUSTOM INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY, CHUBB INSURANCE COMPANY OF CANADA, CHUBB INSURANCE COMPANY OF NEW JERSEY, GREAT NORTHERN INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, TIG INSURANCE COMPANY, KATHLEEN ASHTON, AS ADMINISTRATOR OF THE ESTATE OF THOMAS ASHTON, DECEASED AND ON BEHALF OF ALL SURVIVORS OF THOMAS ASHTON, JOSEPHINE ALGER, AS ADMINISTRATOR OF THE ESTATE OF FREDERICK ALGER, AS COEXECUTORS OF THE ESTATE OF DAVID D. ALGER, DECEASED AND ON BEHALF OF THE SURVIVORS OF DAVID D. ALGER, ANGELICA ALLEN, AS ADMINISTRATOR OF THE ESTATE OF ERIC ALLEN, DECEASED AND ON BEHALF OF ALL SURVIVORS OF ERIC ALLEN, GEORGE ANDRUCKI, AS COADMINISTRATOR OF THE ESTATE OF JEAN ANDRUCKI ,DECEASED AND ON BEHALF OF ALL SURVIVORS OF JEAN ANDRUCKI, MARY ANDRUCKI, AS COADMINISTRATOR OF THE ESTATE OF JEAN ANDRUCKI, DECEASED AND ON BEHALF OF ALL SURVIVORS OF JEAN ANDRUCKI,

*Plaintiffs-Appellants,*

KATHERINE SOULAS, IN HER OWN RIGHT, AS REPRESENTATIVE OF THE HEIRS, ON BEHALF OF HER MINOR CHILDREN, AND AS EXECUTRIX OF THE ESTATE OF TIMOTHY SOULAS, DECEASED, ON BEHALF OF THE SOLATIUM CLAIMANTS, INCLUDING KATHERINE SOULAS, FREDERICK SOULAS, II, TIMOTHY SOULAS, JR.,

*Plaintiff,*

JANE DOE, IN HER OWN RIGHT, ON BEHALF OF HER MINOR CHILDREN,
AND AS EXECUTRIX OF THE ESTATE OF TOM SAWYER,
A FICTITIOUS NAME, DECEASED,

*Consolidated-Plaintiff,*

—against—

THE ISLAMIC EMIRATE OF AFGHANISTAN, THE TALIBAN,
AL QAIDA/ISLAMIC ARMY, SHEIKH USAMAH BIN-MUHAMMAD BIN-LADEN,
AKA OSAMA BIN-LADEN, REPUBLIC OF IRAQ,

*Defendants-Appellees,*

FEDERAL RESERVE BANK OF NEW YORK,

*Gamishee-Interested-Party-Appellee,*

SHEIKH USAMA BIN-LADEN, MUHAMMAD OMAR, AL QAEDA/ISLAMIC ARMY,
ISLAMIC REPUBLIC OF IRAN, AYATOLLAH ALI HOSEINI-KHAMENEI, SUPREME
LEADER, IRANIAN MINISTRY OF INFORMATION AND SECURITY, THE ISLAMIC
REVOLUTIONARY GUARD CORPS, HEZBOLLAH, AN UNINCORPORATED
ASSOCIATION, IRANIAN MINISTRY OF PETROLEUM, IRANIAN MINISTRY OF
ECONOMIC AFFAIRS AND FINANCE, IRANIAN MINISTRY OF COMMERCE,
IRANIAN MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS, SADDAM
HUSSEIN, PRESIDENT, IRAQI MINISTRY OF DEFENSE, IRAQI MINISTRY OF
FINANCE, IRAQI MINISTRY OF OIL, IRAQI INTELLIGENCE SERVICE, QUSAY
HUSSEIN, UNIDENTIFIED TERRORIST DEFENDANTS 1-500, ALI AKBAR HASHEMI
RAFSANJANI, THE NATIONAL IRANIAN TANKER CORPORATION, PREVIOUSLY
IDENTIFIED AS UNIDENTIFIED TERRORIST 2, THE NATIONAL IRANIAN OIL
CORPORATION, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 3,
THE NATIONAL IRANIAN GAS COMPANY, PREVIOUSLY IDENTIFIED AS
UNIDENTIFIED TERRORIST 4, IRAN AIRLINES, PREVIOUSLY IDENTIFIED AS
UNIDENTIFIED TERRORIST 5, THE NATIONAL IRANIAN PETROCHEMICAL
COMPANY, THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN,
UNIDENTIFIED TERRORIST DEFENDANTS 8-500, AL-QAEDA, THE HAQQANI
NETWORK, AL QAIDA, EGYPTIAN ISLAMIC JIHAD, OSAMA BIN LADEN, ESTATE
OF MUHAMMAD ATEF, AYMAN AL ZAWAHARI, ABU ZUBAYDH,

*Defendants.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT ........................................................4

STATEMENT OF THE CASE..............................................................4

    I.    The *Ashton* and Other Plaintiffs Hold Judgments
        Against the Taliban ..............................................................4

    II.    Executive Order 14064 Triggers a Race to Claim the
        DAB Assets ..........................................................................6

    III.    The *Wodenshek* Class Action and Appeal .........................11

    IV.    The Framework Agreement ................................................13

    V.    The *Ashton* Plaintiffs' Attachment Motion .......................15

    VI.    The District Court's Memorandum Decision and Order ...................16

ARGUMENT ...................................................................................17

CONCLUSION ................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Travelers Cos.*,
    180 F.3d 358 (2d Cir. 1999)..................................................................19

*Blondin v. Dubois*,
    189 F.3d 240 (2d Cir. 1999)..................................................................19

*Borges v. Placeres*,
    111 N.Y.S.3d 517 (N.Y. Civ. Ct. 2018) ............................................18

*Distressed Holdings, LLC v. Ehler*,
    976 N.Y.S.2d 517 (2d Dep't 2013)......................................................18

*Florez v. Cent. Intel. Agency*,
    829 F.3d 178 (2d Cir. 2016)..................................................................19

*Guardian Loan Co. v. Early*,
    47 N.Y.2d 515 (1979) ..........................................................................18

*Levinson v. Kuwait Fin. House (Malaysia) Berhad*,
    44 F.4th 91 (2d Cir. 2022) ........................................................... 15, 20

*S.E.C. v. Pentagon Cap. Mgmt. PLC*,
    No. 08-CV-3324, 2013 WL 5815374 (S.D.N.Y. Oct. 29, 2013)........19

*Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalate Ithalat*
    *Ihracat Ticaret*,
    No. 20-mc-75 (RA) (RWL), 2020 WL 7260513 (S.D.N.Y. Dec. 9, 2020).........19

*United States v. Baran*,
    996 F.2d 25 (2d Cir. 1993)....................................................................19

**Rules**

CPLR § 5240................................................................................... 18, 19

## Other Authorities

Department of Justice, Kenneth R. Feinberg, Esq., Supplemental Report
of the Special Master for the United States Victims of State Sponsored
Terrorism Fund (Aug. 2017) ..................................................................6

Department of Justice, Kenneth R. Feinberg, Esq., Report Regarding
Second Distribution for the United States Victims of State Sponsored
Terrorism Fund (Feb. 2019) ..................................................................6

Department of Justice, Kenneth R. Feinberg, Esq., Report Regarding
The Third Distribution for the United States Victims of State Sponsored
Terrorism Fund (June 2020) ..................................................................6

Fact Sheet: *Executive Order to Preserve Certain Afghanistan Central
Bank Assets for the People of Afghanistan*, White House (Feb. 11, 2022),
https://www.whitehouse.gov/briefing-room/statements-releases/
2022/02/11/fact-sheet-executive-order-to-preserve-certain-
afghanistan-central-bank-assets-for-the-people-of-afghanistan/ ..........................7

U.S. Government Accountability Office, GAO-105, U.S. Victims of
State Sponsored Terrorism Fund: Estimated Lump Sum Catch-Up
Payments (2021) ..................................................................................6

**PRELIMINARY STATEMENT**

Plaintiffs-Appellants Kathleen Ashton *et al.*, (the "*Ashton* Plaintiffs), *see* Supp. A-101-225,[1] respectfully submit this brief in support of vacatur of the District Court's (the Honorable George B. Daniels, *Judge*) Memorandum Decision and Order dated February 21, 2023.[2]

The *Ashton* Plaintiffs are the estates and family members of more than 800 victims killed in the September 11, 2001 terrorist attacks—nearly one-third of the families of those killed. Along with Plaintiffs-Appellants in the *Havlish* (23-258) (involving fewer than fifty estates of those killed in the September 11, 2001 terrorist attacks plus their surviving family members), *Doe* (23-263) (a group of fewer than ten government contractor victims and their families injured in a terrorist attack in Afghanistan), *Smith* (23-304) (the estate representatives of two victims of those killed in the September 11, 2001 terrorist attacks), and *Federal Insurance Company* (23-346) (property interests and insurance companies) appeals (together, the "Joint Creditors"), the *Ashton* Plaintiffs hold judgments against the Taliban that total in the billions of dollars. The *Ashton* Plaintiffs join the arguments of co-Plaintiffs-Appellants the Joint Creditors on the threshold jurisdictional and constitutional

---

[1] Listing *Ashton* Plaintiffs.

[2] The Plaintiffs-Appellants Appendix is cited herein as "App.__." The Special Appendix is cited herein as "S.A.__." The *Ashton* Plaintiffs' Supplemental Appendix is cited herein as "Supp. A-__."

1

issues raised in the District Court's order, but submit this additional brief to apprise the Court of certain factual and procedural matters relevant to the *Ashton* Plaintiffs' positions, including as to the ultimate relief sought by the Joint Creditors in their turnover motion below. This background provides critical context as to how the *Ashton* Plaintiffs and the Joint Creditors are both similarly situated and also at odds.

The Joint Creditors' motions below sought turnover of approximately $3.5 billion in assets of Afghanistan's central bank, Da Afghanistan Bank ("DAB," the "DAB Assets"), held by the Federal Reserve Bank of New York ("FRBNY"). Those assets became the subject of an intense race for priority after February 11, 2022, when President Biden issued Executive Order 14064 and announced that the DAB Assets would be available to satisfy terrorism claims in the courts, subject to judicial approval. App.70. The Joint Creditors asserted entitlement to execute on the DAB Assets in satisfaction of their judgments against the Taliban pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"). App.111-43; App.319-49; App.423-55; App.484-504. The *Ashton* Plaintiffs, who also held liability judgments against the Taliban, opposed the Joint Creditors' effort to obtain the entirety of the DAB Assets for themselves on a "first come first served" basis and instead pursued an equitable distribution of the DAB Assets among all victims of Taliban terrorism, not only themselves. This would include the *Havlish* and *Smith* Plaintiffs, who are also in the same 9/11 terrorism-related multi-district litigation, as

2

well as the *Doe* and *Federal Insurance* Plaintiffs. While pursuing such equitable distribution, solely to protect the DAB Assets from dissolution should that effort fail, the *Ashton* Plaintiffs filed a motion for attachment. App.594-615.

Both the Joint Creditors' turnover and the *Ashton* Plaintiffs' attachment motions were denied by the District Court's February 21, 2023 Memorandum Decision and Order adopting Magistrate Judge Sarah Netburn's August 26, 2022 Report and Recommendation (the "R&R"), which held that the DAB Assets were not available under TRIA to satisfy any party's judgments against the Taliban. S.A.1-30 (adopting App.616-658). The *Ashton* Plaintiffs and Joint Creditors agree that the District Court erred in adopting the R&R's recommended holdings that the court lacks jurisdiction to distribute the DAB Assets; that doing so would run afoul of constitutional separation of powers concerns; and that DAB is not an agency or instrumentality of the Taliban. While agreeing on those threshold legal issues, however, the *Ashton* Plaintiffs anticipate that they and the Joint Creditors will have substantially different perspectives on the appropriate remedy on remand. This is because the Joint Creditors appeal from the denial of their turnover motions, which the *Ashton* Plaintiffs opposed in favor of a distribution process that would treat all

3

terrorism victims equitably, and the *Ashton* Plaintiffs appeal from the denial of their attachment motion, which the Joint Creditors opposed. [3]

Specifically, the brief below sets forth the facts giving rise to the *Ashton* Plaintiffs' participation in these consolidated appeals and their actions and positions with respect to the DAB Assets, including as to the appropriate decretal language should Plaintiffs-Appellants prevail in the consolidated appeals.

## JURISDICTIONAL STATEMENT

The *Ashton* Plaintiffs concur in the jurisdictional statement contained in the Joint Creditors' brief.

## STATEMENT OF THE CASE

## I.     The *Ashton* and Other Plaintiffs Hold Judgments Against the Taliban

In September 2002, the *Ashton* Plaintiffs began to file complaints against numerous defendants responsible for the September 11, 2001 terrorist attacks (the "9/11 Attacks"), including the Taliban. These complaints, along with other actions brought by victims of the 9/11 Attacks, were eventually consolidated into the multi-district litigation *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (S.D.N.Y.) (the "District Court," or the "MDL"). The Taliban was served via media publications, but ultimately failed to appear and never responded to any of the

---

[3] The *Ashton* Plaintiffs understand that Plaintiffs-Appellants in *Owens v. Taliban* (23-354) (victims and families of those killed in the attacks on U.S. embassies in Kenya and Tanzania) will also file a separate brief.

4

complaints. In 2006, the District Court granted the *Ashton* Plaintiffs' motions for default liability.

Between 2008 and 2011, the *Havlish* Plaintiffs separately sought default judgments against foreign sovereign defendant the Islamic Republic of Iran and other defendants, including the Taliban. As it had done six years prior for the *Ashton* Plaintiffs and others, the District Court granted default judgments in favor of the *Havlish* Plaintiffs and granted motions for final damages judgments against certain foreign sovereign Iranian entities and non-sovereign defendants, including the Taliban.

In 2015, the *Ashton* and *Federal Insurance* Plaintiffs obtained default judgments against Iran, and the District Court began issuing final damages judgments on a rolling basis, beginning on March 8, 2016. App.17-27. The District Court issued individual damage awards for economic losses in each of those cases, and $2,000,000 for conscious pain and suffering of each of the *Ashton* Plaintiffs' decedents killed in the 9/11 Attacks. App.17-27. The District Court next awarded solatium damages under the Anti-Terrorism Act, 18 U.S.C. § 2333, to immediate surviving family members, including surviving spouses, children, parents, siblings, and/or their functional equivalents. App.28-31. The District Court determined those damages values to be $12,500,000 for a spouse, $8,500,000 for a child or parent, and $4,250,000 for a sibling. App.31. Despite those substantial judgments, no claimant

5

has recovered close to the full amounts, with nearly all of the families victimized in the 9/11 Attacks receiving around 5% of their judgments.[4]

## II. Executive Order 14064 Triggers a Race to Claim the DAB Assets

Shortly after the Taliban's takeover of Afghanistan and DAB in the summer of 2021, two plaintiffs groups obtained and served writs of execution on the FRBNY as to the $3.5 billion in DAB Assets. On September 13, 2021, the *Havlish* Plaintiffs served their writ on the FRBNY in the amount of $7,045,632,402.79. The *Havlish* Plaintiffs did not publicly docket their writ of execution against the Taliban in the District Court or otherwise notify other parties in the District Court about their plan, despite the fact that two of their attorneys sat on one of the Plaintiffs' Executive Committees ("PECs") charged with working together whenever possible to promote the orderly and efficient administration of the MDL. On September 27, 2021, a group of seven anonymous plaintiffs whose action was originally not before the District Court, the *Doe* Plaintiffs, served their writ in the amount of $138,418,741 before a different judge.

---

[4] *See* Dep't of Justice, Kenneth R. Feinberg, Esq., Supplemental Report of the Special Master for the United States Victims of State Sponsored Terrorism Fund (Aug. 2017); Dep't of Justice, Kenneth R. Feinberg, Esq., Report Regarding Second Distribution for the United States Victims of State Sponsored Terrorism Fund (Feb. 2019); Dep't of Justice, Kenneth R. Feinberg, Esq., Report Regarding The Third Distribution for the United States Victims of State Sponsored Terrorism Fund (June 2020); U.S. Gov't Accountability Office, GAO-105, U.S. Victims of State Sponsored Terrorism Fund: Estimated Lump Sum Catch-Up Payments (2021).

The government intervened and both the District Court and *Doe* court granted stays of any judicial enforcement of these writs. During the pendency of those stays, beginning in December 2021, the *Ashton* Plaintiffs moved for final damages judgments against the Taliban, seeking to extend to the Taliban the same damages awards granted against Iran. The cumulative final damages awards sought in the *Ashton* Plaintiffs' motions were nearly $30 billion. App.698-708.

The District Court extended the stays of the *Havlish* and *Doe* Plaintiffs' writs pending the United States filing a Statement of Interest, which it did on February 11, 2022, the same day President Biden signed Executive Order 14064. App.34-69. As described in the U.S. Statement of Interest, the Executive Order

> addresses the property and interests in property of Afghanistan's central bank, [DAB], that are held in the United States by any U.S. financial institution, including the [FRBNY], as of February 11, 2022 . . . . In recognition of the "unusual and extraordinary threat to the national security and foreign policy of the United States" posed by the "widespread humanitarian crisis in Afghanistan," the E.O. blocks the DAB [funds], providing that such assets "may not be transferred, paid, exported, withdrawn, or otherwise dealt in," except as specified by the Executive Order. App.42.[5]

---

[5] *See also* Fact Sheet: *Executive Order to Preserve Certain Afghanistan Central Bank Assets for the People of Afghanistan*, White House (Feb. 11, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/11/fact-sheet-executive-order-to-preserve-certain-afghanistan-central-bank-assets-for-the-people-of-afghanistan/.

In effect, the Executive Order obligated U.S. financial institutions holding DAB funds, including the FRBNY, to transfer those funds into a blocked account at the FRBNY. App.70-72. The Executive Order explicitly stated that the President signed it in part to benefit all victims of terrorism with claims against the Taliban: "I also understand that various parties, including representatives of victims of terrorism, have asserted legal claims against certain property of DAB or indicated in public court filings an intent to make such claims. This property is blocked under this order." App.70-72.

Upon the filing of the U.S. Statement of Interest, the *Havlish* and *Doe* Plaintiffs requested that the stays be lifted. On February 22, 2022, the District Court held a hearing during which counsel for the *Ashton* Plaintiffs urged the court to exercise its equitable authority to ensure fair treatment of all plaintiffs with terrorism-related claims against the Taliban. App.101, 103-04. On March 2, 2022, the District Court lifted the stays, triggering a flurry of activity as the Joint Creditors and others competed for priority over the DAB Assets.

On March 20, 2022, the *Havlish* and *Doe* Plaintiffs filed motions for partial turnover as to the DAB Assets in amounts sufficient to satisfy their respective compensatory damages awards of $2,086,386,669 and $138,284,213.26. App.111-43; App.319-49. The *Ashton* Plaintiffs opposed those motions, again requesting that the District Court exercise its equitable authority to permit the intended beneficiaries

8

of the Executive Order, namely, *all* victims of Taliban-sponsored terrorism—not just a small number of claimants—to satisfy their judgments with the DAB Assets on an equitable basis. App.99-100.

Simultaneously, yet another group of plaintiffs—this time unrelated to the 9/11 Attacks and not consolidated before the District Court in the MDL—emerged to claim the approximately $1.25 billion in DAB Assets that remained unencumbered. Specifically, on March 8, 2022, the *Owens* Plaintiffs, individuals allegedly injured and estates and family members of those killed in al Qaeda's 1998 bombings of two U.S. embassies in Kenya and Tanzania, filed a complaint against the Taliban. App.361. Contemporaneously, the *Owens* Plaintiffs moved on an emergency basis (citing the *Havlish* and *Doe* Plaintiffs' September 2021 service of writs of execution against the DAB Assets) for a prejudgment order of attachment against the DAB Assets for an amount in excess of $4,669,011,012.21. App.372. A stated purpose of this emergency application for attachment was to obtain priority over other plaintiffs with claims against the Taliban. App.372.

Anticipating complications certain to arise with judgment enforcement proceedings in two different courts, the PECs, which at the time included counsel for the *Ashton* Plaintiffs, moved in both the District Court and the *Owens* action for a stay of the *Owens* Plaintiffs' attachment motion and for the *Owens* action to be reassigned to the District Court "for consolidated judgment enforcement

9

proceedings against the Taliban." Supp. A-16-18. Magistrate Judge Netburn denied the PECs' request, on the grounds that, although the *Owens* Plaintiffs had moved for an order of attachment against the same DAB Assets at issue in the MDL, the *Owens* Plaintiffs had neither a judgment against the Taliban nor an attachment order, making the *Owens* action too "legally and factually distinct" for there to be "efficiencies . . . gained through [the actions'] consolidation." Supp. A-226-28.[6]

Such distinctions evaporated, however, when on March 21, 2022, Judge Valerie E. Caproni granted the *Owens* Plaintiffs a $1,373,761,042.95 prejudgment attachment of the DAB Assets. Supp. A-1-3. Recognizing that the limited DAB Assets were insufficient to satisfy all deserving victims of Taliban terrorism and that New York State's default judgment enforcement rules had incentivized this inequitable run on the DAB Assets, Judge Caproni remarked:

> The unfortunate reality that the numerous victims of acts of terror perpetrated by the Taliban may not collect on judgments is not lost on the Court, and the Court does not seek to engage in gamesmanship over which victims are more deserving to collect on the limited funds available. New York law contemplates that pre-judgment attachment provides priority among creditors. Supp. A-14.

---

[6] Judge Netburn's decision was also strongly informed by interbranch comity concerns and the turnover proceedings in the MDL and *Doe* actions, issues not implicated by the *Owens* action. A-227-28.

On April 6, 2022, the District Court granted the *Federal Insurance* Plaintiffs' motion for a partial final default judgment against the Taliban, for a total award, excluding prejudgment interest, of $9,351,247,965.99 (approximately $3.1 billion of which is for compensatory damages). App.562-64. In granting the motion, the District Court noted that there were more than a dozen motions for default judgment against the Taliban pending before the it, including the *Ashton* Plaintiffs' motions to confirm damages awards in excess of nearly $30 billion, most of which have now been granted. App.562-63. The *Federal Insurance* and *Smith* Plaintiffs subsequently moved for turnover, App.423-55; App.484-504, and on June 6, 2022, the District Court accepted the *Smith* action as related.

### III.    The *Wodenshek* Class Action and Appeal

On April 20, 2022, members of the family of Chris Wodenshek, who was killed on in the 9/11 Attacks (the "*Wodenshek* Plaintiffs")—who are among the *Ashton* Plaintiffs—filed a limited fund Class Action pursuant to Fed. R. Civ. P. 23(b)(1)(B), seeking mandatory equitable distribution of the DAB Assets. App.354-82. The *Wodenshek* Plaintiffs' sole goal in filing their Class Action was to enable a single court to (1) take jurisdiction over the entire $3.5 billion in DAB Assets and (2) establish a clear mechanism to provide for their equitable distribution to all victims of Taliban terrorism. Supp. A-27-31.

11

The District Court expressed immediate hostility to the Class Action. At an April 26, 2022 hearing convened in response to the Class Action's filing, the District Court stated its intent that the MDL be the sole proceeding addressing turnover of the DAB Assets and expressed its displeasure that the Class Action complaint had been filed before another court (the only one to have encumbered the assets at that time), despite the *Wodenshek* Plaintiffs simultaneously notifying the District Court of the proposed Class Action. App.386:13-17. The District Court also expressed an intention to bring about an "equitable distribution" of the DAB Assets and that the "first come first served" approach advocated for by the Joint Creditors was not such an equitable distribution. App.387:5-9. The court nevertheless did not articulate (1) how it would address the *Owens* Plaintiffs' attachment encumbering the DAB Assets before a different court, or (2) how it would effectuate an "equitable distribution" in the face of the strict New York State priority laws Judge Caproni had said might compel the DAB Assets' inequitable distribution on a "first come first served" basis. Supp. A-14-15 (acknowledging that "establishing priority over other creditors is clearly a motivating factor behind [the *Owens*] Plaintiffs' motion," but concluding that because the statutory grounds for prejudgment attachment were met, the court was compelled to grant the attachment.). The *Wodenshek* Plaintiffs' counsel argued that the limited fund Class Action, an *in rem* proceeding, was the best available procedural vehicle through which a single district court could take

12

jurisdiction over the DAB Assets and decide all legal matters—both the threshold question of the availability of the DAB Assets to satisfy judgments against the Taliban as well as questions of payment methodology—without being handcuffed by New York State's judgment enforcement priority rules. App.408:4-409:1, 410:3-411:13.

On April 27, 2022, the District Court dismissed the Class Action complaint *sua sponte* on the grounds that it was duplicative of claims in the MDL. *See* Supp. A-56:7-17. On May 2, 2022, the *Wodenshek* Plaintiffs filed Notices of Appeal simultaneously in the Class Action and the MDL. 22-965(L) (2d Cir.); 22-975(Con) (2d Cir.). The *Havlish* and *Federal Insurance* Plaintiffs moved to intervene in the *Wodenshek* Plaintiffs' appeal and the Court granted their unopposed motion. Supp. A-229-33. The instant consolidated appeals have the potential to determine that the DAB Assets may not be used to satisfy judgments against the Taliban and thus moot the appeal of the Class Action. Accordingly, this Court has held the *Wodenshek* appeal in abeyance pending resolution of these appeals. Supp. A-234-35.

## IV.    The Framework Agreement

On March 22, 2022, in connection with the Joint Creditors' race to claim the entire $3.5 billion in DAB Assets for themselves, the *Federal Insurance* Plaintiffs submitted a letter apprising the District Court that they, the *Havlish* and *Doe* Plaintiffs, and certain other groups of plaintiffs had "reached agreement in principle"

pursuant to which, if the District Court were to grant the Joint Creditors turnover motions, they and their counsel would manage a distribution of the DAB Assets among themselves and any other plaintiffs that would join in this "agreement," which the Joint Creditors have since come to refer to as the "Framework Agreement." Supp. A-19.

The *Ashton* Plaintiffs declined to join the Framework Agreement— the full terms of which the Joint Creditors' have refused to disclose—because it was inherently inequitable. Supp. A-26. Although its terms remain opaque, the *Ashton* Plaintiffs understand that, under the Framework Agreement, if the District Court were to grant the Joint Creditors' turnover motions as to the full $3.5 billion in DAB Assets:

- The forty-seven families constituting the *Havlish* Plaintiffs and the seven *Doe* Plaintiffs would receive close to the full value of their judgments (*i.e.*, around $36 million per family), consuming a total of nearly $1.8 billion of the $3.5 billion;

- The *Federal Insurance* Plaintiffs would receive nearly $600 million of DAB Assets (or nearly twenty percent of the full value of their compensatory damages judgments); and

- The approximately two-thirds of estates of victims of the 9/11 Attacks who might feel constrained to join the Framework agreement would share in the remaining $1.1 billion, receiving only one percent of what each of the forty-seven *Havlish* families stand to receive.[7]

---

[7] Insofar as these are not the Framework Agreement's current terms, that is a function of the secrecy surrounding the Agreement. Indeed, in an August 21, 2022

V.     **The *Ashton* Plaintiffs' Attachment Motion**

On August 11, 2022, this Court unsealed and posted on its public website a redacted copy of a previously decided opinion in *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022). The Court held that before a district court may issue a writ of execution pursuant to TRIA, it must first make findings that TRIA permits the seizure of the assets in question. *Id.* 97-98.

The next day, the *Ashton* Plaintiffs filed with the District Court a letter attaching the *Levinson* opinion and explaining that it mandated denial of the Joint Creditors' turnover motions because the District Court had issued the writs of execution prior to making any determination that the DAB Assets were subject to seizure under TRIA. Supp. A-33. (Indeed, such a determination did not issue until the District Court adopted the R&R on February 21, 2023.)

In light of their belief that the Joint Creditors' writs of execution were defective under *Levinson*, on August 19, 2022, the *Ashton* Plaintiffs moved for an order of attachment as to the DAB Assets. App.594-615. In so doing, the *Ashton* Plaintiffs explicitly represented that they continued to support an equitable distribution of the DAB Assets and were seeking attachment solely to ensure that

---

letter, the *Havlish* Plaintiffs represented that the *Ashton* Plaintiffs' understanding of the Framework Agreement's terms is incorrect, but they again declined to disclose its terms. A-93-98. As stated previously, the *Ashton* Plaintiffs, who reflect nearly one-third of these remaining victims, did not join the Framework Agreement.

the families of those killed in the 9/11 Attacks would not be foreclosed from

obtaining recovery, not to obtain priority over any other claimant. App.594-95. To

that end, they requested that should other claimants move for attachment of the DAB

Assets or for writs of execution, the District Court should grant attachment or writs

of execution simultaneously as to all movants to put to an end the Joint Creditors'

race for priority. App.594-95.

## VI.    The District Court's Memorandum Decision and Order

On August 26, 2022, Magistrate Judge Netburn issued the R&R

recommending that the District Court deny the Joint Creditors' turnover motions.

App.616-58. Consistent with their position in these consolidated appeals, the *Ashton*

Plaintiffs joined, in part, the Joint Creditors' objections to the R&R's adoption.

Supp. A-99-100. In summary, they concurred with the Joint Creditors,

notwithstanding their disagreements as to the DAB Assets' distribution, that (1) the

District Court possessed subject matter jurisdiction over the turnover proceedings

against the FRBNY involving the interpretation and application of TRIA, and (2)

TRIA's application did not intrude on the President's recognition power. Supp. A-

99-100.

The District Court adopted the R&R on February 21, 2023. S.A.1-30. In

addition to denying the Joint Creditors' turnover motions, the District Court denied

16

the *Ashton* Plaintiffs' motion for attachment as moot, resulting in these consolidated appeals. S.A.30.

## ARGUMENT

The *Ashton* Plaintiffs join the Joint Creditors' arguments that the District Court's February 21, 2023 Memorandum Decision and Order adopting the R&R should be vacated. *See* Argument Sections II and III of the Joint Creditors' brief. Nevertheless, while the *Ashton* Plaintiffs agree with the Joint Creditors that the District Court erred in deciding the threshold issues related to its jurisdiction and ability to distribute the DAB Assets, the *Ashton* Plaintiffs oppose reversal of that portion of the District Court's order denying the Joint Creditors' turnover motions. As described above, the *Ashton* Plaintiffs have consistently sought an equitable distribution of the DAB Assets to benefit *all* victims of Taliban-sponsored terrorism. The "first come, first served" approach that the Joint Creditors argue is dictated by the New York judgment enforcement priority rules would result in an unjust windfall for a tiny minority of 9/11 families and other victims of terrorist attacks (and property and insurance interests), while leaving the vast majority of 9/11 families with little or no recovery at all. The so-called Framework Agreement would do little to ameliorate this inequitable outcome, yielding an indefensible disparity in recovery between the majority of victims' estates and families while securing nearly full

17

recovery for the *Havlish* and *Doe* Plaintiffs and significant recovery for the *Federal Insurance* Plaintiffs.

While the parties have presented arguments to the District Court regarding the appropriate methodology for distribution of the DAB Assets, other than commenting on its desire to reach an equitable resolution, the District Court has not made a final decision as to such methodology. Instead, its decision that the DAB Assets are not available for distribution at all preempted consideration of the question whether the New York priority rules strictly require distribution on a "first come, first served" basis, or whether, for example, the District Court retains the equitable power under New York Civil Practice Law and Rules ("CPLR") § 5240 or the All Writs Act to deny the Joint Creditors' turnover motions and distribute the Assets on an equitable basis. Supp. A-99. CPLR § 5240, in particular, grants "substantial authority to order equitable relief" and provides courts with broad, discretionary powers to control and regulate enforcement of money judgments. *See Borges v. Placeres*, 111 N.Y.S.3d 517 (N.Y. Civ. Ct. 2018) (quoting *Distressed Holdings, LLC v. Ehler*, 976 N.Y.S.2d 517, 524 (2d Dep't 2013)); *accord Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 519 (1979). Specifically, it provides: "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." CPLR § 5240. Courts have employed § 5240 "to

prevent harsh or unjust results." *S.E.C. v. Pentagon Cap. Mgmt. PLC*, No. 08-CV-3324, 2013 WL 5815374, at *5 (S.D.N.Y. Oct. 29, 2013); *accord Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalate Ithalat Ihracat Ticaret*, No. 20-mc-75 (RA) (RWL), 2020 WL 7260513, at *3 (S.D.N.Y. Dec. 9, 2020) (employing CPLR § 5240 "to prevent undue prejudice and disadvantage").

Under these circumstances, "remanding the case is in keeping with [this Court's] general policy that the trial court should consider arguments—and weigh relevant evidence—in the first instance." *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 189 (2d Cir. 2016). That policy is especially appropriate in cases where equitable discretion is vested in the trial court, but that court has not yet made a determination as to the equities. *See, e.g.*, *United States v. Baran*, 996 F.2d 25, 29 (2d Cir. 1993) (remanding to district court for consideration of the equities where "the record is unclear as to whether the District Court recognized that it had discretion under New York law" to apply equitable subrogation); *see also Blondin v. Dubois*, 189 F.3d 240, 249 (2d Cir. 1999) (remanding to district court "to exercise its broad equitable discretion" to develop record in support of appropriate remedies); *Banks v. Travelers Cos.*, 180 F.3d 358, 365 (2d Cir. 1999) (same).

Remand is also appropriate here because reversal of the District Court's denial of the Joint Creditors' turnover motions would be not only contrary to equity, it is legally impermissible. Under the clear mandate of this Court's decision in *Levinson*,

the District Court erred in granting writs of execution before it had determined the availability of the DAB Assets under TRIA. 44 F.4th at 97-98. Thus, while this Court should conclude that the DAB Assets are, in fact, available to satisfy judgments against the Taliban, this Court's reversal of the denial would leave a number of other critical legal and equitable issues for the District Court still to decide, including the application of *Levinson* to the Joint Creditors' writs, the *Ashton* Plaintiffs' entitlement to an order of attachment (their attachment motion was never fully briefed as a consequence of the Memorandum and Order adopting the R&R), and how and whether to grant such orders to those claimants who have similarly moved in order to achieve the District Court's stated goal of an equitable distribution.

Accordingly, this Court should vacate the District Court's February 21, 2023 Memorandum Decision and Order, and remand with instructions to consider the various turnover and attachment motions in light of *Levinson*.

## CONCLUSION

For the foregoing reasons, the District Court's February 21, 2023 Memorandum Decision and Order adopting the R&R should be vacated. The Joint Creditors' turnover motions and the *Ashton* Plaintiffs' attachment motion should be remanded so that the District Court may consider the issues regarding the DAB Assets' disposition left unresolved as a consequence of the February 21, 2023 Memorandum Decision and Order.

Date: June 30, 2023
     New York, New York

Respectfully submitted,

**KREINDLER & KREINDLER LLP**

By: /s/ Andrew J. Maloney, III
Andrew J. Maloney, III, Esq.
485 Lexington Ave., 28th Floor
New York, New York 10017
Tel: (212) 687-8181
amaloney@kreindler.com

– and –

**SHER TREMONTE LLP**

Theresa Trzaskoma
Noam Biale
90 Broad Street, 23rd Floor
New York, New York 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
ttrzaskoma@shertremonte.com
nbiale@shertremonte.com

*Counsel for Ashton Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for the Plaintiffs-Appellants Kathleen Ashton *et al.* certifies pursuant to Federal Rule of Appellate Procedure 32(g)(1) and the Court's Motion Order granting the *Ashton* Plaintiffs permission to file a separate brief that the foregoing brief contains 4,663 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), according to the Word Count feature on Microsoft Word; and that the brief has been prepared in 14-point Times New Roman font.

Date: June 30, 2023
     New York, New York

            */s/ Noam Biale*
            Noam Biale
           SHER TREMONTE LLP