# 23-258(L)

## 23-263(CON), 23-304(CON), 23-346(CON), 23-444(CON)

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

FIONA HAVLISH, RUSSA STEINER, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF WILLIAM STEINER, DECEASED, CLARA CHIRCHIRILLO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF PETER CHIRCHIRILLO, TARA BANE, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL A. BANE, GRACE M. PARKINSON-GODSHALK, IN HER OWN RIGHT AND ADMINISTRATIX OF THE ESTATE OF WILLIAM R. GODSHALK, ELLEN L. SARACINI, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF VICTOR J. SARACINI, DECEASED, TheresaAnn LOSTRANGIO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF JOSEPH LOSTRANGIO, DECEASED, DEENA BURNETT, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF THOMAS E. BURNETT, JR., DECEASED, THOMAS E. BURNETT, SR.,

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## SUPPLEMENTAL APPENDIX

---

ANDREW J. MALONEY, III
KREINDLER & KREINDLER LLP
750 Third Avenue
New York, New York 10017
(212) 687-8181

NOAM BIALE
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Plaintiffs-Appellants Kathleen Ashton, Josephine Alger, Angelica Allen, George Andrucki and Mary Andrucki*

AS THE PARENT AND ON BEHALF OF THE FAMILY OF THOMAS E. BURNETT, JR.,
JUDITH REISS, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF
JOSHUA SCOTT REISS, DECEASED, WILLIAM COALE, IN HIS OWN RIGHT AND AS
ADMINISTRATIX OF THE ESTATE OF JEFFREY ALAN COALE, DECEASED,
PATRICIA J. PERRY, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE
OF JOHN WILLIAM PERRY, DECEASED, BARBARA A. MINERVINO, IN HER OWN
RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF LOUIS J. MINERVINO,
DECEASED, MATTHEW T. SELLITTO, IN HIS OWN RIGHT AND AS ADMINISTRATIX
OF THE ESTATE OF LOUIS J. MINERVINO, DECEASED, RALPH MAERZ, JR., AS
PARENT AND ON BEHALF OF THE FAMILY OF NOELL MAERZ, DECEASED, LINDA
PANIK, AS PARENT AND ON BEHALF OF THE FAMILY OF LT. JONAS MARTIN
PANIK, DECEASED, MARTIN PANIK, AS PARENT AND ON BEHALF OF THE
FAMILY OF LT. JONAS MARTIN PANIK, DECEASED, MARTINA LYNE-ANN PANIK,
AS THE SISTER OF LT. JONAS MARTIN PANIK, STEPHEN L. CARTLEDGE, AS
HUSBAND OF SANDRA WRIGHT CARTLEDGE, DECEASED, LOISANNE DIEHL, IN
HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL DIEHL,
DECEASED, TINA GRAZIOSO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE
ESTATE OF JOHN GRAZIOSO, DECEASED, JIN LIU, IN HER OWN RIGHT AND AS
EXECUTRIX OF THE ESTATE OF LIMING GU, DECEASED, ALL PLAINTIFFS, ON
BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, MICHAEL
EDWARD PAIGE, SPECIAL ADMINISTRATOR OF THE ESTATE OF TIMOTHY
RAYMOND WARD, DECEASED., BRIANNA L. GOMES, ADMINISTRATOR OF THE
ESTATE OF DOYLE RAYMOND WARD, DECEASED, JOHN DOES 1 THROUGH 7,
RAYMOND ANTHONY SMITH, AS ADMINISTRATOR OF THE ESTATE OF GEORGE
ERIC SMITH, DECEASED, FEDERAL INSURANCE COMPANY, PACIFIC INDEMNITY
COMPANY, CHUBB CUSTOM INSURANCE COMPANY, CHUBB INDEMNITY
INSURANCE COMPANY, CHUBB INSURANCE COMPANY OF CANADA, CHUBB
INSURANCE COMPANY OF NEW JERSEY, GREAT NORTHERN INSURANCE
COMPANY, VIGILANT INSURANCE COMPANY, TIG INSURANCE COMPANY,
KATHLEEN ASHTON, AS ADMINISTRATOR OF THE ESTATE OF THOMAS ASHTON,
DECEASED AND ON BEHALF OF ALL SURVIVORS OF THOMAS ASHTON,
JOSEPHINE ALGER, AS ADMINISTRATOR OF THE ESTATE OF FREDERICK ALGER,
AS COEXECUTORS OF THE ESTATE OF DAVID D. ALGER, DECEASED AND ON
BEHALF OF THE SURVIVORS OF DAVID D. ALGER, ANGELICA ALLEN, AS
ADMINISTRATOR OF THE ESTATE OF ERIC ALLEN, DECEASED AND ON BEHALF
OF ALL SURVIVORS OF ERIC ALLEN, GEORGE ANDRUCKI, AS
COADMINISTRATOR OF THE ESTATE OF JEAN ANDRUCKI ,DECEASED AND ON
BEHALF OF ALL SURVIVORS OF JEAN ANDRUCKI, MARY ANDRUCKI, AS
COADMINISTRATOR OF THE ESTATE OF JEAN ANDRUCKI, DECEASED AND ON
BEHALF OF ALL SURVIVORS OF JEAN ANDRUCKI,

*Plaintiffs-Appellants,*

KATHERINE SOULAS, IN HER OWN RIGHT, AS REPRESENTATIVE OF THE HEIRS, ON
BEHALF OF HER MINOR CHILDREN, AND AS EXECUTRIX OF THE ESTATE OF
TIMOTHY SOULAS, DECEASED, ON BEHALF OF THE SOLATIUM CLAIMANTS,
INCLUDING KATHERINE SOULAS, FREDERICK SOULAS, II, TIMOTHY SOULAS, JR.,

*Plaintiff,*

JANE DOE, IN HER OWN RIGHT, ON BEHALF OF HER MINOR CHILDREN,
AND AS EXECUTRIX OF THE ESTATE OF TOM SAWYER,
A FICTITIOUS NAME, DECEASED,

*Consolidated-Plaintiff,*

—against—

THE ISLAMIC EMIRATE OF AFGHANISTAN, THE TALIBAN,
AL QAIDA/ISLAMIC ARMY, SHEIKH USAMAH BIN-MUHAMMAD BIN-LADEN,
AKA OSAMA BIN-LADEN, REPUBLIC OF IRAQ,

*Defendants-Appellees,*

FEDERAL RESERVE BANK OF NEW YORK,

*Garnishee-Interested-Party-Appellee,*

SHEIKH USAMA BIN-LADEN, MUHAMMAD OMAR, AL QAEDA/ISLAMIC ARMY,
ISLAMIC REPUBLIC OF IRAN, AYATOLLAH ALI HOSEINI-KHAMENEI, SUPREME
LEADER, IRANIAN MINISTRY OF INFORMATION AND SECURITY, THE ISLAMIC
REVOLUTIONARY GUARD CORPS, HEZBOLLAH, AN UNINCORPORATED
ASSOCIATION, IRANIAN MINISTRY OF PETROLEUM, IRANIAN MINISTRY OF
ECONOMIC AFFAIRS AND FINANCE, IRANIAN MINISTRY OF COMMERCE,
IRANIAN MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS, SADDAM
HUSSEIN, PRESIDENT, IRAQI MINISTRY OF DEFENSE, IRAQI MINISTRY OF
FINANCE, IRAQI MINISTRY OF OIL, IRAQI INTELLIGENCE SERVICE, QUSAY
HUSSEIN, UNIDENTIFIED TERRORIST DEFENDANTS 1-500, ALI AKBAR HASHEMI
RAFSANJANI, THE NATIONAL IRANIAN TANKER CORPORATION, PREVIOUSLY
IDENTIFIED AS UNIDENTIFIED TERRORIST 2, THE NATIONAL IRANIAN OIL
CORPORATION, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 3,
THE NATIONAL IRANIAN GAS COMPANY, PREVIOUSLY IDENTIFIED AS
UNIDENTIFIED TERRORIST 4, IRAN AIRLINES, PREVIOUSLY IDENTIFIED AS
UNIDENTIFIED TERRORIST 5, THE NATIONAL IRANIAN PETROCHEMICAL
COMPANY, THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN,
UNIDENTIFIED TERRORIST DEFENDANTS 8-500, AL-QAEDA, THE HAQQANI
NETWORK, AL QAIDA, EGYPTIAN ISLAMIC JIHAD, OSAMA BIN LADEN, ESTATE
OF MUHAMMAD ATEF, AYMAN AL ZAWAHARI, ABU ZUBAYDH,

*Defendants.*

# TABLE OF CONTENTS

PAGE

Order of the Honorable Valerie Caproni, dated March 21, 2022
  (*Owens, et al. v. Taliban a/k/a Islamic Emirate of Afghanistan*)
  Dkt. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-1

Opinion and Order of the Honorable Valerie Caproni,
  dated April 11, 2022
  (*Owens, et al. v. Taliban a/k/a Islamic Emirate of Afghanistan*)
  Dkt. 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-4

Letter from the Plaintiffs' Executive Committees to the Honorable
  George B. Daniels, the Honorable Valerie E. Caproni and the
  Honorable Sarah Netburn, dated March 14, 2022
  (*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
  Dkt. 7751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-16

Letter from Sean P. Carter to the Honorable Sarah Netburn ,
  dated March 22, 2022
  (*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
  Dkt. 7790 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-19

Letter from Michel F. Baumeister to the Honorable Sarah Netburn,
  dated March 30, 2022
  (*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
  Dkt. 7810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-25

Letter from Megan Benett and Theresa Trzaskoma to the Honorable
  George B. Daniels, dated April 25, 2022
  (*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
  Dkt. 7912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-27

ii

PAGE

Letter from Megan Benett and Theresa Trzaskoma to the Honorable
George B. Daniels and the Honorable Sarah Netburn,
dated August 12, 2022
(*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
Dkt. 8339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-32

Letter from Counsel to the Honorable George B. Daniels and the
Honorable Sarah Netburn, dated August 21, 2022
(*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
Dkt. 8419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-93

Letter from Megan Benett and Theresa Trzaskoma to the Honorable
George B. Daniels, dated November 16, 2022
(*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
Dkt. 8756 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-99

Ashton Plaintiffs' Notice of Appeal
(Appendix B - listing Ashton Plaintiffs) Dkt. 8950-2 . . . . . . . . Supp. A-101

Order of the Honorable Sarah Netburn, dated March 15, 2022
(*In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)*)
Dkt. 7754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-226

Order of the of the Honorable Myrna Perez, dated August 10, 2022
(*Wodenshek, et al. v. Da Afghanistan Bank, The Taliban*)
Dkt. 76. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-229

Order of the Honorable William J. Nardini, dated October 4, 2022
(*Wodenshek, et al. v. Da Afghanistan Bank, The Taliban*)
Dkt. 88. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supp. A-234

**Supp. A-1**

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED:____3/21/22____ |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JAMES OWENS, et al.

      *Plaintiffs,*

  *v.*

TALIBAN a/k/a ISLAMIC EMIRATE OF
AFGHANISTAN

      *Defendant.*

Civil Action No. 22-1949

### ~~[PROPOSED]~~ ORDER GRANTING
### *EX PARTE* EMERGENCY MOTION FOR ORDER OF ATTACHMENT

This matter is before the Court on Plaintiffs' *Ex Parte* Emergency Motion for Order of Attachment.  Upon consideration of the motion, all of the papers submitted, and the relevant authorities, the Court makes the following findings:

**WHEREAS**, because of the delay that will be caused by serving Defendant Taliban a/k/a Islamic Emirate of Afghanistan ("Defendant"), an insurgent and volatile regime, and Plaintiffs' need for prompt adjudication of this motion, given the risk of asset dissipation, Plaintiffs have "good and sufficient reasons" for proceeding *ex parte* under Local Civil Rule 6.1 and New York Civil Practice Law and Rules § 6211.

**WHEREAS**, the Plaintiffs have demonstrated that they are entitled to an order of attachment under Federal Rule of Civil Procedure 64(a) and New York Civil Practice Law and Rules §§ 6201, 6211, and 6212 because (1) they have "a cause of action," (2) "it is probable that [they] will succeed on the merits," (3) "one or more grounds for attachment provided in section 6201 exist," and (4) "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff[s]."  N.Y. CPLR § 6212(a).

**IT IS HEREBY ORDERED THAT** Plaintiffs' *Ex Parte* Emergency Motion for Order of

**Supp. A-2**

Attachment of $4,669,011,012.21, plus prejudgment interest, in funds held in the name of Da Afghanistan Bank at the Federal Reserve Bank of New York, and any and all other funds belonging to Defendant in this district, is GRANTED.

**IT IS FURTHER ORDERED THAT** the United States Marshal of the Southern District of New York, or any person appointed to act in his place and stead, shall levy, at any time before final judgment, upon service of this Order of Attachment, but refrain from taking into actual custody, $1,373,761,042.95 (which represents the compensatory damages Plaintiffs could recover upon final judgment), plus prejudgment interest, held in the name of Da Afghanistan Bank at the Federal Reserve Bank of New York.

**IT IS FURTHER ORDERED THAT** Plaintiffs shall post an undertaking in the amount of $ _10,000_ within _14_ days of this Order of Attachment.

**IT IS FURTHER ORDERED THAT** within five calendar days of the receipt of the levy of this Order of Attachment, garnishees shall provide a garnishee's statement filed with this Court (under seal) and served on Plaintiffs' counsel—Matthew D. McGill, Gibson Dunn & Crutcher LLP, 1050 Connecticut Avenue, N.W., Washington, DC 20036—complying with and addressing all matters specified in N.Y. CPLR § 6219.  Garnishees are directed to acknowledge in writing to the U.S. Marshal, also served on counsel for Plaintiffs at the above-mentioned address, that the assets attached herein will be held on behalf of the U.S. Marshal such that garnishees, their agents, subdivisions, servants, officers, employees, and attorneys, and all persons in possession of the property and/or debts described above, and all persons acting in concert or participation with the foregoing, and all persons receiving actual notice of this Order of Attachment, will refrain from directly or indirectly transferring, or ordering, directing, or requesting or assisting in the transfer, or in any other way affecting the value of, any such property or debt.

**IT IS FURTHER ORDERED THAT** within 10 calendar days after the levy of this Order,

**Supp. A-3**

Plaintiffs shall move for an order confirming this Order of Attachment.  Plaintiffs shall serve its motion for confirmation of this Order of Attachment on Defendant and each garnishee.

      **SO ORDERED.**

DATED:  __March 21, 2022__

                              Hon. __Valerie Caproni__
                              United States District Court for the
                              Southern District of New York

**Supp. A-4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
```

JAMES OWENS, et al.,                              :

                                       :

                            Plaintiffs,      :

              -against-                     :

                                       :

TALIBAN a/k/a ISLAMIC EMIRATE OF     :
AFGHANISTAN,                             :

                                       :

                            Defendant.     :

```
-----------------------------------------------------------X
```

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: __4/11/22__ |

22-CV-1949 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

On August 7, 1998, al-Qaeda killed more than 200 people and injured thousands in

terrorist attacks on the U.S. embassies in Dar es Salaam, Tanzania and Nairobi, Kenya

("Embassy Bombings").  Although al-Qaeda was responsible for the attack, several countries and

groups provided assistance that made the attacks possible, including Iran, Sudan, and, allegedly,

the Taliban, a fundamentalist Islamic organization that then controlled, and now again controls,

Afghanistan.

In 2021, about 20 years after being ousted from Afghanistan, the Taliban effectively

reseized control of Afghanistan, after which it laid claim to funds held by the Afghan central

bank at the Federal Reserve Bank of New York ("N.Y. Fed.").  In February 2022, President

Joseph R. Biden issued an Executive Order blocking the Taliban from moving or using those

funds; that Executive Order also designated some of the blocked funds for payment of civil

judgments that have been obtained by victims of the Taliban's acts of terrorism.  *See* McGill

Decl., Ex. 1, Dkt. 6-1.  The Executive Order prompted approximately 200 surviving victims,

estates of victims who did not survive, and family members of the victims of the Embassy

Bombings, both domestic and foreign, to sue the Taliban for its alleged role in the attack.  *See*

1

**Supp. A-5**

*generally* Compl., Dkt. 1.  To preserve their chance of collecting on a future judgment, they have

filed an *ex parte* emergency motion seeking pre-judgment attachment of the funds.  *See* Dkt. 4.

For the reasons that follow, their motion is GRANTED.

## BACKGROUND[1]

In 1996, after being expelled from Sudan, al-Qaeda and its leader, Osama bin Laden,

relocated to Afghanistan, where the Taliban had recently emerged as a fundamentalist movement

that was attempting to take over Afghanistan.  Once in Afghanistan, al-Qaeda allegedly began to

receive support from the Taliban in the form of, among other things, weapons, training, facilities,

and protection.  McGill Decl., Ex. 5, Part II at 66, Dkt. 6-6; McGill Decl., Ex. 6 at 3, Dkt. 6-8.

While he was allegedly being protected by the Taliban, bin Laden declared war on the United

States in a 1996 fatwa; he reiterated that declaration in February 1998.  McGill Decl., Ex. 7 at 1–

2, Dkt. 6-9; McGill Decl., Ex. 8 at 2, Dkt. 6-10.  Eventually, bin Laden and al-Qaeda

orchestrated the attacks on two U.S. embassies in the summer of 1998, killing hundreds and

injuring thousands.  McGill Decl., Ex. 10 at 2, Dkt. 6-12.

Horrific in their own right, the 1998 bombings were a harbinger of what was to come.

On September 11, 2001, al-Qaeda perpetrated terrorist attacks against the United States with far-

reaching domestic and international consequences.  *See generally* McGill Decl., Ex. 18, Dkt. 6-

20.  The Taliban was pushed from power in Afghanistan when North Atlantic Treaty

Organization ("NATO") forces, led by the United States, invaded the country.  *Id.*  Although a

fragile democracy was formed, Afghanistan was rocked by insurgent attacks from the Taliban for

years.  Eventually, in the summer of 2021, NATO allies and the United States withdrew their

troops from the country, and the Taliban retook control.  *Id.*  Although no country has recognized

---

[1]       The facts are taken from the Complaint and supporting Declaration and are assumed to be true for purposes
of this opinion.

2

it as an official, legitimate government, the Taliban is currently governing Afghanistan.  McGill

Decl., Ex. 19 at 1, Dkt. 6-21.  In that role, the Taliban laid claim to roughly $7 billion in assets of

the Afghan central bank held at the N.Y. Fed.  McGill Decl., Ex. 20 at 2, Dkt. 6-22.  On

February 11, 2022, President Biden, via Executive Order, froze those assets and made half of

them available for victims of terrorism to collect on civil judgments.  McGill Decl., Ex. 1, Dkt.

6-1.[2]

President Biden's order set off a race among creditors to attach funds.  Among the

terrorism victims seeking to lay claim to those funds are victims of the September 11, 2001

terrorist attacks — many of whom have been engaged in a complex set of lawsuits filed years

ago in this District — who wish to levy previously-stayed writs of execution on the now-

available funds in the amount of more than $2.1 billion.  Order, *In Re: Terrorist Attacks on

September 11, 2001*, No. 03-MD-01570, Dkt. 7717 (S.D.N.Y. Mar. 2, 2022) (lifting stays on

writs of execution for two sets of plaintiffs in cases related to the September 11 attacks).  Those

plaintiffs are now engaged in turnover proceedings, which will be fully briefed at the end of

April 2022.  Order, *In Re: Terrorist Attacks on September 11, 2001*, No. 03-MD-01570, Dkt.

7750 (S.D.N.Y. Mar. 14, 2022) (setting briefing schedule).  In part because of those judgment

creditors, this case was filed with an *ex parte* emergency motion for prejudgment attachment.

Pls. Mem., Dkt. 5 at 1, 25.[3]  Although Plaintiffs seek pre-judgment attachment of Taliban assets

in the amount of approximately $4.6 billion plus pre-judgment interest, with respect to the funds

located at the N.Y. Fed., they seek only their expected compensatory damages, in the amount of

---

[2]     Whether the funds Plaintiffs seek to attach are actually funds belonging to the Taliban is a complicated
question.  That issue, however, is not ripe for final decision at this stage of Plaintiffs' case.

[3]     Magistrate Judge Sarah Netburn denied certain of the September 11 plaintiffs' request to consolidate this
action with the September 11 cases.  Order, *In Re: Terrorist Attacks on September 11, 2001*, No. 03-MD-01570,
Dkt. 7754 (S.D.N.Y. Mar. 15, 2022).

**Supp. A-7**

approximately $1.4 billion plus pre-judgment interest (the amount of the funds that have not already been attached).  *Id.* at 25.  After oral argument, the Court granted Plaintiffs' motion, indicating that an opinion would follow.  Order, Dkt. 32.

## DISCUSSION

### I.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 64, New York state law governs the ability of a party to attach property prior to obtaining a judgment.  Fed. R. Civ. P. 64.  Under New York law, in order to obtain a pre-judgment attachment, the plaintiff must show that: (1) the plaintiff has a cause of action for a money judgment; (2) it is probable that the plaintiff's claim will succeed on the merits; (3) one or more grounds for attachment provided under New York law exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.  CPLR § 6212(a).  A plaintiff must make this showing via affidavit or other written evidence.  *Id.*  The remedy of pre-judgment attachment "is discretionary with the Court and should be used sparingly."  *Katz Agency, Inc. v. Evening News Ass'n*, 514 F. Supp. 423, 429 (S.D.N.Y. 1981), *aff'd sub nom. Katz Commc'ns, Inc. v. Evening News Ass'n*, 705 F.2d 20 (2d Cir. 1983) (citation omitted).  Although the remedy is discretionary, the Second Circuit has made clear that where all the statutory requirements have been satisfied, a district court has no option but to grant pre-judgment attachment.  *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) ("Where . . . a statutory ground for attachment exists and both need and likelihood of success are established, [a district court's] discretion does not permit denial of the

remedy for some other reason, at least absent extraordinary circumstances and perhaps even then.").

New York law provides for granting orders of attachment without notice to the adversarial party. *See* CPLR § 6211(a). The adversary is protected by the fact that if the order of attachment is obtained *ex parte*, the plaintiff must then serve a motion on the defendant seeking to confirm the order of attachment within a certain time period, or the order of attachment will be vacated. *Herzi v. Ateliers De La Haute-Garonne,* No. 15-CV-7702, 2015 WL 8479676, at *1 (S.D.N.Y. Oct. 13, 2015). In the Southern District of New York, Local Rule 6.1 allows for an *ex parte* application so long as the moving party provides an affidavit with good and sufficient reasons why proceeding *ex parte* is necessary; Plaintiffs have satisfied that requirement. *See generally* McGill Decl., Ex. 1, Dkt. 6-1.

**II.      Plaintiffs Meet the Requirements for Pre-Judgment Attachment Under New York Law**

Although this litigation may present other complicated issues of law at a later stage, Plaintiffs have met the statutory requirements to be granted pre-judgment attachment.

**A. Plaintiffs Have Brought a Cause of Action for a Money Judgment**

Plaintiffs bring claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a); the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, for foreign Plaintiffs; and New York state tort law claims for different subsets of Plaintiffs. *See generally* Compl., Dkt. 7. These are clearly causes of action that, were they to succeed, would result in a money judgment. *See, e.g.*, Mem. and Order, *Mattel Inc. v. Entities et al.*, No. 20-CV-11075, Dkt. 55 at 10 (finding "[t]here is, of course, a cause of action here" where plaintiff brought standard trademark claim); *Disney Enterprises, Inc. v. Finanz St. Honore, B.V.*, No. 13-CV-6338, 2017 WL 1862211, at *2 (E.D.N.Y. May 8, 2017) (noting in passing "there is a cause of action" in trademark case);

**Supp. A-9**

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*, No. 15-CV-9003, 2018 WL 6340600, at *1 (S.D.N.Y. July 23, 2018) (finding cause of action in passing in case bringing breach of contract claim).  Plaintiffs therefore easily meet the first prong for pre-judgment attachment under New York law.  CPLR § 6212(a).

### B.  Plaintiffs Have Demonstrated a Probability of Success on the Merits

In order to attach the assets in question, Plaintiffs must prove a likelihood of success on the merits for at least one of their claims.  Although Plaintiffs have brought claims under two federal statutes and several state tort laws, the Court addresses only their likelihood of success under the federal statutes.

### 1.  Plaintiffs Are Likely to Succeed on Their ATA Claim

The ATA provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  To succeed on a claim under the ATA, "a plaintiff must prove three formal elements: unlawful *action*, the requisite *mental state*, and *causation*."  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (internal quotation marks and citations omitted) (emphasis in original).

To establish an "unlawful action," Plaintiffs must show that their injuries resulted from an act of "international terrorism."  *Id.* at 336.  The ATA defines activities that constitute "international terrorism" as those that (1) "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (2)

"appear to be intended" to intimidate or coerce a civilian population; influence the policy of a

government by intimidation or coercion; or affect the conduct of a government by mass

destruction, assassination, or kidnapping; and (3) occur outside the United States.  18 U.S.C. §

2331(1)(A)–(C).

      Plaintiffs allege that, leading up to the Embassy Bombings, the Taliban violated

numerous U.S. laws, including harboring and concealing terrorists, providing material support to

terrorists, and conspiring to kill U.S. nationals.  Pls. Mem. at 12–14 (citing 18 U.S.C. § 2339; 18

U.S.C. § 2339A; 18 U.S.C. § 2332(b)).  This assertion rests primarily on the fact that the Taliban

gave bin Laden refuge after he was ousted from Sudan, at a time when bin Laden was overtly

calling for acts of violence to be committed against the United States.  *Id.*  Plaintiffs allege that

the Taliban maintained the terroristic intent required — to influence government policy — based

on bin Laden's actions, specifically his issuance of fatwas, and that the acts in question occurred

entirely outside the United States.  *Id.* at 14.  Plaintiffs provide numerous exhibits supporting

these contentions, including a criminal indictment that incorporates discussion of bin Laden's

relationship with the Taliban beginning in 1996, *see* McGill Decl., Ex. 4, Dkt. 6-4 ¶ 8; bin

Laden's 1996 and 1998 fatwas, *see generally* McGill Decl., Exs. 7–8, Dkts. 6-9–6-10; news

articles, such as one in which the Taliban pledges to protect bin Laden "at any cost" following

the Embassy Bombings, *see* McGill Decl., Ex. 15 at 1, Dkt. 6-17; and a criminal indictment of

bin Laden and other members of al-Qaeda for the bombings, *see* McGill Decl., Ex. 16, Dkt. 6-18,

among others.

      On causation, Plaintiffs argue that the Taliban's role in helping al-Qaeda and specifically

bin Laden proximately caused the Embassy Bombings.  Pls. Mem. at 14–16.  Plaintiffs argue that

given that Sudan, which provided less significant support to bin Laden, was found to have

proximately caused the injuries stemming from the Embassy Bombings, the Taliban, which

offered more significant support, is as responsible, if not more so, for those same injuries. *Id.*

Plaintiffs also contend that it was "reasonably foreseeable" that individuals would die as a result

of the bombings. *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 515–16 (S.D.N.Y.

2014) (citation omitted).

  While there is essentially no doubt that at least some Plaintiffs have an ATA claim that is

likely to be meritorious, an affirmative defense that Plaintiffs left unmentioned in their briefing is

the statute of limitations, which for the ATA is 10 years. 18 U.S.C. § 2335(a). At oral argument,

Plaintiffs urged the Court not to consider the statute of limitations due to the fact that it is an

affirmative defense for the Defendant to raise. Hearing Tr., Dkt. 34 at 6–7. In the alternative,

they noted that the ATA is subject to both statutory and equitable tolling. *See id.*; 18 U.S.C. §

2335(b) ("[t]he time of the absence of the defendant from the United States or from any

jurisdiction in which the same or a similar action arising from the same facts may be maintained

by the plaintiff, or of any concealment of the defendant's whereabouts, shall not be included in

the 10-year period."); *Litle v. Arab Bank, PLC*, 507 F. Supp. 2d 267, 276–77 (E.D.N.Y. 2007),

*vacated in part sub nom. Linde v. Arab Bank*, *PLC*, 950 F. Supp. 2d 459 (E.D.N.Y. 2013)

(applying equitable tolling analysis in ATA case). The Court agrees with Plaintiffs that because

the statute of limitations is an affirmative defense and because they have colorable arguments

that the affirmative defense, if asserted, would not be successful, the statute of limitations does

not undercut the Plaintiffs' likelihood of success on the merits on their ATA claim.

  **2. Foreign Plaintiffs Are Likely to Succeed on Their ATS Claim**

  With respect to the ATS claim, the foreign Plaintiffs allege that the Taliban infringed on

the rights of ambassadors in violation of the law of nations, which is actionable under ATS. Pls.

**Supp. A-12**

Mem. at 16–18.  Those claiming jurisdiction under the ATS must allege facts sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States.  *Kadic v. Karadzic,* 70 F.3d 232, 238, 238 n.1 (2d Cir. 1996).

The foreign Plaintiffs certainly meet the first prong; as to the second and third, the U.S. Supreme Court has held that infringement of the rights of ambassadors[4] is one of the three primary offenses covered by Congress' recognition of private causes of action for torts in violation of the law of nations.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004).  In the Second Circuit, plaintiffs can succeed on an ATS claim via aiding and abetting liability.  *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007), *aff'd sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008).  The U.S. District Court for the District of Columbia has previously held that foreign victims from the 1998 bombings can bring a claim under the ATS for infringement of the rights of ambassadors.  *Mwani v. Bin Ladin*, No. 99-CV-125, 2006 WL 3422208, at *4 (D.D.C. Sept. 28, 2006); *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 107 (D.D.C. 2017), *order vacated in part*, 285 F. Supp. 3d 240 (D.D.C. 2018).  Finally, based on the same evidence supporting the ATA claim, *see supra* Section II(B)(1), the foreign Plaintiffs are likely able to prove causation as well.

As with the ATA claim, an affirmative defense to the ATS claim that went unmentioned in Plaintiffs' memorandum is the statute of limitations.  The Court again agrees with Plaintiffs that because the statute of limitations is an affirmative defense and because they have colorable arguments that could overcome the affirmative defense — here only in the form of equitable, and

---

[4]     The victims need not actually be ambassadors.  *See*, *e.g.*, *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 106–07 (D.D.C. 2017), *order vacated in part*, 285 F. Supp. 3d 240 (D.D.C. 2018).

**Supp. A-13**

not statutory, tolling, *see generally* 28 U.S.C. § 1350; *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (describing standard for equitable tolling) — the statute of limitations does not undercut Plaintiffs' likelihood of success on the merits on their ATS claim.

As a result, Plaintiffs, both U.S. nationals and non-U.S. nationals, meet this prong.

### C. Plaintiffs Have Established Grounds for Attachment

The third prong Plaintiffs must meet for pre-judgment attachment has proven to be the most contentious. Plaintiffs' statutory ground for attachment is that the Taliban is a "nondomiciliary residing without the state." CPLR § 6201(1). While that description aptly fits the Taliban, because attachment in this case is only for purposes of securing a judgment, Plaintiffs must also prove that the Taliban "has assets within the State that could satisfy a judgment"[5] and that "fear that the judgment will not be satisfied is reasonable." *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012). What circumstances can give rise to such a reasonable fear is contested.[6]

The Second Circuit has explained that pre-judgment attachment under New York law "serves to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures." *ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983). Several New York cases suggest that the animating concerns behind attachment are the depletion of funds due to the defendant's behavior, and not the role of other creditors. *See, e.g.*, *Ames v. Clifford*, 863 F. Supp. 175, 177 (S.D.N.Y. 1994) ("New York courts have required

---

[5]     Because President Biden's Executive Order has frozen the relevant assets to pay victims' judgments, the Court does not turn to the question of whether the Taliban's claim to the assets is proper, which will likely be addressed during turnover proceedings. *See supra* note 2.

[6]     Although this is an *ex parte* motion and is, therefore, technically non-adversarial, as discussed later in this section, non-parties to this case, with their own claims against the Taliban, have provided certain arguments in opposition to Plaintiffs' motion.

**Supp. A-14**

an additional showing that something, whether it is a defendant's financial position or past and present conduct, poses a real risk to the enforceability of a future judgment."). Plaintiffs argue that attempts by others to collect unpaid judgments against the Taliban and the danger that the United States will transfer or claim the remaining funds support a "reasonable" fear necessitating attachment, and they urge the Court to find the same. Pls. Mem. at 1, 23, 25. Although they are not a party to this case, the Plaintiffs' Executive Committees ("PECs") in the multi-district litigation involving victims of the September 11, 2001 attacks argue that these Plaintiffs are improperly using pre-judgment attachment as a mechanism, essentially, to jump the line to collect on a limited pool of funds. PECs Letters, Dkts. 22, 29.

The unfortunate reality that the numerous victims of acts of terror perpetrated by the Taliban may not collect on judgments is not lost on the Court, and the Court does not seek to engage in gamesmanship over which victims are more deserving to collect on the limited funds available. New York law contemplates that pre-judgment attachment provides priority among creditors. *See* CPLR § 5234(b). Allowing plaintiffs who have not obtained a judgment to jump the line cannot be the reason for granting pre-judgment attachment; but, by the same token, the Second Circuit has held that the fact that granting a motion for pre-judgment attachment establishes priority also cannot be a reason *not* to grant pre-judgment attachment. *See Cap. Ventures Int'l*, 443 F.3d at 221–22.[7] Plaintiffs' sole purpose of seeking pre-judgment attachment is not to disrupt the claims of creditors who already have judgments against the Taliban; instead, Plaintiffs seek pre-judgment attachment only of the remaining funds held in New York, for which no judgments or writs of execution have yet been levied. Hearing Tr. at 19–20. The only

---

[7]     Although Plaintiffs relied heavily on *Capital Ventures International* at oral argument, *see*, *e.g.*, Hearing Tr. at 24, the Court notes that, curiously, they did not cite it even once in their briefing.

question for the Court, therefore, is whether Plaintiffs have proven a need to secure the

remaining available funds.  While establishing priority over other potential creditors is clearly a

motivating factor behind Plaintiffs' motion, *see* Pls. Mem. at 1, 25, the nature of the Taliban's

limited assets in the United States and the potential disbursal of the funds — apart from writs of

execution that have already issued and are now subject to turnover proceedings — prevent this

Court from finding anything other than that the statutory ground has been met.  *Cap. Ventures

Int'l*, 443 F.3d at 222.[8]

      **D.  There Are No Known Counterclaims**

      Finally, Plaintiffs must demonstrate that there are no known counterclaims from

Defendant that would exceed the amount sought by them.  CPLR § 6212(a).  The Court is

convinced by their representation that there are none.  Pls. Mem. at 23; McGill Decl., Dkt. 6 ¶

35.


**CONCLUSION**

      Although pre-judgment attachment is a drastic remedy, Plaintiffs have shown that under

Second Circuit precedent they are entitled to attach the funds at issue.  For that reason, Plaintiffs'

*ex parte* emergency motion was GRANTED.



**SO ORDERED.**

<br>

**Date:  April 11, 2022**                            **VALERIE CAPRONI**
**New York, New York**                      **United States District Judge**

---

[8]      The Court notes that there is something unseemly about the race-to-the-courthouse aspect of the New York attachment law.  This Court has no basis for deciding that any victims of the Taliban are more or less deserving of monetary recovery than any others.  New York law, however, seems to favor the fleetest of foot.

12

**Supp. A-16**

## MDL 1570 PLAINTIFFS' EXECUTIVE COMMITTEES
In re: Terrorist Attacks on September 11, 2001 (S.D.N.Y.)

| Plaintiffs' Executive Committee for Personal Injury and Death Claims | Plaintiffs' Executive Committee for Commercial Claims |
|---|---|
| Ronald L. Motley (1944-2013)<br>Jodi Westbrook Flowers / Donald A. Migliori, *Co-Chairs*<br>MOTLEY RICE LLC<br>James P. Kreindler, *Co-Chair*<br>KREINDLER & KREINDLER LLP | Stephen A. Cozen, *Co-Chair*<br>Sean Carter, *Co-Chair*<br>COZEN O'CONNOR |
| Andrew J. Maloney III, *Co-Liaison Counsel*<br>KREINDLER & KREINDLER LLP<br>Robert T. Haefele, *Co-Liaison Counsel*<br>MOTLEY RICE LLC | J. Scott Tarbutton, *Liaison Counsel*<br>COZEN O'CONNOR |

**VIA ECF**

March 14, 2022

The Honorable George B. Daniels
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1310
New York, NY 10007

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 443
40 Foley Square
New York, NY 10007

The Honorable Sarah Netburn, U.S. Magistrate Judge
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse, Room 430
40 Foley Square
New York, NY 10007

> Re:   *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN); *Owens, et al.
> v. Taliban,* 22-cv-1949 (S.D.N.Y.) – Request for MDL Consolidation

Dear Judge Daniels, Judge Caproni, and Judge Netburn:

The Plaintiffs' Executive Committees ("PECs") write to notify the MDL Court of a recently commenced case, *Owens, et al.  v. Taliban,* 22-cv-1949 (S.D.N.Y.). The PECs request that the case be transferred into this MDL and that the Court stay the *Owens* Plaintiffs' emergency motion for an order of attachment pending further court guidance. Copies of the relevant filings in *Owens* are attached.

The Honorable George B. Daniels
The Honorable Valerie E. Caproni
The Honorable Sarah Netburn
March 14, 2022
Page 2

_____

      The *Owens* Plaintiffs filed their Complaint on March 9, 2022 and have sought an emergency hearing for an order of attachment before the presiding judge, the Honorable Valerie Caproni. These filings did not inform Judge Caproni of this MDL and the related Taliban judgment enforcement proceedings currently pending in the MDL. *See* S.D.N.Y. Local Rule 1.6; *see also* Rules for the Division of Business Among District Judges, Southern District of New York, Rule 13(a)(1)(A). Judge Caproni scheduled the hearing on the emergency motion for today, March 14, 2022, at 2:30 p.m. Given that the MDL Court has already extended the MDL order to apply to Taliban judgment enforcement proceedings (ECF No. 7672) and set a briefing schedule in the proceedings (ECF No. 7750), the PECs believe that transferring the *Owens* case into the MDL for consolidated judgment enforcement proceedings against the Taliban will allow those proceedings to continue in a coordinated fashion.[1] The PECs also request a corresponding stay of the *Owens* Plaintiffs' emergency motion for an order of attachment for the same reasons.

Respectfully submitted,

| | |
|---|---|
| COZEN O'CONNOR | MOTLEY RICE LLC |
| By: /s/ Sean P. Carter | By: /s/ Robert T. Haefele |
| SEAN P. CARTER | ROBERT T. HAEFELE |
| One Liberty Place | 28 Bridgeside Boulevard |
| 1650 Market Street, Suite 2800 | Mount Pleasant, SC 29465 |
| Philadelphia, Pennsylvania 19103 | Tel.: (843) 216-9184 |
| Tel.: (215) 665-2105 | Email: rhaefele@motleyrice.com |
| Email: scarter@cozen.com | MDL 1570 Plaintiffs' Exec. Committee for |
| MDL 1570 Plaintiffs' Exec. Committee for | Personal Injury and Death Claims |
| Commercial Claims | |
| | |
| KREINDLER & KREINDLER LLP | ANDERSON KILL P.C. |
| By: /s/ Andrew J. Maloney | By: /s/ Jerry S. Goldman |
| ANDREW J. MALONEY | JERRY S. GOLDMAN |
| 485 Lexington Avenue, 28th Floor | 1251 Avenue of the Americas, 42nd Floor |
| New York, NY 10017 | New York, NY 10020 |
| Tel.: 212-687-8181 | Tel: 212-278-1000 |
| Email: amaloney@kreindler.com | Email: jgoldman@andersonkill.com |
| MDL 1570 Plaintiffs' Exec. Committee for | MDL 1570 Plaintiffs' Exec. Committee for |
| Personal Injury and Death Claims | Personal Injury and Death Claims |

_____

[1] By March 21, 2022, the *Havlish* and *Doe* Plaintiffs shall file their motions for turnover as well as any motions addressing service issues (e.g., a motion for service by publication) related to the DAB Funds. By April 20, 2022, the PECs may file a single brief of no more than 20 pages addressing any issues that they believe are relevant to the Court's consideration of the *Havlish* and *Doe* Plaintiffs' turnover motions. By April 27, 2022, the *Havlish* and *Doe* Plaintiffs may file briefs of up to 10 pages each replying to the issues identified by the PECs. ECF No. 7750.

**Supp. A-18**

The Honorable George B. Daniels
The Honorable Valerie E. Caproni
The Honorable Sarah Netburn
March 14, 2022
Page 3

_____


Enclosures

cc:     All Counsel of Record via ECF

**Supp. A-19**



March 22, 2022

**Sean P. Carter**
Direct Phone   215-665-2105
Direct Fax       215-701-2105
scarter1@cozen.com

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

RE:     *In Re: Terrorist Attacks on September 11, 2001,* 03 MDL 1570 (GBD) (SN)

Dear Judge Netburn:

We write on behalf of Plaintiffs in the *Burnett, O'Neill*, *Havlish*, *Hoglan*, *Grazioso*, and *Federal Insurance* actions to advise the Court that we have reached agreement in principle on a framework (to be finalized this week) that will provide a straightforward, prompt, and largely frictionless path for the Court to resolve virtually all the issues raised by the Taliban judgment applications and Da Afghanistan Bank ("DAB") turnover proceedings.  To facilitate this framework, and as urgently necessary given the active, opportunistic efforts by claimants outside of this MDL to jump the line,[1] Plaintiffs in all of these cases respectfully request that the Court undertake the final, ministerial action needed to enter a final judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban, as soon as possible.  A revised proposed form of Order of judgment is being submitted contemporaneously for the Court's consideration.

Entry of that judgment is essentially an administrative matter, would resolve a motion pending since 2007, and will be used to serve an additional writ of execution against the blocked DAB funds.  At least $1.3 billion of those funds are unsecured by any valid post-judgment writ of execution for compensatory damages, and thus attracting aggressive, opportunistic execution efforts by claimants from outside of this MDL.  Service of a writ of execution based on the requested *Federal Insurance* final judgment will be used to secure them for purposes of facilitating the agreed omnibus distribution framework described below.  Upon service of that writ, the *Burnett*, *O'Neill*, *Hoglan*, *Grazioso*, and *Federal Insurance* Plaintiffs would join in the turnover proceedings, adopting the arguments already presented by the *Havlish* and *Doe* Plaintiffs.

Moving Plaintiffs' framework agreement presents the best approach available under the circumstances to secure relief for all 9/11 plaintiffs who have asserted interests in the turnover proceedings; eliminates the risk many of them may otherwise face of having no basis to participate in distributions of blocked DAB funds found subject to turnover; provides moving

---

[1] This morning, plaintiffs in the *Owens* action were granted a prejudgment writ of attachment, a circumstance that moving Plaintiffs respectfully submit underscores the urgency of the present request.  *See Owens v. Taliban, et al.,* Civ. No. 22-1949 (S.D.N.Y.), ECF Nos. 32, 33.

**Supp. A-20**

Honorable Sarah Netburn
March 22, 2022
Page 2

_____

Plaintiffs with the means to prevent (or at least try to prevent) other claimants from outside of this MDL from seeking to jump the line in the hope of taking the blocked funds; and provides this Court with a straightforward and manageable path for resolving these issues on a comprehensive, very prompt basis.

To those ends, we respectfully submit that entry of the requested final judgment in favor of the *Federal Insurance* Plaintiffs is urgently necessary and appropriate.

1. <u>The Framework Agreement Will Dramatically Simplify the Turnover Proceedings and Broadly Protect the Interests of the 9/11-Taliban Stakeholders</u>

As suggested during the hearing on February 22, 2022 and in the PECs' letter of March 11, 2022 (ECF No. 7747), counsel for the *Havlish* Plaintiffs and counsel for the remaining 9/11 plaintiffs asserting interests in the turnover proceedings (collectively, the "9/11-Taliban Stakeholders") have been proceeding to reach an agreement to streamline and simplify the path for resolving the range of issues raised by the turnover proceedings and related applications. Very simply, the parties recognized that if they agree on a sharing framework for distributing blocked DAB assets subject to turnover, and a simple mechanism to secure the blocked funds, the sole near-term issue remaining for the Court to decide would be whether the funds are subject to turnover pursuant to the Terrorism Risk Insurance Act ("TRIA"). And on that issue, an agreement would allow the parties to be united on a common position and arguments.

As a result of a series of discussions, moving Plaintiffs have in fact reached an agreement in principle, to be finalized this week, on an allocation framework that would govern distribution of the blocked DAB funds, in the event the Court concludes they are subject to turnover, and agree that a final judgment in favor of the *Federal Insurance* Plaintiffs would provide the simplest mechanism to secure and facilitate any authorized distribution of the remaining funds not already covered by the *Doe* or *Havlish* writs. As indicated above, that judgment would provide the basis to serve an additional writ of execution against the blocked DAB funds, thereby protecting portions of those funds currently unsecured by any valid post-judgment writ of attachment for compensatory damages, and allowing moving Plaintiffs simply to join in the ongoing turnover proceedings and adopt or elaborate the arguments already presented to the Court by the *Havlish* and *Doe* Plaintiffs.

This Court could then turn its focus to resolving the core TRIA execution issues. In the event the Court concludes the blocked DAB funds are subject to turnover pursuant to TRIA, as we believe the Court should, all of the blocked funds would then be distributed pursuant to the allocation framework among the different groups of moving Plaintiffs. This outcome would result in broad-based participation by the 9/11-Taliban Stakeholders in a distribution of approximately $3.5 billion, and eliminate a range of complexities the Court would otherwise need to navigate in lengthy, contested proceedings.

In proposing this approach, moving Plaintiffs are mindful of the complexities and uncertainties raised by other applications for judgments currently pending in anticipation of seeking to initiate turnover proceedings, and the inherent challenges they would raise for the Court in the absence of this agreed-upon approach. In short, many thousands of the 9/11-Taliban

Honorable Sarah Netburn
March 22, 2022
Page 3

_____

Stakeholders are seeking, but have not yet obtained, monetary judgments against the Taliban, meaning that their interests are unsecured.  Further, the procedural status of the Taliban claims of those plaintiffs varies significantly, and in the absence of an allocation agreement, the parties would have disagreed as to how the Court should proceed and would have inevitably asserted differing views on issues of priority.  Such disparate proposals would present inherent risks for the various stakeholders, including that some or many may have been left without a basis to participate in distributions of any blocked funds deemed subject to turnover.  Meanwhile, the Court has indicated its view that it would require a "Herculean" effort to decide all of the pending applications individually, in the absence of such an agreed approach, and claimants from outside this MDL and unrelated to the 9/11 attacks are bringing new claims and unjustifiably attempting to cut in line ahead of the 9/11 plaintiffs.  These complexities and uncertainties can and in our view should be avoided by taking advantage of this proposed approach by entering judgment in favor of the *Federal Insurance* Plaintiffs.

2.  <u>Entry of the *Federal Insurance* Plaintiffs' Final Judgment Without Further Delay Will Protect the Blocked Assets for the Benefit of Moving Plaintiffs, Will Enable the Parties and Court to Take Advantage of the Plaintiffs' Omnibus Agreement, and is Clearly Appropriate</u>

Entry of a final judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban provides a straightforward and simple mechanism to protect the blocked funds for the benefit of all moving Plaintiffs, and is both procedurally appropriate and in the interests of justice.

As more fully detailed in the undersigned's December 22, 2021 letter to the Court and exhibits thereto, ECF No. 7498, Plaintiffs in the *Federal Insurance* case moved in early 2007 for an assessment of damages against the Taliban and other defendants already subject to judgments of default.  The Court issued substantive rulings on that motion in 2011 that apply with respect to all of those defendants and which supported entry of damage awards with respect to the defendants other than the Taliban.  All that remains is for the Court to formally extend those determinations to the Taliban, pursuant to the procedure the Court has already deemed proper when execution opportunities arise for particular defaulted defendants subject to the 2007 motion (a group that includes the Taliban).  It is entirely appropriate for the Court to enter the requested judgment without further delay, all the more so now that the judgment would be used to broadly advance the interests of relevant stakeholder plaintiffs and allow for the efficient resolution of the issues before the Court.

The proposed form of order awarding the judgment is three pages long and directly tracks the underlying orders and judgments that this Court has already issued and on which it is based.  Thus, entering the judgment should require minimal additional determinations.  The only alteration requested in the current form of order is the addition of language lifting the automatic stay under Rule 62(a), to allow moving Plaintiffs to immediately protect the unsecured portion of the funds and promptly join the turnover proceedings.  *See Off-White LLC v. Ali,* 2021 U.S. Dist. LEXIS 137947 (S.D.N.Y. July 23, 2021).  For purposes of the clerk's final judgment, it would be appropriate, we submit, for the Clerk to include the calculation of prejudgment interest on the face of the judgment.  For judgments on federal law claims in this MDL, the Court has consistently applied a 4.96% prejudgment interest rate, compounded annually and running from

**Supp. A-22**

Honorable Sarah Netburn
March 22, 2022
Page 4

_____

September 11, 2001.  *See* ECF No. 2623 at 5 (awarding *Havlish* Plaintiffs prejudgment interest at the rate of 4.96%); ECF No. 3175 at 9 (recommending "for the sake of consistency that this same 4.96 percent rate" be applied to any federal law claims of the *Federal Insurance* Plaintiffs against Iran); ECF No. 3229 at 2 (adopting recommendation of 4.96% prejudgment interest, compounded annually); ECF No. 4062 at 2 (holding that prejudgment interest for insurers' claims runs from September 11, 2001).  A worksheet reflecting that calculation, through each of the next seven days, is enclosed for the Clerk's consideration and convenience.  *See* Attachment A.

3.  Attachment Efforts by New Claimants Require Prompt Action to Protect the 9/11-Taliban
   Stakeholders' Interests

As the Court is aware, new claimants are advancing opportunistic and novel theories in an eleventh-hour effort to secure judgments and establish priority entitlement to the unsecured portion of the blocked funds.  In the past few weeks, two groups of U.S. Embassy bombing plaintiffs announced their intent to intervene or file actions against the Taliban to accomplish just that.  One of those groups sought, and this morning received, a prejudgment writ of attachment against the blocked assets, which they presumably hope to use to displace the plaintiffs in this MDL who have long been seeking entry of judgment against the Taliban.

As indicated previously, the Plaintiffs' Executive Committees submit that the prejudgment attachment efforts of the U.S Embassy bombing plaintiffs are invalid as a matter of law, for several reasons.  First, as the United States has indicated, any efforts to attach the blocked DAB assets must be based on TRIA, and the Second Circuit has directly held that TRIA does not permit prejudgment attachment of blocked assets.  *Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York,* 346 F.3d 264, 270-271 (2d Cir. 2003).  Second, the assets at issue are blocked, and it is not possible for the Taliban to move them out of the jurisdiction, the supposed basis for the new competing claims.  Third, the U.S Embassy bombing plaintiffs are only now initiating claims against the Taliban, 23 years after the attacks giving rise to their injuries, and no basis exists to assume for purposes of a prejudgment attachment request that a defendant (not yet served) will waive a statute of limitations defense.[2]

Even so, these recent efforts of claimants from outside of the MDL underscore the potential complications and burden on the Court arising from dueling proceedings absent prompt action here, as well as the severe prejudice plaintiffs seeking judgment against the Taliban in this MDL could suffer – absent entry of judgment as proposed and then service of an additional writ of attachment to protect their interests in the unsecured portion of the blocked assets.  The plaintiffs from outside of this MDL have procedural mechanisms in place that could, in theory,

_____

[2] For these reasons, and because the writ of attachment issued on a prejudgment basis, moving Plaintiffs believe the *Owens'* plaintiffs will not be able to establish their position until they secure a final judgment, which will require them to serve the Taliban and go through required procedures to obtain a default judgment, which they and others will no doubt race to do.  However, the issues and complexities raised by their eleventh-hour gambit will fall away once an additional writ of attachment is served based on the requested judgment in favor of the *Federal Insurance* Plaintiffs.

**Supp. A-23**

Honorable Sarah Netburn
March 22, 2022
Page 5

_____

permit them to swiftly obtain judgments, even though they are only now initiating their claims. The requested final judgment in favor of the *Federal Insurance* Plaintiffs is thus urgently needed to fend off these collateral attacks.[3]

4.      The Potential That the *Ashton* Plaintiffs May Wish to Press Their Equity Arguments Should Not Delay Entry of the Requested Judgment

Finally, the structure that the moving Plaintiffs have negotiated contemplates and allows for the participation of the Plaintiffs in the *Ashton* case, on the same basis as the *Burnett*, *O'Neill*, *Hoglan*, and *Grazioso* Plaintiffs.  We have urged the *Ashton* Plaintiffs to join in the agreement and this letter application, and believe that it would be in their best interest to do so.  They have not yet determined whether to choose that path, but that provides no reason for the Court to further delay entry of judgment in favor of the *Federal Insurance* Plaintiffs against the Taliban. Any such delay would imperil the asset pool, risk deeply complicating these proceedings and resolution of this issue, and deeply prejudice all of the other 9/11 plaintiffs who have compromised to reach the omnibus agreement as the most just and expeditious means of seeking to perfect their interests as to the blocked Taliban funds.

Further, we understand the *Ashton* Plaintiffs primarily may be considering pursuing their theory that CPLR § 5240 provides equitable authority for the Court to disregard the priority rules in favor of a pro-rata distribution of the funds.[4]  Entry of the *Federal Insurance* final judgment and service of the additional writ of execution would in no way prevent them from making those arguments, and would instead merely ensure that the currently unsecured portion of the funds are not seized by other creditors from outside this MDL or pulled into protracted disputes by them while the Court considers any arguments the *Ashton* Plaintiffs may choose to present.

Respectfully submitted,

COZEN O'CONNOR

SEAN P. CARTER

---

[3] The continuing, unsecured status of a significant portion of the funds is incentivizing these efforts, and thereby complicating matters and consuming scarce judicial resources.  Entry of the *Federal Insurance* judgment and service of an additional writ of execution would remove this incentive.

[4] The Court's potential need to address this discrete argument does not eliminate the efficiencies that will flow from moving Plaintiffs' proposal, given the alignment of all other stakeholders.  The Court could still turn its focus to the core TRIA issues, and then decide the *Ashton* Plaintiffs' discrete (and, in our view, readily resolved) equity argument, free of the complexities of other competing proposals as to how the Court should proceed and arguments on priority.

**Supp. A-24**

Honorable Sarah Netburn
March 22, 2022
Page 6

_____

cc:     The Honorable George B. Daniels (via ECF)
        All MDL Counsel of Record (via ECF

LEGAL\57069685\1



140 Broadway, 46th Floor
New York, NY 10005

MICHEL F. BAUMEISTER
mbaumeister@baumeisterlaw.com

212-363-1200
866-363-1200
212-363-1346 Fax
www.baumeisterlaw.com

March 30, 2022

***VIA ELECTRONIC CASE FILING***

The Honorable Sarah Netburn
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, New York 10007

   Re: *In Re: Terrorist Attacks on September 11, 2001*
     03 MDL 1570 (GBD)(SN)

Dear Magistrate Judge Netburn:

   I write in response to the letter filed last night by Mr. Carter on behalf of the *Federal Insurance Burnett* and *O'Neill* plaintiffs.   In his letter, Mr. Carter pushes the Court again to enter a judgment on behalf of the *Federal Insurance* plaintiffs in order to purportedly set up this lawyers' "deal".   He misses the point that as far as communication is concerned, counsel for those plaintiffs who have created their own "deal" still, as I write this letter, have not communicated the specifics of this "deal" beyond their own group.

   We respectfully ask that Mr. Carter set forth, in writing, what the law firms in this "deal" will receive from the $3.5 billion, how much each of their clients will receive, whether all of their clients have agreed to participate in this arrangement, how much money they say the 9/11 family members who are not part of this deal will receive, and the legal authority under which these lawyers have the right to make a determination as to the equitable distribution of this limited pool of money.   These are but a few of the questions being raised by all concerned 9/11 families.

   Apparently, the rumors are rampant amongst the families.   A few of these include that Mr. Carter's judgment will give his property damage insurance companies $500 million dollars that should otherwise be used to compensate the 9/11 wrongful death families, and another is that 47 families of the *Havlish* plaintiffs group will receive tens of millions of dollars each while the remaining thousands of plaintiffs will receive nothing or a mere fraction of that amount as decided by these lawyers.   Mr. Carter needs to set forth the specifics of the "deal" he and his fellow counsel have agreed to in writing to this Court and the members of the 9/11 family community.

1

**Supp. A-26**

It is clear from President Biden's Executive Order and the White House's accompanying Fact Sheet[1] that it is the intent of the Administration that $3.5 billion dollars would be held subject to "ongoing litigation by U.S. victims of terrorism".   The White House emphasized its concern as to the victims' rights with its statement that "**[p]laintiffs will have a full opportunity to have their claims heard in court**" (emphasis added).   The lawyers' agreement attempts to circumvent plaintiffs' rights to a full exposition of their claims, and ignores the need for a fair and equitable distribution of the blocked assets.

The lawyers' "deal" entered into by the *Federal Insurance, Burnett* and *O'Neill* plaintiffs is an impossible situation for both this court and all of the lawyers representing the 9/11 families.   It is being created simply because a few lawyers want to enter into a "deal" for their own purposes when it is, in fact, neither a legal or ethical agreement because it does not fairly and equitably provide compensation to each of 9/11 victims and their families.   The only way equity can even be attempted would be through the appointment of an independent Special Master or Masters to fairly and objectively evaluate and distribute this limited pool of money as has been done in other pieces of complex mass litigations, or through the deposit of the money allocated for the claims of terror victims into the USVSST Fund or a similar vehicle.

Our clients, and many, many more of the 9/11 victims' families oppose any agreement that is not the result of an independent evaluation and distribution conducted by an unbiased third party or the establishment of an administrative vehicle through which each surviving family member is treated equitably.

Respectfully submitted,


Michel F. Baumeister

cc:   Honorable George B. Daniels (via ECF)
      All MDL Counsel of Record (via ECF)

---

[1]Exec. Order No.14064, 87 Fed. Reg. 8391 (Feb. 11, 2022); *see also* https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/11/fact-sheet-executive-order-to-preserve-certain-afghanistan-central-bank-assets-for-the-people-of-afghanistan/.

# SHER TREMONTE LLP

April 25, 2022

<u>**BY ECF**</u>

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:**     ***In re Terrorist Attacks on September 11, 2001,*** Case No. 03-md-1570
         (GBD)(SN)
         ***In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve***
         ***Bank of New York in the Name of Da Afghanistan Bank***, Case No. 22-cv-03228
         (GBD)

Dear Judge Daniels:

We write on behalf of the Wodensheks ("Class Plaintiffs") concerning the Court's April 21, 2022 Order (the "Order") to (1) address the propriety of Class Plaintiffs' filing of their April 20, 2022 limited fund Rule 23(b)(1)(B) Class Action Complaint (the "Class Complaint" or "Class Action") and their seeking to relate the Class Action to the *Owens* action, and (2) respectfully request that the Court clarify certain aspects of the Order during tomorrow's conference.

***The Class Action***

Class Plaintiffs' sole goal in filing the Class Action was to ensure that a single court has jurisdiction over the entire $3.5 billion in Da Afghanistan Bank funds (the "DAB Assets") and to establish a clear mechanism for that court to provide for an equitable distribution of the funds to all victims of Taliban terrorism. Class Plaintiffs requested a temporary restraining order and a preliminary injunction to protect the DAB Assets from dissipation prior to adjudication of the Class Complaint. To understand why a limited fund class action is necessary, and to explain why Class Plaintiffs sought to relate the Class Action to the *Owens* action, we provide a brief summary of the DAB Assets' recent but complex history.

On February 11, 2022, President Biden issued an extraordinary Executive Order unexpectedly announcing that the availability of $3.5 billion of the DAB Assets to satisfy terrorism claims should be adjudicated by the courts. Shortly thereafter, the *Havlish* Plaintiffs moved to lift the stays on judicial enforcement of the execution of their and the *Doe* Plaintiffs' August 2021 writs of execution. Five days later, on February 16, the Court accepted *Does 1 through 7 v. The Taliban* as related to the MDL, notwithstanding that the underlying claims do not arise out of the 9/11 Attacks. The Court explained it did so

**Supp. A-28**

because the *Doe* Plaintiffs possess a compensatory damages judgment against the Taliban.[1] That same day, "157 U.S. Government employees killed or injured in the August 7, 1998, Al Qaeda bombings of the U.S. Embassies in Nairobi, Kenya and Dar-es-Salaam, Tanzania, their family members, and the personal representatives of their estates" (the "*Amduso* Intervenors") moved to intervene in the 9/11 MDL and the *Doe* action "for the purpose of defending an interest in" the DAB Assets (the "Amduso Motion").[2]

On February 22, 2022, Magistrate Judge Netburn presided over a hearing at which counsel for the United States and the *Havlish, Doe, Ashton, O'Neill*, and *Federal Insurance* Plaintiffs, among others, apprised the court of their respective positions on lifting the stays.[3] Counsel for the *Ashton* Plaintiffs urged the Court to exercise its equitable powers to ensure fair treatment of all 9/11 MDL plaintiffs.[4] Judge Netburn, however, expressed skepticism even as to the *Ashton* Plaintiffs' standing[5] "to challenge the procedural mechanism by which the *Havlish* and *Doe* [P]laintiffs seek to proceed on their execution"[6] because the *Ashton* Plaintiffs (and others) did not yet have liquidated damages judgments.[7] Judge Netburn also suggested that she was likely bound to apply New York's standard priority rules—though their application would result in grossly inequitable treatment amongst 9/11 families.[8] Later that day, the Court issued an Opinion and Order denying the Amduso Motion,[9] reasoning that because the *Amduso* Intervenors had neither a judgment against the Taliban nor an attachment of the DAB Assets, "they ha[d] no interest in [the 9/11 MDL]."[10]

Shortly thereafter, on March 8, 2022, plaintiffs in the *Owens* action—individuals allegedly injured or killed in the same U.S. Embassy bombings of which the *Amduso* Intervenors were victims—filed a complaint seeking to extend compensatory damages claims they previously obtained against others to the Taliban, along with an emergency

---

[1] *Does 1 through 7 v. The Taliban*, 20-mc-740 (S.D.N.Y. Feb. 16, 2022), ECF 54.

[2] *In re Terrorist Attacks on September 11, 2001*, 03-md-1570 (S.D.N.Y. Feb. 16, 2022), ECF 7676-2.

[3] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr.

[4] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 27:9-10.

[5] And, by extension, the standing of any 9/11 MDL plaintiffs with pending motions for confirmation of damages awards.

[6] *Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 24:20-23; 25:17-26:2.

[7] The first *Ashton* motion for such damages on behalf of 580 estates and survivors of 9/11 victims in the same amounts as previously awarded to them against co-defendant Iran have been pending before this Court since December 20, 2021.*In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Dec. 20, 2021), ECF 7489 *et seq.*

[8] *See Ashton v. Al Qaeda Islamic Army et al.*, 02-cv-6977 (S.D.N.Y.), Feb. 22, 2022 Hr'g Tr. at 27:17-28:5.

[9] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Feb. 22, 2022), ECF 7696; *Doe*, 20-mc-740 (S.D.N.Y. Feb. 22, 2022), ECF 60.

[10] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Feb. 22, 2022), ECF 7696; *Doe*, 20-mc-740 (S.D.N.Y. Feb. 22, 2022), ECF 60.

motion seeking prejudgment attachment against the DAB Assets.[11] That action was assigned to Judge Caproni the following day.

Anticipating complications all but certain to arise with judgment enforcement proceedings against the DAB Assets occurring contemporaneously in two different courts, the Wrongful Death and Commercial Claims PECs—including counsel for Class Plaintiffs—filed a letter motion in the MDL and *Owens* action requesting a stay of the *Owens* Plaintiffs' attachment motion and for *Owens*'s acceptance by the MDL "for consolidated judgment enforcement proceedings against the Taliban" so that such proceedings could "continue in a coordinated fashion."[12] Judge Netburn denied the PECs' request the following day, distinguishing the MDL's acceptance of the *Doe* action from its rejection of the *Owens* action on the grounds that, although the *Owens* Plaintiffs had moved for an order of attachment against the same DAB Assets subject to then-stayed writs of execution possessed by the *Doe* and *Havlish* Plaintiffs, the *Owens* Plaintiffs had neither a judgment against the Taliban nor an attachment order, so the *Owens* action was too "legally and factually distinct" for there to be "efficiencies . . . gained through their consolidation."[13]

Such distinctions became irrelevant, however, when Judge Caproni granted the *Owens* Plaintiffs' motion for prejudgment attachment as to approximately $1.3 billion of the $3.5 billion in DAB Assets.[14] In a subsequent Opinion and Order strictly applying New York rules, Judge Caproni reasoned that the only question was "whether [the *Owens*] Plaintiffs have proven a need to secure" those DAB Assets not already subject to the *Doe* and *Havlish* Plaintiffs' writs.[15] Judge Caproni acknowledged that "establishing priority over other creditors is clearly a motivating factor behind Plaintiffs' motion," referring to the *Doe* and *Havlish* Plaintiffs, but concluded that because the statutory grounds for prejudgment attachment are met, the court was compelled to grant the relief.[16] A day prior, on March 20, 2022, the *Havlish* and *Doe* Plaintiffs moved for partial turnover of the DAB Assets in the combined amount of approximately $2.22 billion.[17]

Accordingly, since March 21, 2022, if strict priority rules are applied, the DAB Assets have been spoken for in their entirety. And, notwithstanding the PECs' and others' efforts to bring the *Doe*, *Havlish*, and *Owens* Plaintiffs together into a single proceeding, judgment enforcement efforts as to the DAB Assets continue across both the 9/11 MDL

---

[11] *Owens v. Taliban*, 22-cv-1949 (S.D.N.Y. Mar. 8, 2022), ECF 1, 4-6; *id.* (Mar. 9, 2022), ECF 7 (refiled complaint).

[12] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 14, 2022), ECF 7751.

[13] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 15, 2022), ECF 7754. Judge Netburn's decision was also strongly informed by interbranch comity concerns and the need to unencumber certain DAB assets subject to attachment in the MDL and *Doe* actions, issues not implicated by the *Owens* action. *Id.* at 2-3.

[14] *Owens*, 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), ECF 33.

[15] *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 11, 2022), ECF 38 at 11-12.

[16] *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 11, 2022), ECF 38 at 12 (emphasis added).

[17] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Mar. 20, 2022), ECF 7763–71.

**Supp. A-30**

and *Owens* action. Further, in the course of these proceedings, both this Court and the *Owens* court suggested that they are bound by ordinary New York priority rules. Consequently, Class Plaintiffs reasonably believe that a limited fund class action, which gives a single court jurisdiction over all DAB Assets and requires their equitable distribution, is the proper, and indeed, necessary, mechanism for ensuring fair treatment of all victims of Taliban terrorism—not just in this MDL but in the *Owens* action too.[18] State priority rules did not contemplate and have no application to the extraordinary situation here. Victims of mass terror attacks suffering common losses (the deaths of their loved ones) and holding common liability judgments should not be denied their right to a fair share of a limited fund (should the DAB Assets be available to satisfy judgments against the Taliban) based on the sequence in which damages judgments are issued by an MDL court.[19]

As for relating the Class Action to *Owens* rather than the MDL, the *Owens* court recently imposed a judicial restraint on approximately one-third of the DAB Assets. Class Plaintiffs certainly do not intend to undermine either court's jurisdiction; rather, Class Plaintiffs simply seek to have all issues related to the limited DAB Assets adjudicated by a single court. Further, Class Plaintiffs were entirely transparent and immediately alerted both courts to the Class Action's filing.[20]

### *Request for Clarification*

Lastly, Class Plaintiffs respectfully request that during tomorrow's conference, the Court clarify the following issues related to the Order:

1. The Order denies Plaintiffs' request for a temporary restraining order, but does not specifically address the request for a preliminary injunction. Is it the Court's intent that the Order also deny Plaintiffs' request for a preliminary injunction pursuant to the All Writs Act?

2. The Order states, "Any claims arising out of the MDL, and arguably related to the distribution of the DAB assets, shall be heard in the pending turnover proceedings within the context of the MDL." Is it the intent of the Court that the Order summarily dismisses the Class Complaint?

3. How does the Court propose to use the turnover proceedings (rather than the Class Action) to adjudicate all claims related to the distribution of the

---

[18] Class Plaintiffs' equity concerns are not limited to the MDL. It would be profoundly inequitable should the *Owens* Plaintiffs receive $1.3 billion of the DAB Assets while thousands of terror victims with claims against the Taliban who are not members of the *Havlish* and *Doe* Plaintiffs are all but certain to recover either very little or nothing from the DAB Assets.

[19] If strict priority rules apply, the Court has already determined which party is next in line by granting *Federal Insurance* Plaintiffs' motion for partial final default judgment against the Taliban. *See In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Apr. 6, 2022), ECF 7833.

[20] *In re Terrorist Attacks*, 03-md-1570 (S.D.N.Y. Apr. 20, 2022), ECF 7892 (attaching Complaint); *Owens*, 22-cv-1949 (S.D.N.Y. Apr. 20, 2022), ECF 39 (same).

**Supp. A-31**

DAB Assets given that *Owens* is not part of the MDL and given that more than one-third of the DAB Assets are subject to attachment by the *Owens* court?

Respectfully submitted,

| KREINDLER LLP | SHER TREMONTE LLP |
|---|---|
| */s/ Megan Benett* | */s/ Theresa Trzaskoma* |
| Megan Benett | Theresa Trzaskoma |

cc:    Judge Valerie E. Caproni (by ECF in *Owens*)

**Supp. A-32**

# SHER TREMONTE LLP

August 12, 2022

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> **Re:** ***In re Terrorist Attacks on September 11, 2001***, Case No. 03-md-1570
> (GBD)(SN)

Dear Judge Daniels and Judge Netburn:

We write on behalf of our clients, the *Ashton* Plaintiffs, to advise the Court of supplemental authority relevant to the turnover motions of the *Havlish* and *Doe* Plaintiffs, which the *Federal Insurance* Plaintiffs joined, and the *Smith* Plaintiffs (the "MDL Turnover Motions"). ECF Nos. 7763-71 *(Havlish.* and *Doe* motions), 7936-38 (*Federal Insurance* motion); *Smith v. The Islamic Emirate of Afghanistan*, 01-cv-10132 (S.D.N.Y.), ECF Nos. 62-5 (*Smith* motion).[1] Yesterday, the Second Circuit unsealed and posted on its public website a previously decided opinion, *Levinson v. Kuwait Finance House (Malaysia) Berhad*, No. 21-2043 (2d Cir. July 21, 2022). A copy of the redacted slip opinion is attached hereto as Exhibit A.

In *Levinson*, the plaintiffs obtained a default judgment under the Foreign Sovereign Immunities Act (FSIA) against the Islamic Republic of Iran. Under the Terrorism Risk Insurance Act (TRIA), which provides an exception to the FSIA, plaintiffs sought to satisfy that judgment using attachment or execution of "blocked assets" of Iran or any of Iran's "agenc[ies] or instrumentalit[ies]." TRIA § 201(a). Specifically, the *Levinson* plaintiffs (i) moved the district court pursuant to New York's CPLR for turnover of assets belonging to Kuwait Finance House (KFH) Malaysia on the basis that KFH was an "agency or instrumentality" of Iran for purposes of TRIA, and (ii) moved *ex parte* for a writ of execution on KFH's assets. *Levinson*, slip op. at 3. The district court granted the writ of execution without first determining whether TRIA's requirements had been met, including

---

[1] Subsequent to the May 18, 2022 filing of the *Smith* turnover motion, this Court accepted the *Smith* action as related in a June 10, 2022 order. ECF No. 8086.

whether KFH Malaysia was in fact an "agency or instrumentality" of Iran, and whether the assets were blocked. *Id.* at 5, 9.

The Second Circuit held that the district court's grant of a writ of execution prior to making any findings about "KFH Malaysia's connections to Iran" was "legal error." *Id.* at 12. TRIA, the Circuit concluded, requires that prior to seizing assets through a writ of execution, "a plaintiff must first establish [a] defendant's status as an agency or instrumentality." *Id.* "Put another way, before ordering assets to be seized under TRIA, a district court must make findings as to whether TRIA indeed permits those assets to be seized." *Id.* at 13 (citing *Levin v. Bank of N.Y.*, No. 09-CV-5900, 2011 WL 812032, at *13 (S.D.N.Y. Mar. 4, 2011)). Because "these procedures were not followed," the district court should not have granted a writ of execution because there had "been no showing that KFH Malaysia is in possession of property 'in which the judgment debtor [Iran] has an interest.'" *Id.* (quoting CPLR § 5225(b)).

*Levinson*'s relevance to the MDL Turnover Motions is plain. Each of the *Havlish*, *Doe*, *Federal Insurance*, and *Smith* Plaintiffs sought and obtained writs of execution against assets held in the name of Da Afghanistan Bank (DAB, the DAB Assets) at the Federal Reserve Bank of New York without a prior finding by this Court that TRIA's requirements were satisfied.[2] Indeed, the prerequisites for the grant of a writ still have not been met as the MDL Turnover Motions specifically seek findings under TRIA § 201(a) that DAB is an "agency or instrumentality" of the Taliban and that the assets are blocked. *See*, *e.g.*, ECF No. 7661, at 27 ("The question remaining for this Court is therefore whether the unlicensed DAB Assets are 'blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party).'"); Apr. 26 Hr'g Tr. 4:21-5:1 (Daniels, *J.*: "In the turnover proceeding, we intend to resolve certain specific issues. . . . [O]ne, we're going to first resolve whether or not these subject funds are available to satisfy judgments against the Taliban. That's the first question to be resolved."), attached hereto as Exhibit B.

Thus, under the Second Circuit's newly released and binding precedent, each writ of execution against the DAB Assets is invalid. And because there is currently no valid writ of execution against the DAB Assets, there is no basis for any of the turnover movants to claim an entitlement to or priority over those Assets. Accordingly, the Court must deny the MDL Turnover Motions, even putting aside the other arguments the *Ashton* Plaintiffs

---

[2] The *Havlish* and *Doe* Plaintiffs obtained their writs of execution on August 27, 2021, and September 27, 2021, respectively, long before President Biden's Executive Order 14064 blocked the DAB Assets on February 11, 2022.

set forth in their Memorandum of Law in Opposition to the *Havlish* and *Doe* Creditors' Motions for Partial Turnover. ECF No. 7894.[3]

Respectfully submitted,

| KREINDLER LLP | SHER TREMONTE LLP |
|---|---|
| */s/ Megan Benett* | */s/ Theresa Trzaskoma* |
| Megan Benett | Theresa Trzaskoma |

---

[3] The *Ashton* Plaintiffs, respectfully, reiterate that the Rule 23(b)(1)(B) limited fund class action filed by the *Wodenshek* Plaintiffs offers best procedural mechanism for avoiding the gamesmanship attendant to the ongoing race for priority in this Court and bringing about an equitable distribution of the DAB Assets. *See In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank*, Case No. 22-cv-03228 (GBD) (currently on appeal before the Second Circuit, Case No. 22-965).

# EXHIBIT A

**Supp. A-36**

1  21-2043
2  *Christine Levinson et al. v. Kuwait Finance House (Malaysia) Berhad*

3

4  𝕴𝖓 𝖙𝖍𝖊

5  𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

6  𝕱𝖔𝖗 𝖙𝖍𝖊 𝕾𝖊𝖈𝖔𝖓𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

7  _____

8

9  August Term, 2021

10

11  No. 21-2043

12

13  CHRISTINE LEVINSON, INDIVIDUALLY AND AS CONSERVATOR OF THE
14  ESTATE AND PROPERTY OF ROBERT LEVINSON, SUSAN LEVINSON
15  BOOTHE, STEPHANIE LEVINSON CURRY, SARAH LEVINSON MORIARTY,
16  SAMANTHA LEVINSON, DANIEL LEVINSON, DAVID LEVINSON,
17  DOUGLAS LEVINSON,

18

19  *Plaintiffs-Appellees,*

20

21  v.

22

23  KUWAIT FINANCE HOUSE (MALAYSIA) BERHAD,

24

25  *Defendant-Intervenor-Appellant.*[*]

26

27

28  _____

29

30  Appeal from the United States District Court
31  for the Southern District of New York.
32  No. 21-4795

_____

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

1

1       Loretta A. Preska, District Judge, Presiding.

2      (Argued March 29, 2022; Decided July 21, 2022)

3

4  Before:  PARKER, PARK, and ROBINSON, *Circuit Judges*.

5

6 Appeal from an order of the United States District Court for the Southern

7 District of New York (Preska, *J*.) granting Appellees' motion for a writ of

8 execution against the assets of Appellant. We **VACATE** the order and

9 **REMAND** for proceedings consistent with this opinion.

10     ————————————————

11

12         DANIEL W. LEVY, McKool Smith P.C.,

13         New York, NY, *for Plaintiffs-Appellees*.

14

15         CHARLOTTE H. TAYLOR (Noel J.

16         Francisco, Steven T. Cottreau, Jones

17         Day, Washington, D.C.; Fahad A.

18         Habib, Jones Day, San Francisco, CA;

19         Andrew J. Pincus, Charles A.

20         Rothfeld, Mayer Brown LLP,

21         Washington, D.C.; Mark G. Hanchet,

22         Christopher J. Houpt, Cleland B.

23         Welton II, Robert W. Hamburg,

24         Mayer Brown LLP, New York, NY,

25         *on the brief*), Jones Day, Washington,

26         D.C., *for Defendant-Intervenor-*

27         *Appellant*.

28     ————————————————

29 BARRINGTON D. PARKER, *Circuit Judge*:

30 Under the Foreign Sovereign Immunities Act of 1976 (FSIA), foreign states

31 and their agencies and instrumentalities are immune from suit in the United

32 States, and their property is immune from attachment and execution. *See* 28 U.S.C.

2

**Supp. A-38**

1    §§ 1604, 1609. These immunities, however, contain exceptions. One exception

2    allows parties to sue foreign state sponsors of terrorism for damages for claims

3    arising out of acts of terrorism. *See* 28 U.S.C. § 1605A(a). Another exception, the

4    Terrorism Risk Insurance Act of 2002 (TRIA), allows parties to satisfy FSIA

5    judgments using attachment or execution against certain property—"blocked

6    assets"—of the foreign state and of any of its "agenc[ies] or instrumentalit[ies]."

7    *See* TRIA § 201(a).

8        The Levinsons hold an FSIA judgment against the Islamic Republic of Iran.

9    Based on that judgment, the Levinsons moved for a writ of execution against the

10    assets of Kuwait Finance House (KFH) Malaysia in the Southern District of New

11    York. The District Court granted the writ before making any findings as to whether

12    KFH Malaysia is an "agency or instrumentality" of Iran or whether the assets at

13    issue are "blocked." The primary issue in this appeal is whether TRIA permits

14    those assets to be executed upon prior to such findings. Our answer is no.

## BACKGROUND

16        The Levinsons are family members of Robert Levinson, a United States

17    citizen who in early 2007 was captured by an unidentified terrorist organization.

18    The Levinsons sued Iran under the FSIA in the United States District Court for the

3

1    District of Columbia, alleging that, among other things, Iranian security forces

2    arrested and for years tortured Levinson, who is now presumed dead.[1] Iran failed

3    to appear in the action, and the District Court entered a $1.5 billion default

4    judgment.

5        Seeking to enforce their judgment, the Levinsons commenced a turnover

6    proceeding in the Southern District of New York against Citibank, N.A., under

7    New York CPLR Sections 5225 and 5227[2]. The sealed complaint alleged that KFH

8    Malaysia—a foreign retail and commercial bank—is an "agency or

9    instrumentality" of Iran whose assets, including those located in its New York

10    Citibank account, are subject to forfeiture under TRIA. The complaint also alleged

11    that KFH Malaysia and related entities "are acting as agen[cies] or

12    instrumentalities, on behalf, and at the direction, of" the National Iranian Oil

13    Company (NIOC).

---

[1] The Federal Bureau of Investigation (FBI) investigated the disappearance and "concluded that Iran had attempted to create a false narrative that Robert Levinson was being held captive by an unnamed terrorist organization as part of an effort by Iran to avoid responsibility for Robert Levinson's being taken hostage and his torture." Joint App'x at 5.

[2] The statutes are entitled "Payment or delivery of property of judgment debtor" and "Payment of debts owed to judgment debtor," respectively.

4

1      About the same time the Levinsons filed the sealed complaint, they also

2   moved *ex parte* for a writ of execution against the assets contained in KFH

3   Malaysia's Citibank account. The motion contended that those assets were funds

4   held on behalf of an identified shell company used by NIOC. In support of their

▮   allegations, the Levinsons submitted the ████████████████████████

▮   ████████████████████████████████.[3] ████████████████████

▮   ████████████████████████████████████████████████████

▮   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████. The

10   Levinsons also provided a declaration from a banking expert with experience in

▮   matters relating to sanctions and terrorist financing who ████████████████

12   ██████████████████████████████████████████.

13      On June 14, 2021, the District Court granted the motion for a writ of

14   execution, directing the U.S. Marshal to "levy and collect" the assets held in KFH

15   Malaysia's Citibank account in the sum of $1.457 billion. The next day, the U.S.

16   Marshals Service served the writ on Citibank. Three days later, Citibank informed

17   KFH Malaysia that it had frozen the Citibank account. As a result, to this day, KFH

---

[3] The Levinsons have, ██████████████████████████ to the District Court.

1   Malaysia has no control over the funds in that account and alleges that it must turn

2   away customers who seek to make transactions in United States Dollars. Citibank

3   continues to hold these assets.

4        The next month, KFH Malaysia submitted an emergency order to show

5   cause, seeking to intervene as of right, to vacate the writ of execution, and to file

6   counterclaims against the Levinsons. Among other things, KFH Malaysia

7   submitted a declaration, supported by documents and account records, that

█   undermined the veracity of the Levinsons' allegations, ████████████████████

9   ████████████████████████████████ .

10       On July 27, 2021, the District Court heard argument on these motions. There,

11   the Levinsons contended that even without the disputed transactions, they had

12   provided sufficient evidence for the court to conclude that KFH Malaysia was an

█   "agency or instrumentality" of Iran. ████████████████████████████

14   ████████████████████████████████ , setting out the

15   relationship between the Appellant, its related entities, and Iran.  In response, KFH

16   Malaysia disputed that relationship, and contended that the Levinsons were not

17   entitled to the writ because, among other reasons, the Levinsons "don't have a

18   finding, a judicial ruling that [Appellant] is an agency or instrumentality."

1    At the hearing's conclusion, the court orally granted KFH Malaysia's motion

2    to intervene but denied its motion to vacate the writ of execution as "premature in

3    that there are disputed issues of fact." The court did not make any findings as to

4    KFH Malaysia's purported status as an "agency or instrumentality" of Iran and

5    held KFH Malaysia's proposed counterclaims in abeyance. Finally, the court

6    directed the parties to confer on a discovery plan.

7    This appeal followed. KFH Malaysia challenges both the District Court's

8    June 14th order issuing the writ of execution and its July 27th order[4] denying the

9    motion to vacate the writ. The District Court granted a motion by KFH Malaysia

10    to stay the writ and the District Court proceedings, conditioning the stay on KFH

11    Malaysia's posting a bond equivalent to the amount in the Citibank account.

12    **DISCUSSION**

13    We review a district court's grant of a writ of execution for abuse of

14    discretion. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d

15    Cir. 2018). A district court abuses its discretion when its decision rests on an error

16    of law. *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168-69 (2d Cir. 2001).

---

[4] However, because we vacate the writ, this portion of the appeal is moot, and we do not consider it.

7

**Supp. A-43**

1              **I**

2       As an initial matter, the Levinsons have moved to dismiss this appeal for

3  lack of appellate jurisdiction. We deny that motion.[5]

4       The courts of appeals have "jurisdiction of appeals from all final decisions

5  of the district courts of the United States." 28 U.S.C. § 1291. Whether a district

6  court's order is appealable under Section 1291 "ordinarily 'depends on the

7  existence of a decision by the District Court that ends the litigation on the merits

8  and leaves nothing for the court to do but execute the judgment.'" *In re Roman*

9  *Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (quoting *Coopers*

10  *& Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). Finality requires "'that there be some

11  manifestation' by the district court that it intends the decision to be its 'final act in

12  the case.'" *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006)

13  (quoting *Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 407 (2d Cir. 1962)).

14       The Levinsons contend that we lack jurisdiction to hear this appeal because

15  the District Court's June 14th order granting the writ of execution is not "final"

16  within the meaning of 28 U.S.C. § 1291. They argue principally that the District

---

[5] KFH Malaysia has filed a petition for a writ of mandamus in the event that we hold that we lack jurisdiction on direct appeal. *See In re: Kuwait Finance House*, Docket No. 21-2412. Because we do not so hold, we deny that petition.

**Supp. A-44**

1   Court did not manifest an intent that its order be final, as evidenced by its

2   subsequent ruling that the parties would conduct discovery to resolve the factual

3   question whether Appellant is as an "agency or instrumentality." We disagree.

4        The District Court's order granting the writ "commands" the U.S. Marshal

5   of the Southern District of New York to "levy and collect" Appellant's funds from

6   its Citibank account. Such a command is typically what happens at the end of a

7   lawsuit. If the parties litigate a case involving damages to conclusion, the

8   prevailing party obtains a judgment authorizing law enforcement to seize assets

9   from the losing party and turn them over to the prevailing party. *See* Fed. R. Civ.

10   P. 69 ("A money judgment is enforced by a writ of execution, . . . ."); *accord Smith*

11   *v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 269 (2d Cir. 2003). That is what occurred

12   here—except there was no verdict, no findings, and no judgment against the party

13   whose assets were seized by the government. Under these circumstances, a court's

14   later observations about a need for discovery do not establish a lack of finality.

15        This conclusion finds support in caselaw from this Circuit and others. In

16   *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009), the

17   Republic of Argentina appealed from a district court's order of execution over

18   certain of its funds under FSIA. We held that we had jurisdiction. *See id.* at 123-24.

9

1  Likewise, in *Hewlett-Packard Company v. Quanta Storage, Inc.*, 961 F.3d 731, 741–42

2  (5th Cir. 2020), the court held that "orders . . . requiring defendants to transfer

3  property to plaintiffs . . . dispose of claims to that property. And these types of

4  orders have long been treated as final and appealable." *See also* 15A FED. PRAC. &

5  PROC. JURIS. § 3910 ("Appeals continue to be permitted from orders that direct

6  immediate execution of judgment or delivery of property to an opposing party . .

7  . ."). We see no reason to depart from these holdings. Accordingly, we conclude

8  that we have jurisdiction.

9                                                    **II**

10      We next turn to the District Court's order granting the writ of execution.

11  KFH Malaysia contends that the Levinsons failed to meet their burden to establish

12  their entitlement to the writ and the District Court therefore committed legal error

13  in granting it. We agree.

14                                                    **A**

15      The FSIA provides that foreign states, as well as their agencies and

16  instrumentalities, enjoy absolute immunity from suit and from the attachment and

17  execution of their assets, and these immunities fall away only under "certain

18  express exceptions." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018). One

1   such exception allows parties to bring suits against foreign states based on acts of

2   terrorism. 28 U.S.C. § 1605A(a). Another such exception, TRIA, allows FSIA

3   judgment holders to enforce their judgments using attachment or execution, and

4   provides that:

5        Notwithstanding any other provision of law . . . in every case in which a
6        person has obtained a judgment against a terrorist party on a claim based
7        upon an act of terrorism . . . the blocked assets of that terrorist party
8        (including the blocked assets of any agency or instrumentality of that
9        terrorist party) shall be subject to execution or attachment in aid of execution
10       in order to satisfy such judgment to the extent of any compensatory
11       damages for which such terrorist party has been adjudged liable.

12

13  TRIA § 201(a), Pub. L. No. 107-297, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note.

14  TRIA itself, however, provides no procedures for enforcement. In seeking

15  attachment or execution, therefore, a judgment holder must follow the procedures

16  of state law and, to the extent it applies, federal law. *See* Fed. R. Civ. P. 64, 69.

17      As noted, the Levinsons obtained a default judgment against Iran under an

18  FSIA exception in the District of Columbia. Next, they sought to enforce that

19  judgment in the Southern District of New York under TRIA by executing on the

20  assets of KFH Malaysia. In so doing, they took two steps. First, they moved to

21  commence a turnover proceeding pursuant to CPLR § 5225(b). That section

11

1  provides for the enforcement of money judgments through property not in the

2  hands of the judgment debtor:

> 3  Upon a special proceeding commenced by the judgment creditor, against a
> 4  person in possession or custody of money or other personal property in
> 5  which the judgment debtor has an interest, or against a person who is a
> 6  transferee of money or other personal property from the judgment debtor,
> 7  where it is shown that the judgment debtor is entitled to the possession of
> 8  such property or that the judgment creditor's rights to the property are
> 9  superior to those of the transferee, the court shall require such person to pay
> 10  the money, or so much of it as is sufficient to satisfy the judgment, to the
> 11  judgment creditor and, if the amount to be so paid is insufficient to satisfy
> 12  the judgment, to deliver any other personal property, or so much of it as is
> 13  of sufficient value to satisfy the judgment, to a designated sheriff. Costs of
> 14  the proceeding shall not be awarded against a person who did not dispute
> 15  the judgment debtor's interest or right to possession. Notice of the
> 16  proceeding shall also be served upon the judgment debtor in the same
> 17  manner as a summons or by registered or certified mail, return receipt
> 18  requested. The court may permit the judgment debtor to intervene in the
> 19  proceeding. The court may permit any adverse claimant to intervene in the
> 20  proceeding and may determine his rights in accordance with section 5239.

21
22  *Id*. Second, the Levinsons moved *ex parte* for a writ of execution. Prior to the

23  conclusion of the turnover proceeding, the District Court granted that motion—

24  before KFH Malaysia had received any notice, and without making any findings

25  about KFH Malaysia's connections to Iran.

26  That was legal error. To be entitled to attachment or execution under TRIA,

27  a plaintiff must first establish defendant's status as an agency or instrumentality.

28  *See, e.g.*, *In re 650 Fifth Ave. & Related Props.*, 2021 WL 1963803, at *6 (S.D.N.Y. May

1   17, 2021); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006). Put another

2   way, before ordering assets to be seized under TRIA, a district court must make

3   findings as to whether TRIA indeed permits those assets to be seized. *See Levin v.*

4   *Bank of N.Y.*, No. 09-CV-5900, 2011 WL 812032, at *13 (S.D.N.Y. Mar. 4, 2011) ("In

5   order to determine whether a turnover order can be issued . . . the Court must first

6   determine whether these assets are subject to attachment."). And those findings

7   must be made, as we have noted, in compliance with state law enforcement

8   procedures.

9          Here, these procedures were not followed. Article 52 permits parties to

10  commence turnover proceedings to enforce money judgments. *See* CPLR § 5225(b).

11  Below, that turnover proceeding commenced, but the District Court granted the

12  relief sought in that proceeding—a writ of execution—before it considered the

13  antecedent issue of whether KFH Malaysia is an agency or instrumentality of Iran

14  or whether the assets at issue are "blocked." Without such findings, there has been

15  no showing that KFH Malaysia is in possession of property "in which the

16  judgment debtor [Iran] has an interest." *Id.* Accordingly, the Levinsons failed to

17  meet the statutory requirements under CPLR § 5225(b) and, consequently, they

18  failed to establish that they were entitled to a writ of execution. *See Mohammad*

**Supp. A-49**

1   *Ladjevardian, Liana Corp. v. Republic of Argentina*, 663 F. App'x 77, 78 (2d Cir. 2016)

2   (noting that "the district court correctly denied appellants' motion for a writ of

3   execution and turnover order because the Republic does not have an interest in

4   the . . . funds").

5          In the District Court, the Levinsons argued that they were moving for the

6   writ of execution to prevent the "dissipation of the . . . [a]ssets." Joint App'x at 39.

7   In other words, the Levinsons contend that their objective was to ensure that KFH

8   Malaysia could not withdraw the funds in question before they could be seized.

9   On appeal, KFH Malaysia contends that the Levinsons could have achieved the

10  same result by moving for attachment under CPLR Article 62, rather than for a

11  writ execution. The Levinsons, on the other hand, contend that the "[e]nforcement

12  of money judgments is simply *not* governed by CPLR Article 62."[6] Appellees' Br.

13  at 39.

---

[6] We note that the TRIA on its face applies only to "blocked assets"—which the statute defines as "asset[s] seized or frozen by the United States under" one of two statutes. TRIA § 201(d)(2)(A). Under that definition, therefore, "blocked assets" are presumably those which a defendant has no power to dissipate. However, based on the Supreme Court's reasoning in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), we held in *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107 (2d Cir. 2016), that—regardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is "blocked" within the meaning of TRIA, *see id.* at 137-41.

14

**Supp. A-50**

1    TRIA states that blocked assets "*shall* be subject to execution or *attachment* in

2    aid of execution." § 201(a) (emphasis added). The Levinsons were therefore,

3    consistent with state law, entitled to pursue pre-execution attachment procedures

4    if they chose to do so. Under New York law, which governs attachment

5    proceedings here, *see* Fed. R. Civ. P. 64, "an order of attachment may be granted in

6    any action . . . when . . . the cause of action is based on a judgment, decree or order

7    of a court of the United States." CPLR § 6201(5). Of course, the Levinsons possessed

8    just such an order—a money judgment against Iran. Accordingly, state law

9    permitted them to pursue attachment procedures to, as the Levinsons have put it,

10   "prevent the dissipation of" KFH Malaysia's assets. Joint App'x at 39. Thus,

11   attachment is a possible remedy, among other interim remedies, available to the

12   Levinsons, provided that they meet the applicable requirements.[7]

13                                    **CONCLUSION**

14    For these reasons, we deny the Levinsons' motion to dismiss the appeal,

15   deny KFH Malaysia's petition for a writ of mandamus, vacate the order granting

---

[7] Based on the record before us, we express no opinion as to whether the Levinsons are
entitled to an order of attachment.

15

**Supp. A-51**

1    the writ of execution, and remand to the District Court for proceedings consistent

2    with this opinion.

# EXHIBIT B

M4qWashC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re Approximately $3.5 Billion
    of Assets on Deposit at the Federal        22 Civ. 3228 (GBD)(SN)
4   Reserve Bank of New York in the
    Name of Da Afghanistan Bank
5
                                               Conference
6   ------------------------------x
                                               New York, N.Y.
7                                              April 26, 2022
                                               11:00 a.m.
8
    Before:
9
                        HON. GEORGE B. DANIELS,
10
                                               District Judge
11                              -and-

12                      HON. SARAH NETBURN,

13                                             U.S. Magistrate Judge

14

15

16                      APPEARANCES

17

18  KREINDLER & KREINDLER LLP
         Attorneys for Ashton and Wodenshek Plaintiffs
19  BY:  JAMES P. KREINDLER
         MEGAN WOLFE BENETT
20       ANDREW J. MALONEY III
         STEVEN R. POUNIAN
21       JAMES G. SIMPSON
         -and-
22  SHER TREMONTE LLP
    BY: THERESA TRZASKOMA
23

24

25

M4qWashC

```
 1                    APPEARANCES (cont'd)

 2    BAUMEISTER & SAMUELS P.C.
           Attorneys for Bauer Plaintiffs
 3    BY:  MICHEL F. BAUMEISTER
           DOROTHEA M. CAPONE
 4
      MOTLEY RICE, LLP
 5         Attorneys for Burnett Plaintiffs
      BY:  ROBERT T. HAEFELE
 6         WILLIAM H. NARWOLD

 7    JOHN F. SCHUTTY
           Attorney for Dickey Plaintiffs
 8
      COZEN O'CONNOR
 9         Attorneys for Federal Insurance Plaintiffs
      BY:  SEAN P. CARTER
10
      JENNER & BLOCK LLP
11         Attorneys for Havlish Plaintiff
      BY:  LEE WOLOSKY
12         DOUGLASS A. MITCHELL
           -and-
13    WIGGINS, CHILDS, PANTAZIS FISHER & GOLDFARB LLC
      BY:  DENNIS G. PANTAZIS
14         -and-
      FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
15    BY:  ROBERT M. FOOTE
           -and-
16    RAMEY & HAILEY
      BY:  RICHARD D. HAILEY
17
      MELLON & WEBSTER, P.C.
18         Attorneys for Hoglan Plaintiffs
      BY:  JAMES McCOY
19
      ANDERSON KILL P.C.
20         Attorneys for O'Neill Plaintiffs
      BY:  JERRY S. GOLDMAN
21         BRUCE E. STRONG

22    DO CAMPO & THORNTON, P.A.
           Attorneys for Judgment Creditors
23         John Does 1 through 7
      BY:  JOHN THORNTON
24

25
```

**Supp. A-55**

M4qWashC

1          (Case called)

2          JUDGE DANIELS:  All right.

3          Ladies and gentlemen, first, the purpose of this

4   proceeding is so that everyone can get a clear understanding,

5   from your perspective and from our perspective, of how we're

6   proceeding with regard to these funds.  My intent is to resolve

7   whatever issues need to be resolved in the current turnover

8   proceedings.  Anyone who believes they have any interest, who

9   are a part of the MDL or not part of the MDL, in these funds,

10  if they're not already here in this proceeding, should seek to

11  intervene, because this is where we're going to decide this

12  issue.

13         I've spoken with Judge Caproni.  We are in agreement

14  that we will be moving forward, and it is not likely that any

15  other proceeding will interfere or address the issues that we

16  intend to address in the turnover proceedings prior to our

17  moving forward.

18         We have a schedule.  The most recent letters asked

19  about adjusting the schedule.  I'll let Judge Netburn address

20  those issues, but I want to make something really clear.  There

21  is no other proceeding that anyone in this room can initiate

22  that will be appropriate to address the issues that we're going

23  to address in the turnover proceeding.

24         I'll be more direct about this.  The filing that was

25  made before Judge Caproni of a separate complaint by plaintiffs

**Supp. A-56**

M4qWashC

```
 1   who are already plaintiffs within another case in which they're

 2   seeking to obtain funds in support of judgments here is wholly

 3   inappropriate.  We can address that further, but I do not

 4   intend to spend any more of the Court's time or the lawyers'

 5   time addressing those issues.  As far as I'm concerned, that

 6   case will not interfere.

 7           I will give the lawyers in that case an opportunity to

 8   consider immediately whether they wish to, within the next 24

 9   hours, move to dismiss that case without prejudice.  If that is

10   not done, if that's not a decision that is made by the lawyers

11   in that case, then I will act independently on that case and

12   dismiss that case on its merits.  I'll give you 24 hours to

13   decide what to do.  It is inappropriate to file a duplicative

14   case that seeks to enforce the same rights based on the same

15   set of facts and to enforce a judgment in a litigation in which

16   the parties have been engaged for years.  It is clearly not

17   appropriate for a class action, a putative class action.

18           The fact is that's one of the reasons why we're all

19   here in an MDL, because presumptively, this is not appropriate

20   for a class action.  These are individual claims, and I do not

21   intend to prejudice any party.  In the turnover proceeding, we

22   intend to resolve certain specific issues.  And I can tell

23   you -- I have my notes here -- one, we're going to first

24   resolve whether or not these subject funds are available to

25   satisfy judgments against the Taliban.  That's the first
```

M4qWashC

 1  question to be resolved.

 2          Second, which plaintiffs may recover and obtain money

 3  from those funds if those funds are, in fact, legally available

 4  to satisfy judgments?

 5          And then discuss and determine what is an equitable

 6  distribution of those funds given the number of plaintiffs that

 7  are outstanding.

 8          I can tell you right now my inclination is not that an

 9  equitable distribution is first come first served.  My

10  understanding is it will be resolved one of three ways.  If the

11  plaintiffs cannot agree, this Court will independently

12  determine whether these funds are available and what is the

13  appropriate distribution of those funds.

14          If there is a suggestion by the parties, that the

15  parties agree upon -- and my understanding is that pretty much

16  everyone has agreed to some form of distribution, other than

17  the Ashton plaintiffs -- and again, my reaction to the filing

18  of a separate case before another judge to try to obtain those

19  funds is inappropriate not only because there's a case already

20  pending here -- and that's filed to be related to a case that

21  isn't even part of the MDL and isn't even a 9/11 case -- but

22  also, as a class, the relief that the parties sought in that

23  case advantages no one but themselves.  So to say that there is

24  somehow a reasonable representative plaintiff for all the other

25  plaintiffs, quite frankly, from what I've read, I don't know

M4qWashC

 1   any other plaintiff in this room who agrees with it.

 2          This was what I consider to be a totally inappropriate

 3   attempt to simply advantage one set of plaintiffs.  There's no

 4   legal basis to do so.  There's no legal basis to file a

 5   separate complaint, given there's already litigation here, and

 6   there's no legal basis to attempt to make that into a class

 7   action to represent a class of plaintiffs.  We have

 8   approximately 10,000 plaintiffs here, and I see no advantage to

 9   any of the particularly 9,000 of these plaintiffs who already

10   have judgments or are in the process of obtaining judgments.

11          Now, I've spoken with Judge Caproni.  We all know what

12   the status is of the case that's before her.

13          One, it is not a 9/11 case.

14          Two, the plaintiffs don't have a judgment.

15          Three, the plaintiffs haven't even served in that

16   case.

17          So that case is not likely to advance in any way that

18   would interfere with the schedule that we anticipate in

19   efficiently and effectively moving forward with to resolve the

20   turnover proceeding.

21          Judge Caproni and I have been in contact, and we're

22   going to keep in contact with an understanding that if some

23   action needs to be taken in that case that might influence

24   what's going on here, we will discuss it before it happens.

25   But it is not likely that even in a general scenario -- there's

M4qWashC

```
1    no need for any further orders to prevent that from happening.

2    That case not only is not ripe for this determination of the

3    issues that the second case was attempting to join, there are

4    even questions about whether or not that in and of itself is a

5    viable case.

6              So everybody should understand that we will be

7    proceeding as we intended to proceed.  We will decide those

8    issues in this litigation.  I do not anticipate that it will be

9    decided anywhere else, and I am going to indicate right now

10   that no further filings of new complaints in any other court

11   that address the claims raised in this case and before this

12   Court are to be filed without leave of this Court.  All right?

13             I want to make that clear to everybody.  Most of the

14   concerns that the parties have raised in their letters and in

15   their actions are concerns that both Magistrate Judge Netburn

16   and I have already discussed, have already factored in, have

17   already considered, and we intend to move forward in order to

18   make a determination as to if and how these funds are to be

19   distributed.

20             As I say, my intent is to concentrate, to the extent

21   possible, on what would be an equitable distribution of those

22   funds if those funds are available.  It is not, as I say, first

23   come first served.  If the parties have a suggestion, which is

24   unanimous or which is the majority of the parties, the vast

25   majority, we are willing to consider that.
```

**Supp. A-60**

M4qWashC

```
 1            I don't want to go too far ahead of myself, but I'm

 2   even willing to consider, if it's appropriate, appointing a

 3   special master to help the parties agree on a proposal that we

 4   can consider and determine whether or not it's a reasonable

 5   distribution of those funds if those funds are legally

 6   appropriate to disburse to the plaintiffs in this case.

 7            So I want to make it real clear there should be no

 8   more strategic filings in order to advantage any particular

 9   plaintiff.  Quite frankly, if I have to make an equitable

10   determination about who gets what, one of the things I may end

11   up factoring in is which parties have been obstructionist with

12   regard to the process and whether or not they should be treated

13   on the same footing with the other plaintiffs.

14            Let me be blunt about it.  The lawyers here are not

15   crabs in a barrel.  All right?  You're all plaintiffs with the

16   same type of claim and similar interests, but the determination

17   of who is to recover, how much is to be recovered, and where

18   that recovery should come from are individual decisions, for

19   the most part, that have to be made.  And we are in the

20   process.  We would be probably a good 25 hours ahead of where

21   we are today if we didn't have to deal with this kind of issue

22   in this case and we could continue to concentrate on moving

23   along with the determination of damage awards and final

24   judgments for the parties.

25            That's my initial statement.
```

M4qWashC

1              If someone wants to be heard, if you have any

2      questions about that, let me hear it now, because this isn't

3      rocket science that we're dealing with.  We're moving forward

4      efficiently, and to the extent that you have a concern that

5      your interests are not being adequately considered, you can let

6      me know.

7              Yes, Ms. Benett.

8              MS. BENETT:  Megan Benett on behalf of the Ashton

9      plaintiffs and the Wodenshek plaintiffs.

10             First, I'd like to thank the Court for having us

11     appear in person for this conference and for stating your

12     concerns as to equitable treatment and not sort of having this

13     as a first-come-first-served process.

14             I do want to be clear we are the people who filed the

15     class complaint.  I understand the Court's frustration.  I hear

16     what the Court is saying about that.  I want to clarify a

17     couple of points.

18             First of all, the Ashton plaintiffs are not a small

19     minority.  We represent 800-some families, 25 percent of the

20     victims killed in the 9/11 attacks.  The reason that you see

21     that we haven't joined into what has been described as the

22     framework agreement is that because it is our understanding

23     that that framework agreement would put the families of the

24     Havlish plaintiffs in a position of receiving somewhere north

25     of 80 percent of their judgments, the value of their judgments;

1      the insurance companies receiving less than 20 percent of the

2      value of their judgments; and the rest of the 2,900-some

3      families receiving something on the order of 1 or maybe 2

4      percent of the value of their judgments.

5              JUDGE DANIELS:  Well, since it has not been laid out

6      for me or Judge Netburn exactly what that agreement entails, I

7      have not factored any of that in a determination at this point

8      as to whether these funds are available for recovery and how

9      these funds should be distributed.

10             MS. BENETT:  I understand, and that obviously, both in

11     this case and the Owens case, is the major threshold question.

12     And when we had the initial conference in February, I think we

13     had expected that the order, the decision-making would take

14     those dispositive threshold questions first and then the

15     thornier distribution questions as sort of a second-order

16     problem.  It appeared to us, based on the schedule in the

17     turnover proceedings, that there was going to be a

18     determination regarding distribution perhaps simultaneous with

19     the question of whether those assets would be available at all.

20             To be clear, the 23(b)(1)(B) complaint would not

21     advantage the Ashton plaintiffs over anybody else.  In fact,

22     the class definition was defined specifically in a way to

23     include everybody who has a claim against those assets and

24     would allow for transparent -- because to the Court's comment

25     about the terms of this framework agreement, we haven't been

M4qWashC

1    presented with a formal term sheet at all either.  So my

2    description to the Court is driven, in part, by the fact that

3    this is somewhat opaque and that the 23(b)(1)(B) class

4    complaint seemed to us the most transparent, equitable and

5    judicially overseen vehicle to consider the distribution,

6    should the Court get to the distribution stage.

7          It also, and I understand that the Court -- I

8    understand the hostility to the vehicle, but it did, to our

9    mind, also provide the Court with a way to take jurisdiction

10   over the entirety of those $3.5 billion in assets.  And I hear

11   the Court's representation regarding the Owens case.  The fact

12   is that the April 11 decision from Judge Caproni granted an

13   order of attachment and stated that the Owens plaintiffs would

14   have priority.

15         It may well be that that is not ultimately the case,

16   but given that posture, I think we were not unreasonable to be

17   concerned that there was an ongoing race to the bank.  The

18   23(b)(1)(B) complaint is not unusual as a sort of settlement

19   vehicle.  It is specifically designed when there is a limited

20   fund.  It is not a question about determination of liability on

21   an individual basis, but it's basically an equitable vehicle

22   that is similar to a bankruptcy proceeding or reverse

23   interpleader.  And so the point about filing was simply to

24   provide a vehicle that would treat all of the victims of

25   Taliban-sponsored terrorism in the fairest, most equitable and

**Supp. A-64**

M4qWashC

```
 1    most transparent basis.

 2          It was not meant to advantage one family.  It was not

 3    meant to advantage one law firm.  To the contrary; we have

 4    consistently, throughout this process, been voicing our

 5    concerns about any distribution proceeding that would treat one

 6    family who suffered similar, if not identical, losses

 7    differently from another family who suffered those same losses.

 8          I believe that everybody, all of the 9/11 families

 9    feel that way.  I know that in statements to the press, that

10    the lawyers for the Havlish group and Ms. Havlish herself

11    stated that they care about fair treatment here.  The

12    23(b)(1)(B) limited class fund, to our mind, given the

13    competing claims in the Owens case -- and to be clear, the

14    Owens plaintiffs would also be able to participate in a limited

15    class fund.  This was not meant to exclude the non-9/11

16    community.  It was meant to be as welcoming as possible to

17    everybody who can establish that they have liability claims

18    against the Taliban and that they've suffered injuries

19    proximately caused by the Taliban's support of mass terrorist

20    attacks.

21          I don't know if the Court wants to hear anything more

22    about that.

23          JUDGE DANIELS:  No, I don't, because I understand your

24    position and I understand what you attempted to do, but I think

25    it's totally inappropriate in this case.
```

**Supp. A-65**

M4qWashC

```
 1              I'll just give you one example.  There's absolutely no
 2      reason why that complaint should have been filed before Judge
 3      Caproni rather than filed here, and I don't know that there's
 4      any party here who is going to say that your filing that,
 5      particularly as a class action, somehow advantaged them.  It
 6      was an attempt to advantage you and disadvantage everyone else.
 7      As I say, unless the parties want to spend some more time
 8      briefing it and litigating it, I have determined that it is
 9      inappropriate and it is appropriate for dismissal.  It does not
10      add anything to this litigation, and it does not address any
11      issues that are not being addressed in this litigation.  That
12      should settle the issue.
13              I will give you 24 hours to decide whether or not you
14      want to move to dismiss this case, without prejudice, and if
15      you make such an application within the next 24 hours, I will
16      grant that application.  If you do not make such an
17      application, I will move forward to dismiss the case on its
18      merits, because it has no utility.  It has absolutely no
19      utility.
20              Now, if it was motivated out of fear, I understand
21      that; that's what you're basically saying to me.  But I can
22      assure you that the process we have in place, the
23      communications that are almost daily at this point that
24      Magistrate Judge Netburn and I have on this issue and the
25      communications that I am now having directly with Judge
```

**Supp. A-66**

M4qWashC

```
 1    Caproni, having the same conversations we're having here about
 2    what's going on over there and what's going on over here and
 3    whether or not cases belong over here and whether or not
 4    anybody can pick and choose and judge shop where they want to
 5    file their next claim, that clearly is to be resolved in this
 6    MDL litigation.
 7              So the fact is you should let me know whether you want
 8    to step aside and focus on the turnover proceeding.  If the
 9    Owens plaintiffs want to come in and they think they've got an
10    interest and they want to participate in the turnover
11    proceeding, they can.  But we intend to move forward and
12    resolve this issues expeditiously, step by step, giving
13    everyone an opportunity to be heard.  There's no reason to
14    believe that there's any concern that these issues are going to
15    be resolved somewhere else before they're resolved here.
16              You made your calculation that this was the way that
17    you wanted to proceed, by filing a separate lawsuit related to
18    Owens.  But I want to make clear to you and to everybody else
19    who might want to consider doing the same thing, it's not going
20    to happen.  What you will do is not put yourself at the front
21    of the line; you will end up putting yourself at the back of
22    the line by taking those kind of actions.
23              You know we have a forum to resolve these issues.
24    That is the only forum that exists to resolve these issues
25    currently.  If that changes, then we can address it.  But I
```

**Supp. A-67**

M4qWashC

```
 1   don't anticipate it's going to change, and I don't anticipate

 2   that Judge Caproni is going to take any action in that infant

 3   case to interfere with a determination that all of you are

 4   going to have an opportunity to participate in and will be

 5   resolved here and resolved with the availability and the

 6   distribution of those funds, if those funds are available to

 7   distribute to the parties.

 8           I don't want to spend a whole lot more time on this,

 9   unless you want to spend a lot more of your time on this.

10           MS. BENETT:  No.  I just want to correct a couple of

11   things.

12           First of all, to be clear, the class complaint -- and

13   I hear the Court on that, but I want to make clear it would not

14   have advantaged the Ashton plaintiffs.  We would not have been

15   driving the process the way the Havlish attorneys suggested in

16   their filing yesterday.  It would have been a judicially

17   overseen process.

18           JUDGE DANIELS:  Well, who would it have advantaged

19   then?

20           MS. BENETT:  All of the families who are victims.

21           JUDGE DANIELS:  Why?  They're perfectly satisfied to

22   have this issue resolved in a turnover proceeding.

23           MS. BENETT:  No, no.  That's not true.  It's not all

24   of the 9/11 families who are perfectly happy to have it

25   satisfied in the turnover proceeding, and it's and it's not all
```

**Supp. A-68**

M4qWashC

1    of the victims of Taliban-sponsored terrorism.

2        JUDGE DANIELS:  Who else are you referring to other

3    than yourself?

4        MS. BENETT:  All of the embassy bombing victims, and

5    to be clear --

6        JUDGE DANIELS:  Who else are you referring to, other

7    than your client?

8        MS. BENETT:  The 25 percent of the 9/11 families that

9    we represent.

10        JUDGE DANIELS:  I'm sorry.  I have not received any

11    communication from any other lawyers saying that they are in

12    agreement with what you did.

13        MS. BENETT:  They aren't.  They made a different,

14    tactical decision.  They wanted to enter into an agreement to

15    hedge their bets and guarantee some modest economic recovery

16    for their clients at a grossly disproportionate value vis-à-vis

17    the insurance companies and the families of a smaller number of

18    victims.  That was a different decision.

19        We made a decision to file this because we thought it

20    wasn't right to disadvantage 2,900 --

21        JUDGE DANIELS:  It should have been filed here.

22    That's my first point.  It should have been filed here.  You

23    don't get to file it in Wyoming.

24        MS. BENETT:  I hear you.

25        JUDGE DANIELS:  We're in the middle of an MDL that's

M4qWashC

```
1    been going on for years and involves thousands, as you say, of

2    plaintiffs who have a similar interest in these funds.  That is

3    not the appropriate way to proceed.  It's not even the

4    efficient way to proceed.  It's the inefficient way to proceed,

5    given the fact we are engaged in turnover proceedings.

6             MS. BENETT:  I hear you on that point, and I know the

7    Court recognizes this, but I do want to just state on the

8    record we filed with -- in connection with marking it related

9    to Owens for one reason, which is that that was the only case

10   that had a judicial restraint on the funds.  It's an *in rem*

11   proceeding against $3.5 billion.  We sent a copy.  As the Court

12   knows, we sent a copy of our filings.  We filed them the same

13   time in the MDL, and I recognize that this was not how the

14   Court would have --

15            JUDGE DANIELS:  Well, look --

16            MS. BENETT:  But we did not try to hide it.  We

17   provided and we trusted --

18            JUDGE DANIELS:  If you don't want to participate here

19   and you want to go sit over there, maybe I'll consider that.

20   But you know that's not what you want to do.

21            MS. BENETT:  We want all of the claims to the $3.5

22   billion to be consolidated in front of a single court.

23            JUDGE DANIELS:  And that's this Court.

24            MS. BENETT:  And that's fine.

25            JUDGE DANIELS:  There's no reason to believe that
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**Supp. A-70**

M4qWashC

1    that's supposed to be Judge Caproni.

2             MS. BENETT:  But we only believed that because Judge

3    Caproni had issued the April 11 order restraining the assets

4    and because in connection with the previous effort to have the

5    Owens case brought into the MDL, both courts rejected that.  So

6    we gave both courts the complaint.  Certainly, in retrospect, I

7    wish that we had marked it as related to both.  I'm not sure if

8    that's even an option on the form, now that I'm thinking about

9    it.

10            JUDGE DANIELS:  No, it's not.  It would have been an

11   inappropriate option.

12            MS. BENETT:  We gave both courts, we intended to give

13   both courts notice and trust the courts to decide which venue

14   was proper.  But the point was always that the 3.5 billion

15   should be adjudicated by a single court, including all those

16   threshold questions that are going to be dispositive of whether

17   this money is available to satisfy any judgments in the first

18   place.

19            So the filing of the class complaint was meant to, A,

20   have all the adjudications regarding those assets from a single

21   court; and two, as I said, and I -- you know, I hear the

22   Court's response to this.  But it was truly because we were

23   concerned about a process that was going to so grossly

24   disproportionately treat 9/11 family members in a way that

25   our -- and I speak to our clients all the time.  I know the

**Supp. A-71**

M4qWashC

```
1    same is true even for clients represented by firms that reached

2    a different decision, that the distribution as proposed in the,

3    initially in the turnover proceedings was so deeply troubling

4    to our family members that we did not believe that we could

5    participate in the framework agreement that would have put, you

6    know, treated one person's life as worth 2 percent of the

7    others'.

8              JUDGE DANIELS:  As I usually say, that was a hallway

9    debate that you had with the others.  That was not an issue

10   that this Court raised.  That is not an issue that this Court

11   adopted.  This Court isn't even aware of what the agreement is.

12   The appropriate place to resolve those issues and understand

13   how we were ultimately going to proceed is in this forum, in

14   this courtroom.

15             MS. BENETT:  And I think that that's -- and to the

16   extent that we can do so with judicial oversight and in a

17   transparent manner, that will provide real comfort to the

18   family members.  Before the Court's order on Thursday, we had

19   intended to file something noting that we were -- you know,

20   given that the framework agreement had been discussed in papers

21   but without terms, we did intend, before our attention turned

22   to the hearing this morning, to ask the Court to perhaps

23   explore what the terms of that framework agreement looked like,

24   because like I said, our position has been all along that every

25   single family member, all 2,977 families, should be treated
```

**Supp. A-72**

M4qWashC

```
 1    fairly and equitably; that the agreement, as we understood it,

 2    would not only fail to do so but would fail to do so in a very

 3    dramatic fashion; that the 23(b)(1)(B) class complaint was a

 4    vehicle that could take into consideration certain concerns

 5    that parties have raised previously of those who have not

 6    participated in the USVSST fund, which has made, to be clear,

 7    very modest payments to some of the 9/11 family members, that

 8    their decision not to participate in that fund could be taken

 9    into consideration when fashioning any distribution should the

10    assets be available through the class complaint -- through the

11    limited class fund, rather.

12              JUDGE DANIELS:  And you all have the opportunity to

13    raise those issues before this Court.

14              JUDGE NETBURN:  Right.  I think the thing that's most

15    frustrating here is you could say a lot about this MDL, but you

16    could not say that we haven't given everybody an opportunity to

17    be heard.  We allow everybody to speak up.  We want every

18    family to participate, and filing this class action before

19    Judge Caproni feels like an end run around that process.  And

20    that feels inappropriate.  I understand that you represent a

21    quarter of the families, but the vehicle that you chose to do

22    this feels completely like you're trying to slot out everybody

23    else when you have never been denied an opportunity to be

24    heard.

25              I think there's lots of questions about your class
```

**Supp. A-73**

M4qWashC

```
 1    complaint, as evidenced by this conference, as to whether or
 2    not you would be adequate counsel, given the opposition so many
 3    people have; whether or not your claims are typical; whether or
 4    not you can prove that class is a superior method over the MDL.
 5    All of those things are very serious questions in my mind and
 6    point to a not-well-thought-out choice.  And as a result, we
 7    have all spent, as Judge Daniels said, dozens and dozens of
 8    hours focusing on this charade instead of focusing on the real
 9    issue.
10            So if you want to be heard on what you think is an
11    appropriate distribution, should the Court determine that those
12    funds are available, you will have that opportunity to be
13    heard.  But going about it this way leaves a very off taste in
14    our mouths, and it doesn't feel like it's being done in the
15    interest of the class.  It feels like it's being done in the
16    interest of your clients because your clients feel like they're
17    not going to get what you think is appropriate.  And I'd like
18    to hear about this, but not through this vehicle.
19            MS. BENETT:  Understood.
20            Just to be clear, Judge, at the February 22
21    conference, there was the sua sponte questions about how
22    anybody without a liquidated damages judgment would have
23    standing to participate in a turnover proceeding as a sort of
24    the threshold matter, and it was at that point that we became
25    concerned.  And I hear what the Court is saying about the time
```

**Supp. A-74**

M4qWashC

```
 1    and effort spent thinking about an equitable process here.  And

 2    again, it's obviously very reassuring to the family members;

 3    I'm sure all of them, not just those we represent.  But we did

 4    have concerns that there would be -- we didn't know how it was

 5    going to unfold.

 6              The class complaint was -- and I, again, hear the

 7    Court.  I can say it was not meant to be an end run at all.  To

 8    the contrary, and it's not meant to be outside of the MDL.  It

 9    is a limited class fund that could be available for purposes of

10    resolving claims to the DAB assets within the MDL.  It's not --

11    there are no sort of -- there are no liability questions.  I

12    mean depending on how -- and again, the way the class was

13    crafted was meant to be as fair and reasonable as possible

14    given the nature of the claims already asserted by various

15    parties against the Taliban and against the DAB assets.

16              I don't know that it's worth answering the Court's

17    questions or addressing the Courts' complaints.  I will say

18    it's certainly not meant to be a charade.  It was meant to be a

19    vehicle that would -- you know, we thought that the Court might

20    welcome as a method for this distribution, given also what the

21    Court said at the February 22 conference about being sort of

22    bound by New York State priority rules and the same -- Judge

23    Caproni echoing the same at the March conference of the Owens

24    hearing.

25              And the fact is that the Rule 23(b)(1)(B) limited
```

 1    class fund would actually take jurisdiction over all of the

 2    assets and would provide a way for the Court to not have to

 3    worry about the built-in inequity of the priority rules in a

 4    case like this, where you have a mass terror attack or several

 5    terrorist attacks with sort of predetermined damages, judgments

 6    issued against the co-joint tortfeasor, would allow the Court a

 7    means by which to address this equitably without having to be

 8    concerned with the New York State priority rules, which I think

 9    it's fair to say certainly didn't contemplate this particular

10    situation but also don't seem to have fair application in an

11    MDL, where the use of those priority rules would sort of force

12    the Court into the position of choosing, you know, one person,

13    one identically situated person over another.

14            I don't know if it's --

15            JUDGE DANIELS:  Those are tough choices, but this

16    Court is prepared to make those choices.  OK?  And it's not up

17    to you to make those choices, to reframe it to your advantage.

18    Those issues will have to be addressed.  We will address every

19    one of those issues after giving everyone a full opportunity to

20    give their input.  Neither you nor any individual lawyer in

21    this room has the ability or the right to define that for this

22    Court or for the rest of these plaintiffs.

23            All of these plaintiffs have the same interest that

24    you have in making sure that their clients get as much

25    satisfaction of their outstanding damages as you do.  That's to

 1   be decided in the same room at the same time for all of the

 2   plaintiffs, not to be decided in a separate courtroom, in a

 3   separate litigation, while we're trying to figure out what

 4   you're doing across the hall.

 5        MS. BENETT:  I hear you, and I know I've said this

 6   already.  I just want to be clear.  The proposal that we put

 7   forward -- first of all, this Court could oversee a limited

 8   fund.

 9        JUDGE DANIELS:  You didn't bring it to this Court.

10   You didn't give us any indication --

11        MS. BENETT:  I understand.

12        JUDGE DANIELS:  -- that that was the case.  You gave

13   us the opposite indication.

14        MS. BENETT:  My point is that this Court, of course,

15   could take jurisdiction over that if it chose to, but I just

16   want to clarify that it would not advantage the family members

17   we represent over somebody else.  To the contrary, it is

18   currently the only, the only vehicle, procedural vehicle we see

19   that would not do that.

20        JUDGE DANIELS:  Thank you.

21        MS. BENETT:  I'm sorry.  I just wanted to clarify that

22   the proposed limited class fund would not, in fact,

23   advantage -- well, that's not -- it would advantage -- it would

24   be more advantageous to the 2,930 non-Havlish family members

25   than strict application of New York priority rules, but it

M4qWashC

1  would not be more advantageous to the family members we

2  represent vis-à-vis all of the other family members of those

3  killed and injured in Taliban-sponsored terrorist attacks.

4      I understand, and I've heard both of the judges

5  express your displeasure and believe that this was

6  gamesmanship.  I want to be clear.  We filed this in order to

7  treat every family that was a victim of a Taliban-sponsored

8  terrorist attack on an equal and fair basis, not to advantage

9  our clients, not to advantage certain family members over

10 others and not to advantage us.  In fact, a limited class fund

11 would be overseen by the Court.  It would not be overseen by

12 the lawyers.

13      This was not a question about class counsel fees.

14 This was about making sure there was a vehicle, given what we

15 had heard at the two prior hearings, in the Owens case and this

16 case, about the Court's feeling bound by New York State

17 priority rules and given what the contours of this framework

18 agreement, which I understand neither I nor the Court know the

19 specifics of, but I am fairly confident would not have treated

20 family members on a fair and equitable basis.

21      JUDGE NETBURN:  I think Judge Daniels and I both don't

22 want to get too far along on the merits of this class

23 complaint, but to the extent what I'm hearing is that you think

24 filing a class action would obviate the need or the obligation

25 of the Court to consider New York priority rules, why do you

**Supp. A-78**
M4qWashC

```
 1    think that?  Wouldn't there still be an application of priority
 2    at least within the class complaint, or you think that just
 3    disappears then and there wouldn't be subclasses, for instance?
 4              MS. BENETT:  Do you mind if I -- my cocounsel, Ms.
 5    Trzaskoma, who has more familiarity with this process, can tell
 6    you why.  But there could be an equitable way to treat people
 7    based on, for example, what category you fall into.  But I do
 8    not believe that New York State priority rules would have any
 9    application in the -- that basically the $3.5 billion goes into
10    a judicially supervised equitable trust, and then it is for the
11    Court to decide without application.
12              The only reason New York State priority rules are at
13    issue here is because of Federal Rule of Civil Procedure 69,
14    which says that in the execution of judgments, the Court should
15    look to the law of the state where it's situated.  Under a Rule
16    23(b)(1)(B) limited class complaint posture, however, you're
17    not looking at the execution of judgments.  You're looking at
18    the people who have claims.  However the Court would define the
19    class, you're looking at people who fall into that class who
20    have claims against that fund.  That's why it's an *in rem*
21    proceeding.
22              I think in the letter last night, one of the parties
23    had said they don't even know who the defendants are, but
24    that's because it's an *in rem* proceeding against these assets
25    themselves, and so New York State priority rules don't come
```

**Supp. A-79**

M4qWashC

 1      into play because you're not looking at execution of judgments.

 2              JUDGE DANIELS:  All right.  Did you want to be heard

 3      further on that?

 4              I don't want to spend a lot of time debating

 5      backwards.  I understand your position.  After we have this

 6      discussion, as far as I'm concerned, as I always say, we start

 7      this litigation anew.  I'm not holding this against the parties

 8      at this point, but I expect you to conform your conduct in the

 9      future consistent with the way this MDL is established and the

10      issues that are supposed to be decided in this MDL.  That

11      filing before Judge Caproni is inconsistent with that for a

12      number of reasons that we just discussed.

13              So as long as you understand and everyone else

14      understands -- this is not just for you; it's for anyone else's

15      benefit who thinks, OK, this is a way that I'm supposed to

16      change the issues that are before the Court and have them

17      decided in the way you want them decided.  That is not the way

18      we're going to proceed.  Due warning to everyone is that you

19      will do nothing but disadvantage your clients by this kind of

20      conduct in the future rather than advancing the possibility of

21      an equitable distribution of these funds if these funds are, in

22      fact, available.

23              Yes.

24              MS. TRZASKOMA:  Yes, your Honor.

25              JUDGE NETBURN:  Could you just state your appearance

**Supp. A-80**

M4qWashC

1    for the court reporter.

2              MS. TRZASKOMA:  Yes.  Apologies.

3              Theresa Trzaskoma from Sher Tremonte on behalf of the

4    Ashton plaintiffs and the class plaintiffs.

5              I don't want to tread on ground that Ms. Benett

6    already covered, but I do want to explain what the relief was,

7    is, that we are seeking in the 23(b)(1)(B) class.

8              This is with the reverse interpleader.  It doesn't

9    advantage anyone to be the class plaintiffs.  It is seeking an

10   equitable distribution of all the assets, including those that

11   are subject to the attachment order that Judge Caproni issued

12   in Owens.

13             Prior to our filing of that class action, it

14   appeared -- perhaps we were reading tea leaves, but there were

15   comments on the record in both this MDL and by Judge Caproni

16   that strict priority rules were going to apply, and that is not

17   appropriate in these circumstances.

18             A Rule 23(b)(1)(B) class action cuts through all of

19   that.  It allows the Court to do equity, which is what I hear

20   the Court wants to do.  It allows a single court, currently

21   this MDL Court, to take control and jurisdiction over the $3.5

22   billion and then to determine what is an equitable distribution

23   based on whatever factors all of the individual plaintiffs'

24   lawyers want to make arguments to the Court.  It is not

25   controlled by class plaintiffs.  It is solely in the Court's

M4qWashC

1     discretion.

2              And that's the vehicle we brought to -- I realize we

3     brought it to Judge Caproni, which you've made clear was the

4     wrong court.  But it was not intended to circumvent anything.

5     It was intended to provide a mechanism for, a procedural

6     mechanism for dealing with New York priority rules, which were

7     never intended to meet this extraordinary circumstance.

8              Rule 23 makes the New York priority rules irrelevant.

9     It takes us into an equitable process, where New York priority

10    rules don't even have to be considered.  It preempts New York

11    priority rules.

12             So it can argue the right mechanism for this very

13    extraordinary situation.

14             JUDGE DANIELS:  All right.

15             Before I turn to Magistrate Judge Netburn with regard

16    to -- I know there were some questions and requests about the

17    process and the dates of what things are due -- did anyone else

18    want to be heard before we moved into that?

19             MR. KREINDLER:  Good morning, your Honor.

20             Very quickly -- jim Kreindler -- and I'm not saying

21    anything about the class action or the specifics, but I did

22    want to just make one comment, your Honor, because we have been

23    together wrestling with this case for 15 years.  And even

24    before that, it's a long history, starting with the 1996

25    effective death penalty and Antiterrorism Act that was

**Supp. A-82**

M4qWashC

```
 1    spearheaded by then Senator Biden and Senator Kennedy.  And
 2    from that time on, when it comes to the states who are sponsors
 3    or involved with terror, whether it's Libya or Saudi Arabia or
 4    Iran, speaking personally, I have one principle in mind.  And
 5    that is everyone -- every victim -- should be treated equally.
 6    And as your Honors both know, while it took 20 years,
 7    ultimately, we got $10 million per death for 270 people from
 8    Libya in the Pan Am 103 bombing.  And that's been my approach,
 9    and from the day or two after 9/11, it's something I've
10    expressed to the clients.
11            And your Honor is quite right when you identified the
12    fear we have that this approach, equal treatment for everyone,
13    which has been something important to me for these 25, 30
14    years, might be jeopardized by this, you know, race to file
15    first or obtain writs or judgments first.  And while I know
16    it's taken a lot of time, speaking personally, I'm glad we're
17    together, because at least personally, I feel that this
18    commitment that I think we all share is a common theme, and we
19    can achieve it not just with this fund but when we reach the
20    promised land at the end of the case.
21            So I just wanted to thank your Honors for your time
22    and, at least speaking personally, I am reassured that whatever
23    misconceptions were there we've taken care of, and we're on
24    track to do something good and right.
25            So thank you.
```

M4qWashC

```
1              JUDGE DANIELS:  Thank you, Mr. Kreindler.

2          Does anyone else want to be heard?

3              MR. CARTER:  Your Honor, very briefly.  Sean Carter

4    from Cozen O'Connor, your Honor.

5              There's been a fair amount of discussion today about

6    the framework agreement, and I just want to provide a brief

7    perspective on that for the Court.

8              There are many of us who recognized that there was a

9    pool of funds here that was unprotected and subject to

10   potential attack from parties outside of the MDL.  And at the

11   same time, we recognized the complexity of the issues facing

12   this Court in trying to deal with the turnover issues,

13   including because the procedural posture of claims on behalf of

14   the various plaintiffs, differed wildly, from people who had

15   actual judgments, who had moved for monetary judgments years,

16   ago to people who had only recently filed claims the.

17             Within all of those issues, many of us sought to reach

18   a range of compromises in that achieving a good result --

19   perhaps not a perfect result, but a good result -- would also

20   have streamlined this entire process for the Court.  So when

21   there's conversations here about what equity demands, what is

22   equitable and what's fair, I think part of the consideration

23   for the rest of us was achieving a good result that simplified

24   issues for the MDL Court and allowing the entire case to go

25   forward.
```

1              That's all, your Honor.

2              JUDGE DANIELS:  Yes.

3              MR. BAUMEISTER:  Good morning.  I'll be brief also.

4              JUDGE DANIELS:  Put your appearance on the record.

5              MR. BAUMEISTER:  Mich Baumeister, representing the

6    Bauer plaintiffs.

7              I certainly am responding to Mr. Carter, and while he

8    talks about this was an efficient way, I can tell the Court

9    that my clients -- some of them are listening on the phone

10   today -- were told by other clients that the Havlish plaintiffs

11   would get 1.7 billion, his client would get 500 million.  They

12   were the deal people that would take it, and if you didn't

13   agree to sign on, even though you didn't know what you would

14   get as a client, even though you didn't know if there would be

15   money, especially even Owens, if you didn't do it, at the end

16   of the day you would get zero.

17             Some of my clients have been threatened.  I received a

18   letter threatening me, Do the deal.  It wasn't about

19   efficiency.  It was about lining their pockets and

20   disadvantaging the families.

21             So that's all I wanted to say.

22             JUDGE DANIELS:  Well, the question of what is an

23   equitable distribution, if that question is to be answered,

24   will be answered by this Court.  If all of the plaintiffs have

25   a suggestion or some of the plaintiffs have a suggestion or

M4qWashC

```
 1    some third party has a suggestion for the plaintiffs, the

 2    ultimate decision lies with the Court.  So I urge you to agree,

 3    to the extent that you can agree, on what is, if you can, a

 4    joint position.  If you cannot, those issues, the disputes

 5    between the parties with regard to what is an appropriate

 6    recovery for each plaintiff is an individual decision that has

 7    to be made by this Court.  All right?

 8              Anyone else?

 9              Yes, sir.

10              MR. SCHUTTY:  Thank you, your Honor.  John Schutty.  I

11    represent a subset of the Ashton plaintiffs.

12              Your Honor, I want to thank you for your reassuring

13    words.  I can advise you that my clients have lived in fear

14    since February 22 when the New York State priority rules were

15    emphasized at that conference, and it was a growing fear among

16    the 9/11 families that the Havlish plaintiffs at that time

17    would take the lion's share of the $3-1/2 billion.  So I want

18    to thank your Honor for clarifying that the Court's intent is

19    to make an equitable distribution.

20              As you may know, I filed a letter, a motion requesting

21    permission to contest the judgment that was entered in favor of

22    the Havlish plaintiffs because that judgment was entered in

23    2012 based on common law, and under the common law of the state

24    of New York, for example, many of those plaintiffs would not

25    recover money.  Many of them would not get solatium damages.
```

**Supp. A-86**

M4qWashC

```
1    So I'd like the opportunity to address that issue with the

2    Court.

3              And in addition, I just want to tell your Honor that I

4    think the suggestion that a special master here would help to

5    get together with the plaintiffs' attorneys to ensure an

6    equitable distribution is something that should be thoroughly

7    considered.  Both judges sitting on the bench today worked so

8    hard for us, and this issue seems to be a subset of what's

9    going on overall in the litigation.  So I just would like you

10   to consider fairness and equity and remove some of the fear of

11   some of the family members.

12             Thank you.

13             JUDGE NETBURN:  I'll just note that I've received your

14   letter application.  I haven't acted on it.  We will shortly.

15             Anyone else want to be heard?

16             JUDGE DANIELS:  Ms. Benett.

17             MS. BENETT:  Just briefly.

18             JUDGE NETBURN:  Sure.

19             MS. BENETT:  Sorry.  One final suggestion from us.

20             I heard Judge Daniels on the 24 hours with respect to

21   our pending class complaint.  I'd ask if the Court might let us

22   provide a short letter explanation of how that particular

23   vehicle could work in a proceeding like this, specifically

24   thinking of this now in light of Mr. Schutty's concerns raised

25   in his letter and in his statements, that there is
```

M4qWashC

1          JUDGE DANIELS:  I have no interest in pursuing that

2     option.

3          MS. BENETT:  OK.  I was going to offer the opportunity

4     to explain a little bit of the procedural aspects of it.

5          JUDGE DANIELS:  There's nothing that you can say that

6     would convince me that rather than proceed in this MDL under

7     this turnover order, that the alternative would be that we

8     adopt the complaint that you have filed.

9          MS. BENETT:  I hear you, Judge.  Thank you.

10          JUDGE NETBURN:  All right.  I'm going to turn down the

11     heat a little bit and talk about briefing schedules.

12          I understand that there's an issue related to the

13     various amici that have filed briefs.  I'm going to set a

14     deadline of this Friday, which is April 29, for any other amici

15     who wishes to be heard to file their leave application.  I

16     think at this point we have about five, and we will be generous

17     in allowing appropriate amici to be heard if they wish.

18          So April 29 will be the deadline for any potential

19     other amici, who might be listening in or here in the

20     courtroom, to file any leave application.  And I know that the

21     Havlish creditors had proposed a more extensive briefing

22     schedule.  The Court really wants to move on this, as I imagine

23     everybody else does.  So my proposal is that any opposition

24     that the Havlish and Doe creditors wish to file or a response

25     be set at May 13.

M4qWashC

1              Any objection to that schedule?

2              All right.  Hearing none, the deadline -- we'll issue

3       an order today.  Just to put it out on the record, the deadline

4       for any amici who wish to file an amicus brief will be April

5       29, and anyone who wishes to respond to those amicis, the

6       merits of their briefs, will be due May 13.

7              All right.  Anything further from anyone?

8              JUDGE DANIELS:  All right.  We're working hard.  We

9       encourage your assistance and your input.  It makes a big

10      difference, particularly -- and it's interesting that by the

11      time we read the letters that you've sent us, we've already

12      discussed half the issues that are in your letters, so it gives

13      me some comfort that we're approaching this in the appropriate

14      way and we'll be able to expeditiously make some decisions

15      about this.

16             Obviously, the Court is not in a position to give any

17      plaintiff a guarantee that they will recover these funds or any

18      funds and the extent to which they will recover.  But I

19      guarantee you that our main goal is to make sure that all

20      plaintiffs can recover as much of the available funds as

21      possible in an equitable way.

22             Now, whether or not we face other legal hurdles with

23      regard to priority or with regard to other issues that might

24      affect that, we will confront them and we will address them.

25      But it is our intent, to the extent, consistent with the law as

M4qWashC

1     we can apply it, to make sure that all plaintiffs get some

2     degree of satisfaction.  Obviously, no plaintiff in any case

3     can be made whole.  Nobody can bring back a deceased relative.

4     Nobody can undo the damage that has been done, but we are

5     focused on figuring out, and we continue to focus on figuring

6     out, what actual funds might be available, what actual funds

7     could be distributed, and what is a reasonable and equitable

8     way to distribute those funds.

9          We still seek your guidance on that.  We'll give

10    further consideration as we go through the turnover proceedings

11    as to whether or not we should initiate at this point a

12    process, if the parties agree they would like a special master

13    to look at those issues, but I can guarantee you that we will

14    give you a full opportunity to be heard, as we have given you a

15    full opportunity to be heard, on these issues -- the issues of

16    the availability of funds and the issue of who is entitled to

17    some of those funds and what would be the appropriate way to

18    distribute available funds, not just the funds at issue here

19    but any funds.

20         We know we're setting a framework for any other funds

21    that might be available in the future and the parties will seek

22    a distribution of those funds.  So be assured that any concerns

23    that you have about certain issues, the appropriate way to

24    address them is to bring them to the attention of this Court

25    and to have the other side -- anyone who disagrees with your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M4qWashC

1    position –- be able to weigh in in this proceeding, in this MDL

2    proceeding.  And we will fairly and, hopefully, efficiently

3    move forward and give you some assurance that although we give

4    no one any guarantees that you will be satisfied with the

5    ultimate result, we can give you assurance that you will all be

6    heard.  Your positions will be considered, and we will make the

7    best decision that we can.

8              My position is always this –- that the best decisions

9    aren't made by smart people.  They're made by informed people.

10   Give us the information that you think is compelling, and we

11   will factor it in.  When we make mistakes, we usually say, Oh,

12   if I'd only known X.  Right?

13             So keep us informed.  To the extent that you genuinely

14   want to assist us, we encourage you to do so.  To the extent

15   that you just want to simply advantage your own client, we are

16   deciding these cases on their merits, not on any other basis.

17   So keep that in mind.

18             I think it was important for us to meet here.  If

19   there are other issues that this raises or that come up, bring

20   them to our attention right away.  As I say, despite everything

21   else that we're doing, literally we're in contact almost on a

22   daily basis at this point with regard to these issues so we can

23   move forward efficiently and give you a result that maybe not

24   everyone will be total satisfied with, but hopefully a result

25   that you can understand, that is a reasoned judgment,

Case 23-258, Document 117, 06/30/2023, 3536586, Page96 of 240
**Supp. A-91**
Case 1:03-md-01570-GBD-SN   Document 8339   Filed 08/12/22   Page 60 of 61   39

M4qWashC

1    consistent with the law, as to how you should participate in

2    distribution of funds and what the relationship is between the

3    plaintiffs.

4         My final reminder is you are all plaintiffs.  Your

5    clients are all victims.  OK?  That's what should be driving

6    everyone here.  That's what drives us as we're addressing these

7    issues.  Right now, everyone before this Court is on an equal

8    footing, and everyone should consider when you make your

9    arguments whether those arguments support everyone's position

10   or whether those arguments simply support your position or

11   whether those arguments disadvantage some at the expense of

12   others, because that's the first evaluation that I'll have with

13   regard to your conduct, your applications, and your filings.

14        Remember, this is the forum that we're going to

15   resolve these issues.  That's the bottom line of this

16   proceeding.  We're going to resolve it here, not before Judge

17   Caproni, not before some other judge in this court, not in some

18   other duplicative proceeding that is to address the same issues

19   that we are already addressing here.  Regardless of what any

20   party believes, it is a more efficient, effective and

21   advantageous way for us to proceed.

22        We've laid out the process and we're going to stick

23   with that process, and as far as I'm concerned, that process is

24   working.  It will hopefully, and I'm confident it will, give us

25   the best result that we could possibly reach on behalf of the

M4qWashC

1    plaintiffs and victims that have the true interest in this

2    litigation.

3              Thank you very much.

4              Let's move forward, and we will proceed efficiently.

5    If there are any other issues that need to be addressed with

6    regard to any of these claims -- of liability or damages --

7    obviously, my position is they should be raised with this Court

8    on notice to all the other parties, either jointly or having an

9    opportunity to disagree.

10             Thank you all very much.  And we will continue.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711                    **JENNER & BLOCK** LLP

August 21, 2022

<u>VIA ECF</u>

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     ***In re Terrorist Attacks on September 11, 2001***, No. 03-md-1570 (GBD) (SN)
      ***Havlish, et al. v. Bin Laden, et al.***, No. 03-cv-9848 (GBD) (SN)
      ***John Does 1 through 7 v. the Taliban, et al.***, No. 20-mc-740 (GBD) (SN)
      ***Federal Insurance Co., et al. v. al Qaida, et al.***, No. 03-cv-6978 (GBD) (SN)
      ***Smith v. the Islamic Republic of Iraq***, No. 01-cv-10132 (GBD) (SN)
      ***Ashton et al. v. al Qaeda Islamic Army, et al.***, No. 02-cv-6977 (GBD) (SN)
      **<u>Ashton Plaintiffs' Motion for Attachment & Mem. of Law (Dkts. 8412 & 8413)</u>**

Dear Judges Daniels and Netburn:

      On behalf of Judgment Creditors Fiona Havlish, *et al*. (the "Havlish Creditors"), Judgment Creditors John Does 1 through 7 (the "Doe Creditors"), Judgment Creditors Federal Insurance Co., *et al.* (the "Federal Insurance Creditors"), and Judgment Creditors Estate of Smith, *et al.* (the "Smith Creditors")—collectively, the "Joint Creditors"—we write in response to the Ashton Plaintiffs' "Emergency Motion for an Order of Attachment," which is yet another futile gambit designed to obstruct our clients' turnover proceedings and the Framework Agreement reached among every other 9/11 plaintiff group. As litigants with final, enforceable judgments against the Taliban, whose writs of execution already restrain (and have restrained for many months) the blocked assets the Ashton Plaintiffs seek to attach (thus rendering the purported "emergency" nature of their motion a puzzlement), we are prepared to oppose the motion. By this letter, the Joint Creditors offer several points as to why the relief sought by the Ashton Plaintiffs is legally unavailable and can be summarily denied. Should the Court desire more fulsome briefing, the Joint Creditors request that the Court set a schedule by which the Joint Creditors may formally oppose the motion.

      **First**, the Ashton Plaintiffs by their own admission lack a final, enforceable judgment against the Taliban, such that TRIA does not provide them with a legal basis to attach the blocked DAB assets. TRIA applies only to cases "in which a person has obtained a judgment against a terrorist party" and allows "execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been

# Supp. A-94

Page 2

adjudged liable." TRIA § 201(a). The Ashton Plaintiffs lack a compensatory damage award as against the Taliban. The Second Circuit expressly held in *Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264 (2d Cir. 2003) that the "plain meaning" of TRIA § 201(a) is "to give terrorist victims who actually receive favorable judgments a right to execute against assets that would otherwise be blocked," and "confers no entitlement on victims who have not yet obtained judgments." *Id.* at 271.[1] As plaintiffs without final judgments, the Ashton Plaintiffs simply cannot rely on TRIA to attach the DAB Assets.[2]

Attempting to get around this fundamental obstacle, the Ashton Plaintiffs inaccurately claim that they do in fact have "judgments against the Taliban for compensatory damages," Dkt. 8413 ("Mot.") 13, referring to this Court's entry of default judgments solely as to liability on May 12, 2006. Those "judgments" were awarded subject to "a hearing . . . to establish the aggregate value of the [Ashton] Plaintiffs' unliquidated damages." *See* Dkt. 1797. But the law is crystal clear that "a default judgment cannot be entered until the amount of damages has been ascertained." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993); *see also Swarna v. Al-Awadi*, 622 F.3d 123, 140 (2d Cir. 2010) ("Because the inquest on damages was pending, the District Court's order, though styled a default judgment, was a non-final order."); *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir. 1986) (where damages had not been determined, the default judgment "was in fact no more than another interlocutory entry of default"); *Henry v. Bristol Hosp., Inc.*, 2020 WL 7773418, at *2 (D. Conn. Dec. 30, 2020) ("Although a default judgment with regard to liability may be entered prior to award of damages, a default judgment is not considered an entry of final judgment until damages have been awarded."); *Curtis v. Gates Cmty. Chapel of Rochester, Inc.*, 2022 WL 2037817, at *2 (W.D.N.Y. June 6, 2022) ("Where the amount of damages remains to be calculated, a default judgment is not considered final."). The Ashton Plaintiffs concede that the "precise quantum of compensatory damages" they may one day be owed by the Taliban has yet to be determined. Mot. 13. *See also Owens* Dkt. 34 at 35 (Mr. Maloney, the lead attorney bringing the "Emergency Motion," acknowledging earlier this year that the Ashton Plaintiffs "don't have . . . a final judgment with liquidated damages"). What the Ashton Plaintiffs

---

[1] In *Smith*, the plaintiffs could not rely on TRIA to execute on certain assets held at the FRBNY, because, in March 2003, "well before" they "obtained a *final judgment*" against Iraq, the President ordered the assets in question to be confiscated, such that they were no longer blocked and thus no longer available for attachment under TRIA. *Id.* at 272 (emphasis added). Notably, at the time of the President's March 2003 confiscation order, the *Smith* plaintiffs had already received non-final default judgments as to liability, subject to an inquest on damages. *See Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 220 (S.D.N.Y. 2003). The Second Circuit considered it relevant that "final judgment" was not entered until July 2003, after the assets in question were no longer blocked. *Smith*, 346 F.3d at 366.

[2] The Ashton Plaintiffs themselves have previously conceded this principle of law and raised it in opposition to the motion for attachment in *Owens v. Taliban*, No. 22-cv-1949 (S.D.N.Y.). *See Owens* Dkt. 29 at 4-5 (letter signed by Kreindler & Kreindler citing *Smith v. Federal Reserve Bank* for the proposition that TRIA precluded issuing a prejudgment writ of attachment to the Owens Plaintiffs because they lacked a judgment against the Taliban).

**Supp. A-95**

Page 3

possess, then, is not a judgment but merely a non-enforceable order establishing certain defendants' liability, such that TRIA is categorically unavailable to them.[3]

Nothing about the Second Circuit's recent decision in *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, No. 21-2043, 2022 WL 3269083 (2d Cir. July 21, 2022), changes this analysis. Although the *Levinson* court suggested that attachment under Article 62 of the New York C.P.L.R. might have been available to secure the plaintiffs' potential turnover judgment under TRIA, those plaintiffs had already obtained a final judgment against Iran, with damages ascertained in the amount of $1.5 billion. Only because the plaintiffs possessed "a money judgment against Iran" did the Second Circuit conclude that attachment was a "possible remedy" in aid of a TRIA enforcement proceeding to prevent assets that were not already restrained by the executive branch from leaving the jurisdiction.[4] *Id*. at *5.

**Second**, absent any ability to rely on TRIA, federal law prohibits the Ashton Plaintiffs from obtaining an order of attachment. When, on February 11 of this year, President Biden blocked the DAB Assets by issuing Executive Order 14,064, he decreed that the assets "may not be *transferred*, paid, exported, withdrawn, or *otherwise dealt in*," *id*. § 1(a) (emphasis added), "except to the extent provided by statutes" (such as TRIA) or regulations, *id*. § 1(c). The term "transfer" is a term of art under federal sanctions law which is universally understood to include an order of attachment. For example, terrorism sanctions regulations promulgated by the Treasury Department's Office of Foreign Assets Control ("OFAC") provide, in relevant part, that "[t]he term transfer . . . include[s] . . . the issuance, docketing, filing, or levy of or under any judgment, decree, *attachment*, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment." *See* 31 CFR § 594.312 (emphasis added).[5] A party without a final judgment and who cannot rely on TRIA plainly lacks the authority to restrain the blocked DAB assets by seeking a writ of attachment. *See Ministry of Def. & Support for the Armed Forces of the Republic of Iran v. Elahi*, 556 U.S. 366, 369 (2009) (TRIA is the sole mechanism to "attach . . . assets that the United States has '*blocked*.'" (emphasis in original)).

**Third**, the Ashton Plaintiffs effectively admit that they seek attachment for a legally impermissible purpose—not to restrain assets which could otherwise be dissipated, but as a ploy

---

[3] Indeed, without having a "precise quantum of compensatory damages," a court could not meaningfully apply TRIA's command that a terrorist party's assets "shall be subject to . . . attachment in aid of execution in order to satisfy such judgment *to the extent of any compensatory damages for which such terrorist party has been adjudged liable*." TRIA § 201(a).

[4] The Second Circuit recognized in *Levinson* that attachment might be an appropriate remedy because the assets at issue there had not actually been "frozen or seized" by the United States. *See* 2022 WL 3269083, at *5 & n.6. Here, of course, the DAB Assets are affirmatively frozen by the United States, and there is no risk that they will be "withdraw[n] [by the judgment debtor] . . . before they could be" ordered delivered to the Joint Creditors (or anyone else). *See id.* at *5.

[5] As the Federal Insurance Creditors documented in their motion to vacate the writ of attachment issued in *Owens*, "[a]ll extant blocking sanctions programs include identical or similar language and have done so for the last sixty years." *See* Dkt. 8056 & 8056-1 (collecting sanctions regulations defining the word "transfer").

**Supp. A-96**

Page 4

for priority. *See* Mot. 1 ("[Ashton Plaintiffs] seek this Attachment Order to protect their rights and ensure that they are not foreclosed by other creditors from obtaining recovery."). An order of attachment cannot issue on this basis, as Judge Caproni found. *Owens v. Taliban*, 2022 WL 1090618, at *5 (S.D.N.Y. Apr. 11, 2022) ("Allowing plaintiffs who have not obtained a judgment to jump the line cannot be the reason for granting pre-judgment attachment[.]"); *see also Ames v. Clifford*, 863 F. Supp. 175, 178 (S.D.N.Y. 1994); *J.V.W. Inv. Ltd. v. Kelleher*, 837 N.Y.S.2d 650, 651 (App. Div. 2007). What is more, the Ashton Plaintiffs opposed the *Owens* motion for attachment on precisely these grounds, *Owens* Dkt. 29 at 4 ("What the Owens plaintiffs are in truth seeking to do is to use the prejudgment attachment process not for security purposes, but to obtain priority over the many MDL litigants who already have claims pending against the Taliban in the MDL proceeding."), and urged Judge Caproni not to grant it because there was no risk that the DAB Assets would be moved outside of this Court's jurisdiction.[6] The Ashton Plaintiffs were right to oppose attachment then and they are wrong to seek it now.

For these reasons, the Ashton Plaintiffs' attachment motion—a stunt with no basis in law—can be summarily rejected. Although the Second Circuit's *Levinson* decision has spurred a flurry of filings in the MDL, as the Joint Creditors noted in their letter of August 18, 2022, *Levinson* does not meaningfully change anything about the pending turnover motions. *See* Dkt. 8399. The Joint Creditors' writs of execution continue to restrain the DAB Assets (and are not, in any case, prerequisites to turnover), their turnover motions are ripe for adjudication (nearly a year after the first executions were levied upon the DAB Assets), and no other party holds a final enforceable judgment against the Taliban. *Id.* To the extent the Court would like to receive more extensive briefing on the Ashton Plaintiffs' latest attempt to derail the turnover proceedings and the Framework Agreement, the Joint Creditors would welcome the opportunity to formally oppose the motion on whatever schedule the Court finds appropriate.[7]

---

[6] Moreover, attachment is a "discretionary" remedy that courts can and should withhold, even if a movant has established grounds for its issue under C.P.L.R. § 6201, where the movant has not shown that it is actually "needed to secure payment." *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221–22 (2d Cir. 2006); *see also Katz Agency, Inc. v. Evening News Ass'n*, 514 F. Supp. 423, 429 (S.D.N.Y. 1981) ("[A]n attachment under New York law solely for security purposes is appropriate only when it appears likely that a plaintiff will have difficulty enforcing a judgment. . . . [A] plaintiff is never entitled to an attachment as a matter of right. Rather, the remedy is discretionary with the Court and should be used sparingly."), *aff'd*, 705 F.2d 20 (2d Cir. 1983). As the Court knows, the DAB Assets are already restrained by both prior executive and judicial order.

[7] In their motion, the Ashton Plaintiffs persist in their efforts to denigrate the Framework Agreement reached by every other 9/11 plaintiff group, *see* Mot. at 1 n.2. Their characterization of the agreement's terms in that footnote is inaccurate, as they would know if they had not declined multiple invitations to participate in and help craft the agreement with the rest of the MDL Community.

Page 5


Respectfully submitted,

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for Judgment Creditors Fiona Havlish, et al.*

/s/ Orlando do Campo
Orlando do Campo
John Thornton (*pro hac vice*)
Daniela Jaramillo (*pro hac vice*)
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
(305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7*

/s/ Sean P. Carter
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2105
scarter1@cozen.com

*Counsel for Judgment Creditors Federal Insurance Co., et al.*

Page 6

<u>/s/ James Edwin Beasley</u>
James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
(215)-592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al.*

cc: All counsel of record (by ECF)

**Supp. A-99**

# SHER TREMONTE LLP

November 16, 2022

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re:**   *In re Terrorist Attacks on September 11, 2001,* Case No. 03-md-1570
> (GBD)(SN)

Dear Judge Daniels:

We write on behalf of our clients, the *Ashton* Plaintiffs,[1] concerning the Joint Creditors' Objections to Magistrate Judge Netburn's August 26, 2022 Report & Recommendation (ECF No. 8733) and the Joint Creditors' Memorandum of Law in Response to the Notice of Supplemental Authority Submitted by *Amicus Curiae* Naseer Faiq and in Further Support of their Objections to Magistrate Judge Netburn's August 26, 2022 Report & Recommendation (ECF No. 8735) (together, the "Joint Creditors' Objections").

The *Ashton* Plaintiffs join, in limited respects, the Joint Creditors' Objections. Specifically, for the reasons articulated in the Joint Creditors' Objections, the *Ashton* Plaintiffs concur that (1) the Court possesses subject matter jurisdiction over these turnover proceedings against the FRBNY involving the interpretation and application of TRIA (*see* ECF No. 8733 § IV.B.), (2) applying TRIA does not intrude on the President's recognition power (*see id.* § IV.C.), and (3) there is no "nonconsensual" exception to agency or instrumentality status under TRIA (*see id.* § IV.D.).[2]

Notwithstanding those points of agreement, the *Ashton* Plaintiffs maintain their objections to the Joint Creditors' claims of entitlement to turnover (*see id.* § IV.A.), as articulated in the *Ashton* Plaintiffs' Memorandum of Law in Opposition to the *Havlish* and *Doe* Creditors' Motions for Partial Turnover of Assets from Garnishee Federal Reserve Bank of New York and in Support of a Motion for Protective Order Pursuant to N.Y. CPLR § 5240 (ECF No. 7894). Further, for the reasons articulated in their August 12, 2022 letter to the Court regarding *Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F.4th 91 (2d Cir. 2022), the *Ashton* Plaintiffs maintain that each of the Joint Creditors' writs of

---

[1] The *Ashton* Plaintiffs consist of approximately one-third of 9/11 victim families.

[2] Capitalized terms not otherwise defined herein shall be accorded the meanings ascribed to them in the Joint Creditors' Objections.

**Supp. A-100**

execution against the DAB Assets is invalid. (ECF No. 8339.) Accordingly, the *Ashton* Plaintiffs also object to the Joint Creditors' alternative argument that, if the Court adopts the Report, the Court should extend the Joint Creditors' writs pending appeal. (ECF No. 8733 at 59-60.)

Lastly, as articulated in multiple letters filed with the Court (*see, e.g.*, ECF Nos. 7962 8423), the *Ashton* Plaintiffs oppose the so-called Framework Agreement—the economic terms of which remain undisclosed (*see* ECF Nos. 8423 (requesting the Court compel the terms' disclosure), 8435 (declining to disclose economic terms))—and the Joint Creditors' characterization of the Framework Agreement as, in any sense, equitable. As the *Ashton* Plaintiffs have consistently advocated, fairness requires a single court to adjudicate all claims to the DAB Assets and, should the Assets be made available to satisfy judgments held by victims of Taliban-enabled terrorism, all such victims should be accorded the opportunity to satisfy their judgments on equitable terms.[3]

Respectfully submitted,

| KREINDLER LLP | SHER TREMONTE LLP |
|---|---|
| */s/ Megan Benett* | */s/ Theresa Trzaskoma* |
| Megan Benett | Theresa Trzaskoma |

---

[3] The *Ashton* Plaintiffs make the above points solely for the purpose of preserving their positions on turnover and the Framework Agreement, and not to provoke further letter writing.

2

Supp. A-101

# EXHIBIT B

Case 23-258, Document 117, 06/30/2023, 3536586, Page107 of 240
**Supp. A-102**

Case 1:03-md-01570-GBD-SN   Document 8950-2   Filed 03/23/23   Page 2 of 125

***Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD) (SN)**
**Kreindler & Kreindler LLP | Sher Tremonte LLP**

Ashton, John
Ashton, Kathleen
Ashton, Kathleen, Personal Representative of the Estate of Thomas Ashton
Abad, Ascension
Abad, Jennifer
Abad, Lorraine
Abad, Lorraine, Personal Representative of the Estate of Edelmiro Abad
Abad, Rebecca
Abad, Serena
Abatangelo, Pasquale
Accardo, Anthony
Accetta, Joseph
Acevedo, Luis
Acquafrea, Peter
Adams, Michael
Adams, Paul
Adams-Floyd, Kylie
Adderley, Mary
Adderley, Mary & Terence, Personal Representatives of the Estate of Terence Adderley, Jr.
Adderley, Terrence
Adissi, Aldo, Personal Representative of the Estate of Peter Bielfeld
Adrichem, Theodorus
Agnes, Carmen
Agnes, Carmen, Personal Representative of the Estate of David S. Agnes
Agnes, Frank
Agovino, Michael
Agugliaro, Richard
Agustino, Alamo
Ahee, Roger
Ahladiotis, Miltiadis
Ahladiotis, Miltiadis, Personal Representative of the Estate of Joanne Maria Ahladiotis
Ahladiotis-Salloum, Effie
Ahlers, Kenneth
Aiken, Andre
Aiken, Cassandra
Aiken, Kanian
Aiken, Michael
Aiken, Terrease
Aiken-Dorismond, Kecia
Akerberg, Thomas
Albert, David
Albert, Donna
Albert, Donna, Personal Representative of the Estate of Jon Albert

**Supp. A-103**

Albert, Stephen
Alexander Castrillo, Jevon
Alfarano, Edward
Alger Geffen, Roxana
Alger Wang, Cristina
Alger, Josephine
Alger, Josephine & Frederick, Personal Representative of the Estate of David D. Alger
Allen, Angelica, Personal Representative of the Estate of Eric Allen
Allen, Kathleen
Alles, Richard
Amaranto, Emily, Personal Representative of the Estate of Angelo Amaranto
Amato, Ashley
Amato, Christopher
Amato, Colleen
Amato, Deborah
Amato, Deborah, Personal Representative of the Estate of James Amato
Amato, Katherine
Amato, Sean
Amato, Tara
Amigron, Nancy
Ammirati, Diane
Anderson, Anthony
Anderson, Mary
Anderson, Stephen
Anderson, Vincent
Andino, Frank
Andrucki Izzo, Laura
Andrucki, George
Andrucki, George & Mary, Personal Representative of the Estate of Jean Andrucki
Andrucki, Mary
Andrusyczyn, Stanley
Angelini, Anne
Angelini, Anne, Personal Representative of the Estate of Joseph Angelini, Sr.
Angelini, Annmarie
Angelini, Mary
Angelini, Michael
Annerino, Salvatore
Annunziato, Robert
Ansbro, Andrew
Antonelle, Patricia
Antonio Garcia, Rafael
Antonopoulos, Harry
Anzalone, Salvatore
Apostol, Christopher
Apostol, Justin
Apostol, Kathleen

**Supp. A-104**

Apostol, Kathleen, Personal Representative of the Estate of Faustino Apostol, Jr.
Arancio, Edward & Kathleen
Aranyos, Alexander & Winifred, Personal Representative of the Estate of Patrick Michael
Aranyos
Aranyos, Jr., Alexander
Aranyos, Stephanie
Aranyos, Winifred
Arce, Margaret
Arce, Margaret, Personal Representative of the Estate of David Gregory Arce
Archer, Lawrence
Arcos, Raymond
Arczynski, Lori
Arczynski, Lori, Personal Representative of the Estate of Michael G. Arczynski
Ardison-Gardner, Gregory
Ardizzone, Leonard & Barbara
Arestegui, Kristen
Arestegui, Nancy
Arestegui, Rosie
Arestegui, Sharon
Arestegui, Vickie
Arestegui, Vickie, Personal Representative of the Estate of Barbara Arestegui
Arestegui, Vittorio
Arias, Margit
Arias, Margit, Personal Representative of the Estate of Adam Peter Arias
Armetta, Michael
Arnold, Jeanne
Arocho, David
Aron, Evelyn
Aron, Evelyn, Personal Representative of the Estate of Jack Charles Aron
Aron, Timothy
Arrillaga, Kelly
Arvelo, Ana
Arvelo, Jr., Mariano
Arvelo, Robin
Asher, Thomas
Astarita, Joseph
Atlas, Gregg
Atlas, JoAnn
Atlas, JoAnn, Personal Representative of the Estate of Gregg Arthur Atlas
Atlas, Sarah
Attanasio, Christopher
Atwood, Gerald
Atwood, Margaret
Atwood, Robert
Auciello, Anthony
Aurrichio, Marylou

**Supp. A-105**

Ayala, Angel
Bacarella, Laura
Bach, Christopher
Bachert, Joseph
Badagliacca, John
Badagliacca, Nancy
Badagliacca, Nancy, Personal Representative of the Estate of John J. Badagliacca
Badagliacca, Nikki
Badillo, Benjamin
Baez, Thomas
Bailey, Michael
Bailey-Scauso, Darcie
Baily, Louanne
Baily, Louanne, Personal Representative of the Estate of Brian Paul Dale
Baione, Christine
Baker, Candiace
Baker-Gual, Sharon
Baksh, Ava
Baksh, Christina
Baksh, Christina, Personal Representative of the Estate of Michael Baksh
Baksh, James
Balaram, Augustin
Ballou, West
Balsamo, Nicholas
Banat, Richard
Banchs, Arturo
Banker, Michael
Baran, Robert
Baranek, James
Barbara, Joanne
Barbara, Joanne, Personal Representative of the Estate of Gerard Barbara
Barbara, Paul
Barbara, Paul
Barbella, Frank
Barbella, Frank
Barbella, James
Barbella, Louis
Barbella, Michael
Barbella, Monica
Barbella, Monica, Personal Representative of the Estate of James Barbella
Barbella, Ruth
Barbella, Ruth
Barbella, Sarah
Barbella, Thomas
Barbuto, John
Bardo, Paul

**Supp. A-106**

Barkow, Crystal
Barkow, Daniel
Barkow, Daniel, Personal Representative of the Estate of Colleen Ann Barkow
Barkow, Kayla
Barletta, Bernice
Barnes, Nina, Personal Representative of the Estate of Durrell Pearsall, Jr.
Baron, Ethan
Baron, Jeannine
Baron, Jeannine, Personal Representative of the Estate of Evan J. Baron
Baron, Julia
Baroz, Thomas
Barrera Pocasangre, Geisel
Barrera Pocasangre, Karen
Barrera Pocasangre, Linda
Barrera Pocasangre, Mauricio
Barrera, Ernesto
Barrera, Ernesto, Personal Representative of the Estate of Ana De Barrera
Barrera, Lombardo
Barrett, Christopher
Barrett, Kevin
Barrett, Robert
Bartels, Eva
Bartels, Jane
Bartels, Jane, Personal Representative of the Estate of Carlton Bartels
Bartels, Melina
Barvels, Bruce
Bascelli, Steven
Basham, Deborah
Basham, Deborah, Personal Representative of the Estate of Alfred Todd Rancke
Basin, Boris
Basin, Vladimir
Basin, Vladimir, Personal Representative of the Estate of Inna Basin
Basso, Paul
Bauer, Susan
Baugin, Akiko
Baumgarten, Lynn
Bayer, Tara
Beard, Andrew
Beaujon, Edith
Beaven, Christopher
Beaven, Dahlia
Beaven, John
Beaven, Kimberly
Beaven, Kimberly, Personal Representative of the Estate of Alan Beaven
Beckwith, Sharlene & Reed, James, Personal Representative of the Estate of Michele Reed
Beckwith, Sharlene

**Supp. A-107**

Bedigian, Michele, Personal Representative of the Estate of Carl Bedigian
Behette, Michael
Belford, John
Bell, Lowell
Bell, Lowell
Bell, Lowell & Patricia, Personal Representative of the Estate of Nina P. Bell
Bell, Mario
Belmonte, John
Beltrani, Joseph
Beninson, Lori-Ann
Bennett, Joseph
Bennett, Timothy
Berardi, Joseph
Berardi, Joseph, Personal Representative of the Estate of Dominick J. Berardi
Berardi, Maria
Berardi, Nicholas
Berardi, Tina
Bergen, James
Berger Fried, Melissa
Berger, Joseph
Berger, Phyllis
Berger, Rochelle
Berger, Susan
Berger, Susan, Personal Representative of the Estate of Steven H. Berger
Bergin, John
Bergin, Katie
Bergin, Madeline
Bergin, Madeline, Personal Representative of the Estate of John Bergin
Bergin, Shannon
Bering, Joseph
Berkeley, Charles
Berkeley, Charles & Pauline, Personal Representative of the Estate of Graham Berkeley
Berkeley, Christopher
Berkeley, Eric
Berkeley, Jason
Berkeley, Roger
Bermingham, Robert
Bernardi, Charles
Bernheimer, Mark
Berran, Frank
Berrios, Ruben
Berry, Alexander
Berry, Nile
Berry, Paula
Berry, Paula, Personal Representative of the Estate of David S. Berry
Berry, Reed

**Supp. A-108**

Bertolino, Joseph
Betancourt, Lorraine
Bethea, Marvin
Bethke, Valerie
Bethke, Valerie, Personal Representative of the Estate of William R. Bethke
Betru, Aron
Betru, Ruth
Betru, Sirak
Betru, Sirak, Personal Representative of the Estate of Yeneneh Betru
Beuerman, James
Beyar, Daniel
Beyer, Arlene
Beyer, Arlene, Personal Representative of the Estate of Paul M. Beyer
Beyer, George
Beyer, Jane
Beyer, Mark
Beyer, Michael
Beyer, Shawn
Biegeleisen, Alan
Biegeleisen, Israel
Biegeleisen, Jacob

**Supp. A-109**

Biegeleisen, Miriam
Biegeleisen, Miriam, Personal Representative of the Estate of Shimmy D. Biegeleisen
Biegeleisen, Mordechai
Biegeleisen, Moshe
Biegeleisen, Regina
Bielfeld, Brittany
Bierster, Gregory
Bigi, Donald
Bilich, Steven
Bini, Christine
Bini, Christine, Personal Representative of the Estate of Carl Bini
Birnbaum, Marcel
Birnbaum, Marcel, Personal Representative of the Estate of Joshua Birnbaum
Birnbaum, Samuel
Bischoff, Howard
Biserta, Joseph
Bittles, Richard
Blaich, Irene
Blaich, Peter
Blaich, William
Blake, Susan
Blanchard, Mark
Blanding Carroll, Katina
Blanding, Benjamin
Blanding, Deborah
Blanding, Deborah, Personal Representative of the Estate of Harry A. Blanding, Jr.
Blanding, Hayley
Blanding, Jeremy
Blaskovich, Matthew
Blessing, Tara
Blood, Constance
Blood, Kris
Blood, Kris, Personal Representative of the Estate of Richard M. Blood, Jr.
Blood, Madeline
Blood, Michael
Blood, Sr., Richard
Blood, Stephen
Blood, William
Bloom, Meg
Bloom-Glasser, Meg, Personal Representative of the Estate of Thomas Glasser
Blythe, Godfrey
Boccarossa, Thomas
Bodian, Linda
Bogdan, Dorothy
Bogdan, Dorothy, Personal Representative of the Estate of Nicholas Andrew Bogdan
Bogdan, Emily

**Supp. A-110**

Bogdan, Nicholas
Bohan, Kenneth
Boisseau, Maria
Boisseau, Maria, Personal Representative of the Estate of Lawrence Boisseau
Boland, Michael
Bonar, Charles
Bongiorno, John
Bonner, Reginald
Bonsanti, Mark
Bordeaux, Alan
Borgese, Andrew
Bornhoeft, Robert
Borrillo, Nicholas
Bosco, Abigail
Bosco, III., William
Bosco, Jr., Richard
Bosco, Michael
Bosco, Traci, Personal Representative of the Estate of Richard Edward Bosco
Bosco-Myhal, Traci
Bourdis, Maria
Bowers, Jr., Frederick
Bowers, Jr., Frederick, Personal Representative of the Estate of Kimberly S. Bowers
Bowman, Linda
Bowman, Linda, Personal Representative of the Estate of Larry Bowman
Box, Brigette
Box, Dalton
Box, Kathleen
Box, Kathleen, Personal Representative of the Estate of Gary R. Box
Boyarsky, Beata
Boyarsky, Jolanta
Boyarsky, Jolanta, Personal Representative of the Estate of Gennady Boyarsky
Boyarsky, Michael
Boyer, Enis
Boyle, Barbara
Boyle, James
Boyle, James
Boyle, James, Personal Representative of the Estate of Michael Boyle
Boyle, Michael
Boyle, Peter
Braadt, George
Braca, David, Personal Representative of the Estate of Alfred Braca
Braca, Jean
Braca, David
Brace, David, Personal Representative of the Estate of Sandra Conaty Brace
Bracero, Manuel
Bradshaw, Alexandria

9

**Supp. A-111**

Bradshaw, Nathan
Bradshaw, Phillip
Bradshaw, Phillip, Personal Representative of the Estate of Sandra W. Bradshaw
Bradshaw, Shenan
Brady Cieszko, Jennifer
Brady, Alice
Brady, Erin
Brady, Grace
Brady, James
Brady, Jennifer, Personal Representative of the Estate of David B. Brady
Brady, Jr., Richard
Brady, Mark
Brady, Matthew
Brady, Michael
Brady, Richard
Brady, Scott
Brady, Thomas
Braun, Andrew
Braun, Martin
Bravo, Albert
Bravo, Norma
Breban, Awilda
Breen, Joseph
Brenkert, Gerald
Brennan, Edward
Brennan, Gail
Brennan, James
Brennan-Krebs, Ellen
Brenneisen, Ronald
Brewer, Anne
Brewer, Curtis
Brewer, Curtis, Personal Representative of the Estate of Carol Keyes Demitz
Brierley, Donald
Briley, Alexander

**Supp. A-112**

Briley, Hillary

Briley, Hillary, Personal Representative of the Estate of Jonathan E. Briley

Briley, Joanne

Briley, Timothy

Briley-Strand, Gwendolyn

Brinzo, Vito

Brissett, Ladwin

Brocato, Michael

Brody, Michael

Broghammer, John

Broghammer, Ursula

Broghammer, Ursula, Personal Representative of the Estate of Herman C. Broghammer

Broschart, Michael

Broughton, Christopher

Brown, James

Brown, Jozette

Brown, Margaret

Brown, Paul

Brown, Peter

Brown, Raymond

Bruce, David

Bruce, Diane

Bruce, Harold

Bruce, Stephen

Bruehert, Danielle

Bruehert, JoAnne

Bruehert, JoAnne, Personal Representative of the Estate of Richard G. Bruehert

Bruehert, John

Brunaes, Peter

Bruno, Greg

Bruno, Ida

Bruno, James

Bruno, Jason

Bruno, Juan

Bruno, Juan, Personal Representative of the Estate of Rachel Tamares

Bruno, Robert

Bruno, Stephen

Brunschwig, Melissa

Brunsden, David

Bryfogle, Dawn

Bryfogle, Dawn, Personal Representative of the Estate of Mark Bruce

Buckley, Mary

Buckley, Michael

Budde, Margaret

Budischewsky, Michael

Buhse Whelan, Susan

**Supp. A-113**

Buhse, Michael
Buhse, Sloan
Buhse, Susan, Personal Representative of the Estate of Patrick Joseph Buhse
Buhse, Thomas
Buhse, William
Buhse, William
Buono, Matthew
Buonocore, Vincent
Burford, David
Burford, David, Personal Representative of the Estate of Christopher Burford
Burford, Vicki
Burge, Charles
Burgess, Georgia
Burke Salter, Nancy
Burke, Alexander
Burke, Alexander
Burke, Brian
Burke, Brian
Burke, Christopher
Burke, George
Burke, James
Burke, James
Burke, John
Burke, Julia
Burke, Julie, Personal Representative of the Estate of Thomas Daniel Burke
Burke, Matthew
Burke, Michael
Burke, Stephen
Burke, Suzanne
Burke, Thomas
Burke, Thomas
Burke, William
Burns Reed, Kathleen
Burns, Charles
Burns, Elizabeth
Burns, Elizabeth, Personal Representative of the Estate of Donald J. Burns
Burns, Julia
Burns, Michael
Burns, Michael
Burns, Patrick
Burns, Robert
Burnside Sturiano, Sandra
Burnside, Sandra, Personal Representative of the Estate of John P. Burnside
Burton, Jacqueline
Butler, Kelly
Butler, Margaret

**Supp. A-114**

Butler, Patrick
Butler, Sean
Butler, Stephen
Butler, William
Butler, William
Byrnes, John
Caballero, Donna
Caban, Nelson
Cachia, Edward
Caggiano Malfi, Mary
Caggiano, Elizabeth
Caggiano, John
Caggiano, Joseph
Caggiano, Richard
Cahill, Brett
Cahill, Christopher
Cahill, James
Cahill, James
Cahill, James & Kathleen, Personal Representative of the Estate of Thomas J. Cahill
Cahill, James, Personal Representative of the Estate of Scott Walter Cahill
Cahill, Jr, James
Cahill, Kathleen
Cahill, Linda
Cahill, Michael
Cahill, Patrick
Cahill, Sean
Calabro, Ashley
Calabro, Francis
Calcagno, Susan
Calcagno, Susan, Personal Representative of the Estate of Philip V. Calcagno
Calderon, Anthony
Calderon, Cathy
Calderon, Deborah
Calderon, Deborah, Personal Representative of the Estate of Edward Calderon
Calderon, Ilene
Calderon, Jeremy
Calderon, Jr., Vincent
Calderon, Mariza
Calderon, Vicente
Calhoun, Kevin
Cali, Gary
Calia, Dominick
Calia, Jaclyn
Calia, Janet, Personal Representative of the Estate of Dominick E. Calia
Calia, John
Calia, Joseph

**Supp. A-115**

Calia, Mildred
Calia, Richard
Calia-Costa, Christine
Calia-Donahue, Janet
Calia-Kuhn, Jeanann
Calia-Micallef, Jeanna
Calise, Robert
Calkins, Thomas
Calla, Vincenzo
Callaghan, Thomas
Callanan, Robert
Callum, Chester
Callum, Rodney
Callum, Rodney, Personal Representative of the Estate of Michell L. Robotham
Callum, Travis
Camacho, Ernando
Camacho, Patrick
Camiolo, Richard
Cammarata, Ronald
Cammarata, Tina
Campbell, Bryan
Campbell, Richard
Campbell, Therese
Campisi, Atthew
Canale, Vincent
Cangelosi, Michelle
Cangelosi, Vincent
Cangelosi, Vincent & Michelle, Personal Representative of the Estate of Vincent A. Cangelosi
Cann, Thomas
Cannizzaro, Christopher
Cannizzaro, Jacqueline
Cannizzaro, Jacqueline, Personal Representative of the Estate of Brian Cannizzaro
Cantatore, Biagio
Cantelmo, Victor
Capasso, Michael
Caple, Charles
Capolongo, Robert
Caporicci, Christina
Caporicci, Lauren
Caporicci, Lori
Caporicci, Lori, Personal Representative of the Estate of Louis Caporicci
Capoziello, Aleesia
Capparis, Sheila
Capparis, Sheila, Personal Representative of the Estate of Edward A. Brennan, III
Caputo, David
Caputo, Frank

14

**Supp. A-116**

Cardinale, David
Cardio, Harry
Carey, Patrick
Carilli-Sinton, Cathy
Carilli-Sinton, Cathy, Personal Representative of the Estate of Thomas E. Sinton, III
Carino, Peter
Carlino, Richard
Carlson, William
Carney, Richard
Carney, Richard, Personal Representative of the Estate of Mark Stephen Carney
Carrero, Angel
Carri, Christopher
Carroll, Alexander
Carroll, Brendan
Carroll, Eileen
Carroll, Eleanor
Carroll, John
Carroll, Matthew
Carroll, Nancy
Carroll, Nancy, Personal Representative of the Estate of Michael T. Carroll
Carroll, Olivia
Carroll, Susan, Personal Representative of the Estate of Kevin Colbert
Carroll, Toni, Personal Representative of the Estate of Peter J. Carroll
Carroll, ToniAnn
Carroll, William
Carroll, William
Carroll, William
Caruso, Robert
Casaletto, Richard
Casaliggi, Joseph
Cascio, Raymond
Cascio, Thomas
Casey, Donald
Casey, Gerard
Cash, James
Casoria, Carlo
Casoria, Carlo
Casoria, Judith
Casoria, Judith, Personal Representative of the Estate of Thomas Anthony Casoria
Cassano, Debra
Casse, Stephen
Cassidy, John
Cassidy, Kevin
Cassidy, Stephen
Castellano, Gregory
Castrianno, Sr., Leonard

**Supp. A-117**

Castrianno, Sr., Leonard, Personal Representative of the Estate of Leonard M. Castrianno, Jr.
Castro, Karrie
Castro, Karrie
Castronovo, Joann
Catalano, Alexandria
Catarelli, Anamarie
Catarelli, Santa
Catarelli, Santa, Personal Representative of the Estate of Richard G. Catarelli
Catatano, John
Catera, Anthony
Cavaelli, John
Cayne Frankel, Marissa
Cayne, Gina
Cayne, Gina, Personal Representative of the Estate of Jason Cayne
Cayne, Raquel
Cayne, Suzann
Cefalu, Claude
Cefalu, Darren
Cefalu, Geraldine
Cefalu, Geraldine, Personal Representative of the Estate of Jason Cefalu
Cerasoli, Henry
Cestari, Joseph
Chaimowitz, Anthony
Chazin, David
Chazin, David, Personal Representative of the Estate of Ruth Lapin
Cheatham, Arthur, Personal Representative of the Estate of Delrose Forbes Cheatham
Cheatham, Bobby
Chesney, William
Chiavelli, Gerald
Chin, Pak
Chin, Suk Tan
Chin, Suk Tan, Personal Representative of the Estate of Robert Chin
Chin, Yuet
Chirco, Dino
Chmil, Stacy
Chow, Sherwin
Christensen, Jeffrey
Christy, Robert
Chung, Bundy
Ciafardini, Dominic
Ciafardini, Edward
Ciafardini, Edward, Personal Representative of the Estate of Christopher Ciafardini
Ciafardini, Maggie
Ciappa, Peter
Ciaravino, Frank
Cieslik, Andrzej & Zosia

**Supp. A-118**

Cirinelli, Sofie
Cizike, James
Clancy, Raymond
Clark, Donald
Clark, Gail
Clark, Lawrence
Clark, Lisa
Clark, Lisa, Personal Representative of the Estate of Thomas R. Clark
Clark, Matthew
Clark, Patricia
Clark, Richard
Clark, Robert
Clark, Sarah
Clark, Sr., Garry
Clark, Whitney
Clark, Yuko
Clark, Yuko, Personal Representative of the Estate of Gregory A. Clark
Clarke Head, Kathleen
Clarke Scudder, Patricia
Clarke, Dennis
Clarke, Kelly
Clarke, Timothy
Clarner, Theresa
Claro, Brian
Clingain, David
Clinton, John
Clowe, Dermott
Clyne, Charles
Clyne, Charles, Personal Representative of the Estate of Susan M. Clyne
Clyne, Kevin
Clyne, Marie
Clyne, Michael
Clyne, Timothy
Coakley, Caroline
Coakley, Vincent
Coakley, Vincent & Caroline, Personal Representative of the Estate of Steven Coakley
Coates, Christine
Cobb-Glenn, Sharon
Cobb-Glenn, Sharon, Personal Representative of the Estate of Harry Glenn
Cody, James
Coen, Christopher
Cohen, Alicia
Colacino, Robert
Colbert, Andrew
Coleman, Jonathan
Colin, Maryann

17

**Supp. A-119**

Colin, Maryann, Personal Representative of the Estate of Robert Dana Colin
Colligan, Robert
Collins, Julia
Collins, Julia, Personal Representative of the Estate of Thomas J. Collins
Collins, William
Colodner, Warren
Colodner, Warren, Personal Representative of the Estate of Patricia M. Colodner
Colon, Alexis
Colon, Benito
Colon, Benito, Personal Representative of the Estate of Soledi Colon
Colon, Shayla
Colucci, George
Composto, Carmelo
Conklin, Stephen
Conlin, David
Connelly, Kevin
Connolly, James
Connolly, Michael
Connolly, Patrick
Connolly, Thomas
Connolly, William
Connor, Christopher
Connor, Steven
Connors, Karen
Conroy, Jr., Thomas
Conti, Elvira
Conti, Jeffrey
Cook, Kenneth
Cook, Walter
Cook, Werner
Coombs, John
Cooney, James
Copp, Douglas
Coppo, Patricia & Brennan, John, Personal Representative of the Estate of Joseph J. Coppo, Jr.
Coppo, III, Joseph
Coppo, John
Coppo, Matthew
Coppo, Patricia
Corbett Jones, Felicia
Corbett Jones, Felicia, Personal Representative of the Estate of Joseph Corbett
Corbett, Jean
Corbett, Joseph
Corbett, Kathy
Corr, Michael
Correa, Susan
Correa, Susan, Personal Representative of the Estate of Ruben D. Correa

**Supp. A-120**

Corrigan, Michael
Corsi, Christopher
Cortes-Lauterbach, Louis
Cortés-Rodríguez , Ricardo
Cortés-Rodríguez, Alicia
Cortés-Rodríguez, Julio
Cortés-Rodríguez, María
Cortés-Rodríguez, María
Cortés-Rodríguez, Martha
Cortés-Rodríguez, Mercedes
Coscia, Steven
Costa, Michael
Costello, Edward
Cotignola, Roy
Cotter, Joseph
Cotti, Jose
Cotton, John
Cotton, Patrick
Cottoy , Corey
Cottoy , Kojo
Cottoy, Jr., Conrod
Coughlin, Christopher
Coughlin, Erin
Coughlin, John
Coughlin, Kayla
Coughlin, Patricia
Coughlin, Patricia, Personal Representative of the Estate of John G. Coughlin
Coughlin, Tara
Courtenay, Thomas
Courtney, Larry
Cox-Holloway, Rubina
Cox-Holloway, Rubina, Personal Representative of the Estate of Darryl Leron Mckinney
Coyle, Brian
Coyle, Edward
Coyle, John
Coyle, Mariann
Coyle, Mariann, Personal Representative of the Estate of Andrew Gilbert
Coyle, Richard
Coyle, Terence
Coyne, Richard
Craig, Gibson
Crant, Ellis
Crant, Hilda
Crant, John
Crant, John, Personal Representative of the Estate of Denise Crant
Crant, Jr., Ellis

19

**Supp. A-121**

Crant-Baggot, Shelley
Craven, Chris
Crawford, Connie
Crawford, Elizabeth
Crawford, Gerard
Crawford, Isabelle
Crawford, James
Crawford, Lisa
Crawford, Lisa, Personal Representative of the Estate of James L. Crawford, Jr.
Crawford, William
Creamer, Linda
Cresci, Paul
Criscitiello, George
Crisostomo, Omar
Cristiano, Eileen
Crobak, Brent
Crocco, Charles
Cronley, John
Cross, Brian
Cross, JoAnn
Cross, JoAnn, Personal Representative of the Estate of Dennis Cross
Cross, Laura
Cross-Feldman, Denise
Crowe, Dianne
Cruikshank, Christina
Cruikshank, Douglas
Cruikshank, Douglas, Personal Representative of the Estate of Robert Cruikshank
Cruikshank, Marianne
Cruz, Edith
Cruz, Edith, Personal Representative of the Estate of Angela Rosario
Cruz, Maria
Cruz, Maria, Personal Representative of the Estate of Eduvigis Reyes, Jr.
Cryne, Beverly
Cseko, Frank
Csorny, Donald
Cua, Ildefonso
Cua, Ildefonso, Personal Representative of the Estate of Grace Alegre Cua
Cua, Nicole
Cua, Patrick
Cucciola, John
Cuevas, Steven
Cuff, Diane
Cullen, Patrick
Curcio, Leonard
Curcio, Peter
Curia, Linda

**Supp. A-122**

Curia, Linda, Personal Representative of the Estate of Laurence Curia
Curiel, Richard
Curley, Edward
Curley, John
Curnyn, Frank
Curran, Joseph
Curry, Frederick
Cushing, David
Cushing, David, Personal Representative of the Estate of Patricia Cushing
Cushing, John
Cushing, Pegeen
Cushing, Thomas
Cutting, Edward
Czeczotka, Dennis
Dagistino, Alan
Dahlstrom, Steven
D'Albero, Kenneth
Dale, Jacob
Dale, Rachel
Dale, Russell
D'Alessandro, Caterina
D'Alessandro, Mariano
D'Allesandro, Albert
Dalton, James
Daly, Bradley
Daly, Daniel
Daly, Jeannine
Daly, John
Daly, Paul
Damiano, Dominick
Damore, Thomas
D'Ancona, Peter
D'Antonio, Antonio
D'Antonio, Elizabeth
D'Antonio, Louisa, Personal Representative of the Estate of Mary D'Antonio
Danz, Abigail
Danz, Angela, Personal Representative of the Estate of Vincent Danz
Danz, Emily
Danz, Winifred
Danz-Donohue, Angela
Darby, Arthur
Darcy, Kevin
D'Arrigo, Dominic
Davan, Gerard
Daver, Harrold
Davie, Geraldine

21

**Supp. A-123**

Davie, Geraldine, Personal Representative of the Estate of Amy O'Doherty
Davino, Mark
Davis, Jimmie
Davis, Mary
Davis, Tanya
Davis, Tanya, Personal Representative of the Estate of Mannie Leroy Clark
Dawson, Joseph
Dean, Claire
Dean, Donna
Dean, Eleanor
Dean, Jr., Malcolm
Dean, Mark
Dean, Matthew
Dean, Patricia
Dean, Patricia, Personal Representative of the Estate of William Dean
Dean, Sr., Malcolm
Dean, Timothy
DeAngelis, Nicole
DeAngelis, Patricia
DeAngelis, Patricia, Personal Representative of the Estate of Thomas P. Deangelis
DeBlase, James
DeBlase, Joseph
DeBlase, Marion
Deblase, Marion, Personal Representative of the Estate of James V. Deblase, Jr.
DeBlase, Nicholas
Decicco, Vincent
Decort, Rodney
DeFeo, Beril Sofia, Personal Representative of the Estate of David DeFeo
Defeo, Francis
Degeworth, George
DeJong, Kristina
Delano, Kevin
Delehanty, William
DeLellis, Mariellen
Delgado, Rosemarie
Delgrosso, Fred
Delgrosso, Joseph
D'Elia, Robert
Della Bella, James
Della Bella, Vincent
Della Bella, Vincent, Personal Representative of the Estate of Andrea Della Bella
Della Pietra, Christopher
Della Pietra, Christopher, Personal Representative of the Estate of Joseph Della Pietra
Della Pietra, Lisa
Della Pietra, Sandra
Delnick, Kirk

**Supp. A-124**

Deloughery, Amanda
Deloughery, Michael
Deloughery, Michael
Deloughery, Michael, Personal Representative of the Estate of Colleen Ann Deloughery
DeLuca, Marianne
Demaria, Philip
Demarinis, Vincent
Demas, Violetta
Demas, Vivi, Personal Representative of the Estate of Anthony Demas
Demasi, Nicholas
Deming, Brooke
Deming, Brooke, Personal Representative of the Estate of Francis X. Deming
Demitz , Charles
Demitz , Michael
Demitz , Susan
Demitz , Woody
DeNiro Graffino, Anthony
DeNiro, Dana
Denninger, Raymond
Dent, Rudolf
Depaob, James
Depietro, Michael
Desandis, Robert
DeSimone, Christel
DeSimone, Christel, Personal Representative of the Estate of Christian Desimone
DeSimone-Caliso, Martina
Devani, Ila
Deverson, Susanne
Devilliers, Etienne
Devito, Dominick
Devito, Todd
DeVito, Todd, Personal Representative of the Estate of Jerry DeVito
Devitt, Joyce
Devitt, Joyce, Personal Representative of the Estate of Robert Devitt
Devitt, Sr., Robert
Devlin, John
DiAgostino, Carl
DiAgostino, Carlo
DiAgostino, Christina
DiAgostino, Clara
DiAgostino, Donna
DiAgostino, Donna, Personal Representative of the Estate of Michael L. DiAgostino
DiAgostino, Frank
DiAgostino, Paul
DiAgostino, Pauline
Diaz, Belkys

**Supp. A-125**

Diaz, Carmen
Diaz, John
Diaz, John
Diaz, Leocadio
Diaz, Leocadio & Carmen, Personal Representative of the Estate of Nancy Diaz
Diaz, Leonel
Diaz, Milagros
Diaz, Milagros, Personal Representative of the Estate of Lourdes Janet Galletti
Diaz, Raymond
Diaz, Roland
Dick, Gabriel
DiDomenico, Donald
DiDonna, Desiree
Dietrich, Grace
Dietrich, Henry
Dietrich, Kurt
DiFrancesco, Ronald
Digiovanni, Robert
Digiugno, Andrew
Dimaggio, Mark
Dinatale, Michael
Dincuff, Amy
Dincuff, Beth
Dincuff, Frank
Dincuff, Ian
Dincuff, Joan
Dincuff, Joan & Frank, Personal Representative of the Estate of Christopher M. Dincuff
Dinnoo, Andy & Sam, Dhanmatee,  Personal Representative of the Estate of Rena Sam-Dinnoo
Dinnoo, Andy
Diorio, Richard
DiPilato, Joseph
DiPilato, Leo
DiPilato, Maria
DiPilato, Maria, Personal Representative of the Estate of Joseph DiPilato
Dirico, Charles
Disanza, Robert
Distefano, Ann
Distefano, David
Distefano, Frank
Distefano, Frank, Personal Representative of the Estate of Douglas Distefano
Distefano, Sharon
Dixon, John
Diz, Victor
Dje, Ngoran
Dje, Ngoran, Personal Representative of the Estate of Irina Buslo
Dobrinski, Peggy

**Supp. A-126**

Dobson, James
Doherty, Kevin
Doherty, Thomas
Dolan, Brian
Dolan, Charles
Dolan, Mary
Dolan, Michael
Dolan, Samantha
Dolan, Sarah
Dolan, Stacey
Dolan, Stacey, Personal Representative of the Estate of Brendan Dolan
Dolan, Susan
Dolan, Thomas
Donahue, Francis
Donahue, Sean
Donnelly, Stephen
Donnelly, Thomas
Donnery, Timothy
Donohue, Michael
Donohue, William
Donovan, Catherine
Donovan, Joseph
Donovan, Michael
Donovan, William
Dorgan, Michael
Dorman, James
Dorrian, Kevin
Dorritie, Robert
Doucette, Nancy
Dougherty, John
Downey, Charles
Downey, Charles
Downey, Joseph
Downey, Joseph
Downey, Joseph, Personal Representative of the Estate of Raymond M. Downey
Downey, Raymond
Downey, Rosalie
Doyle O'Neill, Mary
Doyle O'Neill, Rosaleen
Doyle, Margaret
Doyle, Mary
Draves, Leonard
Drexler, Joseph
Driscoll, John
Driscoll, Joseph
Driscoll, Richard

**Supp. A-127**

Duarte, Marvin
Dubenskaya, Irina
Dubenskaya, Irina, Personal Representative of the Estate of Eugueni Kniazev
Dubois, Richard
Dubowy, Richard
Duddy, Daniel
Dudley, Bobby
Duffy, Brian
Duffy, Kevin
Duncan, Kevin
Dunlevy, Leslie
Dunn, John
Dunn, Joseph
Dunn, Thomas
Dunn, William
Dunne, Charles
Dunne, Jay
Dunne, Jay, Personal Representative of the Estate of Christopher Joseph Dunne
Dunne, Mary
Dunne-Keenan, Courtney
Dunne-Welch, Cynthia
Dupuis, Jody
Durbin, Irene
Durbin, Irene, Personal Representative of the Estate of Suzanne H. Passaro
Durkin, Erin
Durkin, Erin, Personal Representative of the Estate of Suzanne Geraty
Eagers, Erin
Eagleson, Brett
Eagleson, Gail
Eagleson, Gail, Personal Representative of the Estate of John Bruce Eagleson
Eagleson, Kyle
Eagleson, Timothy
Eagleson, William
Eckna, Carol
Eckna, Richard
Eckna, Stanley
Eckna, Stanley, Personal Representative of the Estate of Paul Robert Eckna
Eckna, Steven
Edgeworth, George
Edwards, Christopher
Edwards, III, Thomas
Edwards, Marilyn
Edwards, William
Efthimiades, James
Egan, Brendan
Egan, Brendan

Case 23-258, Document 117, 06/30/2023, 3536586, Page133 of 240
**Supp. A-128**

Case 1:03-md-01570-GBD-SN   Document 8950-2   Filed 03/23/23   Page 28 of 125

Egan, David
Egan, David
Egan, David, Personal Representative of the Estate of Lisa E. Egan
Egan, David, Personal Representative of the Estate of Samantha M. Egan
Egan, Elizabeth
Egan, Elizabeth
Egan, Lorraine
Ehlberg, Ernest
Ehrlich, Myles
Ehrlich, Ryan
Eiberman, Silvia
Einsfeld, Greg
Eisman, Jillian
Ellis, Sam
Ellis, Sam, Personal Representative of the Estate of Valerie S. Ellis
Ellis, William
Elmendorf, James
Emperor, Thomas
Emperor, Thomas
Endrizzi, Michael
Engel, John
Enia, Joseph
Erb, Kenneth
Erdey, Richard
Erwin, Brendan
Erwin, Eileen, Personal Representative of the Estate of William John Erwin
Erwin-Michael, Eileen
Espinoza, Christian
Espinoza, Luis
Espinoza, Luis, Personal Representative of the Estate of Fanny Espinoza
Espinoza, Stephanie
Esposito, Andrew
Esposito, Denise
Esposito, Denise, Personal Representative of the Estate of Michael Esposito
Esposito, Michael
Estrada, Albert
Eulau, Dennis
Eulau, Dennis, Personal Representative of the Estate of Michele Coyle Eulau
Eulau, Eric
Eulau, Mark
Eulau, Matthew
Evans, Jeanne
Evans, Jeanne, Personal Representative of the Estate of Robert Evans
Fallon Arestivo, Kayla
Fallon, Elizabeth
Fallon, Elizabeth

**Supp. A-129**

Fallon, Kathleen
Fallon, Kenneth
Fallon, Laura
Fallon, Laura, Personal Representative of the Estate of William L. Fallon, Jr.
Fallon, William
Fallone, Alexandra
Fallone, III, Anthony
Fallone, Katherine
Fallone, Patricia
Fallone, Patricia, Personal Representative of the Estate of Anthony J. Fallone
Fallone, Patrick
Fanning, Maureen
Fanning, Maureen, Personal Representative of the Estate of John Fanning
Fanning, Patrick
Fanning, Sean
Farnum, Amy, Personal Representative of the Estate of Douglas Jon Farnum
Farran, David
Farrell Mullen, Kaitlin
Farrell, Colin
Farrell, Dennis
Farrell, Jean
Farrell, Kevin
Farrell, Maryanne
Farrell, Maryanne, Personal Representative of the Estate of John Farrell
Farrell, Molly
Farrell, Patrick
Farrell, Thomas
Fazzino, Joseph
Featherston, Elizabeth
Fedorczuk, Steven
Feehan, Francis
Feeley, James
Feidelberg, Steven
Feidelberg, Steven, Personal Representative of the Estate of Peter Adam Feidelberg
Feinberg Edgette, Tara
Feinberg, Michael
Feinberg, Wendy
Feinberg, Wendy, Personal Representative of the Estate of Alan Feinberg
Feldon, Elisabeth
Felle, Joseph
Felrice, Terry
Fennell, Daniel
Fenner, Ruth
Fenwick, Jill
Ferer, Christy
Ferer, Christy, Personal Representative of the Estate of Neil D. Levin

**Supp. A-130**

Ferguson, Mary
Ferguson, Mary, Personal Representative of the Estate of George J. Ferguson, III
Ferguson, Matthew
Ferguson, Wanda
Ferlisi, Rosario
Fernandez, Julio
Fernandez, Julio, Personal Representative of the Estate of Julio Fernandez
Fernandez, Manuel
Ferranola, Thomas
Ferraro, Edward
Ferrell, Nicole
Ferrer, Salvador
Filomino, James
Finn, James
Finnerman, Terence
Fiore Lacasse, Jessica
Fiore Staiano, Cristen
Fiore, Charlene
Fiore, Charlene, Personal Representative of the Estate of Michael Fiore
Fiore, Frank
Fiore, Michael
Fischbein, David
Fischer, Christopher
Fischer, Lee
Fisher, Carl
Fithian, Robert
Fitton, David
Fitzmaurice, Michael
Fitzpatrick, Mike
Fitzsimmons, Patrick
Flaherty, Liam
Flaherty, William
Flanagan, Hollis
Flanagan, James
Flanagan, Michael
Flannery, Brian
Flannery, Brian, Personal Representative of the Estate of Christina Donovan Flannery
Fleming, Thomas
Fletcher, Joanne
Fletcher, Lori
Fletcher, Lori, Personal Representative of the Estate of Andre G. Fletcher
Fletcher, Thomas
Flore, Donald
Florenco, Daniel
Flugmacher, Howard
Flynn, John

29

Flynn, Joseph
Flynn, Michael
Flynn, Richard
Flyzik, Claudia & Walsh, Nancy, Personal Representative of the Estate of Carol Flyzik
Flyzik, Charles
Flyzik, Claudia
Flyzik, Janet
Flyzik, Mark
Foder, William
Fodor, Gregory
Fogel, Benjamin
Foley, Daniel
Foley, Daniel
Foley, Joanne
Foley, Patricia
Foley, Robert
Foley, Thomas
Folger, Michael
Folger, Robert
Folger, Robert, Personal Representative of the Estate of Jane Claire Folger
Folger, Thomas
Fontaino, Frank
Fontana, Aidan
Fontana, Marian
Fontana, Marian, Personal Representative of the Estate of David J. Fontana
Forcier, Alan
Foris, George
Fornario, Nicholas
Forras, Vincent
Forsyth, Warren
Fortin, Charles
Fossati, Michael
Foster, Kurt
Foster, Kurt, Personal Representative of the Estate of Claudia Foster
Frachiolla, Anthony
Fragapano, Leo
Fragoso, Luis
Francolini, Carol
Francolini, Carol, Personal Representative of the Estate of Arthur Joseph Jones, III
Frank, Peter
Frawley, Tierney, Personal Representative of the Estate of Kevin Frawley
Frazier, Jeanine
Frazier, Jeanine, Personal Representative of the Estate of Clyde Frazier, Jr.
Frazier, Scott
Fredericks, Andrew
Fredericks, Hayley

**Supp. A-132**

Fredericks, Michelle
Fredericks, Michelle, Personal Representative of the Estate of Andrew Fredericks
Freer, James
Fregonese, Lauren
Freund, Dori
Freund, Peter
Freund, Robin
Freund, Robin, Personal Representative of the Estate of Peter L. Freund
Fried, Kenneth
Fried, Kenneth, Personal Representative of the Estate of Arlene E. Fried
Friedlander Del Sindaco, Helen
Friedlander, Helen, Personal Representative of the Estate of Alan W. Friedlander
Friedlander, Steven
Friedman, Daniel
Friedman, Elaine
Friedman, Melvin
Friedman, Michael
Friedman-Clark, Lisa
Friedman-Clark, Lisa, Personal Representative of the Estate of Andrew Friedman
Friscia, Patricia
Froehlich, Laura
Frolich, Timothy
Fry, Caley
Fry, Charles
Fry, Lance
Fry, Meredith
Fry, Meredith, Personal Representative of the Estate of Peter C. Fry
Fry, Michael
Fry, Taylor
Fucella, Daniel
Fuchs, Frederick
Fuentes, Alfredo
Fullam, John
Furland, Daniel
Gabriel, George
Gabriel, Richard
Gabriel, Anne
Gabriel, Anne, Personal Representative of the Estate of Richard P. Gabriel
Gabriel, Christopher
Gabriel, James
Gabriel, Patricia
Gabrieli, Wendi
Gabrielle, Monica
Gabrielle, Monica, Personal Representative of the Estate of Richard S. Gabrielle
Gabrielle, Nicole
Gaffney, Charles

**Supp. A-133**

Gagliano, Johnny
Gaine, John
Galante, Jack
Galasso, Andrew
Gales, Joyce
Galizia, Anne
Gallagher, Celine
Gallagher, Dennis
Gallagher, Francine
Gallagher, Francine, Personal Representative of the Estate of John Patrick Gallagher
Gallagher, James
Gallagher, Robert
Gallicchio, James
Gallo, Anthony
Gallo, Emilio
Gallo, John
Gallo, Lisa
Gallo, Raffaela
Gallogy, Charles
Galperina, Zhanna
Galperina, Zhanna, Personal Representative of the Estate of Arkady Zaltsman
Galusha-Wild, Kristin
Galusha-Wild, Kristin, Personal Representative of the Estate of Michael J. Stewart
Gambino, Philip
Ganassa, Edward
Ganci Cowan, Danielle
Ganci, Christopher
Ganci, III, Peter
Ganci, Kathleen
Ganci, Kathleen, Personal Representative of the Estate of Peter J. Ganci
Gannon, Peter
Gans, Regina
Gans, Regina, Personal Representative of the Estate of Eugene Clark
Garcia Lantigua, Monica
Garcia, Anne
Garcia, Dorothy, Personal Representative of the Estate of Andrew Garcia, Jr.
Garcia, Hector
Garcia, Hector & Carmen, Personal Representative of the Estate of Marlyn C. Garcia
Garcia, Ingrid
Garcia, Isabela
Garcia, James
Garcia, Karmen
Garcia, Kenneth
Garcia, Pedro
Garcia, Rafael
Garcia, Tania

**Supp. A-134**

Garcia, Wanda
Garcia-Bachler, Dorothy
Gardella, Lorraine
Gardella, Lorraine
Gardner, Amy
Gardner, Andrew
Gardner, Elisabet
Gardner, Elisabet, Personal Representative of the Estate of William A. Gardner
Gardner, Elizabeth
Gardner, Elizabeth, Personal Representative of the Estate of Thomas Gardner
Gardner, Joseph
Gardner, Margaret
Gargano, Antonia
Gargiulo, Andrew
Gargiulo, Wayne
Garnett, John
Garofolo, Robert
Gartenberg Pila, Jamie
Gartenberg Pila, Jill
Gartenberg Pila, Jill, Personal Representative of the Estate of James Gartenberg
Gartenberg Pila, Nicole
Gatto, Sharon
Gaudut, Stephen
Geiger, Rudolph
Gelinas, Griffin
Gelinas, Jack
Gelinas, Michelle
Gelinas, Michelle, Personal Representative of the Estate of Peter Gelinas
Geller, Debra
Geller, Debra, Personal Representative of the Estate of Steven Paul Geller
Geller, Hali
Genco, Annalisa
Genco, Diane
Genco, Diane, Personal Representative of the Estate of Peter V. Genco, Jr.
Genco, Victoria
Genovese, Sean
George, Christos
George, Elmeda
George, St. Elmo
Geraty, Eileen
Geraty, Sean
Gerbasio, Kathleen
Germain, Brian
Germain, Michael
Germain, Philip
Germain, Philip, Personal Representative of the Estate of Denis Germain

Germann, Paul
Gerrie, Bruce
Gerrish, Thomas
Gewirezman, Adina
Giaccone, Alexandra
Giaccone, Elizabeth
Giaccone, James
Giaccone, Max
Giaccone, Michael
Giaccone, Sondra
Giaccone, Sondra, Personal Representative of the Estate of Joseph Giaccone
Giaccone, Vincent
Giammarino, Peter
Giannattanasio, Guerino
Giannelli, Kenneth
Gieberied, Bonnie
Gies, Carol
Gies, Carol, Personal Representative of the Estate of Ronnie E. Gies
Gies, Robert
Gies, Ronnie
Gies, Thomas
Gigante, Salvatore
Gilden, Joseph
Gilhooly, Dennis
Gill, Aaron
Gill, Joshua
Gill, Jr., John
Gill, Jr., John, Personal Representative of the Estate of Paul John Gill
Gillard, Norman
Gillespie, Steven
Gillis, II, Rodney
Gillis, Jonique
Gillis, Serina, Personal Representative of the Estate of Rodney C. Gillis
Gill-Martinez, Michelle
Gimpel, Michael
Ginty, Michael
Giordano, Jessica
Giordano, Jonathan
Giordano, Jordan
Giordano, Roxann
Giordano, Roxann, Personal Representative of the Estate of John Giordano
Giorgetti, Alexa
Giorgetti, Armine
Giorgetti, Armine, Personal Representative of the Estate of Steven A. Giorgetti
Giorgetti, Paul
Gitto, Angela

**Supp. A-136**

Gitto, Angela, Personal Representative of the Estate of Salvatore Gitto
Gitto, Gregory
Gitto, Mary
Gitto, Stephen
Gitto, Thomas
Giuffre, Craig
Giuffrida, John
Giugliano, Larry, Personal Representative of the Estate of Cynthia Giugliano
Giugliano, Lawrence
Glazer, Candy
Glazer, Candy, Personal Representative of the Estate of Edmund Glazer
Glazer, Nathan
Gleason, Brian
Gleason, Robert
Gleason, William
Glenn, Birdie Mae
Glenn, Donald
Glenn, Jalen
Glenn, James
Glenn, Jr., Roosevelt
Glenn, Michael
Glenn, Sr., Roosevelt
Glock, Kevin
Glowacz, Peter
Gnazzo, Helene
Gnazzo, John
Gnazzo, Jule
Goffred, Barry
Goldberg Sherer, Jodie
Goldberg, Jodie, Personal Representative of the Estate of Brian Goldberg
Goldberg, Shari
Goldstein, Robyn
Goldstein, William
Goldwasser, Mark
Goller, Donald
Gomez, Awilda
Gonzalez, Mia
Gonzalez, Mia, Personal Representative of the Estate of Lydia Bravo
Gonzalez, Tony
Gooding, Celia
Gooding, Zaya
Gooding, Zaya
Goodman, Francine
Goodrich, Rachel
Goodrich, Rachel, Personal Representative of the Estate of Peter M. Goodrich
Gordon, Gloria-Gigi

**Supp. A-137**

Gordon, Rochelle
Gorgone, John
Gorman, Michael
Gorman, Patrick
Gorman, William
Gould, Richard
Grabner, Stephen
Grace, Kevin
Grace, Michael
Graham, John
Granger, Lanaird
Graziano, John
Green, Christopher
Green, William
Greene, Anthony
Greene, Charles
Greene, Claudette
Greene, Claudette, Personal Representative of the Estate of Donald F. Greene
Greene, Jody
Greene, Karen
Greenleaf, Patricia
Greenleaf, Peter
Greenleaf, Peter, Personal Representative of the Estate of James Arthur Greenleaf
Gregory, Florence
Gregory, John
Gregory, John
Gregory, John, Personal Representative of the Estate of Florence Moran Gregory
Gregory, Michael
Grell, Robert
Grice, Regan
Grice-Vega, Regan, Personal Representative of the Estate of Peter Vega
Grillo, Aurelio
Grillo, Joseph
Grillo, Mary Jo
Grillo, Mary Jo, Personal Representative of the Estate of Joseph Grillo
Grillo, Matthew
Grillo, Michael
Grillo, Steven
Grillo, Timothy
Grogul, Daniel
Gross, Joanne, Personal Representative of the Estate of Thomas Foley
Gross, Keith
Gross, Kristen
Grossberg, Lloyd
Grossi, Daniel
Guardino, Michael

**Supp. A-138**

Guarnieri, Philip
Guarnieri, Thomas
Guibert McGinnis, Iliana
Guise, Steven
Gunther, Frank
Gurian, Eva
Gurian, Susan
Gurian, Susan, Personal Representative of the Estate of Douglas Brian Gurian
Gurian, Tyler
Gurnick, Michael
Gutfleisch, Kevin
Gutierrez de Paz, Blanca Judith
Gutierrez De Paz, Blanca, Personal Representative of the Estate of Victor Hugo Paz Gutierrez
Gutierrez, Luis
Guy, Kevin
Haag Herrmann, Lori
Haag, Kevin
Haag, Mary
Haag, Mary, Personal Representative of the Estate of Gary Haag
Haag, Michael
Haag, Molly
Haag, Robert
Haarman, Paul
Haberman Osmus, Julie
Haberman, Gordon
Haberman, Gordon, Personal Representative of the Estate of Andrea Lyn Haberman
Haberman, Kathleen
Hagerty, Dianne
Hagerty, James
Haggerty, Mary
Halaby, James
Haley, James
Haley, Paul
Hall, Gary
Halpern, Israel
Hamilton, Kenneth
Han, Eric
Han, Floyd
Han, Frank
Han, Kim
Han, Patricia
Han, Patricia, Personal Representative of the Estate of Frederic K. Han
Hands, Joseph
Hanif, Leakat
Hanley, Gary
Hannafin, Dennis

**Supp. A-139**

Hannafin, John
Hannafin, Kayla
Hannafin, Kevin
Hannafin, Patrick
Hannafin, Peter
Hannafin, Rene
Hannafin, Rene, Personal Representative of the Estate of Thomas Hannafin
Hannafin, Thomas
Hansen, Cynthia
Hansen, Kenneth
Hanson Callum, Linda
Hanson, Scott
Haran, Carol
Haran, Carol, Personal Representative of the Estate of James Haran
Harding, Ron
Harkins, Douglas
Harney, Jeremiah
Harnischfeger, Emil
Harrell, Elyse
Harrell, Holly
Harrell, Margaret
Harrell, Margaret, Personal Representative of the Estate of Stephen G. Harrell
Harrell, Marissa
Harrell, Rachel
Harrell, Rachel, Personal Representative of the Estate of Harvey L. Harrell
Harrigan, Timothy
Harrington, Kirk
Harrington, Thomas
Harris Sacket, Elissa
Harris, Craig
Harris, Eugene
Harris, Joseph
Harris, Michael
Harris, Sheila
Harris, Sheila, Personal Representative of the Estate of Stewart D. Harris
Harris, William
Harrison, Deborah
Harrison, Richard
Hart, Janice
Hart, Michael
Hartie, Robert
Hartz, Elinore
Hartz, Elinore, Personal Representative of the Estate of John Clinton Hartz
Harvey, Brian
Harvey, Jennifer, Personal Representative of the Estate of Emeric J. Harvey
Harvey, Michael

**Supp. A-140**

Harvey, Virginia
Harvey-Trainor, Jennifer
Haskell, Francis
Hassett, John
Hawk, James
Hawk, Larry
Hawk, Phyllis
Hayden, Patrick
Hayes Cottoy, Paula
Hayes Cottoy, Paula, Personal Representative of the Estate of Conrod Cottoy, Sr.
Hayes, Jr., Philip
Hayes, Kelly
Hayes, Kelly, Personal Representative of the Estate of Scott J. O'Brien
Hayes, Virginia
Hayes, Virginia, Personal Representative of the Estate of Phillip Thomas Hayes
Hayes, Warren
Haynes, Ann
Haynes, Ann, Personal Representative of the Estate of William Ward Haynes
Haynes, Barbara
Haynes, Elizabeth
Haynes, II, William
Haynes, Leroy
Haynes, Thomas
Haynes-Pepe, Katherine
Haywood, Raymond
Hazel, Melford
Heal, James
Healey, Kathryn
Healey, Matthew
Healey, Michael
Healey, Theresa
Healey, Theresa, Personal Representative of the Estate of Michael Healey
Healy, Brian
Healy, David
Hear, George
Heavey, Stephen
Heffernan, Michael
Heiman, Todd
Helfer, Gregory
Henderson, Doron
Henderson, Eugene
Henderson, Hashim
Henderson, Shirley
Henderson, Shirley & Hashim, Personal Representative of the Estate of Ronnie Lee Henderson
Henderson, William
Henderson, Willie

**Supp. A-141**

Henneberry, Julie
Hennessy, William
Hennigna, Michael
Henricksen, John
Henriquez, Karine
Henry, John
Henry, Thomas
Herlihy, William
Hernandez Melendez, Lidia
Hernandez, Digna
Hernandez, Digna, Personal Representative of the Estate of Raul Hernandez
Hernandez, Wanda
Hernandez, Wanda, Personal Representative of the Estate of Monique E. DeJesus
Hestnes, Jeff
Heymann, Esther
Hickey, Daniel
Hickey, Dennis
Hickey, Donna
Hickey, Donna, Personal Representative of the Estate of Brian Hickey
Hickey, Herbert
Hickey, Joseph
Hickey, Kevin
Hickey, Patrick
Hickey, Sean
Higdon, Karen
Higgins, Joseph
Higley, Amanda
Higley, Judith
Higley, Robyn
Higley, Victoria
Higley, Victoria, Personal Representative of the Estate of Robert Higley
Hinds, Coleen
Hinds, Collin
Hinds, Ethlyn
Hinds, Jameer
Hinds, Karen
Hinds, Karen, Personal Representative of the Estate of Neil Hinds
Hinds, Wade-Roy
Hoag, William
Hobbs Cuffee, Sonya
Hobbs Ginsberg, Tammy
Hobbs Lightfoot, Sherian
Hobbs, Allison
Hobbs, Allison, Personal Representative of the Estate of Thomas A. Hobbs
Hobbs, Dennis
Hobbs, Dennis & Dixie, Personal Representative of the Estate of Tara Yvette Hobbs

**Supp. A-142**

Hobbs, Dixie
Hobbs, Reginald
Hodges, II, James
Hofer, Robert
Hoffman, Donald
Hoffman, James
Hoffman, James, Personal Representative of the Estate of Marcia Hoffman
Hogan, John
Hohlweck, Pamela
Hohlweck, Pamela, Personal Representative of the Estate of Thomas W. Hohlweck, Jr.
Hohmann, Gregory
Hohmann, Matthew
Hohmann, Rosemarie
Hohmann, Rosemarie, Personal Representative of the Estate of Jonathan R. Hohmann
Holder, Ida
Holland McLin, Michele
Holland, Brian
Holland, IV, Joseph
Holland, Kathleen
Holland, Kathleen, Personal Representative of the Estate of Joseph F. Holland, III
Holohan, Caitlyn
Holohan, Colleen
Holohan, Colleen, Personal Representative of the Estate of Thomas P. Holohan
Holohan, III, Thomas
Holohan, John
Holohan, Liam
Holt, Terrence
Hoorn, Dennis
Hoorn, Kara
Hoorn, Katherine
Hoorn, Katherine & Dennis, Personal Representative of the Estate of Bradley Hoorn
Hoppey, Timothy
Horan, Bryan
Horan, Michael
Hornbuckle, Andrew
Hourican, Robert
Howard, Christopher
Howard, Christopher, Personal Representative of the Estate of George G. Howard
Howard, JoAnn
Howard, JoAnn, Personal Representative of the Estate of Joseph L. Howard
Howard, Joseph
Howard, Robert
Howard-Battaglia, Janice
Howell, Andrea
Hoyt, Robert
Hromada, Joseph

**Supp. A-143**

Hromada, Stephen, Personal Representative of the Estate of Milagros Hromada
Hronec, Edward
Hubbard, Morris
Hughes, Christina
Hughes, Karen
Hughes, Karen, Personal Representative of the Estate of Timothy Hughes
Hughes, Kenneth
Hughes, Scott
Hughes, Thomas
Hughes, Timothy
Humphrey, Robert
Humphrey, William
Humphries, Paige
Hunchak, Marie
Hunchak, Marie, Personal Representative of the Estate of Andrew La Corte
Hunt, Christopher
Hunter, Bridget
Hunter, Bridget, Personal Representative of the Estate of Joseph G. Hunter
Hunter, Joseph
Hunter, Sean
Huron, James
Hurson, James
Hurst Rossi, Gwynetta
Hurst, Gwynetta, Personal Representative of the Estate of Shannon L. Adams
Hussa, Kathryn
Hussa, Kathryn, Personal Representative of the Estate of Robert R. Hussa
Hussa, Robert
Hussa, Thomas
Hutchins, Susan
Hutra, Richard
Iammatteo, John
Ianelli, David
Iannazzo, Michael
Iavarone, Michele
Ielpi Major, Yesenia
Ielpi, Andrew
Ielpi, Austin
Ielpi, Lee
Ielpi, Yesenia, Personal Representative of the Estate of Jonathan Ielpi
Iglesais, Rafael
Ilkanayev, Yelena, Personal Representative of the Estate of Daniel Ilkanayev
Ill, III, Frederick
Ill, Mary
Ill, Mary, Personal Representative of the Estate of Frederick J. Ill, Jr.
Ilowitz, Chaim
Ilowitz, David

**Supp. A-144**

Ilowitz, Lillian
Ilowitz, Lillian, Personal Representative of the Estate of Abraham Ilowitz
Incantalupo, Michael
Infanzon, Lloyd
Ingram, Eartha
Ingram, William
Inserra, Sheila
Ioveno, Peter
Irby, Addison
Irby, Agnes
Irby, Frederick
Irby, Kenneth
Irby, Kenneth, Personal Representative of the Estate of Stephanie Irby
Ireland, Edward
Isabella, Salvatore
Iskyan, Carol
Iskyan, Carolynn
Iskyan, Laura
Iskyan, Margaret
Iskyan, Margaret, Personal Representative of the Estate of John Francis Iskyan
Iskyan, Paul
Iskyan, Peter
Isolano, Andrew
Issacof, Neta
Itzkowitz, Cindy
Jablonski, Joseph
Jackman, Barbara
Jackman, Erin
Jackman, Robert
Jackman, Robert, Personal Representative of the Estate of Brooke Alexandra Jackman
Jackman, Ross
Jackson, Daniel
Jacobs, Claudia
Jacobs, Daniel
Jacobs, Jennifer
Jacobs, Jennifer, Personal Representative of the Estate of Ariel Louis Jacobs
Jacobs, Melvin
Jacobs, Veronica
Jagoda, John
Jakubiak, Christopher
Jakubiak, Joanna
Jakubiak, Kazimierz
Jakubiak, Kazimierz, Personal Representative of the Estate of Maria Jakubiak
Jakubiak, Pawel
Jakubowski, Peter
James, Alan

**Supp. A-145**

James, Howard
James, Valerie
Janelli, Brian
Jankowski, Thaddeus
Jankunis, Joseph
Janoscak, Richard
Jasko, Matthew
Jennerich, William
Jensen, Lawrence
Jensen, Peter
Jensen, Walter
Jermyn, John
Jessamine, Stanley
Jhagroo, Desmond
Joglar, Eric
John Morell, Jr., Gaspar
Johnsen, Paul
Johnson, Anita
Johnson, Brian
Johnson, Byron
Johnson, Dan
Johnson, Keith
Johnson, Nathanial
Johnston, Joy
Johnston, Joy, Personal Representative of the Estate of William Johnston
Johnston, Robert
Johnston, Robert
Johnston, William
Jonas, Leroy
Jones, Cary
Jones, Charlotte
Jones, Jeffrey
Jones, Joseph
Jones, Julia
Jones, Peter
Jones, Robert
Jones, Scott
Jordan Stewart, Anne
Jordan, Peter
Jordan, Vincent
Jordan-Hart, Kathleen
Jorgensen, Niels
Joseph Brodsky, Irwin
Joseph, Henri
Joseph, Jacqueline
Joseph, Leila

44

**Supp. A-146**

Joseph, Leila & Woodly, Personal Representative of the Estate of Karl H. Joseph
Joseph, Ted
Joseph, Woodly
Joyce, John
Judge, Mary
Jurczyk, Doreen
Jurgiel, Kazimierz
Jutt, William
Kadillak, Joseph
Kaiser, Keith
Kakeh, Gary
Kalahasthi, Prasanna
Kalletta, William
Kandell, Beatrice
Kandell, Beatrice , Personal Representative of the Estate of Shari Kandell
Kandell, Jan
Kandell, Steven
Kane, Jennifer
Kane, Thomas
Karp, Daniel
Kates, Daniel
Kates, Hannah
Kates, Lucy
Katsimatides, Anthoula
Katsimatides, Antonios
Katsimatides, Calliope
Katsimatides, George
Katsimatides, George, Personal Representative of the Estate of John Katsimatides
Kaufman, Paul, Personal Representative of the Estate of Scott Martin McGovern
Kay, James
Kazanecki, Suanne
Kazi, Rose
Kazimierz, Jurgiel
Keane, Daniel
Keane, Robert
Kearns, Kenneth
Keating, Robert
Keegan, William
Keery, Thomas
Kelleher, Michael
Keller, Brandon
Keller, Gavin
Keller, Kathryn
Keller, Richard
Keller, Robert
Keller-Baker, Elizabeth

**Supp. A-147**

Keller-Baker, Elizabeth, Personal Representative of the Estate of Chandler R. Keller
Kellerman Fox, Pamela
Kellerman, Elyssa
Kellerman, Roberta
Kellerman, Roberta, Personal Representative of the Estate of Peter R. Kellerman
Kellett, Cameron
Kellett, Julie
Kellett, Patricia
Kellett, Patricia, Personal Representative of the Estate of Joseph P. Kellett
Kelley, Jill
Kelly Fabbri, Christine
Kelly, Brian
Kelly, Caroline
Kelly, Caroline
Kelly, Catherine
Kelly, Christopher
Kelly, Emmet
Kelly, James
Kelly, James
Kelly, James, Personal Representative of the Estate of Thomas Richard Kelly
Kelly, Jill
Kelly, John
Kelly, John
Kelly, Julie, Personal Representative of the Estate of Timothy C. Kelly
Kelly, Kevin
Kelly, Mary
Kelly, Maureen
Kelly, Maureen, Personal Representative of the Estate of Mark Ludvigsen
Kelly, Robert
Kelly, Robert
Kelly, Shawn
Kelly, Susan
Kelly, Susan, Personal Representative of the Estate of Joseph Anthony Kelly
Kelly, Suzanne
Kelly, Thomas
Kelly, Timothy
Kelly-McCormick, Julie
Kelton, John
Kemmet, Daniel
Kemmet, Sr., Daniel
Kemper, Michael
Kempton, Rosemary
Kempton, Rosemary, Personal Representative of the Estate of Rosemary A. Smith
Kennedy, Donald, Personal Representative of the Estate of Yvonne Estelle Kennedy
Kennedy, Gerard
Kennedy, Jeanne

**Supp. A-148**

Kennedy, Joseph
Kennedy, Leigh
Kennedy, Maureen
Kennedy, Maureen, Personal Representative of the Estate of Robert C. Kennedy
Kennedy, Simon
Kenny, Richard
Kerbis, Dennis
Kerin, Kerry
Kerr, Kenneth
Khait, Laura
Khalif, Ella
Khalif, Ella, Personal Representative of the Estate of Boris Khalif
Khalif, Steven
Kiefer, Lauren
Kiefer, Paul, Personal Representative of the Estate of Brian Warner
Kielty, John
Kilcoyne, John
Kilfoil, Roger
Killeen, Joseph
Kim, Hwa
Kim, Jin Hee
Kim, Jin, Personal Representative of the Estate of Hyun Joon Lee
Kim, Paul
Kim, Paul, Personal Representative of the Estate of Andrew Jay-Hoon Kim
Kim, William
King, Christopher
King, Elizabeth
King, Stephen
King, Theresa
King, Theresa, Personal Representative of the Estate of Robert King, Jr.
King, Thomas
King, William
Kinne, Kathleen
Kirk, John
Kissane, Patrick
Klares, Douglas
Klares, Jr., Richard
Klares, Scott
Klares, Veronica
Klares, Veronica, Personal Representative of the Estate of Richard J. Klares
Klein Girouard, Nicole
Klein, Jason
Klein, Richard
Klein, Richard, Personal Representative of the Estate of Julie Lynne Zipper
Klitzman, Donna
Klitzman, Donna & Susan, Personal Representative of the Estate of Karen Klitzman

**Supp. A-149**

Klitzman, Robert
Klitzman, Susan
Kluth, Winfield
Kmak, Robert
Knoth, William
Knox , Stuart
Knox, Marion
Knox, Stuart, Personal Representative of the Estate of Marion Knox
Knutsen, Eric
Kobes, Craig
Kogan, Yefim
Kotov, Charles
Kowalcezyk, Walter
Kozak, Michael
Krakower, Steven
Kraljic, Susan
Krinsky, Donna
Krist, Jeremy
Kropf, Frank
Kross, Catherine
Kuerner, Richard
Kulik, Kathleen
Kull, Michael
Kumar, Nadadur, Personal Representative of the Estate of Pendyala Vamsikrishna
Kuper, Carlos
La Corte, Peter
LaBarbera, Jaclyn
Labarbera, John
Labo, Teresa
Lacerra, Richard
Lacey, Robert
Lachhman, Raymond
Ladley, Elizabeth
Ladley, James
Ladley, Sheri, Personal Representative of the Estate of James P. Ladley
Ladley-Calamusa, Sheri
LaForte, Andrea
LaForte, Frances
LaForte, Frances, Personal Representative of the Estate of Michael P. LaForte
LaForte, Michael
LaForte, Raymond
LaFrance, Edlene
LaFrance, Edlene, Personal Representative of the Estate of Alan Charles LaFrance
Lafuente Rockett, Ruth
Lafuente, Catherine
Lafuente, Christine

48

**Supp. A-150**

Lafuente, Colette
Lafuente, Colette, Personal Representative of the Estate of Juan M. Lafuente
Lafuente, Jorge
Lafuente, Jose
Lahoda, Erik
Laieta, Anthony
Laieta, Carol
Laieta, Carol, Personal Representative of the Estate of Vincent A. Laieta
Laieta, Josephine
Laieta, Kevin
Laieta, Vincent
Lally, Michael
LaMantia, Emily
LaMantia, Kimberly
LaMantia, Stephen
Lamantia, Kimberly, Personal Representative of the Estate of Stephen Lamantia
Lamazza, Lance
Lambdin, Raymond
Lamonsoff, Morris
Lamonsoff, Morris, Personal Representative of the Estate of Amy Hope Lamonsoff
Lamonsoff, Steven
Lampart, Tina
Lang, Donald
Lang, Gary
Lang, Gerard
Lang, James
Lang, Martin
Lang, Martin
Lang, Mary
Lang, Richard
Lang, Richard
Lang, Rose
Lang, Timothy
Lang, William
Lanza, Patrick
Lapin, David
Larocca, Christopher
Larosa, Michael
Larry, Harlene
Larry, Harlene, Personal Representative of the Estate of Hamidou S. Larry
Larry, Rasheed
Larry, Sheriffa
Lasher, Joseph
Lasko, Deborah
Lasko, Kim
Lasko, Kim, Personal Representative of the Estate of Gary E. Lasko

49

**Supp. A-151**

Lassman, Ellen
Lassman, Ira
Lassman, Laura
Lassman, Laura, Personal Representative of the Estate of Nicholas Lassman
Lastella, Robert
Lauer, James
Lauterbach, Laurie
Lauterbach, Laurie, Personal Representative of the Estate of Carlos Cortes
Lavin, Joseph
Lavin, Patrick
Lawler, Jeanne
Layton, John
Lazaar, Houssain
Leach, Chad
Leaflight, Nathan
Leahy, Daniel
Leahy, John
Leahy, Jr., James
Leahy, Marcela
Leahy, Marcela, Personal Representative of the Estate of James P. Leahy
Leahy, William
Leamy, Michael
Leandro, Frank
LeBlanc, Andrea
Leblanc, Andrea, Personal Representative of the Estate of Robert G. LeBlanc
LeBlanc, Carolyn
LeBlanc, John
LeBlanc, Paul
Leclair, Joseph
Ledwith, Woody
Lee, Edward
Lee, Jiunn-Yih
Lee, Jr., Ronald
Lee, Karen
Lee, Karen, Personal Representative of the Estate of Richard Yun-Choon Lee
Lee, Mei
Lee, Philip
Lee, Philip & Jy, Mei, Personal Representatives of the Estate of Yang Der Lee
Lee, Stephen
Lee, Yi Yann
Lee, Zachary
Leecock, Artie
Lefebvre, Daniel
Lefkaditis, Christos
Legree, Delores
Legree, Delores, Personal Representative of the Estate of Anthony Hawkins

**Supp. A-152**

Legree, Hafeezah
Legro Diaz, Juan
Legro, Jeanette
Legro, Maria
Legro, Maria, Personal Representative of the Estate of Adriana Legro
Leibman, James
Leinung, Elaine
Leinung, Elaine, Personal Representative of the Estate of Paul Battaglia
Leinung, Eric
Leinung, John
Leinung, Kristen
Leistman, Brian
Leistman, Donald, Personal Representative of the Estate of David R. Leistman
Leistman, Maryclair
Lembo, Jean
Lembo, Joseph
Lemonda, Richard
Lenahan, Kevin
Lenihan, Ingrid
Lenihan, Ingrid, Personal Representative of the Estate of Joseph A. Lenihan
Lenihan, John
Lennon, Hugh
Lennon, John
Lenoir, Andrew
Lenoir, Courtney
Lenoir, Susan
Lenoir, Susan, Personal Representative of the Estate of John Robinson Lenoir
Lent, Thomas
Leonardi, Elizabeth
LeVeen, Andrew
LeVeen, Christine
LeVeen, Christine, Personal Representative of the Estate of Jeffrey E. LeVeen
LeVeen, Jr., Jeffrey
LeVeen, Kathryn
LeVeen, Margaret
Levendosky, John
Lever, Jeff
Levien, Vincent
Levine, Roberta
Levine, Roberta, Personal Representative of the Estate of Robert M. Levine
Levinson, Abraham
Lewis, Cynthia
Lewis, James
Lewis, Jerline
Lewis, Jerline, Personal Representative of the Estate of Sherry Ann Bordeaux
Lewis, John

**Supp. A-153**

Lewis, Melvin
Lewis, Melvin & John, Personal Representative of the Estate of Margaret Lewis
Lewis, Patricia
Lewis, Steve
Lillo, Haydee
Lillo, Haydee, Personal Representative of the Estate of Carlos Lillo
Lind, Daniel
Lindy, Michael
Linehan, Dennis
Lipari, Joseph
Lipari, Michael
Littlejohn, Ronald
Lizzul, Lance
Lodato, Robert
Loeffler, Deborah
Loehmann, Edward
Lombardi, Frank
Lombardi, Michael
Lombardo, Stella
Lonegan, Thomas
Lonergan, George
Lonergan, Stephen
Lopatin, Joan
Lopez, Christine
Lopez, Jenny
Lopez, Manual
Lopez, Robert
Loporcaro, Michael
Losacco, Charles
Lotito, Mark
Louis, Vincent
Lovett, John
Lozier, Evan
Lozier, Karoline
Lozier, Kathleen
Lozier, Kathleen, Personal Representative of the Estate of Garry W. Lozier
Lozier, Olivia
Lucchesi, Lauren
Luciani, Edward
Luciano, Mary
Luisi, Steven
Luisi, Vincent
Lukas, Marie
Lukas, Marie, Personal Representative of the Estate of Marie Lukas
Lumia, Salvatore
Lun, David

**Supp. A-154**

Lunden, Mark
Lunden, Michelle, Personal Representative of the Estate of Michael P. Lunden
Lutfi, Adam
Lynch, Barbara
Lynch, Barbara, Personal Representative of the Estate of Robert W. O'Shea
Lynch, Carol
Lynch, Mary
Lynn Birch, Cathy
Lynn, David
Lyons, Thomas
Lysy, Christian
Macadlo, Leigh
Macagnone, Gregory
Macaluso, Jack
Macdonald, Michael
MacFarlane, Anne
MacFarlane, Anne, Personal Representative of the Estate of Marianne MacFarlane
MacFarlane, George
Macfarlane, Joseph
Machcinski, Mary Ellen
Machinksi, Mary & Joseph (Pfeifer), Personal Representative of the Estate of Kevin Pfeifer
Mackenzie, Lisanne
Mackenzie, Lisanne, Personal Representative of the Estate of James P. O'Brien, Jr.
Mackl, Michael
Macri, Frank
Madamas, Patricia
Madden, Robert
Maffeo, Andrea
Maffeo, Andrea, Personal Representative of the Estate of Jennieann Maffeo
Maffeo, Frances
Maffeo, Joseph
Maffeo, Sam
Maggi, Joseph
Maggitti, Christopher
Maggitti, Pamela
Maggitti, Pamela, Personal Representative of the Estate of Joseph Vincent Maggitti
Magliulo, Julie
Maguire, Kristin
Mahabir, Sandy
Mahon, James
Mahoney, Patrick
Mair Wells, Irene
Mair, Annette
Mair, Lloyd
Mair, Roger
Maisano, Frank

**Supp. A-155**

Majors, Andre
Majors, Andrew
Makshanov, Natalie
Makshanov, Natalie, Personal Representative of the Estate of Jason M. Sekzer
Makuch, Glen
Malatesta, Patricia
Maldonado, Chris
Maldonado, Jr., Otelio
Maldonado, Jr., Otelio, Personal Representative of the Estate of Debora Maldonado
Maldonado, Krystal
Maloney, Cecil
Maloney, Patrick
Maloney, Timothy
Maloney, Toni
Mandell, Deborah
Mandia, Robert
Manetta, Frank
Mangus, Thomas
Maniscalco, Charles
Manitta, James
Manning, Gregory
Mannion, William
Manochio, Daniel
Manzi, Kelly
Manzie, Wayne
Marashaj, Leon
Marcano, Felipe
Marcelliano, Ann
Marchand, Rebecca
Marchand, Rebecca, Personal Representative of the Estate of Alfred G. Marchand
Marchese, Anthony
Marchese, Lorraine
Marchese, Lorraine, Personal Representative of the Estate of Laura A. Giglio
Marchese-Collins, Cathy
Marcoux, Edmond
Marcoux, Robert
Margino, Richard
Marinelli, Mary
Marion, Steve
Mark, John
Marley, Lawrence
Marr, John
Marrero, Erik
Marrese, Patricia
Marrow, Felice
Marshall, Meryl

Martin, Isa
Martin, James
Martin, John
Martin, John, Personal Representative of the Estate of Karen A. Martin
Martin, Paul
Martin, Susan
Martin, Willam
Martineau, Bettyann
Martineau, Bettyann, Personal Representative of the Estate of Brian E. Martineau
Martineau, Cathleen
Martineau, Chelsea
Martineau, Jr., Edward
Martineau, Ronnah
Martineau, Scott
Martinez, Irma
Martinez Diaz, Amanda
Martinez, Dario
Martinez, Doris
Martinez, Doris
Martinez, Jr., Juan
Martinez, Reinaldo
Martinez, Sr., Juan
Martinez, Sr., Juan, Personal Representative of the Estate of Waleska Martinez
Martinez, William
Martino, Antonio
Martorana, Michael
Marzocchi, Patricia
Mascali, Christopher
Mascali, Jennifer
Mascali, Katelyn
Mascali, Lori
Mascali, Lori, Personal Representative of the Estate of Joseph Mascali
Mascarenhas, Jaclyn
Mascarenhas, Raynette
Mascarenhas, Raynette, Personal Representative of the Estate of Bernard Mascarenhas
Mascarenhas, Sven
Masciolo, Rocco
Massaria, Christopher
Massarotti, John
Mastrodomenico, Thomas
Mastros, Marc
Matteo, Daniel
Mattone, Anthony
Maurice, Garry
Mauro, Dorothy, Personal Representative of the Estate of Charles A. Mauro
Mauro-Jastremski, Dorothy

**Supp. A-157**

May, Thomas
Mayer, Arsen
Mayer, Arsen, Personal Representative of the Estate of Irina Kolpakova
Maynard, Kevin
Maynard, Pearl
Maynard, Pearl, Personal Representative of the Estate of Keithroy Maynard
Maynard, Vernon
Maynes, Robert
Mayo, Corbin
Mayo, Meryl, Personal Representative of the Estate of Robert Mayo
Mayronne, Richard
Mazalatis, Gary
Mazzarello, Joseph
Mazzeo, Lori
McAlary, Ann
McAlary, Bryan
McAlary, James
McAlary, Jeanne
McAlary, Jeanne, Personal Representative of the Estate of James J. McAlary
McAlary, Jillian
McAlary, John
McAlary, Joseph
McAllister, Carolyn
Mcardle, Kevin
Mcaree, Thomas
Mcavoy, Brian
McBrien, Sean
Mcburney, James
Mccabe, Edward
Mccabe, Kevin
Mccaffery, Steven
Mccaffrey, Thomas
Mccamphill, Edward
Mccann, John
McCarthy O'Leary, Mary
McCarthy O'Leary, Mary, Personal Representative of the Estate of Gerald Thomas O'Leary
McCarthy, Ann
McCarthy, Ann, Personal Representative of the Estate of Robert G. McCarthy
McCarthy, Betty Ann
McCarthy, Betty Ann, Personal Representative of the Estate of Justin McCarthy
McCarthy, Chris
McCarthy, Dennis
McCarthy, James
McCarthy, Lauren
McCarthy, Margaret
Mccarthy, Neil

**Supp. A-158**

McCarthy, Shane
McCarthy, William
McCarthy, William
McCarthy, William, Personal Representative of the Estate of Michael McCarthy
Mcclutchy, Harold
Mccormack, Christopher
Mccormack, Patrick
Mccoy, Irving
McCrann, Derek
McCrann, Maxine
McCrann, Michelle
McCrann, Michelle, Personal Representative of the Estate of Charles A. McCrann
Mccutchan, Kevin
McDermott, Susan
McDermott, Susan, Personal Representative of the Estate of Matthew T. Mcdermott
McDermott, Virginia
Mcdonald, John
Mcdonald, Kelly
Mcdonough, Daniel
Mcdonough, David
Mcdowell, Kevin
McDowell, Patricia
McDowell, Patricia, Personal Representative of the Estate of John F. McDowell, Jr.
Mcelhone, Charles
McEneany, Wendy
Mcenroe, Gregory
McErlean Gerstenfeld, Allison
McErlean, Mary Beth
McErlean, Mary Beth, Personal Representative of the Estate of John T. McErlean, Jr.
McErlean, Mary Kate
McErlean, Ryan
McErlean, Timothy
Mcevoy, Patrick
Mcfarland, Joann
Mcfarland, Michael
Mcgann, Terrence
Mcgetrick, James
Mcgill, Shaun
McGinley, Anne
McGinley, Constance
McGinley, Dennis
McGinley, Madeline
McGinley, Margaret
McGinley, Margaret, Personal Representative of the Estate of Daniel F. McGinley
McGinley, Martin
McGinley, Michael

**Supp. A-159**

McGinley, Patrick
McGinley, Peter
McGinley, Terence
McGinley, Thomas
McGinnis, Caitlin
McGinnis, Iliana, Personal Representative of the Estate of Thomas Henry Mcginnis
McGinnis, James
McGinnis-Daly, Patricia
McGinty James, Erin
McGinty, Cynthia
McGinty, Cynthia, Personal Representative of the Estate of Michael Gregory McGinty
McGinty, Daniel
McGinty, David
McGinty, Sandra
Mcgivney, Patrick
Mcgonigle, John
McGovern, Alana
Mcgovern, Cornelius
Mcgovern, David
McGovern, Elizabeth
McGovern, Jill
Mcgovern, Joseph
McGovern, Lawrence
McGovern, Nicole
Mcgovern, Owen
McGovern, Theresa
McGovern, Theresa, Personal Representative of the Estate of Ann W. McGovern
Mcgowan, Kevin
Mcguire, Brian
Mcguire, Robert
Mchugh, Thomas
Mcinerney, Tim
McInnes, Margaret
Mckay, James
Mckee, Walter
Mckeever, Brain
Mckenna, Thomas
Mckeon, Shawn
McKinney, Dallas
McKinney, Darryl
McLaughlin, Ann
Mclaughlin, Christopher
McLaughlin, Dorothy
McLaughlin, George
Mclaughlin, John
McLaughlin, Linda

**Supp. A-160**

McLaughlin, Sheri
McLaughlin, Sr., George, Personal Representative of the Estate of George P. McLaughlin, Jr.
Mclaughlin, William
McMahon, Ann
Mcmahon, Joseph
Mcmenamy, Paul
McMullen, Cherilyn
Mcnally, William
Mcnamara, James
Mcnamara, John
McNeil, Anne
McNeil, Anne, Personal Representative of the Estate of Martin Michelstein
Mcnulty, Gary
McNulty, Joseph
McNulty, Michael
Mcparland, Gerard
McQueen, Ellen
McSweeney, Debra
McSweeney, Debra, Personal Representative of the Estate of Timothy Patrick McSweeney
McSweeney, Dennis
McSweeney, Dennis
McSweeney, Katherine
McSweeney, Margaret
McSweeney, Patrick
Meadows, Robert
Medeiros, Philip
Medordi, Paul
Medordi, Vincent
Meehan, Joann
Meehan, Joann, Personal Representative of the Estate of Damian Meehan
Meehan, Jr., Damian
Meehan, Kevin
Meehan, Madison
Melamed, Malka
Melendez, Lidia, Personal Representative of the Estate of Mirna A. Duarte
Melfi, Kevin
Melillo, Michael
Melody, Kevin
Melton, Pamela
Melvin, James
Meo, Richard
Meola, Joseph
Mercado, Anthony
Mercado, Austin
Mercado, Joviana
Mercado, Joviana, Personal Representative of the Estate of Steve Mercado

**Supp. A-161**

Mercado, Jr., Louis
Mercado, Mary
Mercado, Skylar
Mercado, Sr., Louis
Merino, Olga
Merino, Olga, Personal Representative of the Estate of George L. Merino
Merino, Tania
Merkouris, Elizabeth
Merkouris, Elizabeth
Merkouris, Jack
Merkouris, Jacob
Merkouris, Koula
Merkouris, Koula, Personal Representative of the Estate of George Merkouris
Merkouris, Steve
Metzemaekers, Meghan
Meyer, Kimberly
Meyers, Dennis
Micko, Antonia
Milewska, Anna
Milewska-Podejma, Kamila
Milewski, Frederyk
Milewski, Frederyk & Anna, Personal Representative of the Estate of Lukasz Milewski
Millan, Christina
Millan, Mauricio
Miller, Amber
Miller, Amber & Jamie, Personal Representative of the Estate of Karen Juday
Miller, Beatrice
Miller, Cathleen
Miller, Diane
Miller, Diane, Personal Representative of the Estate of Henry A. Miller, Jr.
Miller, Dina
Miller, Edward
Miller, Faith
Miller, Faith, Personal Representative of the Estate of Robert Alan Miller
Miller, Henry
Miller, James
Miller, Jamie
Miller, Marjorie
Miller, Marjorie, Personal Representative of the Estate of Joel Miller
Miller, Neil
Miller, Steven
Miller, Wayne
Milner, Michael
Milone, Derrick
Mimnaugh, Donald
Minardi, Christine

**Supp. A-162**

Minardi, James
Minardi, Robert
Minardi, Stephanie
Minardi, William
Minervino, Barbara
Minervino, Barbara, Personal Representative of the Estate of Louis J. Minervino
Minervino, Laina
Minervino, Marisa
Mingione, Amanda
Mingione, Jennifer
Mingione, Jennifer, Personal Representative of the Estate of Thomas Mingione
Minutoli, Louis
Miranda, Richard
Miskanic, John
Missall, Mark
Mixon, John
Miynarczyk, Joseph
Modafferi, Joanne
Modafferi, Joanne, Personal Representative of the Estate of Louis J. Modafferi
Modafferi, Joseph
Modafferi, Michael
Modica, Anthony
Modica, Steve
Modine, Amon
Mojica, Anna
Mojica, Anna, Personal Representative of the Estate of Manuel Mojica, Jr.
Mojica, Letty
Mojica, Manny
Mojica, Stephanie
Molczyk, Janet & Timothy
Mollica, Frank
Molnar, Peter
Moloney, Paul
Monahan, Christopher
Monahan, Terrence
Monahan, Diane
Monahan, Diane, Personal Representative of the Estate of John G. Monahan
Monchery, Alwish
Mondelli, Frank
Monfre, Paul
Mongiello, John
Monroe, Warren
Montalto, Dominick
Montalvo, Jose
Montalvo, Yvette
Montanaro, Joseph

**Supp. A-163**

Montes, Elizardo
Montgomery, Kevin
Moody, Kenneth
Moore, Frank
Moore, Gary
Moore, Michael
Moore, Robert
Moore, Thomas
Moorthy, Anitha
Moorthy, Saradha
Moorthy, Saradha, Personal Representative of the Estate of Krishna Moorthy
Moorthy, Sriram
Moran, James
Moran, John
Moran, William
Morell, Mark
Morell Shea, Rita
Morell, Anthony
Morell, Jr., George
Morell, Kelsey
Morell, Roberta
Morell, Roberta, Personal Representative of the Estate of George W. Morell
Morgenstern, Harvey
Morgenstern, Howard
Morgenstern, Jeffrey
Morgenstern, Suri
Morgenstern, Suri, Personal Representative of the Estate of Nancy Morgenstern
Mormino, Donald
Moroney, Brian
Moroney, Elizabeth
Moroney, Kevin
Moroney, Michael
Moroney, Nancy
Moroney, Nancy, Personal Representative of the Estate of Dennis Moroney
Moroney, Timothy
Morrales, Alberto
Morris, Robert
Morris, William
Morrison, Henry
Morrison, Laura
Morrissey, Edward
Morrone, Blanca
Morrone, Kevin
Morrongiello, John
Mosley Marcus, Audrey
Moss, Elizabeth, Personal Representative of the Estate of Linda Oliva

**Supp. A-164**

Motroni, Christopher
Motroni, Emily
Motroni, Emily, Personal Representative of the Estate of Marco Motroni
Mottola, Joseph
Motyka, Frank
Mount, Kevin
Mrozek, Jerzy
Mucciola, John
Muia, Anthony
Mulhern, Richard
Mullady, Mark
Mullane, Kevin
Muller, William
Mulligan, Hugh
Mulligan, Kenneth
Mullins, Daniel
Mullins, James
Mulroy, Brendan
Mulry, Brian
Munda, Leonard
Muniz, Raul
Munoz, Michael
Murad, Murray
Murath, Jonathan
Murdock, Lindsey
Murolo, Angela
Murolo, Angelo
Murolo, Cathy, Personal Representative of the Estate of Marc A. Murolo
Murolo, Dominick
Murphy Lewis, Lauren
Murphy Trayner, Elvira
Murphy, Elizabeth
Murphy, Elizabeth
Murphy, Elizabeth, Personal Representative of the Estate of Charles A. Murphy
Murphy, Elvira, Personal Representative of the Estate of Patrick Sean Murphy
Murphy, Jesse
Murphy, John
Murphy, Keith
Murphy, Kevin
Murphy, Lauren, Personal Representative of the Estate of Matthew T. O'Mahony
Murphy, Lori-Jean
Murphy, Margaret
Murphy, Michael
Murphy, Patrick
Murphy, Robert
Murphy, Sean

**Supp. A-165**

Murphy, Steven
Murphy, Thomas
Murphy, Thomas
Murray, Daniel
Murray, Franklin
Murray, John
Murray, Kevin
Murtha, Gerard
Musto, Michael
Muszel, Leticia
Myers, Arthur
Myers, Frank
Myhre, Gail, Personal Representative of the Estate of Richard Todd Myhre
Myhre, Jonathan
Naccarato, Enrica
Naccarato, Enrica, Personal Representative of the Estate of Lorraine Lisi
Naiman, Richard
Naiman, Richard, Personal Representative of the Estate of Mildred R. Naiman
Naiman, Russell
Naiman, William
Nanna-Montgomery, Andrea
Naples, Richard
Napoli, Joseph
Nardone, Joseph
Narvaez, Reynaldo
Natale, Louisa
Navarro, Edward
Navarro, Edward, Personal Representative of the Estate of Karen Susan Navarro
Navarro, Elizabeth
Navarro, Sharon
Neary, III, Thomas
Nebel, Robert
Negron, Ralph
Nelson, David
Nelson, Delroy
Nelson, Sharon Baker-Gual & David, Personal Representative of the Estate of Kerene Gordon
Nelson, William
Nelson, William, Personal Representative of the Estate of Theresa Risco
Neville, James
Newell, John
Newen, Peter
Newman, Steven
Newman, Thomas
Nichols, Stephen
Nicholson, Mary
Nicholson, Mary

**Supp. A-166**

Nicholson, Mary, Personal Representative of the Estate of Mary Kathleen Shearer
Nicholson, Mary, Personal Representative of the Estate of Robert Shearer
Nicoletti, Gerard
Nicosia, George
Nicosia, George, Personal Representative of the Estate of Kathleen Anne Nicosia
Niebler, Robert
Nigro, Paul
Nita-Gallo, Manuela, Personal Representative of the Estate of Cono Gallo
Nita-Vazquez, Manuela
Nix, Jeffrey
Noah, Patricia
Noble, Nancy
Nocella, Albert
Noeth, Allen
Noeth, Merrilly
Noeth, Merrilly, Personal Representative of the Estate of Michael Allen Noeth
Nolan, William
Noney, Alexander
Noonan Robertson, Anne
Noonan, Anne
Noonan, Ashley
Noonan, Charles
Noonan, Dana
Noonan, Dana, Personal Representative of the Estate of Robert Walter Noonan
Noonan, Daniel
Noonan, Kelly
Noonan, Walter
Novotny, Daniel
Novotny, John
Novotny, Kevin
Novotny, Mary
Novotny, Michael
Novotny, Robert
Novotny, William
Novotny, William
Novotny, William & Michael, Personal Representative of the Estate of Brian C. Novotny
Nugent, Melinda
Nussbaum, Arline
Nussbaum, Arline, Personal Representative of the Estate of Jeffrey Nussbaum
Nussbaum, Craig
O'Brien, Martha, Personal Representative of the Estate of Thomas M. Butler
O'Neil Morell, Harrison
Obermayer, Richard
O'Brien, Aiden
O'Brien, Gregory
O'Brien, Joan

O'Brien, John
O'Brien, Joseph
O'Brien, Martha
O'Brien, Richard
O'Brien, Sean
O'Brien, Steven
O'Connell, Clare
O'Connell, Michael
O'Connor, Amanda
O'Connor, Charlene
O'Connor, Christopher
O'Connor, Dennis, Personal Representative of the Estate of Dennis O'Connor, Jr.
O'Connor, Erin
O'Connor, John
O'Connor, Lynne
O'Connor, Lynne, Personal Representative of the Estate of Richard J. O'Connor
O'Connor, Matthew
O'Connor, Patrick
O'Connor, Sr., Dennis
O'Connor, Thomas
O'Connor, William
O'Connor, William
O'Connor, William
O'Connor, William
O'Connor, William, Personal Representative of the Estate of Diana O'Connor
Oddo, John
O'Dell, Janice
Odinokow, Walter
O'Doherty Lee, Maura
O'Doherty, George
O'Donnell, Christopher
O'Donnell, James
O'Donnell, Joseph
O'Dowd, Robert
O'Gara, Theresa
O'Gorman, Barbara
O'Gorman, Michael
O'Grady Evans, Kristin
O'Grady, James
O'Grady, James, Personal Representative of the Estate of James Andrew O'Grady
O'Grady, Sara
O'Hagan, Andrea
O'Hagan, Andrea, Personal Representative of the Estate of Thomas G. O'Hagan
O'Hagan, Patrick
O'Hagan, Pierce
O'Hara, Joseph

**Supp. A-168**

O'Hringer, Howard
O'Keefe, Joseph
O'Keefe, Joseph, Personal Representative of the Estate of Lesley A. Thomas
O'Keefe, Tracy
Okseniuk, Desiree
O'Leary, Brian
O'Leary, Michael
O'Leary, Thomas
Oliva Moss, Elizabeth
Oliva, Anthony
Oliva, Frank
Olive, Audrey
Oliver, Barbara
Oliver, Dale
Oliver, Daniel
Oliver, Donald
Oliver, Donald
Oliver, Edward
Oliver, Emily
Oliver, James
Oliver, Sheryl
Oliver, Sheryl, Personal Representative of the Estate of Edward Kraft Oliver
Oliver, Theodore
Oliver, Walter
Oliveri, Daniel
Olson, Christopher
Olson, John
Olson, John, Personal Representative of the Estate of Maureen Lyons Olson
Olson, Maeve
O'Neil, David
O'Neill Lamon, Brigid
O'Neill Wilson, Katherine
O'Neill, Charles
O'Neill, Holly
O'Neill, Holly, Personal Representative of the Estate of Sean O'Neill
O'Neill, Sean
Ong, Catherine
Ong, Gloria
Ong, Jr., Harry
Ong, Jr., Harry, Personal Representative of the Estate of Betty Ann Ong
Ong, Sr., Harry
Ong, Yee
Onofrio, Troisi
Opalecky, Robert
Opperman, Deborah
Opperman, Deborah, Personal Representative of the Estate of Michael Opperman

Case 23-258, Document 117, 06/30/2023, 3536586, Page174 of 240
**Supp. A-169**

Case 1:03-md-01570-GBD-SN    Document 8950-2    Filed 03/23/23    Page 69 of 125

Opperman, Jr., Michael
Oretzky, Perry, Personal Representative of the Estate of David L. Angell
Oretzky, Perry, Personal Representative of the Estate of Mary Lynn Edwards Angell
Ornedo, Eduardo
Ornedo, Mario
Ornedo, Robin
Ornedo, Sheila
Ornedo, Sheila, Personal Representative of the Estate of Ruben Ornedo
Ornstein, Sheila
O'Rourke, Michael
O'Rourke, Thomas
Orozco, William
Orr, Tracy, Personal Representative of the Estate of Alexander Steinman
Ortiz, Alfredo
Ortiz, Alfredo, Personal Representative of the Estate of Alexander Ortiz
Ortiz, Jose
Osborne, Tracey
Oschmann, Arthur
O'Shea, Michael
Oster, Harry
Ostolozaga, Luis
O'Sullivan, Christopher
O'Sullivan, Joseph
O'Sullivan, Michael
O'Sullivan, Sean
Oswald, Jane
Oswald, Kenneth
Oswald, Kenneth, Personal Representative of the Estate of Jason Oswald
Oswald-Chen, Jennifer
Otero, Caroline
Ou, Joy
Ou, Susan
Ou, Susan, Personal Representative of the Estate of Michael C. Ou
Owens, Girard
Owens, Joseph
Owens, Kathleen
Owens, Kathleen, Personal Representative of the Estate of Peter Owens, Jr.
Owens, Maryellen
Owens, Thomas
Pabon, II, Angel
Pabon, Vanessa
Pabon, Yvette
Pabon, Yvette, Personal Representative of the Estate of Angel M. Pabon, Jr.
Pace, Gerard
Padilla, Jacqueline
Padilla, Mary

**Supp. A-170**

Pagan, Aaron
Pagan, Elroy
Pair, Thomas
Pakkala, Sampath
Pakkala, Sampath, Personal Representative of the Estate of Deepa Pakkala
Palazzo Grunke, Bettina
Palazzo Libby, Kristen
Palazzo Mamoury, Kaitlin
Palazzo Sulliman, Barbara
Palazzo, Irene
Palazzo, Keri
Palazzo, Lisa
Palazzo, Lisa
Palazzo, Lisa, Personal Representative of the Estate of Jeffery M. Palazzo
Palazzo, Lisa, Personal Representative of the Estate of Thomas A. Palazzo
Palazzo, Nicole
Palazzo, Philip
Palazzo, Richard
Palazzo, Robert
Palazzo, Samantha
Palma, Elda
Palmieri, Vincent
Pancella, Claudia
Panicola, Marianne
Paolillo, Donna
Paolillo, Donna, Personal Representative of the Estate of John Paolillo
Paolillo, Ella
Paolillo, Jake
Paolini, Michele
Parish, Stefanie
Parisi-Gnazzo, Helene, Personal Representative of the Estate of John T. Gnazzo
Parker, Edward
Parker, Lula
Parker, Robert
Parker, Ronald
Parker, Timothy
Parr, Gregory
Pascucci, Ronald
Pascuma, Ada
Pascuma, Christopher
Pascuma, Linda
Pascuma, Linda, Personal Representative of the Estate of Michael J. Pascuma, Jr.
Pascuma, Melissa
Pascuma, Michael
Pascuma, Michael
Paskewitz, Scott

**Supp. A-171**

Pasquarello, Joseph
Pasquarello, Michael
Passananti, Marie
Passananti, Michael
Passananti, Sean
Passananti, Sean, Personal Representative of the Estate of Horace Passananti
Passaro, Anthony
Passaro, Helene
Patel, Kalpana
Patel, Kantilal
Patel, Kantilal, Personal Representative of the Estate of Manish Patel
Patel, Parul
Paterson, Theresa
Patterson, Peter
Patti, Dennis
Paulino, Maria
Pavelis, Melanie
Pawlicki, Jeffrey
Paz Gutierrez, Ana
Paz Gutierrez, Jose
Paz Gutierrez, Julia
Pearce, Hilton
Pearl, Adrienne
Pegno, Matthew
Pegno, Michelle
Pelletier, Daniel
Pelletier, Lillian
Pelletier, Marcel
Pelletier, Ronald
Pelletier, Sophie, Personal Representative of the Estate of Michel Pelletier
Pelletier-Martinelli, Nicolas
Pelletier-Martinelli, Sophie
Pelletier-Martinelli, Sydney
Pepe, Frank
Pepe, George
Perez, Alexis
Perez, Anthony
Perez, Frank
Perez, Julian
Perez, Karen
Perez, Luis
Perez, Mary
Perez, Mary, Personal Representative of the Estate of Anthony Perez
Perez, Osvaldo
Perez-Berkeley, Lourdes
Perez-Berkeley, Lourdes, Personal Representative of the Estate of Michael J. Berkeley

**Supp. A-172**

Peritore, Daniel
Perroncino, Patricia
Perroncino, Patricia, Personal Representative of the Estate of Joseph Perroncino
Perroncino, Sr., Joseph
Perroncino, Stephen
Perrone, Jason
Perrotta, Josephine
Perrotta, Josephine, Personal Representative of the Estate of Edward Perrotta
Perry, Frank
Perry, Michael
Pescatore, Melissa
Pesce, Robert
Petronis, Maureen
Petronzi, Loretta
Pettigrew, Darryl
Pezzuti, Frank
Pezzuti, Frank
Pezzuti, Frank, Personal Representative of the Estate of Kaleen E. Pezzuti
Pezzuti, Kathleen
Pezzuti-Pelino, Megan
Pfeffer, Robin
Pfeffer, Ron
Pfeifer, Joseph
Pfeifer, Helen
Pfeifer, William
Pfeil, Freedman
Phair, Bernand, Personal Representative of the Estate of Joanne Cregan
Phillips, Christopher
Phillips, Kevin
Picciano, Vincent
Piccininni, Joseph
Picciotto, Richard
Picconi, Gregory
Pickett, George
Pickford, David
Pickford, Linda
Pickford, Linda, Personal Representative of the Estate of Christopher Pickford
Pickford, Thomas
Picone, James
Picone, Nancy
Picone, Nancy, Personal Representative of the Estate of Arturo Sereno
Pielarz, Bozena
Pillarella, Glen
Pillarella, Robert
Piller, Faygee
Pirillo, Lorraine

**Supp. A-173**

Pisano, Christopher
Pitino, Joanne
Pitino, Richard, Personal Representative of the Estate of William G. Minardi
Pitt, Murray & Richards, Erin, Personal Representative of the Estate of Gregory D. Richards
Pizzolo, Perry
Pizzulli, Lewis
Placek Zinzi, Madeline
Plane, Thomas
Plasencia, Dedie
Platt, Bryan
Pohl, Michelle
Polatsch, Bernard
Polatsch, Daniel
Polatsch, Daniel, Personal Representative of the Estate of Laurence Polatsch
Polinsky, Andrew
Polite, Marie
Pollack, William
Polmar, Amy
Poma, Dominick
Poma, Joseph
Poma, Salvatore
Porrazzo, Andrew
Pose, Stephen
Poulos, Anna
Powell, Jean
Powell, Jean, Personal Representative of the Estate of Shawn E. Powell
Powell, Joshua
Powers, James
Prather, Larry
Prevete, Frederick
Princiotta, Anita
Princiotta, Bernadette
Princiotta, Christina
Princiotta, Karen
Princiotta, Karen, Personal Representative of the Estate of Vincent Princiotta
Printy, Robin
Pritchard, Kirk
Pritchard, Linda
Pritzker, Daniel
Prokop, Mary
Prokup, Martin
Prosick, Dennis
Protovin, Chaya
Prunty Aram, Lisa
Prunty, Christopher
Prunty, Susan

Prunty, Susan, Personal Representative of the Estate of Richard Prunty
Psirogianes, Kathleen
Pucciarelli, Nicholas
Pugliese, Robert
Pulver, Janna
Pulzone, Richard
Puma, Frank
Punzone, Carl
Puopolo, Mark
Puopolo, Sonia
Puopolo, Sr., Dominic
Puopolo, Sr., Dominic, Personal Representative of the Estate of Sonia Morales-Puopolo
Quaranti, Anthony
Quattrocchi, Philip
Quesada, Pablo
Quevedo, Henry
Quick, William
Quigley, Leah
Quigley, Patricia
Quigley, Patricia, Personal Representative of the Estate of Patrick J. Quigley
Quigley, Rachel
Quin, Timothy
Quinn, Andrew
Quinn, Dennis
Quinn, Joseph
Quinn, Joyce
Quinn, Kevin
Quinn, Michael
Raccioppi, Richard
Radburn, Edward
Radburn, Edward, Personal Representative of the Estate of Bettina Browne-Radburn
Raddatz, Catherine
Radermacher, Glenn
Raeside Shea, Nancy
Raeside Shea, Nancy, Personal Representative of the Estate of Joseph P. Shea
Raeside Shea, Peter
Ragarn, James
Raggio, Francine
Raggio, Francine, Personal Representative of the Estate of Eugene J. Raggio
Raggio-Granato, Melissa
Rahman, Syed
Raimer, Michael
Raimondi, Louis
Rakovsky, Gregory
Rall, Jean
Rambousek, Jindra

**Supp. A-175**

Rambousek, Martin
Rambousek, Michael
Rambousek, Michael, Personal Representative of the Estate of Lukas aka Luke Rambousek
Ramirez, Yvonne
Ramirez, Yvonne, Personal Representative of the Estate of Linda C. Mair Grayling
Rancke, Brittany
Rancke, Christina
Rancke, II, Alfred
Rand, James
Rand, James
Rand, Lisa
Rand, Mary Ann
Rand, Mary Ann, Personal Representative of the Estate of Adam David Rand
Rapp, David
Rappe, Thomas
Rasavongszuk, Andrew
Rasool, Aneesa
Rasool, Aseefa
Rasool, Farhaad
Rasool, Sadiq
Rasool, Sadiq, Personal Representative of the Estate of Amenia Rasool
Rasool, Saeed
Rasweiler, Michael
Rasweiler, Stephen
Rasweiler, Susan, Personal Representative of the Estate of Roger Mark Rasweiler
Rasweiler-Griffin, Beth
Rattazzi, Richard
Raymond, David
Razickas, Steven
Recio, Josue
Reda, Christopher
Reda, Frank
Reda, John
Reda, Matthew
Reda, Nicholas
Reda, Nicole
Reda, Nicole, Personal Representative of the Estate of Gregory Reda
Reddan, Daniel
Redmond, James
Reed, James
Reeg, Robert
Reen, Shaun
Reeve, David
Regan, James
Regan, Jill
Regan, John

**Supp. A-176**

Regan, Peter

Regan, Robert

Regan, Shane

Regan, Theresa

Regan, Theresa, Personal Representative of the Estate of Donald J. Regan

Regenhard, Albert

Regenhard, Catherine

Regenhard, Catherine, Personal Representative of the Estate of Christian Michael Otto Regenhard

Regenhard, Christina

Rego, Elizabeth

Rego, Elizabeth, Personal Representative of the Estate of Leah E. Oliver

Reidlinger, Susan

Reilly, Christine

Reilly, Gerard

Reilly, Jennifer

Reilly, Jennifer, Personal Representative of the Estate of Kevin O. Reilly

Reilly, John

Reilly, Kevin

Reilly, Mark

Reilly, Stephen

Reilly, Thomas

Reilly, William

Reilly, William

Reilly, William, Personal Representative of the Estate of James Brian Reilly

Reina, Leonard

Reip, Robert

Reith, Doreen

Relay, Michael

Rementeria, John

Rendino, William

Renode, Jr., Robert

Reo, Armand

Reo, Armand, Personal Representative of the Estate of John A. Reo

Reo, Judith

Reo, Mark

Restuccio, David

Reutter, Michael

Reyes Concepcion, Aidaline

Reyes Rodriguez, Nydia

Reyes, Armando

Reyes, Clementina

Reyes, Enoel

Reyes, Herman

Reyes, Isabel

Reyes, Kimberly

**Supp. A-177**

Reyes, Luz
Reyes, Nemesio
Reyes, Tiffany
Rhatigan, John
Ribaudo, Vito
Ricciardi, Michael
Ricciardi, Robert
Riccio, Stephen
Rice, Eugene
Rice, Howard
Rice, John
Rice, Stephen
Richards Frankel, Asher
Richards Frankel, Erin
Richards Keston, Lisa
Richards, Carol
Richards, Paul
Riches, Roger
Rijov, Vasiliy
Rijov, Vasiliy, Personal Representative of the Estate of Tatiana Ryjova
Rimmele, Jr., Frederick
Rimmele, Marilyn
Rinaldi, Rocco
Rinciari, John
Rios, Louie
Rivas, David
Rivera, Alcides
Rivera, Alfred
Rivera, Daniel
Rivera, Hector
Rivera, Robert
Rivera, Terence
Riverso, Danielle
Riverso, Jodi, Personal Representative of the Estate of Joseph R. Riverso
Rivicci, Thomas
Rizzi, John
Roach, Matthew
Robbins, Gary
Robbins, William, Personal Representative of the Estate of Clarin Schwartz
Roberts, Rainford
Roberts, Timothy
Robisky, Thomas
Robotham, Alexandra
Robson, Geoffrey
Robson, Katherine
Robson, Katherine, Personal Representative of the Estate of Donald A. Robson

Case 23-258, Document 117, 06/30/2023, 3536586, Page183 of 240
**Supp. A-178**

Case 1:03-md-01570-GBD-SN   Document 8950-2   Filed 03/23/23   Page 78 of 125

Robson, Scott
Rocchio, Anthony
Rocha, Joseph
Rochford, Robert
Rockefeller, Alan
Rocovich, Brian
Rodgers, Jr., Alphonso
Rodgers, William
Rodriguez, Brunilda
Rodriguez, Brunilda
Rodriguez, Celina
Rodriguez, Derek
Rodriguez, Evelyn
Rodriguez, Evelyn, Personal Representative of the Estate of Anthony Rodriguez
Rodriguez, Ivan
Rodriguez, Janet
Rodriguez, Lauren
Rodriguez, Lynnette
Rodriguez, Morgan
Rodriguez, Pedro
Rodriguez, Peter
Rodriguez, Peter
Rogers, Dale
Rogers, Kenneth
Rogers, Kevin
Rogers, Steve
Rohner, Katherine
Rohner, Ronald
Rohner, Ronald, Personal Representative of the Estate of Scott W. Rohner
Romanoff, Esther
Romanoff, Yelena
Romero, Carmen
Rosario, Ticey
Rosbrook, Guy
Rosbrook, Tamar
Rosenbaum, Fern
Rosenbaum, Martin
Rosenbaum, Martin, Personal Representative of the Estate of Brooke David Rosenbaum
Rosenberg, Alyssa
Rosenberg, Glenna
Rosenberg, Glenna, Personal Representative of the Estate of Lloyd Daniel Rosenberg
Rosenberg, Kaylee
Rosenberg, Samantha
Rosenberg-Torres, Alissa
Rosenberg-Torres, Alissa, Personal Representative of the Estate of Luis Eduardo Torres
Rosenblatt Klein, Anne

**Supp. A-179**

Rosenblatt, Philip
Rosenblum, Adam
Rosenblum, Barbara
Rosenblum, Jason
Rosenblum, Jill
Rosenblum, Jill, Personal Representative of the Estate of Andrew I. Rosenblum
Rosenblum, Jordan
Rosenblum, Kyle
Rosenblum, Richard
Rosenzweig Morton, Lauren
Rosenzweig Morton, Lauren, Personal Representative of the Estate of Phillip Rosenzweig
Rosenzweig, Allan
Rosenzweig, Max
Ross Goodman, Abigail
Ross, Alison
Ross, Bruce
Ross, Franklin
Ross, Irene
Ross, Judi
Ross, Judi, Personal Representative of the Estate of Richard Ross
Ross, Marshall
Rossinow, Susan
Rossinow, Susan, Personal Representative of the Estate of Norman Rossinow
Rossiter Valvo, Virginia
Rossiter Valvo, Virginia, Personal Representative of the Estate of Carlton F. Valvo, II
Rotberg, Dvora
Rothschild, Christine
Roy, Michael
Rozas, Donald
Rubino, John
Ruby, Keith
Rueter, Stewart
Ruggiere De Paris, Kathleen
Ruggiere Donovan, Claudia
Ruggiere Scavuzzo, Patricia
Ruggiere, Claudia, Personal Representative of the Estate of Bart Joseph Ruggiere
Ruggiere, Frank
Ruggiere, Jr., Frank
Ruggiere, Mark
Ruggirello, Joseph
Ruiz, Jr., Gilbert
Ruiz, Jr., Gilbert, Personal Representative of the Estate of Gilbert Ruiz
Ruiz, Rafaela
Ruiz, Richard
Ruland, James
Russack, Stephen

**Supp. A-180**

Russell, David
Russin, Alec
Russin, Andrea
Russin, Andrea, Personal Representative of the Estate of Steven Russin
Russin, Ariella
Russin, Olivia
Russo, Brian
Russo, Salvatore
Ruther, Theresa
Ruvolo, Vito
Ryan, Autumn
Ryan, Brittany
Ryan, Colin
Ryan, Deena
Ryan, Denis
Ryan, Diane
Ryan, Diane, Personal Representative of the Estate of Edward Ryan
Ryan, Edward
Ryan, Francis
Ryan, Henry
Ryan, James
Ryan, Joseph
Ryan, Jr., Matthew
Ryan, Kelly
Ryan, Kevin
Ryan, Margaret
Ryan, Margaret, Personal Representative of the Estate of Matthew L. Ryan
Ryan, Maria, Personal Representative of the Estate of Jonathan S. Ryan
Ryan, Marie
Ryan, Marie
Ryan, Meaghan
Ryan, Megan
Ryan, Patricia
Ryan, Paul
Ryan, Richard
Ryan, Robert
Ryan, Robert
Ryan, Robert
Ryan, Scott
Ryan, Thomas
Ryan, William
Ryan-Baldwin, Maria
Ryjov , Daniel
Ryjov, Alex
Ryook, Dae Jin
Ryook, Dae Jin, Personal Representative of the Estate of Christina S. Ryook

**Supp. A-181**

Rzempolvch, Edward
Saada Samuel, Delphine
Saada, Delphine, Personal Representative of the Estate of Thierry Saada
Saada, Lior
Sacchi, Robert
Sakoutis, Christine
Saladis, Joseph
Salame, Pedro & Santos, Mary, Personal Representative of the Estate of Carmen Milly Rodriguez
Salbeck, Lauren
Salem, Paris
Salkin, Roni
Sam, Clarence
Sam, Dhanmatee
Sam, Gina
Sam, Lisa
Sammis, Steven
Sanchez, Felix
Sand, Aaron
Sand, Michele
Sand, Michele, Personal Representative of the Estate of Eric Sand
Sanfilippo, Rudy
Sanjurjo, John
Santelli, Peter
Santiago, Bobby
Santo, Jeffrey
Santo, Joseph
Santo, Joseph, Personal Representative of the Estate of Susan Santo
Santo, Michael
Santos, Carlos
Sapienza, Joseph
Sapp-Gooding, Lachanze
Sapp-Gooding, Lachanze, Personal Representative of the Estate of Calvin J. Gooding
Saraniti, Lauren
Sardo, Joseph
Sarle, John
Sarle, Leeann
Sarle, Linda
Sarle, Linda, Personal Representative of the Estate of Paul F. Sarle
Sarle, Norma
Sarle, Paul
Sarnes, Mark
Sartini, Louis
Sartor, Arthur
Sassman, Jeremy
Sattaluri, Narasimha

**Supp. A-182**

Sattaluri, Narasimha, Personal Representative of the Estate of Deepika Sattaluri
Saucedo, Stephen
Saucedo, Stephen, Personal Representative of the Estate of Gregory Saucedo
Savarese, Peter
Scaduto-Soto, Patricia
Scaknoff, Eric
Scalard, Michael
Scally, Thomas
Scambone, Thomas
Scanlon, Kevin
Scaramuzzino, Barbara
Scaramuzzino, Barbara, Personal Representative of the Estate of Nicholas Rossomando
Scarazzini, Gilbert
Scarentino, Salvatore
Scaringello, Patrick
Scarinzi, Steven
Scarsella, John
Scauso, Donald
Scauso, Gabrielle
Scauso, Janlyn
Scauso, Janlyn, Personal Representative of the Estate of Dennis P. Scauso
Scauso, Juliette
Scauso, Salvatore
Schaefer, John
Schaefer, Louis
Schiavone, James
Schields, Scott
Schielke, Brandon
Schielke, Jr., Kenneth
Schielke, Kenneth
Schielke, Kenneth, Personal Representative of the Estate of Sean Schielke
Schielke, Patricia
Schillinger, John
Schillinger, William
Schlueck, Richard
Schmid, Charles
Schmidt, Robert
Schmitterer, Clinton
Schmuck, Robert
Schnitzer, Michael
Schoenholtz Murphy, Jessica
Schoenholtz, Jason
Schor, Robert
Schorpp, Jeffrey
Schorpp, Jeffrey, Personal Representative of the Estate of Marisa DiNardo
Schreiber, Michael

**Supp. A-183**

Schreier, Mark
Schreier, Phyllis
Schreier, Phyllis, Personal Representative of the Estate of Jeffrey H. Schreier
Schreier, Stephanie
Schrimpe, Scott
Schroeder, Douglas
Schulz, Robert
Schwicke, James
Scialpi, Vincent
Sciarappa, Victor
Scibetta, Gabriella
Scifo, Angelo
Sciurba, Christine
Sclafani, Gregory
Scochemaro, Nichole
Scotch, John
Scott, Elisabeth
Scott, Robert
Scott, Susan
Scullin, Catherine
Scullin, Catherine, Personal Representative of the Estate of Arthur Warren Scullin
Scullin, James
Scullin, James
Scullin, Jr., Arthur
Scullin, Nora
Scully, Michael
Sears, Julia
Seckler-Oode, Lisa
Seeney, Joseph
Sekzer, Evelyn
Sekzer, Marc
Sekzer, Wilton
Sepe, Vincent
Sere, Richard
Sereno, Anna
Sereno, Tommaso
Serrano, Angel
Serrano, Luis
Sesselman, William
Seymour, James
Seymour, Jason
Seymour, Jason, Personal Representative of the Estate of Jacqueline Norton
Seymour, Jason, Personal Representative of the Estate of Robert G. Norton
Seymour, John
Sforza, Micahel
Sgromo, David

**Supp. A-184**

Shah, Kevin
Shah, Nikita
Shah, Jyothi
Shah, Jyothi, Personal Representative of the Estate of Jayesh Shah
Shah, Niloy
Shahid, Leonor
Shahid, Leonor & Syed, Personal Representative of the Estate of Khalid Shahid
Shahid, Syed
Shakouri, Nancy
Shamay, Beniamin
Shamay, Beniamin, Personal Representative of the Estate of Gary Shamay
Shamay, Gabriel
Shamay, Simon
Shanahan, Eileen
Shanahan, Eileen, Personal Representative of the Estate of Earl R. Shanahan
Shanahan, Gregory
Shanley, Peter
Shannon, James
Shannon, Matthew
Shapiro, Jaclyn
Shapiro, Lori
Shea, Abigail
Shea, Brian
Shea, Catherine
Shea, Colin
Shea, Daniel
Shea, Ellen
Shea, Ellen, Personal Representative of the Estate of Daniel James Shea
Shea, James
Shea, Margaret
Shea, Patrick
Sheehan, Kevin
Sheehy, Edward
Sheridan, Gary
Sherman, Jason
Sherman, Jason, Personal Representative of the Estate of Toyena C. Skinner
Sherman, Matthew
Sherod, Kevin
Sherwood, James
Shulman, Evelyn
Shulman, Jaime
Shulman, Lawrence
Shulman, Lori
Shulman, Lori, Personal Representative of the Estate of Mark Shulman
Sibilla, Giuseppe
Sicignano, Alphonse

**Supp. A-185**

Signorile, Anthony
Silver, Danielle
Silver, Holli
Silver, Holli, Personal Representative of the Estate of David Silver
Silver, Rachel
Silvestri, Thomas
Simeone, Vincent
Simms, David
Simms, Jeffrey
Simon, Eileen
Simon, Eileen, Personal Representative of the Estate of Michael J. Simon
Simon, Kathleen
Simon, Michael
Simon, Patricia
Simon, Tyler
Simoncini, Augustine
Simons, Raymond
Simpson, Gerard
Sinera, Samba
Singh, Dhanraj
Singh, Khemraj
Sinton, Alexandra
Sirjuesingh, Dennis
Siry, Dennis
Siskopoulos, Mark
Siskopoulos, Mark, Personal Representative of the Estate of Muriel F. Siskopoulos
Sivert, Scott
Sivin, Justin
Sivin, Maxwell
Skomina, Anthony
Skonieczny, Joseph
Skorupski, Leo
Slattery, Gary
Sloan, Liza
Smagala Kuzmiskas, Linda
Smagala, Alexa
Smagala, Andrew
Smagala, Dena
Smagala, Dena, Personal Representative of the Estate of Stanley S. Smagala, Jr.
Smagala, Gary
Smagala, James
Smagala, James
Smagala, Robert
Smiley, Gary
Smith Riggs, Jennifer
Smith Yule, Donna

**Supp. A-186**

Smith, Barbara
Smith, Brian
Smith, Brian
Smith, Carlton
Smith, Caroline
Smith, Christopher
Smith, Donna, Personal Representative of the Estate of James Gregory Smith
Smith, George
Smith, Gerard
Smith, Harry
Smith, James
Smith, Jerome
Smith, Jerri
Smith, Jerri, Personal Representative of the Estate of Kevin J. Smith
Smith, Josephine
Smith, Jr., Terence
Smith, Kristen
Smith, LaKimmie
Smith, Michael
Smith, Patrick
Smith, Robert
Smith, Stephen
Smith, Thomas
Smith, Warren
Smith, William
Smith, William
Smollen, Donna
Snell, Gerald
Snyder Coolican, Mary
Snyder Oldenhage, Janine
Snyder Oldenhage, Janine, Personal Representative of the Estate of Leonard J. Snyder, Jr.
Snyder, Christopher
Snyder, Darren
Snyder, Jason
Snyder, Lauren
Snyder, Matthew
Snyder, Nancy
Snyder, Richard
Sohan, Barbara
Sohan, Barbara, Personal Representative of the Estate of Astrid Elizabetth Sohan
Sohan, Clive
Sohmer, William
Solari, Mark
Somerville, Gerard
Somma, Frank
Somogyi, María

**Supp. A-187**

Sondak, Terri
Sorge, Anne
Sorger, Steven
Sorrenti, Walter
Sorrentino, Michael
Soto, Philip
Spadafora, Della-Ann
Spadafora, Robert, Personal Representative of the Estate of James A. Trentini
Spadafora, Robert, Personal Representative of the Estate of Mary Trentini
Spadaro, Dean
Spade, William
Spagnola, Joseph
Spaldo, Frank
Spampinato, David
Spampinato, Donald
Spampinato, Laurie
Spampinato, Laurie, Personal Representative of the Estate of Donald F. Spampinato, Jr.
Spampinato, Peter
Spano, Douglas
Sparacia, Christopher
Sparozic, Nancy
Speicher, Henry
Speisman, Joyce
Speisman, Seymour
Speisman, Steven
Spellman, Robert
Spencer, James
Spinelli, Robert
Spinelli, Stephen
Spisto, Brian
Spitzbarth, Thomas
Spring, Frank
Springstead, Bertram
Sputh, Robert
Spyntiuk, Michael
Srinuan, Chaleramcha
Srinuan, Lawan
Srinuan, Lawan & Chalermchai, Personal Representative of the Estate of Saranya Srinuan
Srinuan, Vatchpol
Srour, Anthony
St. John, Eugene
Stabile, Amy
Stabner, Clifford
Stack, Brian
Stack, Dennis
Stack, Kevin

**Supp. A-188**

Stack, Michael
Stack, Theresa
Stack, Theresa, Personal Representative of the Estate of Lawrence T. Stack
Stack, Thomas
Stahlberg, Bertram
Staiano, John
Stampfel, Adolph
Stan, Constantin
Stan, Daniel
Stan, Daniel, Personal Representative of the Estate of Alexandru Stan
Stan, Elisabeta
Stang, James
Stanlewicz, Robert
Stanton, Robert
Starita Renzulli, Diane
Starita, Diane, Personal Representative of the Estate of Anthony Starita
Starita, Jason
Starita, Kaila
Stasio, James
Statkevicus, Derek
Statkevicus, Kim, Personal Representative of the Estate of Derek J. Statkevicus
Statkevicus, Kimberly
Statkevicus, Tyler
Steininger, Kevin
Steinman Kelleher, Susan
Steinman, Irwin
Steinman, Laura
Steinman, Linda
Steo, Antoinette
Stevens, Gregory, Personal Representative of the Estate of Lisa Terry
Stewart, Liam
Stewart, Sylvester
Stone, Mark
Strahl, Peter
Strandberg, Louis
Strenge, Brian
Strong, Ray
Stufano, Marilyn
Stumm, Priscilla
Suarez, Sophia
Suarez, Angelic
Suarez, Carmen
Suarez, Carmen, Personal Representative of the Estate of Ramon Suarez
Suarez, Jillian
Suarez, Jr., Ramon
Sullivan, Anne

**Supp. A-189**

Sullivan, Brian
Sullivan, James
Sullivan, Jimmie
Sullivan, Joanne
Sullivan, Patrick
Supek, Steven
Surat, Daniel
Suson, Gary
Sutton, Eric
Suwalski, Michael
Swaine, Emily
Swaine, Francis
Swaine, Hannah
Swaine, Maryanne
Swaine, Sarah
Swaine, Suzanne
Swaine, Suzanne
Swaine, Suzanne, Personal Representative of the Estate of John F. Swaine
Swat, Barbara
Swat, Barbara, Personal Representative of the Estate of Gerald Thomas Atwood
Swedin, Isa
Sweeney, Edward
Sweeney, Edward
Sweeney, Edward, Personal Representative of the Estate of Brian E. Sweeney
Sweeney, Elena
Sweeney, Mary
Sweeney, Matthew
Sykes, Joseph
Taaffe, Dennis
Taback Catalano, Tracy
Taback Catalano, Tracy, Personal Representative of the Estate of Harry Taback
Taback, Cheryl
Taback, Lori
Taddei, Andrew
Taddei, Fermo
Taddei, Loretta
Taddei, Mary
Taddei, Mary, Personal Representative of the Estate of Norma C. Taddei
Takahashi, Harumi
Takahashi, Harumi, Personal Representative of the Estate of Keiichiro Takahashi
Takahashi, Hiroyuki
Takahashi, Marie
Takahashi, Midori
Takahashi, Midori, Personal Representative of the Estate of Keiji Takahashi
Takahashi, Shusaku
Tallon, Eileen

**Supp. A-190**

Tallon, Eileen, Personal Representative of the Estate of Sean Patrick Tallon
Tallon, Patrick
Tallon-Daros, Rosaleen
Tanico, Keith
Tanzman, David
Tarasiewicz, Allan
Tarasiewicz, Melissa
Tarasiewicz, Patricia
Tarasiewicz, Patricia, Personal Representative of the Estate of Allan Tarasiewicz
Tarawally, Alpha
Tartaglione, Peter
Tatsuno, Elizabeth
Taylor Wynne, Rebecca
Taylor, Cyann
Taylor, Felicia
Taylor, Frank
Taylor, Frank, Personal Representative of the Estate of Lorisa C. Taylor
Taylor, Imani
Taylor, Samantha
Taylor, Samantha, Personal Representative of the Estate of Sandra Carol Taylor
Tedesco, John
Tensay, Betru
Tenteromano, Michael
Tepedino, Anthony
Tepedino, Evelyn
Tepedino, Evelyn, Personal Representative of the Estate of Jody Tepedino Nichilo
Terry, Emily
Terry, Emily, Personal Representative of the Estate of Andrew Kates
Terry, Leland
Terry, Tania
Teshebru, Sara
Tesoriero, Jeff
Tesoriero, Vincent
Testagrose, Janice
Thackurdeen, Raj
Thackurdeen, Raj & Sat, Personal Representative of the Estate of Goumatie Thackurdeen
Thackurdeen, Rambascia
Thackurdeen, Sat
Thackurdeen, Vijay
Theurkauf, Barbara
Theurkauf, Charles
Theurkauf, Edward
Theurkauf, Helen
Theurkauf, III, Thomas
Theurkauf, III, Thomas, Personal Representative of the Estate of Thomas F. Theurkauf, Jr.
Theurkauf, Patricia

**Supp. A-191**

Theurkauf, Robin
Theurkauf, Sr., Thomas
Theurkauf, William
Thomas, Luis
Thomas, Marie
Thomas, Sharon
Thomasen, Thomas
Thompson, Donald
Thompson, James
Thompson, Robert
Thompson, Rosana
Thompson, Rosana, Personal Representative of the Estate of Nigel Bruce Thompson
Thomson, Scott
Thornton, Pamela
Tiesi, Ellen
Tiesi, Joseph
Tiesi, Joseph, Personal Representative of the Estate of Mary E. Tiesi
Tighe, Thomas
Tighe, Thomas, Personal Representative of the Estate of Diane T. Lipari
Tilearcio, Robert
Tilkaren, Bissondai
Tillotson, Thomas
Ting, Richard
Tipaldi, Richard
Tirado, Barbara
Tirado, Barbara, Personal Representative of the Estate of David Tirado
Tirado, Rafael
Tirado, Richard
Tomasevic, Andrija
Tomasevic, Radmila
Tomm, Donald
Tonkin, Kevin
Tonrey, Steven
Toro, Alvin
Torres, Angel
Torres, Dean
Torres, Denise
Torres, Edgar
Torres, Edith
Torres, George
Torres, Joshua
Torres, Kevin
Torres, Nicholas
Torres, Richard
Torres, Walter
Torres-Brown, Dawn

Torrillo, Joseph
Tortorici , Marie
Toscano, Joseph
Touhey, Russell
Tozzo, Charles
Tozzo, James
Tracy, Peter
Tramontozzi, Tierney
Trant, Mary
Trant, Alexander
Trant, Daniel
Trant, Jessica
Trant, Kathleen
Trant, Kathleen, Personal Representative of the Estate of Daniel Trant
Trant, Kevin
Trant, Matthew
Trant, Maureen
Trant, Sally
Trant, Timothy
Trapani, Francis
Traut, Peter
Travis, Barry
Treglia, Louis
Trentini, II, James
Trentini, II, James
Trentini, Pamela
Trentini, Pamela
Trentini, Patti
Trentini, Patti
Tresca, Tina
Trezza, Michael
Triglianos, Michael
Trimingham-Aiken, Kimberly
Trimingham-Aiken, Kimberly, Personal Representative of the Estate of Terrance Aiken
Trivigno, Robert
Troianiello, John
Troisi, Victor
Trudel, Kimberly
Trudel, Kimberly, Personal Representative of the Estate of Frederick Rimmele, III
Truelson, Mary
Tselepis, Mary
Tselepis, Mary, Personal Representative of the Estate of William P. Tselepis, Jr.
Tucker, Jason
Tucker, Karen
Tufano, Ralph
Tull, Calvin

**Supp. A-193**

Tull, Jennifer
Tull-Lindo, Francine
Tumulty, Caroline
Tumulty, Cynthia, Personal Representative of the Estate of Lance Tumulty
Tumulty, James
Tumulty, Sara
Tumulty, Shawn
Tumulty-Ollermar, Cynthia
Tumulty-Searby, Diane
Turner, Edward
Tustin, Joseph
Tvedt, Eric
Twomey, Emeric
Twomey, James
Twomey, John
Twomey, Marie, Personal Representative of the Estate of Robert T. Twomey
Twomey, Richard
Twomey, Robert
Twomey, William
Tyrell, Leonard
Ubertini, Thomas
Ugalde, Kathy
Ugolyn, Diane
Ugolyn, Trevor
Ugolyn, Victor
Ugolyn, Victor, Personal Representative of the Estate of Tyler Ugolyn
Uman, Alexander
Uman, Anna
Uman, Julie
Uman, Julie, Personal Representative of the Estate of Jonathan Uman
Uman, Michael
Umanzor, Feliciana
Umanzor, Feliciana, Personal Representative of the Estate of Elsy C. Osorio
Umanzor, Jr., Anthony
Umanzor, Katherine
Urban, Brian
Uriguen, Katherine
Vaillancourt, Neil
Valetta, Anthony
Valiente, Eileen
Valvo, Brandon
Valvo, Carlton
Valvo, Dante
Valvo, Nicoletta
Valvo, Trenton
Van Duyne, Elizabeth

**Supp. A-194**

Van Ness Fatha, Melissa
Van Ness Fatha, Melissa, Personal Representative of the Estate of Syed Abdul Fatha
Van Pelt, Charles
Vandevander, Elizabeth
Vandevander, Elizabeth, Personal Representative of the Estate of Jon C. Vandevander
Vandevander, Jane
Vandevander, Jon
Vandevander, Mary
Vanrossem, Thomas
Vanwagoner, John
Vascon, Mario
Vastola, Donald
Vatalaro, Mary
Vatalaro, Mary
Vazquez, Margarita
Vazquez, Onelia
Vega, Ruby
Vega-Faltas, Emily
Vega-Faltas, Emily, Personal Representative of the Estate of Harold Lizcano
Velazquez, Consuelo
Velazquez, Consuelo, Personal Representative of the Estate of Jorge Velazquez
Velazquez, Daniel
Velazquez, Jose
Velazquez, Jr., Jorge
Velazquez, Marilyn
Velazquez, Steven
Ventimiglia, Salvatore
Venuto, Caterina
Venuto, Salvatore
Veracka, John
Verderosa, Steven
Vesnesky, Theresa
Vetland, Richard
Victoria, Jasmine & Torres Brown, Dawn, Personal Representative of the Estate of Celeste Torres-Victoria
Victoria, Jasmine
Vider Rivers, James
Vider Rivers, Ricky, Personal Representative of the Estate of David E. Rivers
Vider, Ricky
Vilardo, Matthew
Vilardo, Nicole
Vilardo, Patricia
Vilardo, Patricia, Personal Representative of the Estate of Joseph Vilardo
Villa, Carlos
Villa, Richard
Villa, Richard, Personal Representative of the Estate of Sharon Christina Millan

**Supp. A-195**

Villano, Guy
Villarin, Stephanie
Villarreal, Caren
Vincelli, Anthony
Vincelli, Anthony, Personal Representative of the Estate of Chantal Vincelli
Vincelli, Antonio
Vincenzo, Philip
Vinciguerra, Robert
Viola, Anthony
Viola, Jr., Vincent
Violeta-Llano, Betty
Virgilio, Lucy
Virgilio, Lucy, Personal Representative of the Estate of Lawrence J. Virgilio
Virgilio, Thomas
Viverito, Kerri
Voce, Gregory
Vogt, Mary
Vomero, Russell
Vrachnas, Cathy
Wainio, Benhardt
Wainio, Benhardt, Personal Representative of the Estate of Honor Elizabeth Wainio
Wainio, Sarah
Wainio, Thomas
Waiser, Rema
Waiser, Rema, Personal Representative of the Estate of Simon V. Weiser
Waizer, Harry
Walker, Frederick
Walker, Kara
Wall, Avery
Wall, Brian
Wall, Diane
Wall, Diane, Personal Representative of the Estate of Glen J. Wall
Wall, Gary
Wall, Jean
Wall, Kevin
Wall, Payton
Wallace, Ed
Wallen, Robert
Walsh, Daniel
Walsh, Dianne
Walsh, Dianne, Personal Representative of the Estate of Christine Barbuto
Walsh, Edward
Walsh, Joseph
Walsh, Kevin
Walsh, Kristin
Walsh, Nancy

**Supp. A-196**

Walsh, William
Wanker, Christopher
Ward, Christopher
Ward, Keith
Warner, Allen
Warner, Gerald
Warner, Kathryn
Warner-Proctor, Patricia
Warnock, Corrine
Washington, Gary
Washington, Mack
Watkins, Jelena
Watts, Richard
Weaver Achilles, Amy
Weaver, Amy, Personal Representative of the Estate of Todd Christopher Weaver
Weber, Albert
Weber, John
Weil, Floyd
Weil, Judith
Weil, Judith, Personal Representative of the Estate of Joanne F. Weil
Weinberg, Jason
Weinberg, Laurie
Weinberg, Laurie, Personal Representative of the Estate of Steven Weinberg
Weinberg, Lindsay
Weinberg, Samuel
Weinsheimer, Charles
Weinstein, Andrew
Weinstein, Gloria
Weinstein, Seth
Weinstein, Stanley
Weinstein, Stanley, Personal Representative of the Estate of Lisa Caren Orfi-Ehrlich
Weis, Paul
Weiser, Anatoly
Weisner, Steven
Weldon, James
Weldon, Richard
Wells, Charles
Welsh, William
Weltman, Terri
Welty, Christopher
Welty, Darren
Welty, Delia
Welty, Delia, Personal Representative of the Estate of Timothy Matthew Welty
Welty, Jake
Welty, Julia
Welty, William

**Supp. A-197**

Wendell, Gary
Werdann, Leslie
Werner, James
Wernick, Michael
White, James
Whittaker, J.
Whittaker, Lena
Whittaker, Lena, Personal Representative of the Estate of Karen E. Hagerty
Wholihan, John
Whyte, John
Wiedmann, Robert
Wik Farese, Patricia
Wik, Daniel
Wik, Kathleen
Wik, Kathleen
Wik, Kathleen, Personal Representative of the Estate of William J. Wik
Wilday, Robert
Wiley, Caryn
Willadsen, John
Williams, Andrew
Williams, Christina
Williams, Craig
Williams, Darren
Williams, Darren, Personal Representative of the Estate of Debbie Williams
Williams, Debbie
Williams, Debbie, Personal Representative of the Estate of Pauline Tull-Francis
Williams, Derek
Williams, Herman
Williams, Janice
Williams, Janice, Personal Representative of the Estate of Louis Calvin Williams, III
Williams, Kathleen
Williams, Kenneth
Williams, Kenneth, Personal Representative of the Estate of Brian Patrick Williams
Williams, Kevin
Williams, Payton
Williams, Scott
Williams, Thomas
Williams, Tyrone
Williams, Vandon
Williams, Vincent
Williamson, Robert
Willis, James
Wilson, John
Wilson, John
Wilson, Robert
Winters, James

**Supp. A-198**

Wirbickas, Dennis
Wiswall Edgington, Amy
Wiswall, Keith
Wiswall, Patricia
Wiswall, Patricia, Personal Representative of the Estate of David Wiswall
Wiswall, Robert
Witkowski, Michael
Wodenshek Garrett, Florence
Wodenshek Marqueling, Sarah
Wodenshek Remenschneider, Linda
Wodenshek, Anne
Wodenshek, Anne, Personal Representative of the Estate of Christopher W. Wodenshek
Wodenshek, Florence
Wodenshek, Haley
Wodenshek, Mollie
Wodenshek, Patricia
Wodenshek, Raymond
Wodenshek, William
Wodenshek, Zachary
Wohlforth, Elizabeth
Wohlforth, Susan
Wohlforth, Susan, Personal Representative of the Estate of Martin Wohlforth
Wolf, Charles
Wolf, Charles, Personal Representative of the Estate of Katherine Wolf
Wood, Gary
Woo-Yuen, Cella
Woo-Yuen, Cella, Personal Representative of the Estate of Elkin Yuen
Wright, Daniel
Wright, Jack
Wright, Lynn
Wright, Mary
Wrobel, John
Wylie, Lisa
Wynter, Chaniqua
Yamashiro, Dawn
Yaniz, Michele
Yarembinsky, Emily
Yeow, Evelyn
Yeow, Evelyn, Personal Representative of the Estate of Michael Waye
Yioras, Spiro
Yorks, John
Yorks, Vincent
Yoshida Gnazzo, Misha
Youngberg, Mark
Youngren, Kjell
Youngren, Nissa

**Supp. A-199**

Yuen, Billy
Yuen, Gilma
Yuen, Nicole
Zaccoli Cozy, Bette
Zaccoli Davies, Lori
Zaccoli, Anthony
Zaccoli, Bret
Zaccoli, Helen
Zaccoli, Helen, Personal Representative of the Estate of Joseph Zaccoli
Zaccoli, James
Zaccoli, Joseph
Zaccoli, Regina
Zaccoli, Santo
Zadroga, James
Zajkowski, Robert
Zaltsman, Alexander
Zaltsman, Faina
Zapata, Kathleen
Zaremba, Mary
Zasa, Stephen
Zechewytz, Michael
Zeiss, Philip
Zelios, Thomas
Zheng, Yun Yu
Zheng, Yun Yu, Personal Representative of the Estate of Raymond Fai Kwok
Ziminski, David
Ziminski, David, Personal Representative of the Estate of Ivelin Ziminski
Zinzi, Dean
Zinzi, Dyan
Zinzi, Dyan, Personal Representative of the Estate of Michael Zinzi
Zion Green, Barbara
Zion, Carol, Personal Representative of the Estate of Charles A. Zion
Zion, Carole
Zion, Jane
Zion, Martin
Zion, Zachary
Zoda, Patrick
Zois, Dorota
Zois, Dorota, Personal Representative of the Estate of Prokopios Zois
Zois, Theofanis
Zois-Goel, Stefania
Zollner, Martin
Zuccala, Jolaine
Zuccala, Madeleine
Zuccala, Madeleine, Personal Representative of the Estate of Joseph J. Zuccala
Zuccala, Sandra

**Supp. A-200**

Zuccala-Sams, Kaylene
Zucker, Erica, Personal Representative of the Estate of Andrew S. Zucker
Zucker Heisler, Erica
Zucker, Jason
Zuckerman, Nancy
Zuckerman, Nancy, Personal Representative of the Estate of Alan Jay Lederman
Zuniga, Maurice

**Supp. A-201**

***Bauer et al. v. al Qaeda Islamic Army, et al.*, 02-cv-7236 (GBD) (SN)**
**Baumeister & Samuels, PC**

Bauer, Jacqueline
Bauer, Rosemary, Executrix of the Estate of Robert G. Bauer
Bauer, Stephen
Bauer, Virginia
Bauer, Virginia, Executrix of the Estate of W. David Bauer, II
Bauer, W. David, III
Bauer-Pollard, Heidi
Bauer-Pollard, Heidi, Executrix of Estate of Dorothy Bauer
Bauer-Pollard, Heidi, Personal Representative of the Estate of Walter D. Bauer
Abbate, Renee
Abbate, Renee, Executrix of the Estate of Mary Tanner
Abernathy, Gretchen
Barrett, Elaine
Beamer, Andrew T.
Beamer, David L.
Beamer, David P.
Beamer, Lisa
Beamer, Lisa, Executrix of the Estate of Todd M. Beamer
Beamer, Margaret
Beamer, Morgan K.
Beamer-Sorensen, Michele
Beatini, Daria
Beatini, Julia
Beatini, Mark
Beatini, Mark, Executor of the Estate of Doris Beatini
Beatini, Mark, Executor of the Estate of Michael C. Beatini
Beatini, Nanda
Beatini, Nanda, Administratrix of the Estate of Michael L. Beatini
Beatini, Susan
Beatini, Susan, Administratrix of the Estate of Paul F. Beatini
Better, Margarita
Bharvaney, Kishore
Bharvaney, Kishore, Executor of the Estate of Govind Bharvaney
Bharvaney, Pandora Po
Bharvaney, Pandora Po, Administratrix of the Estate of Anil T. Bharvaney
Bharvaney, Savitri
Blest, Cynthia
Blest, Cynthia, Executrix of the Estate of Rosemary Rooney
Bonnett, Cathyann
Bonnett, Cathyann, Administratrix of the Estate of Colin Bonnett
Bonnett, Heather
Bonnett, Julia V.
Bonnett, Kody

**Supp. A-202**

Bonoli, Denise
Bowden Hart, Alyson V.
Bowden Hart, Sara J.
Bowden, Deborah
Bowden, Deborah, Executrix of the Estate of Thomas H. Bowden, Jr.
Bowden, James F.
Bowman Henry, Jack
Bowman Henry, Liam
Bowman Sr., Shawn E.
Bowman, Carol A.
Bowman, James E.
Brady, Joan
Brandofino, Jeanne
Brennan Waterhouse, Jennifer
Brennan Waterhouse, Jennifer, Administratrix of the Estate of Thomas M. Brennan
Brennan, Catherine A.
Brennan, Estate of Anita
Brennan, II, Thomas M.
Brennan, John O.
Brennan, John V.
Brennan, Michael
Brennan, Paul
Bustillo, Alessandra
Bustillo, Dissa
Bustillo, Dissa, Personal Representative of the Estate of Gilberto Bustillo
Bustillo, Henry
Bustillo, Jr., Gilberto
Bustillo, Laura
Bustillo, Laura, Administratrix of the Estate of Milton Bustillo
Bustillo, Mirna
Butler, Sasha
Candela, Elizabeth
Candela, Elizabeth, Administratrix of the Estate of John Anthony Candela
Candela, John Arthur
Candela, Joseph G.
Candela, Joseph G., Executor of the Estate of John C. Candela
Candela, Joseph G., Executor of the Estate of Phyllis Candela
Candela, Juliette
Carlino, Marie
Carlino, Marie, Executrix of the Estate of Edward Carlino
Carlino, Salvatore
Carpenter, Kristen M.
Cunningham, Andrew
Cunningham, Julieanne
Cunningham, Paul
Cunningham, Sean

**Supp. A-203**

Cunningham, Teresa
Cunningham, Teresa, Administratrix of the Estate of Michael J. Cunningham
Cunningham, William M.
D'Ambola, Domenick
D'Ambola, Domenick, Personal Representative of the Estate of Jessamine D'Ambola
D'Ambrosi, Dean J.
D'Ambrosi, Emily
D'Ambrosi, Karen
D'Ambrosi, Karen, Executrix of the Estate of Jack L. D'Ambrosi, Jr.
D'Ambrosi, Tina, Executrix of the Estate of Jack L. D'Ambrosi Sr.
D'Ambrosi-Scales, Jacqueline
Danahy, Alison M.
Danahy, Grace A.
Danahy, Kathleen T.
Danahy, Mary
Danahy, Mary, Executrix of the Estate of Patrick W. Danahy
Dembicki, Janyne V.
Dembicki, Janyne V., Executrix of the Estate of Charles Vasel
Dembicki, Janyne V., Executrix of the Estate of Mynda Vasel
DiMeglio, Daniel
DiMeglio, John
DiMeglio, John, Administrator of the Estate of David DiMeglio
DiMeglio, Patti S.
DiVittorio, Leonard, Executor of the Estate Estate of Mary Carlino
Dougherty, Mary Beth
Eckert, Margaret, Executrix of the Estate of Beverly Eckert
Eckert, Margaret, Personal Representative of the Estate of Sean Rooney
Felt, Adrienne P.
Felt, Gordon
Felt, Kathryn
Felt, Lawrence
Felt, Sandra
Felt, Sandra, Executrix of the Estate of Edward P. Felt
Felt, Shirley A.
Foster, Nancy
Foster, Nancy, Administratrix of the Estate of Noel J. Foster
Foster, Nancy, mother and Natural Guardian of Megan Foster, an incapacitated adult
Foster, Nicole
Gallucci, Alyssa
Gallucci, Angela
Gallucci, Angela, Executrix of the Estate of Joseph Gallucci
Gallucci, Barbara
Gallucci, Barbara, Administratrix of the Estate of Vincenzo Gallucci
Gallucci, Joseph D.
Giordano, Michael
Giordano, Michael, Administrator of the Estate of Donna Giordano

**Supp. A-204**

Glick Best, Lyzbeth

Glick Best, Lyzbeth, Administratrix of the Estate of Jeremy Glick

Glick Danino, Joanna

Glick, Emerson

Glick, Jared

Glick, Jed

Glick, Jennifer

Glick, Joan

Glick, Jonah

Glick, Lloyd

Glidden, Marguerite, Personal Representative of the Estate of Arthur G. Gronlund

Goldstein, Hanna

Goldstein, Harris

Goldstein, Jill

Goldstein, Jill, Administratrix of the Estate of Steven Goldstein

Hannaford, Eileen

Hannaford, Eileen, Administratrix of the Estate of Kevin J. Hannaford

Hannaford, Jr., Kevin J.

Hannaford, Patrick J.

Hayes, Bernadette T.

Hebert, Kathryn

Henry, Jennifer J.

Henry, Jennifer J., Administratrix of the Estate of Shawn E. Bowman, Jr.

Hicks, Susan

Hoadley, Estate of Virginia A.

Hoadley, Estate of Walter E.

Hoadley, Nancy C., Personal Representative of the Estate of Richard Hoadley

Hughes, Ellen

Jack, James T.

Jack, James T., Executor of the Estate of Helen M. Jack

Jack, James T., Personal Representative of the Estate of James H. Jack

Johnson, Margaret A.

Johnson, Thomas S.

Johnson, Thomas S., Administrator of the Estate of Scott Johnson

Jones Ferrell, Michele

Jones Ferrell, Michele, Executrix of the Estate of Donald T. Jones, II

Jones, III, Donald T.

Jones, Judith

Jones, Judith, Executrix of the Estate of Donald T. Jones, Sr.

Jones, Taylor N.

Jones, William B.

Kane, Adam

Kane, Adam, Executor of the Estate of Bruce Kane

Kane, Jason B.

Kane, Lori

Kane, Lori, Administratrix of the Estate of Howard Kane

**Supp. A-205**

Kane, Rochelle
Keden, H. Michael, Executor of the Estate of Adam J. Lewis
Keller, Joseph D.
Keller, Rose
Keller, Rose, Administratrix of the Estate of Joseph J. Keller
Keller, Sydnie R.
Kelly, Phyllis A.
Lewis, Arthur
Lewis, Caroline
Lewis, Geraldine
Lewis, Patricia D.
Lewis, Reilly
Lewis, Sophia
Lutz, Jennifer
MacRae, Ann B.
MacRae, Ann C.
MacRae, III, Cameron F.
MacRae, III, Cameron F., Administrator of the Estate of Catherine F. MacRae
Magee, Mary Beth
Magnuson, Audrey
Magnuson, Audrey, Executrix of the Estate of Ronald E. Magnuson
Magnuson, Jeffrey A.
Magnuson, Knut
Magnuson, Sheryl A.
Maher, Christina, Executrix of the Estate of Raymond Maher Jr.
Maher, James
Maher, James, Executor of the Estate of Jeanne Maher
Marasciulo, Maria
Martie, Rosemarie, Executrix of the Estate of Joseph Zisa
Martie, Rosemarie, Executrix of the Estate of Josephine Zisa
McQuade, Charles, Personal Representative of the Estate of Paul Sisolak
Mee, Tom, Executor of the Estate of Karen Ann Mee
Menonna, Heidi
Meyer, Charles
Meyer, Kristine
Meyer, Margaret
Meyer, Margaret, Executrix of the Estate of David R. Meyer
Meyer-Fuchs, Dawn
Montanaro, Jamie
Montanaro, Jamie & Montanaro, Karen, Co-Administrators of the Estate of Frank Montanaro
Montanaro, Karen
Murphy, Beth K.
Murphy, Beth K., Administratrix of the Estate of Kevin J. Murphy
Murphy, Caitlyn B.
Murphy, Connor J.
Murphy, John F.

**Supp. A-206**

Murphy, Michael J.
Murphy, Timothy P.
Nebbia, Jean
Orsini Pandolfi, Danielle
Orsini, Arlene
Orsini, Arlene, Executrix of the Estate of Ronald Orsini
Orsini, Pauline, Executrix of the Estate of Robert Orsini
Parker, Joan
Parker, Joan, Administratrix of the Estate of Philip Lacey Parker
Parker, Stephanie
Parris, Aubrey A.
Passaretta, Pamela
Penavic, Suzanne J.
Penavic, Suzanne J., Administratrix of the Joseph M. Sisolak
Pickett, Jeffery, Executor of the Estate of Thomas Beatini
Powell, Anna J.
Presto, Jane
Price-Salkever, Jennifer
Price-Salkever, Jennifer, Administratrix of the Estate of Jean H. Peterson
Rachko, Barbara
Rachko, Barbara, Administratrix of the Estate of Bryan Jack
Reller, Teresa
Robb, Ellen
Robb, Ellen, Administratrix of the Estate of Kristen Montanaro
Rooney, Brendan
Rooney, Brian M.
Rooney, Maura
Rooney, Sheila
Ryan, Sally F.
Ryan, Sally F., Personal Representative of the Estate of Timothy F. Murphy Jr.
Sanders Wyatt, Laura
Sanders, John
Sanders, John, Administrator of the Estate of Stacey L. Sanders
Sanders, Martha
Santorelli, Filomena Grace
Saslow, June
Schlag, Dakota I.
Schlag, Garrett M.
Schlag, Patricia
Schlag, Patricia, Executrix of the Estate of Donald Schlag
Schlag, Sierra A.
Schlag, Tomoko T.
Schlag, Tomoko T., Executrix of the Estate of Steven F. Schlag
Sherwood, Grace P.
Sisolak, Yvonne, Executrix of the Estate of Thomas Sisolak
Smith, Elizabeth

**Supp. A-207**

Smith, Mary
Smith, Mary, Administratrix of the Estate of Daniel Smith
Smith, McCarthy
Smith, Michael
Smith, Sean Patrick
Speller, Valerie
Spordone, Dayna
Stang, Barbara
Stover, Catherine A.
Strong, Elsa G.
Strong, Elsa G., Executrix of the Estate of Linda Gronlund
Strong, Elsa G., Executrix of the Estate of Doris Gronlund
Suarez, Bryan A.
Suarez, Carol A.
Suarez, Manuel T.
Suarez, Manuel T., & Suarez, Carol A., Co-Administrators of the Estate of David S. Suarez
Tanner, Gianna
Tanner, Kenneth C.
Tanner, Michele
Tanner, Michele, Executrix of the Estate of Michael Tanner
Tanner-D'Ambrosio, Nicole
Tanz, Holly Ann
Tarantino, Jason J.
Tarantino, Jennifer
Tarantino, Jennifer, Executrix of the Estate of Kenneth Joseph Tarantino
Tarantino, Kenneth James
Torres, Lisa
Vasel, Amy C.
Vasel, Amy C., Administratrix of the Estate of Scott Vasel
Vasel, Matthew J.
Vasel, Ryan A.
Vulpone, Heather
Wager, Margaret
Wager, Margaret, Executrix of the Estate of Thomas P. Johnson
Warenkiewicz, Thomas, Executor of the Estate of Muriel Wisniewski
Wilson, Melissa
Wisniewski, Erica C.
Wisniewski, Jessica M.
Wisniewski, Kathleen
Wisniewski, Kathleen, Administratrix of the Estate of Alan L. Wisniewski
Wisniewski, Matthew P.
York, Aidan
York, Chiemi
York, Chiemi, Administratrix of the Estate of Kevin P. York
York, Connor
York, Dolores, Executrix of the Estate of John York

**Supp. A-208**

York, Timothy
Zisa, Anthony
Zisa, Christina
Zisa, Joseph
Zisa, Roseann
Zisa, Roseann, Administratrix of the Estate of Salvatore Zisa

**Supp. A-209**

***Burlingame v. Bin Laden, et al.*, 02-cv-7230 (GBD) (SN)**
**Speiser Krause, PC**

Burlingame, Sheri
Burlingame, Sheri, as Personal Representative of the Estate of Charles Burlingame
Abad, Rudy
Abad, Rudy, as Personal Representative of the Estate of Maria Rose Abad
Abbott, Jill
Barkway, Cynthia Lynn
Barkway, Cynthia Lynn, as Personal Representative of the Estate of David Michael Barkway
Barkway, David
Barkway, James
Barnes, Diane
Bennett, Suzanne & DeNino, Karen, Co-Personal Representatives of the Estate of Mary MacDonald
Berns, Janet
Binns, Valda
Bocchino, Debra Lavender, Personal Representative of the Estate of Lucy & Michael Bocchino
Boehm, Irene
Boehm, Irene, as Personal Representative of the Estate of Bruce Boehm
Boehm, Jeffrey
Boehm, Jeffrey, Personal Representative of the Estate of Dorothy Boehm
Boehm, Stacey
Bogado, Eugenia
Bogado, Eugenia, as Personal Representative of the Estate of Carlos Samaniego
Bourdier, Erma
Bourdier, Erma, as Personal Representative of the Estate of Francisco Bourdier
Bourdier, Francesca
Bourdier, Magdalena
Bourdier, Manuel
Bourdier, Manuel, Personal Representative of the Estate of Francisco Bourdier
Brennan, Anna
Brennan, Connor
Brennan, Ecaterini
Brennan, Erica
Brennan, Erica, as Personal Representative of the Estate of Peter Brennan
Brennan, Gary
Brennan, Nancy Poulis, Personal Representative of the Estate Vincent Brennan
Brotman, Ellen & Susan, Co-Personal Representatives of the Estate of Renee Brotman
Brown, Kyle Peter & Harrison Scott, Co-Personal Representatives of the Estate of Christina Tanis Genco
Brunton, Kathleen
Brunton, Kathleen, as Personal Representative of Estate of Vincent Brunton
Brunton, Michael
Brunton, Thomas
Brunton, Thomas

**Supp. A-210**

Buck, Ernst
Buck, Josephine
Butterly, Terry Stella, Personal Representative of the Estate of Judith Butterly
Caba, Lynne
Calle, Marco, as Personal Representative of the Estate of Henry Homero Fernandez
Calvin, Sally, as Personal Representative of the Estate of Frank Salvaterra
Calvin, Sally
Champion, Richard
Champion, Richard, Personal Representative of the Estate of Hubert & Lillian Champion
Chevalier Furgal, Tylia
Chevalier, Elaine
Chevalier, Elaine, as Personal Representative of the Estate of Swede Chevalier
Chu, Gloria
Chu, Steven
Chu, Steven, as Personal Representative of the Estate of Pamela Chu
Chu, Steven, Personal Representative of the Estate of Kenneth Chu
Clarke, Rochae
Cohn, Jo Ann
Cohn, Michael
Coladonato, Alex
Coladonato, Anthony
Coladonato, Salvatore
Connelly, Dina
Cooper, Julianah
Cooper-Canady, Darlene
Cooper-Savage, Melinda
Cooper-Savage, Melinda, as Personal Representative of the Estate of Julian Cooper
Cove, Gregory
Cove, Michael
Cove, Theresa
Cove, Theresa, as Personal Representative of the Estate of James E. Cove
Crowe, Lisa
Cudmore, James
Cudmore, James, as Personal Representative of the Estate of Neil Cudmore
Cullen Nolan, Thomas Patrick
Dalton, Judith
Danko, Teresa
Davidson, Casey
Davidson, Peter
Davila-Lopez, Elizabeth
Davila-Lopez, Elizabeth, as Personal Representative of the Estate of Daniel Lopez
Day, Erin
DeBarbrie, Lisa
DeFazio, Beverly
DeFazio, Craig
DeFazio, Jeffrey

**Supp. A-211**

DeFazio, Lawrence
Delapenha aka "Delapenha Fichera," Lorraine
Delapenha, Madison
Delapenha, Robert
Delapenha, Samantha
DeLuise, Maryann
Deming, Meghan
Demme, Tricia Marsala, Personal Representative of the Estate of Kathleen Demme
DeNino, Karen
Dennis, Kathryn
Dennis, Kathryn, as Personal Representative of the Estate of Thomas Dennis
Dennis, Lauren
Dennis, Thomas
Dillard, Andy
Dillard, Major
Dillard, Rosemary
Dillard, Rosemary, as Personal Representative of the Estate of Eddie Dillard
Dimmling, Gregory
Dimmling, Leslie
Dimmling, Leslie, as Personal Representative of the Estate of William Dimmling
Dimmling, Nicholas
Dimmling, Rudy
Dimmling, Rudy, Personal Representative of the Estate of Charlotte Dimmling
Dimmling, Sekou Agard & Newton, Lisa, Co-Personal Representatives of the Estate of Elaine Dimmling
Domanico, Marguerita
Domanico, Marguerita, as Personal Representative of the Estate of James Domanico
Dominguez, Amanda Rose
Dominguez, Maria
Dominguez, Maureen
Dominguez, Maureen, as Personal Representative of the Estate of Carlos Dominguez
Dominguez, Michelle
Dory, Marie Annette, Personal Representative of the Estate of Rosa & Delman Cooper
Dowdell, Christopher
Dowdell, Matthew
Dowdell, William
Dowling, Andrew
Dowling, Rosaleen Shea, Personal Representative of the Estate of Christopher Dowling
Droz, Cynthia
Droz, Cynthia, as Personal Representative of the Estate of Charles Droz
Droz, Shannon Rae
Duff, Mary, as Personal Representative of the Estate of Peter Ortale
Duff-Ortale aka "Duff," Mary
Earthman Salonia, Anne
Earthman, Damien
Evans, Charles

**Supp. A-212**

Evans, Corinne
Evans, Corinne and Charles, as Co-Personal Representatives of the Estate of Eric Thomas Evans
Ezzo-Talbott, Kathi
Falzone, Mary Ann, as Personal Representative of the Estate of Thomas Bocchino
Faughnan, Catherine Anne
Faughnan, Catherine, as Personal Representative of the Estate of Christopher Faughnan
Faughnan, Joan
Faughnan, Juliet
Faughnan, Liam
Faughnan, Michael
Faughnan, Siena
Faughnan, Thomas
Faughnan, Thomas
Ferguson, Patricia
Fetchet, Christopher
Fetchet, Frank
Fetchet, Mary
Fetchet, Frank, as Personal Representative of the Estate of Bradley Fetchet
Fetchet, Wesley
Fichera Delapenha, Lorraine, as Personal Representative of the Estate of Donald Delapenha
Finnegan, Beverly
Finnegan, Bridget
Finnegan, Erin
Finnegan, Erin, as Personal Representative of the Estate of Michael Finnegan
Finnegan, Francis
Finnegan, Frank
Finnegan, Katherine
Finnegan, Michael
Fitzsimons, Colleen
Fitzsimons, Patricia
Fitzsimons, Patricia, as Personal Representative of the Estate of Richard Fitzsimons
Fitzsimons, Patrick
Fitzsimons, Robert
Fitzsimons, Sean
Fosburgh, Jennifer
Fosburgh, Jennifer & Spencer, Michael, Co-Personal Representatives of the Estate of Kathryn Hayes
Furman, Andrew
Furman, Chava
Furman, Chava and Andrew, as Co-Personal Representatives of the Estate of Steven Furman
Furman, Jayne
Furman, Jayne & Michael, Co-Personal Representatives of the Estate of Joyce Lilie
Furman, Marvin
Furman, Menashe
Furman, Michael
Furman, Nissan

**Supp. A-213**

Furman, Sara Rachel
Gamboa, Carlos, as Personal Representative of the Estate of Giann F. Gamboa
Garcia-Ortiz, Wanda
Garcia-Ortiz, Wanda, as Personal Representative of the Estate of Emilio Ortiz
Genco Harrington, Jennifer
Genco, Barbara
Genco, Peter
Geyer Meo, Michele
Geyer, Cathy
Geyer, Cathy, as Personal Representative of the Estate of James Geyer
Geyer, Laura
Geyer, Matthew
Gilly, Joseph
Gilly, Paul
Gilly, Phyllis
Gilly, Phyllis and Joseph, as Co-Personal Representatives of the Estate of Laura Gilly
Gilmore, Irene
Godwin, Debra
Godwin, Marcy Ilena
Godwin, Ruth
Golkin, Gerald
Golkin, Gerald, as Personal Representative of the Estate of Andrew Golkin
Golkin, Janet
Golkin, Susan
Gomez, Angeline
Gomez, Blanca
Gomez, Blanca, as Personal Representative of the Estate of Jose Gomez
Gomez, Enrique
Gomez, Jeannette
Gomez, Melissa
Gomez, Teresa
Gomez, Teresa, as Personal Representative of the Estate of Enrique Gomez
Granitto, Cosimo
Granitto, Filippa
Granitto, Mario
Greene-Wotton, Patricia
Greene-Wotton, Patricia, as Personal Representative of the Estate of Rodney Wotton
Grimes, Catherine, as Personal Representative of the Estate of Mary Ortale
Groh-Tompsett, Dorothy, as Personal Representative of the Estate of Stephen Tompsett
Groh-Tompsett, Dorry aka "Dorothy"
Guba, Cathy
Habib, Raymond
Habib, Raymond, as Personal Representative of the Estate of Barbara Habib
Hanson, Sharon Thorpe
Hecox, Kerri
Heidenberger Coffey, Alison

**Supp. A-214**

Heidenberger, Thomas
Heidenberger, Thomas
Heidenberger, Thomas, as Personal Representative of the Estate of Michele Heidenberger
Heller, Catherine
Heller, Grace
Heller, Howard
Heller, John
Heller, Mary Jean
Heller, Mary Jean, as Personal Representative of the Estate of Joseph H. Heller
Heller, Michael
Heller, Robert
Heller, Roberta
Henry, Alice
Henry, Alice and Edward, as Co-Personal Representatives of the Estate of Joseph P. Henry
Henry, Edward
Hochman, Jason, Personal Representative of the Estate of Marilyn Reich
Hogan, John, Personal Representative of the Estate of Jean Palombo
Holzhauer, Nancy, as Personal Representative of the Estate of Gerard Rauzi
Holzhauer, Nancy, Personal Representative of the Estate of Silvia Rauzi
Hopwood, Clive, Personal Representative of the Estate of Peter & Sonia Hopwood
Huie, Tennyson
Huie, Tennyson, as Personal Representative of the Estate of Susan Huie
Irvine, Kara Marie
Irvine, Stuart
Iskenderian, Alex
Iskenderian, Jason
Iskenderian, Kara
Iskenderian, Meryl
Iskenderian, Sheri Ann
Iskenderian, Sheri Ann, as Personal Representative of the Estate of Aram Iskenderian
Jammen, Michael
Jammen, Michael, as Personal Representative of the Estate of Heather Smith
Janess, Tracy
Jardim, Jennifer, as Personal Representative of the Estate of Mark Jardim
Jardim,Jennifer
Jean-Pierre, Christine
Jean-Pierre, Christine, as Personal Representative of the Estate of Francois Jean-Pierre
Jean-Pierre, Jean Henold
Jean-Pierre, Roody aka "Roudy"
Jean-Pierre, Sherley
Jenkins, Susan
Johnson, Diane
Jordan, Elizabeth Russell
Jordan, Elizabeth Russell, as Personal Representative of the Estate of Robert Jordan
Judge, Geoffrey James
Judge, Geoffrey, as Personal Representative of the Estate of Ann Judge

**Supp. A-215**

Kane, Marjorie
Kang, Dohee
Kang, Dohee, as Personal Representative of the Estate of Joon Koo Kang
Kang, Jee Won aka "Diane"
Kang, Joon Hee aka "Ariel"
Kelley, Frederick
Kelley, Janet
Kelley, Janet, as Personal Representative of the Estate of Frederick Kelley
Kelley, Sean
Kelley, Sean, Personal Representative of the Estate of Mary Kelley
Kimbell, Nancy
Kimbell, Nancy, as Personal Representative of the Estate of Mary Jane Booth
Kinney aka "Kinney Lewandowski," Alison
Kinney Lewandowski, Alison, as Personal Representative of the Estate of Brian Kinney
Kminek, Christina L.
Kminek, Christina, as Personal Representative of the Estate of Mari-Rae Sopper
Kminek, Christopher
Kminek, Frank
Kminek, Frank
Kolpak, Alexis
Kolpak, Paul
Kolpak, Paul, as Personal Representative of the Estate of Vanessa Kolpak
Kolpak, Thaddeus
Kolpak, Vivian
Kovalcin, Elizabeth
Kovalcin, Elizabeth, as Personal Representative of the Estate of David Kovalcin
Kovalcin, Marina
Kovalcin, Rebecca
Krachtus, Corinne, and Elaine Miller, as Co-Personal Representatives of the Estate of Daphne Pouletsos
Krachtus, Corrinne aka "Corinne"
Kren, Anna
Kren, Anna, as Personal Representative of the Estate of John Kren
Kren, Anna, Personal Representative of the Estate of Marian Kren
Kurinzi, Christina
Lang, Paula
Lang, Paula, Personal Representative of the Estate of William Lang
Lang, Sean
Larsen, August
Larsen, Brenda
Larsen, Carolann
Larsen, Carolann, as Personal Representative of the Estate of Scott Larsen
Larsen, Marisa
Larsen, Scott
Laurent, Kerby
Lavender, Debra

**Supp. A-216**

Lavender, Debra, as Personal Representative of the Estate of Michael Bocchino
Lee, Lynn
Levi, Dennis
Levi, Dennis and Jennifer, as Co-Personal Representatives of the Estate of John Levi
Levi, Jennifer
Lewis, Shanna
Lilie, Janis, Personal Representative of the Estate of Harold Lilie
Litto, Linda
Litto-Petras, Catherine
Lopez, Brittany
Lopez, Daniel
Luedtke, Mary Beth
Lupcho, Stacy
Lynch aka "Lynch-Burgdorf", Christina
Lynch, Brian
Lynch, Ellen
Lynch, Grace
Lynch, Kieran
Lynch, Lorraine
Lynch, Lorraine, as Personal Representative of the Estate of Sean Lynch
Lynch, Mary Rose
Lynch, Olivia
Lynch, Rosetta
Lynch, Sean
Lynch-Burgdorf, Christina, as Personal Representative of the Estate of Richard Lynch
Magee, Kerry
Magee, Kevin
Magee, Kevin & Shane, Co-Personal Representatives of the Estate of Edith Magee
Magee, Mary Alice
Magee, Maryann, Personal Representative of the Estate of Blane Magee
Magee, Shane
Magee, Valerie
Magee, Valerie, as Personal Representative of the Estate of Brian Magee
Malitas, Mary
Maloney Duval, Sara
Maloney, Brinley
Maloney, Brinley, as Personal Representative of the Estate of Edward Maloney
Maloney, Edward
Maloney, Mark
Maloney, Mason
Maloney, Sally
Maloney, Teddy
Manning, Catherine, Personal Representative of the Estate of Philip Manning
Manning, Mairead
Manning, Megan
Manning, Megan, as Personal Representative of the Estate of John Terence Manning

**Supp. A-217**

Manning, Philip
Manning, Philip & Sean Manning, Co-Personal Representatives of the Estate of Gertrude Manning
Manning, Sean
Manning, Trinity
Maounis, Mary Jane
Maounis, Mary Jane & William, Co-Personal Representatives of the Estate of Constance Maounis
Maounis, Mary Jane, as Personal Representative of the Estate of James Maounis
Maounis, Mary Jane, Personal Representative of the Estate of Nicholas Maounis
Maounis, William
Martello, James
Martello, Sheila
Martello, Sheila, as Personal Representative of the Estate of James Martello
Martello, Thomas
Martin, Teresa
Martone, Kimberly A.
Martone, Kimberly, as Personal Representative of the Estate of Christopher Morrison
Massell, Stephen, as Personal Representative of the Estate of Rosanne aka "Roseann" Lang
Masterson, Teresa
Mathers, Charles
Mathers, Elizabeth
Mathers, Margaret
Mathers, Margaret, as Personal Representative of the Estate of Charles Mathers
McGroarty, Grace
McHale, Collin
McHale, Taryn
McHale, Taryn, as Personal Representative of the Estate of Thomas McHale
McLaughlin aka "McLaughlin O'Brien," Elizabeth
McLaughlin O'Brien, Elizabeth, as Personal Representative of the Estate of Robert McLaughlin
McLaughlin, Michael
McLaughlin, Nicholas
McNally, Brienne
McNally, Elizabeth
McNally, Elizabeth, as Personal Representative of the Estate of Edmund McNally
McNally, Shannon
Mickley, Joseph Richard
Mickley, Joseph Richard, as Personal Representative of the Estate of Patricia Mickley
Mickley, Marie
Miller, Elaine & Krachtus, Corinne, Co-Personal Representatives of the Estate of James & Irene Pouletsos
Mirpuri, Arjan
Mirpuri, Arjan, as Personal Representative of the Estate of Rajesh Mirpuri
Mirpuri, Indra
Mladenik, Daniel
Mladenik, Grace

**Supp. A-218**

Mladenik, Joshua
Mladenik, Kelly
Mladenik, Susanne
Mladenik, Susanne, as Personal Representative of the Estate of Jeffrey Mladenik
Morabito, Mark
Morabito, Mark, as Personal Representative of the Estate of Laura Lee Morabito
Moran, Agnes
Moran, Agnes, as Personal Representative of the Estate of Kathleen Moran
Moran, Agnes, Personal Representative of the Estate of Catherine Moran
Morgan, Sheila
Morrison, Joseph
Morrison, Maureen
Moy, Daniel
Moy, Jessica
Moy, Madeline Lew
Moy, Madeline Lew, as Personal Representative of the Estate of Teddington H. Moy
Mullan , Patrick, Personal Representative of the Estate of Patrick & Theresa Mullan
Mullan, Kelly-Ann
Mullan, Patrick
Mullan, Patrick, as Personal Representative of the Estate of Michael Mullan
Munro, Sandra & Granitto, Mario, Co-Personal Representatives of the Estate of Anna Granitto
Munro, Sandra, as Personal Representative of the Estate of Elvira Granitto
Munro, Sandra
Nacke Martinez, Amy, as Personal Representative of the Estate of Louis Nacke
Nacke-Martinez, Amy
Nanfeldt, Carolyn San Phillip
Naples, Barbara
Naples, Heidi/Haidje
Naples, Heidi/Hajdije, as Personal Representative of the Estate of Frank Naples
Newton, Amy
Newton, Amy, as Personal Representative of the Estate of Christopher Newton
Newton, Barbara
Newton, Michael
Newton, Michael L.
Newton, Sarah
Newton, Stephen A.
Newton-Carter, Mark
Newton-Carter, Susan
Newton-Carter, Susan, as Personal Representative of the Estate of Christopher Newton-Carter
Nolan, Susan
Nolan, Susan, as Personal Representative of the Estate of Thomas Cullen
O'Berg aka "O'Berg Connolly," Christine
O'Berg Connolly, Christine, as Personal Representative of the Estate of Dennis O'Berg
O'Berg, Dorothy
O'Berg, Dennis
Ognibene, Antoinette

**Supp. A-219**

Ognibene, Antoinette, as Personal Representative of the Estate of Philip Paul Ognibene
O'Malley, Maureen
O'Neill, Dorothy
Ortale, Gilbert
Ortale, Julia
Orth Ankenman, Michelle
Orth Ankenman, Michelle, as Personal Representative of the Estate of Jane Marie Orth
Orth, Daniel
Orth, Elizabeth
Ortiz aka "Ortiz Reszka," Alexandra
Ortiz Reszka, Alexandra, as Personal Representative of the Estate of Sonia Ortiz
Ortiz, Luis
Ortiz, Victor
Palombo, Anthony
Palombo, Daniel
Palombo, Frank
Palombo, John
Palombo, Joseph
Palombo, Joseph, as Personal Representative of the Estate of Frank Palombo
Palombo, Margaret
Palombo, Maria
Palombo, Patrick
Palombo, Stephen
Palombo, Thomas
Panatier, Annie
Panatier, Carolyn
Panatier, Carolyn, as Personal Representative of the Estate of Christopher Panatier
Panatier, Christopher
Panatier, James
Panatier, Patricia
Panatier, Patricia, Personal Representative of the Estate of Irene Panatier
Pangborn, Sandra
Pangborn, Sandra, as Personal Representative of the Estate of Brendan Lang
Patterson, Anna
Patterson, Kevin
Patterson, Kevin, Personal Representative of the Estate of Owen & Kevin Patterson
Patterson, Navila
Patterson, Navila, as Personal Representative of the Estate of Bernard Patterson
Patterson, Scott
Payne, Elizabeth Ann
Payne, Elizabeth Ann, as Personal Representative of the Estate of William Wilson
Pearn, Kelly Ann
Pelino, Anne
Pelino, Bennett
Pelino, Douglas
Pelino, Matthew

**Supp. A-220**

Pelino, Maureen
Pelino, Megan
Pelino, Megan, as Personal Representative of the Estate of Todd Douglas Pelino
Pelino, Terrence
Petisce, Andrew
Pollicino, Douglas
Pollicino, Douglas, Personal Representative of the Estate of Antoinette Pollicino
Pollicino, Douglas, Personal Representative of the Estate of Nicholas Pollicino
Pollicino, Steven
Poulis, Nancy
Punches, Janice Kay
Punches, Janice, as Personal Representative of the Estate of Jack Punches
Punches, Jeremy
Punches-Botta, Jennifer
Quinn, Joseph
Quinn, Michael
Quinn, Michael T.
Quinn, Michael, as Personal Representative of the Estate of James Quinn
Quinn, Noreen
Rastovich, Colleen
Razzano, Deborah
Razzano, Deborah, as Personal Representative of the Estate of Anthony Coladonato
Reich, Sharon
Reich, Sharon, as Personal Representative of the Estate of Howard Reich
Reitano, Joseph J., as Personal Representative of the Estate of Vincent Litto
Reitano, Joseph, Personal Representative of the Estate of Marie & Michael Litto
Rex, Kimberly
Richardson, Elizabeth
Riches, Daniel
Riches, James
Riches, James, as Personal Representative of the Estate of James Riches
Riches, Rita
Riches, Thomas
Riches, Timothy
Roberts, Kristen
Rogers, Michael
Ropiteau Davis, Lara
Ropiteau, Jean-Marc
Ropiteau-Galloway, Barbara
Ropiteau-Galloway, Barbara, as Personal Representative of the Estate of Eric Thomas Ropiteau
Rose, Celeste
Rueppel, Ann-Elizabeth
Ryan, Brendan Joseph
Ryan, Brendan, as Personal Representative of the Estate of Kristin Irvine Ryan
Salamone Olcott, Amanda
Salamone Santillo, Ann Marie

**Supp. A-221**

Salamone, Bernard
Salamone, Bernard, as Personal Representative of the Estate of Marjorie Salamone
Salerno, Danielle
Salerno, Danielle, as Personal Representative of the Estate of John Salerno
Salerno, John P.
Salvaterra, Carmen
Salvaterra, Carmen, Personal Representative of the Estate of Antoinetta Salvaterra
Salvaterra, Christian
Salvaterra, Gabrielle
Salvaterra, Isabelle
Samaniego, Luis
San Phillip, Lynne
San Phillip, Lynne, as Personal Representative of the Estate of Michael San Phillip
Sassone, Andrea
Schleider, Michelle
Serra, Kristen
Shea, Rosaleen, as Personal Representative of the Estate of Mary Yolanda Dowling
Silverstein aka "Silverstein-Verhoog," Maria
Silverstein, Cameron
Silverstein, Gabriella
Silverstein-Verhoog, Maria, as Personal Representative of the Estate of Craig Silverstein
Simowitz, Laurie
Simowitz, Laurie, as Personal Representative of the Estate of Barry Simowitz
Simowitz, Laurie, Personal Representative of the Estate of Mollie Simowitz
Slattery, Daniel
Slattery, James P.
Slattery, James P., as Personal Representative of the Estate of Christopher Paul Slattery
Slattery, Linda
Slattery-Appelle, Erin
Sleevi, Ellen
Smith, Chad Michael
Smith, George
Smith, Judy
Song, Frank
Song, Hyungshin K.
Song, Julie
Song, Yongjin and Hyungshin, as Co-Personal Representatives of the Estate of Won-Hyeong aka Daniel Song
Song, Yongjin L.
Soto, Joann
Spencer, Addison
Spencer, Christine
Spencer, Christine, as Personal Representative of the Estate of Robert Spencer
Spencer, Kathryn
Spencer, Michael
Spencer, Robert

**Supp. A-222**

Spencer, Robert
Spencer-Craig, Susan
Spero, Carrie
Stella, Terry
Stines, Maureen
Sutter, Hans Ulrich
Sutter, Hans Ulrich Sutter, as Personal Representative of the Estate of Selina aka "Seline"Sutter
Sutter, Hans Ulrich, Personal Representative of the Estate of Selina Sutter Derrer
Szocik aka "Szocik Milazzo," Lorraine
Szocik Milazzo, Lorraine, as Personal Representative of the Estate of Kevin Szocik
Taddonio Miscioscia, Danielle
Taddonio, Marc
Taddonio, Marc & Richard, Co-Personal Representatives of the Estate of Josephine Taddonio
Taddonio, Marc, as Personal Representative of the Estate of Michael Taddonio
Taddonio, Marc, Personal Representative of the Estate of Richard Taddonio
Taddonio, Michael
Taddonio, Nicole
Taddonio, Richard
Terrenzi aka "Terrenzi-Spring," Jane
Terrenzi Spring, Elizabeth Brian
Terrenzi-Spring, Jane, as Personal Representative of the Estate of Brian Terrenzi
Thompson, Mark
Thompson, Neal
Thompson, Norman
Thompson, Patricia
Thorpe, Basil
Thorpe, Basil and Valda Binns, as Co-Personal Representatives of the Estate of Nichola Angela Thorpe
Tirone, Joanna
Todisco, Anne
Todisco, Anne, as Personal Representative of the Estate of Richard Todisco
Todisco, Gregory
Tomasevic aka "Tomasevic Vulin," Tanja
Tomasevic Vulin, Tanja, as Personal Representative of the Estate of Vladimir Tomasevic
Tompsett, Emily
Toomey, Wendy
Tucker aka "Tucker Wadbrook," Mary Elizabeth
Tucker Wadbrook, Mary Elizabeth, as Personal Representative of the Estate of Michael Tucker
Tucker, Alexandra
Tucker, Christopher
Tucker, Gaffney
Tucker, Joan
Tucker, John
Tucker, Morgan
Tucker, Taylor
Tucker, Thomas

**Supp. A-223**

Tureski, Vicki, as Personal Representative of the Estate of Steven aka "Steve" Pollicino
Tureski, Vicki, Personal Representative of the Estate of Jane Pollicino
Van Kirk, Katherine
Vauk, Charles
Vauk, Dennis
Vauk, Jennifer
Vauk, Jennifer, as Personal Representative of the Estate of Ronald Vauk
Vauk, Liam
Vauk, Meaghan
Vauk, Patricia
Vianna Tenaglia, Christine
Vianna, Dennis
Vianna, Dennis and Marilynda, as Co-Personal Representatives of the Estate of Matthew Vianna aka "Gianna"
Vianna, Marilynda
Voskerijian, Aleene
Voskerijian, Isabelle
Voskerijian, Nayda
Voskerijian, Nayda, as Personal Representative of the Estate of Garo Voskerijian
Voskerijian, Shont
Voskerijian, Zaree
Voskerijian, Zaree, Personal Representative of the Estate of Zabel Voskerijian
Waldie Klimm, Mary Louise
Waldie Witherspoon, Meredith
Waldie Wrenshall, Jane
Waldie, Carol
Waldie, Carol, as Personal Representative of the Estate of Kenneth Waldie
Waldie, Jack
Waldie, Jeffrey
Waldie, Jonathan
Waters-Davidson, Amy, as Personal Representative of the Estate of Scott Davidson
Weber, Brittany
Webster Ghirarduzzi, Zoe Louise
Webster, Philip Nicholas, as Personal Representative of the Estate of Dinah Webster
Weiss, Marcia
Weiss, Marcia, as Personal Representative of the Estate of David T. Weiss
Weiss, Marcia, Personal Representative of the Estate of Gina Weiss
Welsh, Patrick
Welsh, Patrick, as Personal Representative of the Estate of Deborah Ann Welsh
Wentworth, Janine
Wong, Benjamin
Wong, Benjamin, as Personal Representative of the Estate of Jennifer Y. Wong
Works, Allison Noble
Works, Pamela
Works, Pamela, as Personal Representative of the Estate of John Works
Wotton, Brian, Personal Representative of the Estate of Jean Wotton

**Supp. A-224**

Wotton, Brian, Personal Representative of the Estate of Stewart Wotton
Wotton, David
Wotton, Brian
Wotton, Dorothea
Wotton, Rodney
Wren, Christopher
Wren, William
Wren, William & Christopher, Co-Personal Representatives of the Estate of Patricia Wren
Wren, William and Christopher, as Co-Personal Representatives of the Estate of William Wren

**Supp. A-225**

***Schneider et al. v. Islamic Republic of Iran*, 02-cv-7209 (GBD) (SN)**
**Jonathan C. Reiter Law Firm, PLLC**

Schneider, Cheryl, the Executor of the Estate of Ian Schneider
Schneider, Cheryl
Schneider, Rachel
Schneider, Jake
Schneider, Sophie
Baptiste, Gerard & Rodriguez, Gladys, Administrators of the Estate of Gerard Baptiste
Baptiste, Gerard
Connors, Susan, Executor of the Estate of Jonathan Connors
Connors, Susan
Connors, James
Connors, Jonathan
Crisman, Debora Ann, Administrator of the Estate of Daniel Crisman
Crisman, Debora Ann
Dimino, Nancy, the Executor of the Estate of Stephen Dimino
Dimino, Nancy
Dimino, Sabrina
Dimino-Ebert, Gigi
Rodriguez, Gladys
Salcedo, Matilde, Administrator of the Estate of Esmerlin Salcedo
Salcedo, Matilde
Salcedo, Amber
Salcedo, Kayla
Salcedo, Markos
Salcedo, Melody Ann

**Supp. A-226**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/15/2022
```

**03-MD-01570 (GBD)(SN)**

<u>**ORDER**</u>

**SARAH NETBURN, United States Magistrate Judge:**

     The Court, having consulted with Judge Caproni, denies the Plaintiffs' Executive

Committees' request to accept <u>Owens, et al. v. Taliban</u>, 22-cv-1949 as a related case, or to

otherwise consolidate it into, <u>In Re Terrorist Attacks on September 11, 2001</u>. ECF No. 7751.

Under Rule 13(a) of Rules for the Division of Business Among District Judges, Southern District

of New York, a case will be deemed related when "the interests of justice and efficiency will be

served . . . ." Cases should be deemed related when: (i) the action concerns substantially similar

parties or events, (ii) there is substantial factual overlap, (iii) the parties could be subject to

conflicting orders, and (iv) there would be a substantial duplication of judicial efforts.

     The rationale for incorporating <u>Owens</u> into <u>In Re Terrorist Attacks on September 11,</u>

<u>2001</u>, is that parties in both cases have either attached the same assets of Da Afghanistan Bank to

satisfy judgments against the Taliban, or have filed motions to attach those assets. This is where

the similarities end. Unlike plaintiffs in <u>In Re Terrorist Attacks on September 11, 2001</u>, the

<u>Owens</u> Plaintiffs do not have a judgment against the Taliban. Indeed, they only filed a complaint

in March 2022. Their claim does not concern the September 11 Terrorist Attacks, but separate

attacks purportedly supported by the Taliban in East Africa. Thus, the factual overlap is limited.

**Supp. A-227**

The parties are also in different procedural postures. The <u>Owens</u> Plaintiffs have yet to serve the Taliban, while plaintiffs in <u>In Re Terrorist Attacks on September 11, 2001</u>, are already moving into turnover proceedings. It is not impossible that these cases will eventually have overlapping issues. At this stage, however, they are legally and factually distinct so there are no efficiencies to be gained through their consolidation.

While the Court has accepted <u>John Does 1 through 7 v. The Taliban et al.</u>, No. 20-mc-740 ("<u>Doe</u>"), as a related case, two factors distinguish <u>Doe</u> from <u>Owens</u>. First, the <u>Doe</u> Plaintiffs already possess a judgment against the Taliban. This reduces the array of matters unrelated to September 11 Terrorist Attacks that the Court would be required to adjudicate. Indeed, the <u>Doe</u> Plaintiffs are currently proceeding on the same turnover schedule as other plaintiffs in <u>In Re Terrorist Attacks on September 11, 2001</u>, ECF No. 7750, something that would plainly not be possible for the <u>Owens</u> Plaintiffs.

Second, and more importantly, unique considerations of interbranch comity urged that <u>Doe</u> be accepted as a related case. At the time <u>Doe</u> was brought to the Court's attention, an attachment order in that case, along with one in this case, was preventing the implementing of U.S. foreign policy. Those attachment orders were preventing the President from reallocating certain Da Afghanistan Bank funds to alleviate an acute humanitarian crisis in Afghanistan. <u>See</u> ECF No. 7661 at 11–12.

**Supp. A-228**

Interbranch comity and a respect for the President's preeminence in foreign affairs thus urged the incorporation of <u>Doe</u> into <u>In Re Terrorist Attacks on September 11, 2001</u> to address the issues stemming from these writs in a rapid and uniform matter. Such urgent constitutional concerns are not present here. Accordingly, the requirements to accept <u>Owens</u> as a related case are not met.

**SO ORDERED.**

Dated:  March 15, 2022
        New York, New York

SARAH NETBURN
United States Magistrate Judge

3

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10ᵗʰ day of August, two thousand twenty-two.

Before:    Myrna Pérez,
           *Circuit Judge.*

_____

In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank.

**ORDER**

*************************************************

William Wodenshek, et al.,

**Docket Nos. 22-965(L),
22-975(Con)**

        Plaintiffs-Appellants,

v.

Da Afghanistan Bank, The Taliban

        Defendants-Appellees.

_____

Federal Insurance Company, Pacific Indemnity Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Chubb Insurance Company of Canada, Chubb Insurance Company of New Jersey, Great Northern Insurance Company, and Vigilant Insurance Company and the "Havlish Creditors"[1] move to intervene in this matter as Appellees. The Appellants do not oppose the motion.

IT IS HEREBY ORDERED that the motion is GRANTED.

For the Court**:**
Catherine O'Hagan Wolfe,
Clerk of Court



_____
[1] For a complete list of the Havlish Creditors, see Addendum A.

## Supp. A-230

**ADDENDUM A: LIST OF HAVLISH CREDITORS**

Alan Gu
Diane Romero
Alexander Rowe
Alice Carpeneto
Angela Stergiopoulos
Anne Marie Dorf
Barry Russin
Benefit of Devon Marie Rodak
Benefit of Maranda C. Ratchford
Brenda Sorenson
Brian Collman
Catherine Deblieck
Charles Collman
Chelsea Nicole Rodak
Christina Bane-Hayes
Christine Barton (now Pence)
Christine Papasso
Christopher Caproni
Clara Chirchirillo
Corazon Fernandez
Daniel D. Coffey, M.D.
Diane Romero
Dolores Caproni
Donald Bane
Donald Havlish, Sr.
Doyle Raymond Ward
Dwayne W. Collman
Ed Russin
Ellen Saracini
Estate of Andrew Stergiopoulos
Estate of Brian Nunez
Estate of Daniel M. Coffey
Estate of Denis Lavelle
Estate of Donald J. Havlish, Jr.
Estate of Dorthy Mauro
Estate of Edward W. Straub
Estate of Elvin Romero
Estate of George Eric Smith
Estate of James D. Halvorson
Estate of Jason Coffey
Estate of Jeanmarie Wallendorf
Estate of Jeffrey Coale
Estate of Jeffrey Collman
Estate of Jennifer Tino

Estate of John Grazioso
Estate of John M. Rodak
Estate of John William Perry
Estate of Joseph Lostrangio
Estate of Joshua Scott Reiss
Estate of Judy Fernandez
Estate of Liming Gu
Estate of Linda Ellen Panik
Estate of Maria Theresa Santillian
Estate of Marsha Dianah Ratchford
Estate of Martin Boryczewski
Estate of Mary Melendez
Estate of Meta Waller
Estate of Michael A. Bane
Estate of Michael Boryczewski
Estate of Michael Diehl
Estate of Paul K. Sloan
Estate of Peter Chirchirillo
Estate of Peter T. Milano
Estate of Philip Paul Ognibene
Estate of Richard M. Caproni
Estate of Richard Rosenthal
Estate of Robert Levine
Estate of Ronald Gamboa
Estate of Salvatore T. Papasso
Estate of Scott Schertzer
Estate of Stephen Dorf
Estate of Steven Cafiero
Estate of Timothy P. Soulas
Estate of Timothy Raymond Ward
Estate of Victor Saracini
Estate of Vincent A. Ognibene
Estate of William R. Godshalk
Estate of William R. Steiner
Estate of Yvette Nichole Moreno
Ester Santillian
Expedito Santillian
Fiona Havlish
Frances M. Coffey
FuMei Chien
George Stergiopoulos, M.D.
Gerald Bingham
Gloria Russin
Grace Kneski
Grace M. Parkinson-Godshalk
Guardian of Anne C. Saracini

Supp. A-232

Haomin Jian
Helen Rosenthal
Hui-Chien Chen
Hui-Chuan Jian
Hui-Zon Jian
Huichun Jian
Ivy Moreno
Jin Liu
Joan E. Tino
Joanne Gori
Joanne Lovett
Joanne Renzi
John Rodak
Joseph Dorf
Joslin Zeplin
Joyce Ann Rodak
Judith Reiss
Julia Boryczewski
Katherine Soulas
Kevin M. Coffey
Krystyna Boryczewski
Leona Zeplin
Leonard Zeplin
Linda Sammut
Lisa Caproni-Brown
Livia Chirchirillo
Loisanne Diehl
Loren Rosenthal
Margaret Mauro
Marie Ann Paprocki
Marshee R. Ratchford
Martin Panik
Mary Lynn-Anna Panik Stanley
Maureen Halvorson
Maureen R. Halvorson
Michael Caproni
Michael Loguidice
Michele Boryczewski
Michelle Wright
Morris Dorf
Pamela Schiele
Patricia J. Perry
Patricia Milano
Paul Schertzer
Ralph S. Maerz
Ramon Melendez

**Supp. A-233**

Raymond Doyle Smith
Regina Maria Merwin
Regina Rodak
Richard A. Caproni
Robert Dorf
Rodney M. Ratchford
Rodney Ratchford
Ronald S. Sloan
Roni Levine
Russa Steiner
Sandra Straub
Stephen L. Cartledge
Susan Conklin
Tara Bane
Teresanne Lostrangio
Tina Grazioso
William Coale
William Havlish

# Supp. A-234

## UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of October, two thousand twenty-two.

Before:     William J. Nardini,
                *Circuit Judge,*

_____

| | |
|---|---|
| In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank. | **ORDER** |
| ************************************************ | Docket Nos. 22-965(L), |
| William Wodenshek, et al., | 22-975(Con) |

                                    Plaintiffs-Appellants,

v.

Da Afghanistan Bank,

                                    Defendant-Appellee.
_____

In re Approximately $3.5 Billion of Assets on Deposit at the Federal Reserve Bank of New York in the Name of Da Afghanistan Bank.
************************************************
Sarah Wodenshek, child of 9/11 decedent Christopher Wodenshek, et al.,

                                    Plaintiffs-Appellants,

v.

The Taliban,

                                    Defendant-Appellee.
_____

Appellants request that the Court hold these appeals in abeyance pending the district court's disposition of objections to the magistrate's Report & Recommendation in the related turnover proceedings.

**Supp. A-235**

IT IS HEREBY ORDERED that the motion is GRANTED, on consent. Appellants must file a status update letter every 90 days while the Report & Recommendation remains *sub judice*.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court