**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone:  212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): 23-258(L)                                                       Caption [use short title]

Motion for:  Leave to File Brief as Amicus Curiae


Havlish v. Bin-Laden

Set forth below precise, complete statement of relief sought:

Movant Terry Kay Rockefeller seeks leave to file an
amicus curiae brief in support of no party.




**MOVING PARTY:** Amicus Curiae                    **OPPOSING PARTY:** Fiona Havlish
☐ Plaintiff                    ☐ Defendant
☐ Appellant/Petitioner      ☐ Appellee/Respondent

**MOVING ATTORNEY:** Sonya C. Bishop         **OPPOSING ATTORNEY:** Lee S. Wolosky
[name of attorney, with firm, address, phone number and e-mail]

Baker & McKenzie LLP, 452 Fifth Avenue, New York, NY 10018 | Jenner & Block LLP, 1155 Avenue of the Americas, New York, NY 10036

332-215-5812 | 212-891-1628

sonya.bishop@bakermckenzie.com | lwolosky@jenner.com

Court-Judge/Agency appealed from: Hon. George B. Daniels / United States District Court for the Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☒ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below?        ☐ Yes ☐ No
Has this relief been previously sought in this Court?  ☐ Yes ☐ No
Requested return date and explanation of emergency:_____

Is oral argument on motion requested?  ☐ Yes ☒ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☒ No  If yes, enter date:_____

**Signature of Moving Attorney:**
/S/ Sonya C. Bishop_____ Date: Oct. 5, 2023        Service by: ☒ CM/ECF    ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

# 23-0258-cv(L)

## 23-0263-cv(CON), 23-0304-cv(CON), 23-0346-cv(CON), 23-0444-cv(CON)

# United States Court of Appeals
*for the*
# Second Circuit

---

FIONA HAVLISH, RUSSA STEINER, in her own right and as executrix of the estate of WILLIAM STEINER, deceased, CLARA CHIRCHIRILLO, in her own right and as executrix of the estate of PETER CHIRCHIRILLO, TARA BANE, in her own right and as executrix of the estate of MICHAEL A. BANE, GRACE M. PARKINSON-GODSHALK, in her own right and administratix of the Estate of WILLIAM R. GODSHALK, ELLEN L. SARACINI, in her own right and as executrix of the estate of VICTOR J. SARACINI, deceased, THERESAANN LOSTRANGIO, in her own right and as executrix of the estate of JOSEPH LOSTRANGIO, deceased, DEENA BURNETT, in her own right and as administratix of the Estate of THOMAS E. BURNETT, JR., deceased, THOMAS E. BURNETT, SR., as the parent and on behalf of the family of THOMAS E. BURNETT, JR., JUDITH REISS, in her own right and as administratix of the estate of JOSHUA SCOTT REISS, deceased, WILLIAM COALE, in his own right and as administratix of the estate of JEFFREY ALAN COALE, deceased,

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## MOTION OF TERRY KAY ROCKEFELLER
## FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE*
## IN SUPPORT OF NO PARTY

---

SONYA C. BISHOP
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, New York 10018
(212) 626-4100

*Attorney for Amicus Curiae*

---

PATRICIA J. PERRY, in her own right and as administratix of the estate of
JOHN WILLIAM PERRY, deceased, BARBARA A. MINERVINO, in her own
right and as administratix of the Estate of LOUIS J. MINERVINO, deceased,
MATTHEW T. SELLITTO, in his own right and as administratix of the estate of
LOUIS J. MINERVINO, deceased, RALPH MAERZ, JR., as parent and on
behalf of the family of NOELL MAERZ, deceased, LINDA PANIK, as parent
and on behalf of the family of LT. JONAS MARTIN PANIK, deceased,
MARTIN PANIK, as parent of and on behalf of the family of LT. JONAS
MARTIN PANIK, deceased, MARTINA LYNE-ANN PANIK, as the sister of
LT. JONAS MARTIN PANIK, STEPHEN L. CARTLEDGE, as husband of
SANDRA WRIGHT CARTLEDGE, deceased, LOISANNE DIEHL, in her own
right and as executrix of the estate of MICHAEL DIEHL, deceased, TINA
GRAZIOSO, in her own right and as executrix of the estate of JOHN
GRAZIOSO, deceased, JIN LIU, in her own right and as executrix of the estate of
LIMING GU, deceased, ALL PLAINTIFFS, on behalf of themselves and all
others similarly situated, MICHAEL EDWARD PAIGE, Special Administrator of
the Estate of TIMOTHY RAYMOND WARD, deceased., BRIANNA L.
GOMES, Administrator of the Estate of DOYLE RAYMOND WARD, deceased,
JOHN DOES 1 through 7, RAYMOND ANTHONY SMITH, as Administrator of
the Estate of GEORGE ERIC SMITH, deceased, FEDERAL INSURANCE
COMPANY, PACIFIC INDEMNITY COMPANY, CHUBB CUSTOM
INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY,
CHUBB INSURANCE COMPANY OF CANADA, CHUBB INSURANCE
COMPANY OF NEW JERSEY, GREAT NORTHERN INSURANCE
COMPANY, VIGILANT INSURANCE COMPANY, TIG INSURANCE
COMPANY, KATHLEEN ASHTON, as Administrator of the Estate of
THOMAS ASHTON, deceased and on behalf of all survivors of Thomas Ashton,
JOSEPHINE ALGER, as Administrator of the Estate of FREDERICK ALGER,
as CoExecutors of the Estate of DAVID D. ALGER, deceased and on behalf of
the survivors of DAVID D. ALGER, ANGELICA ALLEN, as Administrator of
the Estate of ERIC ALLEN, deceased and on behalf of all survivors of Eric Allen,
GEORGE ANDRUCKI, as CoAdministrator of the Estate of JEAN ANDRUCKI,
deceased and on behalf of all survivors of JEAN ANDRUCKI, MARY
ANDRUCKI, as CoAdministrator of the Estate of JEAN ANDRUCKI, deceased
and on behalf of all survivors of JEAN ANDRUCKI,

*Plaintiffs-Appellants,*

KATHERINE SOULAS, in her own right, as Representative of the Heirs, on
behalf of her minor children, and as Executrix of the Estate of TIMOTHY
SOULAS, Deceased, on behalf of the Solatium claimants, including
KATHERINE SOULAS, FREDERICK SOULAS, II, TIMOTHY SOULAS, JR.,

*Plaintiff*,

JANE DOE, In her own right, on behalf of her minor children, and as Executrix of
the Estate of TOM SAWYER, a fictitious name, deceased,

*Consolidated-Plaintiff,*

v.

THE ISLAMIC EMIRATE OF AFGHANISTAN, THE TALIBAN, AL QAIDA/ISLAMIC ARMY, SHEIKH USAMAH BIN-MUHAMMAD BIN-LADEN, AKA Osama Bin-Laden, REPUBLIC OF IRAQ,

*Defendants-Appellees,*

FEDERAL RESERVE BANK OF NEW YORK,

*Garnishee-Interested-Party,*

SHEIKH USAMA BIN-LADEN, MUHAMMAD OMAR, AL QAEDA/ISLAMIC ARMY, ISLAMIC REPUBLIC OF IRAN, AYATOLLAH ALI HOSEINI-KHAMENEI, SUPREME LEADER, IRANIAN MINISTRY OF INFORMATION AND SECURITY, THE ISLAMIC REVOLUTIONARY GUARD CORPS, HEZBOLLAH, an unincorporated association, IRANIAN MINISTRY OF PETROLEUM, IRANIAN MINISTRY OF ECONOMIC AFFAIRS AND FINANCE, IRANIAN MINISTRY OF COMMERCE, IRANIAN MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS, SADDAM HUSSEIN, PRESIDENT, IRAQI MINISTRY OF DEFENSE, IRAQI MINISTRY OF FINANCE, IRAQI MINISTRY OF OIL, IRAQI INTELLIGENCE SERVICE, QUSAY HUSSEIN, UNIDENTIFIED TERRORIST DEFENDANTS 1-500, ALI AKBAR HASHEMI RAFSANJANI, THE NATIONAL IRANIAN TANKER CORPORATION, previously identified as Unidentified Terrorist 2, THE NATIONAL IRANIAN OIL CORPORATION, Previously Identified as unidentified Terrorist 3, THE NATIONAL IRANIAN GAS COMPANY, Previously Identified as unidentified Terrorist 4, IRAN AIRLINES, Previously Identified as unidentified Terrorist 5, THE NATIONAL IRANIAN PETROCHEMICAL COMPANY, THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, UNIDENTIFIED TERRORIST DEFENDANTS 8-500, AL-QAEDA, THE HAQQANI NETWORK, AL QAIDA, EGYPTIAN ISLAMIC JIHAD, OSAMA BIN LADEN, ESTATE OF MUHAMMAD ATEF, AYMAN AL ZAWAHARI, ABU ZUBAYDH,

*Defendants.*

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), Amicus Curiae Terry Kay Rockefeller respectfully submits this memorandum of law in support of her motion for leave to file the attached brief in support of neither party in the above captioned cases. A copy of the proposed brief accompanies this motion.[1]

## I.    Terry Kay Rockefeller

Amicus Terry Kay Rockefeller is an award-winning documentary film producer and a human rights and peace activist. Among the films she is known for are histories of the civil rights and racial justice movement, social justice organizing during the Great Depression of the 1930s, stories of America's War on Poverty, and movements for democratization and social justice in Africa during the 1990s. Ms. Rockefeller's activism focuses on using storytelling, rule-of-law-based solutions, and restorative justice to break cycles of violence and hatred. Her work spans decades.

Ms. Rockefeller's sister, Laura Rockefeller, was killed in the 9/11 terrorist attacks on the World Trade Center. Ms. Rockefeller is not party to this case or

---

[1] Though Ms. Rockefeller's brief is in support of no party, Amicus believes that if either party were to take issue with her motion and brief, it would be Appellants. Counsel for Ms. Rockefeller has notified counsel for Appellants (Fiona Havlish) of Ms. Rockefeller's intent to file a motion for leave to file a brief as amicus curiae. Counsel for Ms. Rockefeller does not know Appellants' position on Ms. Rockefeller's request to file as amicus or whether Appellants intend to file a response to this motion.

related 9/11 cases, nor are any of her family members. And neither Ms. Rockefeller nor any of her family members has a financial interest in the outcome of the 9/11 cases.

Since 2002, Ms. Rockefeller has worked to honor her sister's life and to advocate for nonviolent actions consistent with international and human rights law in the pursuit of justice for 9/11 victims, families, and communities. She has taken up this calling with the hope of breaking the cycles of violence engendered by war and terrorism. Ms. Rockefeller has been active in observing the military commission tribunals that have been convened at Guantanamo to try those accused of the 9/11 attacks. Immediately following the U.S.-led invasion of Iraq, Ms. Rockefeller was active in seeking ways to support the Iraqi people, and today Ms. Rockefeller works with the Iraqi Civil Society Solidarity Initiative, a collaboration between Iraqi and international NGOs to support human rights, women's rights, democracy, and anti-corruption and environmental activists in Iraq.

In her work supporting the Afghan people, Ms. Rockefeller rejects the idea that the war in Afghanistan was a "good war" or that there was a way to "win." She opposed the initial attacks on Afghanistan immediately after 9/11 believing that the material and psychic loss that accompany war and violent conflict are known catalysts for terrorist recruitment. Ms. Rockefeller has been involved in efforts to disrupt that cycle of violence by, among other initiatives, lobbying Congress for

payments for Afghan civilian casualties of the U.S.-led invasion. She supported the Afghan Youth Peace Volunteers and deeply admired their belief in nonviolence in economic relations, resolving conflict, and their relationships with the earth and one another.

From 2003 to 2009, Ms. Rockefeller was a member of the board of directors of Murder Victims Families for Reconciliation, an organization that works to abolish the death penalty in the United States. Because of her long-standing opposition to capital punishment, she gave a victim impact statement for the defense in the case of *United States v. Moussaoui*, and was gratified that the defendant received a sentence of life without parole. She joined Amnesty International in 1982, and from 2013 to 2019, she served on the board of directors of Amnesty International–USA.

Ms. Rockefeller is currently a National Co-convener of United for Peace and Justice, a network of U.S. peace, nonviolence and social justice organizations. Ms. Rockefeller is also a member of the board of directors of the Campaign for Peace, Disarmament and Common Security. She speaks regularly about the need for nonviolent, law-based responses to terrorism, as well as proactive efforts to address the root causes of hatred and violence.

Ms. Rockefeller is a member of September Eleventh Families for Peaceful Tomorrows ("Peaceful Tomorrows"), a group of family members of 9/11 victims who work to promote dialogue and alternatives to violent conflict, with the goal of

breaking cycles of violence engendered by imperialism, war, and terrorism. Members have travelled to Afghanistan to bear witness to the casualties of the American War on Terror, advocated for Guantanamo Bay torture victims, and implemented programs to combat the rise in Islamophobia that followed the occupation of Iraq and Afghanistan, among other initiatives. As part of the process of finding solidarity with those affected by violence, Peaceful Tomorrows seeks to bring those responsible for the 9/11 attacks to justice with a focus on human rights and in accordance with the principles of international law. Some members of Peaceful Tomorrows are parties to this or related 9/11 cases. To be clear, Ms. Rockefeller files this motion for leave only on her own behalf.

## II. Amicus Filings Below

In the proceedings below, Ms. Rockefeller was denied leave to file her brief as amicus curiae due to a misunderstanding by the lower court about her role and position. Because that brief is the same brief for which Ms. Rockefeller now seeks leave to file, in the interest of transparency, a short explanation of the events below is in order.

On April 21, 2022, Peaceful Tomorrows filed a motion for leave to file as Amicus Curiae. ECF[2] no. 618. Attached to Peaceful Tomorrows' motion was the

---

[2] All ECF numbers refer to *Havlish v. Bin-Laden*, 1:03-cv-09848-GBD-SN (S.D.N.Y.), the proceeding over which Judges Sarah Netburn and George B. Daniels presided.

proposed brief, which explained that the State of Afghanistan must be joined as a party and asset attachment is improper because the State of Afghanistan, not the Taliban, is the owner of the Da Afghanistan Bank assets.

The day before filing for leave to file a brief as amicus curiae, counsel for Peaceful Tomorrows spoke to Douglass Mitchell, who represented the Plaintiff-Creditors. Mr. Mitchell informed Peaceful Tomorrows' counsel that the Plaintiff-Creditors did not take any position with respect to the filing of the proposed brief. Counsel for Peaceful Tomorrows also spoke with Don Howarth, who was listed as counsel for Fiona Havlish.[3] Mr. Haworth said he did not object to the filing of the motion for leave to file as amicus. A few days after filing the motion, Mr. Mitchell and Lee Wolosky filed a letter with the court stating that Mr. Howarth did not represent Fiona Havlish, the Plaintiff-Creditors took no position on the filing of the motion for leave to file as amicus, and members of Peaceful Tomorrows were parties to the multi-district litigation. According to Messrs. Mitchell and Wolosky, they raised that last issue "only for the Court's awareness", ECF no. 621, and, not because Peaceful Tomorrows' position would prevent the Plaintiff-Creditors from ever taking the assets that Judges Netburn and Daniels eventually determined did not belong to them.

---

[3] Mr. Howarth never withdrew as counsel and in his conversation with counsel for Peaceful Tomorrows never informed counsel that he did not represent Fiona Havlish.

Judge Netburn reasonably and correctly denied Peaceful Tomorrows' motion for leave to file as Amicus on the grounds that some of its members were parties to the cases. ECF no. 623.

Understanding Judge Netburn's issue with the brief to be that Peaceful Tomorrows' members were parties in the lawsuits, Ms. Rockefeller filed for motion for leave to file as amicus on April 29, 2022, ECF no. 626, as neither Ms. Rockefeller nor her family was a party to the 9/11 lawsuits or had a financial interest in them. Ms. Rockefeller filed in her individual capacity, and she used the same brief that Peaceful Tomorrows had sought to file in order to advance the same argument because she believed it was legally and morally correct and because she has a unique perspective as the sister of a 9/11 victim. Ms. Rockefeller and her counsel thought that by filing in Ms. Rockefeller's name, the infirmity that Judge Netburn had rightly pointed out would be corrected. Judge Netburn, however, denied Ms. Rockefeller's motion for leave to file as amicus. EFC no. 628. Judge Netburn wrote that the Court did not "consider it appropriate for that order [denying Peaceful Tomorrows' leave to file as amicus] to be circumvented by selecting a single member of the organization to file the same document." ECF no. 28.

Though true that Ms. Rockefeller was and is a member of Peaceful Tomorrows and used the same brief that had been attached to Peaceful Tomorrows' motion for leave, she had not, and is not, attempting to circumvent orders issued by

6

the court. Ms. Rockefeller used the same brief because she shares the values of Peaceful Tomorrows and partakes in the same work as the organization. Many Peaceful Tomorrows members believed then and believe now that the money Appellants are trying to take belongs to the Afghan people. And that was Ms. Rockefeller's personal position during the district court proceedings and the proceedings before this Court. She has no wish to obfuscate this position by submitting the same proposed brief to this Court. By contrast, she hopes to shed light on the truth—taking the Afghan people's money does nothing but reinforce the same cycles of violence that led to the 9/11 attacks in which Ms. Rockefeller's sister Laura was killed. Her proposed brief presents this Court with legal arguments for that position.

## III. Conclusion

The above captioned cases provide an opportunity to hold people, governments, and institutions civilly accountable for their roles in the 9/11 attacks. Ms. Rockefeller has a direct interest in these cases because she lost her sister Laura in the 9/11 attacks. As a result, Ms. Rockefeller has devoted her life to breaking the cycles of violence that lead to terrorism, hatred, and large-scale human suffering.

For the foregoing reasons, Ms. Terry Kay Rockefeller respectfully submits that the Court should grant leave to file the proposed brief as Amicus Curiae.

Respectfully submitted,

/s/ Sonya C. Bishop
Sonya C. Bishop
Baker & McKenzie LLP
452 Fifth Avenue
New York, N.Y. 10018
Phone: 332-215-5812
Fax: 212-310-1748
Sonya.Bishop@bakermckenzie.com

Dated: October 5, 2023          *Attorney for Amicus Curiae*
     New York, New York

8

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, the foregoing motion is in <u>14-Point Times New Roman</u> proportional font and contains 1690 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: October 5, 2023
      New York, New York

/s/ Sonya C. Bishop
Sonya C. Bishop
Baker & McKenzie LLP
452 Fifth Avenue
New York, N.Y. 10018
Phone: 332-215-5812
Fax: 212-310-1748
Sonya.Bishop@bakermckenzie.com

*Attorney for Amicus Curiae*

# 23-0258-cv(L)

## 23-0263-cv(CON), 23-0304-cv(CON), 23-0346-cv(CON), 23-0444-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

FIONA HAVLISH, RUSSA STEINER, in her own right and as executrix of the estate of WILLIAM STEINER, deceased, CLARA CHIRCHIRILLO, in her own right and as executrix of the estate of PETER CHIRCHIRILLO, TARA BANE, in her own right and as executrix of the estate of MICHAEL A. BANE, GRACE M. PARKINSON-GODSHALK, in her own right and administratix of the Estate of WILLIAM R. GODSHALK, ELLEN L. SARACINI, in her own right and as executrix of the estate of VICTOR J. SARACINI, deceased, THERESAANN LOSTRANGIO, in her own right and as executrix of the estate of JOSEPH LOSTRANGIO, deceased, DEENA BURNETT, in her own right and as administratix of the Estate of THOMAS E. BURNETT, JR., deceased, THOMAS E. BURNETT, SR., as the parent and on behalf of the family of THOMAS E. BURNETT, JR., JUDITH REISS, in her own right and as administratix of the estate of JOSHUA SCOTT REISS, deceased, WILLIAM COALE, in his own right and as administratix of the estate of JEFFREY ALAN COALE, deceased,

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICUS CURIAE* TERRY KAY ROCKEFELLER IN SUPPORT OF NO PARTY

SONYA C. BISHOP
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, New York 10018
(212) 626-4100

*Attorney for Amicus Curiae*

PATRICIA J. PERRY, in her own right and as administratix of the estate of
JOHN WILLIAM PERRY, deceased, BARBARA A. MINERVINO, in her own
right and as administratix of the Estate of LOUIS J. MINERVINO, deceased,
MATTHEW T. SELLITTO, in his own right and as administratix of the estate of
LOUIS J. MINERVINO, deceased, RALPH MAERZ, JR., as parent and on
behalf of the family of NOELL MAERZ, deceased, LINDA PANIK, as parent
and on behalf of the family of LT. JONAS MARTIN PANIK, deceased,
MARTIN PANIK, as parent of and on behalf of the family of LT. JONAS
MARTIN PANIK, deceased, MARTINA LYNE-ANN PANIK, as the sister of
LT. JONAS MARTIN PANIK, STEPHEN L. CARTLEDGE, as husband of
SANDRA WRIGHT CARTLEDGE, deceased, LOISANNE DIEHL, in her own
right and as executrix of the estate of MICHAEL DIEHL, deceased, TINA
GRAZIOSO, in her own right and as executrix of the estate of JOHN
GRAZIOSO, deceased, JIN LIU, in her own right and as executrix of the estate of
LIMING GU, deceased, ALL PLAINTIFFS, on behalf of themselves and all
others similarly situated, MICHAEL EDWARD PAIGE, Special Administrator of
the Estate of TIMOTHY RAYMOND WARD, deceased., BRIANNA L.
GOMES, Administrator of the Estate of DOYLE RAYMOND WARD, deceased,
JOHN DOES 1 through 7, RAYMOND ANTHONY SMITH, as Administrator of
the Estate of GEORGE ERIC SMITH, deceased, FEDERAL INSURANCE
COMPANY, PACIFIC INDEMNITY COMPANY, CHUBB CUSTOM
INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY,
CHUBB INSURANCE COMPANY OF CANADA, CHUBB INSURANCE
COMPANY OF NEW JERSEY, GREAT NORTHERN INSURANCE
COMPANY, VIGILANT INSURANCE COMPANY, TIG INSURANCE
COMPANY, KATHLEEN ASHTON, as Administrator of the Estate of
THOMAS ASHTON, deceased and on behalf of all survivors of Thomas Ashton,
JOSEPHINE ALGER, as Administrator of the Estate of FREDERICK ALGER,
as CoExecutors of the Estate of DAVID D. ALGER, deceased and on behalf of
the survivors of DAVID D. ALGER, ANGELICA ALLEN, as Administrator of
the Estate of ERIC ALLEN, deceased and on behalf of all survivors of Eric Allen,
GEORGE ANDRUCKI, as CoAdministrator of the Estate of JEAN ANDRUCKI,
deceased and on behalf of all survivors of JEAN ANDRUCKI, MARY
ANDRUCKI, as CoAdministrator of the Estate of JEAN ANDRUCKI, deceased
and on behalf of all survivors of JEAN ANDRUCKI,

*Plaintiffs-Appellants,*

KATHERINE SOULAS, in her own right, as Representative of the Heirs, on
behalf of her minor children, and as Executrix of the Estate of TIMOTHY
SOULAS, Deceased, on behalf of the Solatium claimants, including
KATHERINE SOULAS, FREDERICK SOULAS, II, TIMOTHY SOULAS, JR.,

*Plaintiff*,

JANE DOE, In her own right, on behalf of her minor children, and as Executrix of
the Estate of TOM SAWYER, a fictitious name, deceased,

*Consolidated-Plaintiff,*

v.

THE ISLAMIC EMIRATE OF AFGHANISTAN, THE TALIBAN, AL QAIDA/ISLAMIC ARMY, SHEIKH USAMAH BIN-MUHAMMAD BIN-LADEN, AKA Osama Bin-Laden, REPUBLIC OF IRAQ,

*Defendants-Appellees,*

FEDERAL RESERVE BANK OF NEW YORK,

*Garnishee-Interested-Party,*

SHEIKH USAMA BIN-LADEN, MUHAMMAD OMAR, AL QAEDA/ISLAMIC ARMY, ISLAMIC REPUBLIC OF IRAN, AYATOLLAH ALI HOSEINI-KHAMENEI, SUPREME LEADER, IRANIAN MINISTRY OF INFORMATION AND SECURITY, THE ISLAMIC REVOLUTIONARY GUARD CORPS, HEZBOLLAH, an unincorporated association, IRANIAN MINISTRY OF PETROLEUM, IRANIAN MINISTRY OF ECONOMIC AFFAIRS AND FINANCE, IRANIAN MINISTRY OF COMMERCE, IRANIAN MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS, SADDAM HUSSEIN, PRESIDENT, IRAQI MINISTRY OF DEFENSE, IRAQI MINISTRY OF FINANCE, IRAQI MINISTRY OF OIL, IRAQI INTELLIGENCE SERVICE, QUSAY HUSSEIN, UNIDENTIFIED TERRORIST DEFENDANTS 1-500, ALI AKBAR HASHEMI RAFSANJANI, THE NATIONAL IRANIAN TANKER CORPORATION, previously identified as Unidentified Terrorist 2, THE NATIONAL IRANIAN OIL CORPORATION, Previously Identified as unidentified Terrorist 3, THE NATIONAL IRANIAN GAS COMPANY, Previously Identified as unidentified Terrorist 4, IRAN AIRLINES, Previously Identified as unidentified Terrorist 5, THE NATIONAL IRANIAN PETROCHEMICAL COMPANY, THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, UNIDENTIFIED TERRORIST DEFENDANTS 8-500, AL-QAEDA, THE HAQQANI NETWORK, AL QAIDA, EGYPTIAN ISLAMIC JIHAD, OSAMA BIN LADEN, ESTATE OF MUHAMMAD ATEF, AYMAN AL ZAWAHARI, ABU ZUBAYDH,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................ ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ............................................1

SUMMARY OF ARGUMENT ..............................................................4

ARGUMENT ...........................................................................5

    I.    The State of Afghanistan Must Be Joined in the Attachment
             Proceeding ................................................................5

    II.   Attachment of the DAB Assets Should Not Be Allowed ....................7

CONCLUSION ........................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Caballero v. Fuerzas Armadas Revolucionarias de Columbia*,
No. 20-MC-0040-LJV (W.D.N.Y. Dec. 18, 2020) .......................................11

*De Csepel v. Republic of Hungary*,
2022 WL 678076 (D.C. Cir. March 8, 2022) ..................................6

*Hausler v. JP Morgan Chase, N.A.*,
770 F.3d 207 (2d Cir. 2014) ................................................... 9, 10

*Heiser v. Islamic Repub. of Iran*,
735 F.3d 934 (D.C. Cir. 2013) ...........................................9

*Kirschenbaum v. 650 Fifth Ave.*,
830 F.3d 107 (2d Cir. 2016) ........................................ 5, 7, 10, 11

*NML Capital, LTD v. Banco Central de la Republica Argentina*,
652 F.3d 172 (2d Cir. 2011) ..............................................5

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008)..........................................................5

*Republic of Sudan v. Harrison*,
139 S. Ct. 1057 (2019)........................................................7

*Rubin v. Islamic Repub. of Iran*,
830 F.3d 470 (7th Cir. 2016) ...................................................12

**Statutes & Other Authorities:**

28 U.S.C. § 1603(a) ........................................................6

28 U.S.C. § 1608.............................................................7

28 U.S.C. § 1608(a) ........................................................7

28 U.S.C. § 1610.............................................................8

28 U.S.C. § 1610(c) ........................................................7

28 U.S.C. § 1611(b)(1)....................................................11

ii

Arthur W. Rovine, Dep't of State, Digest of United States Practice in
International Law 228–29 (1973) ....................................................................11

Fed. R. App. P. 29(a)(4)(E).............................................................................2

Fed. R. Civ. P. 19(a).......................................................................................5

Fed. R. Civ. P. 19(b) ......................................................................................6

*Foreign Relations Law - Foreign Sovereign Immunities Act Terrorism
Exceptions - Second Circuit Holds that the Terrorism Risk
Insurance Act, but not the FSIA, Allows Recovery against U.S.
Companies Owned by State Sponsors of* Terrorism,
130 Harv. L. Rev. 1257 (2017) .....................................................................10

Gov't's Br., *United States v. Assa Co.,* No. 17-3658
(2d Cir. Aug 31, 2018)..................................................................................12

H.R. REP. NO. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 .......... 5, 11

Letter from Charles N. Brower, U.S. Dep't of State Acting Legal Adviser,
to Elliot L. Richardson, Attorney General (July 24, 1973) ..........................11

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED
STATES § 205(1) ...........................................................................................9

TRIA § 201 ......................................................................................................9

TRIA § 201(a) ..........................................................................................8, 9, 11

TRIA § 201(d)(4) ...........................................................................................8

U.S. Br., *Calderon-Cardona v. Bank of N.Y. Mellon*, No. 12-75, ECF No.
210 (2d Cir. Sept. 21, 2012) ........................................................................10

iii

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

Amicus Curiae Terry Kay Rockefeller is an award-winning documentary film producer and a human rights and peace activist.[1]  Among the films she is known for are histories of the civil rights and racial justice movement, social justice organizing during the Great Depression of the 1930s, stories of America's War on Poverty, and movements for democratization and social justice in Africa during the 1990s. Ms. Rockefeller's activism focuses on using storytelling, rule-of-law-based solutions, and restorative justice to break cycles of violence and hatred.  Her work spans decades.

Ms. Rockefeller's sister, Laura Rockefeller, was killed in the 9/11 terrorist attacks on the World Trade Center.  Ms. Rockefeller is not party to this case or related 9/11 cases, nor are any of her family members.  And neither Ms. Rockefeller nor any of her family members has a financial interest in the outcome of the 9/11 cases.

Since 2002, Ms. Rockefeller has worked to honor her sister's life and to advocate for nonviolent actions consistent with international and human rights law in the pursuit of justice for 9/11 victims, families, and communities.  She has taken

---

[1] In accordance with Fed. R. App. P. 29(a)(4)(E), Amicus affirm that no person or entity other than Amicus and her counsel authored this brief in whole or in part, and that no person or entity other than counsel contributed money intended to fund the preparation or submission of this brief.

up this calling with the hope of breaking the cycles of violence engendered by war and terrorism. Ms. Rockefeller has been active in observing the military commission tribunals that have been convened at Guantanamo to try those accused of the 9/11 attacks. Immediately following the U.S.-led invasion of Iraq, Ms. Rockefeller was active in seeking ways to support the Iraqi people, and today Ms. Rockefeller works with the Iraqi Civil Society Solidarity Initiative, a collaboration between Iraqi and international NGOs to support human rights, women's rights, democracy, and anti-corruption and environmental activists in Iraq.

In her work supporting the Afghan people, Ms. Rockefeller rejects the idea that the war in Afghanistan was a "good war" or that there was a way to "win." She opposed the initial attacks on Afghanistan immediately after 9/11 believing that the material and psychic loss that accompany war and violent conflict are known catalysts for terrorist recruitment. Ms. Rockefeller has been involved in efforts to disrupt that cycle of violence by, among other initiatives, lobbying Congress for payments for Afghan civilian casualties of the U.S.-led invasion. She supported the Afghan Youth Peace Volunteers and deeply admired their belief in nonviolence in economic relations, resolving conflict, and their relationships with the earth and one another.

From 2003 to 2009, Ms. Rockefeller was a member of the board of directors of Murder Victims Families for Reconciliation, an organization that works to abolish

the death penalty in the United States. Because of her long-standing opposition to capital punishment, she gave a victim impact statement for the defense in the case of *United States v. Moussaoui*, and was gratified that the defendant received a sentence of life without parole. She joined Amnesty International in 1982, and from 2013 to 2019, she served on the board of directors of Amnesty International–USA.

Ms. Rockefeller is currently a National Co-convener of United for Peace and Justice, a network of U.S. peace, nonviolence and social justice organizations. Ms. Rockefeller is also a member of the board of directors of the Campaign for Peace, Disarmament and Common Security. She speaks regularly about the need for nonviolent, law-based responses to terrorism, as well as proactive efforts to address the root causes of hatred and violence.

Ms. Rockefeller is a member of September Eleventh Families for Peaceful Tomorrows ("Peaceful Tomorrows"), a group of family members of 9/11 victims who work to promote dialogue and alternatives to violent conflict, with the goal of breaking cycles of violence engendered by imperialism, war, and terrorism. Members have travelled to Afghanistan to bear witness to the casualties of the American War on Terror, advocated for Guantanamo Bay torture victims, and implemented programs to combat the rise in Islamophobia that followed the occupation of Iraq and Afghanistan, among other initiatives. As part of the process of finding solidarity with those affected by violence, Peaceful Tomorrows seeks to

3

bring those responsible for the 9/11 attacks to justice with a focus on human rights and in accordance with the principles of international law. Some members of Peaceful Tomorrows are parties to this or related 9/11 cases.

The war in Afghanistan was waged in 2001 in the names of those lost in the 9/11 attacks. On top of twenty years of war, the Afghan people's lives have been made worse by the collapse of the country's economy, largely as a result of the impoundment of the Da Afghanistan Bank funds (sometimes the "DAB Assets"). The entire nation is now on the brink of a humanitarian crisis of monumental proportions. Ms. Rockefeller agrees with 9/11 families seeking justice for the loss of their loved ones' lives. Ms. Rockefeller, however, believes that attaching the DAB Assets is not the proper avenue to seek such justice and that this attachment would clearly cause further harm to innocent Afghans. The DAB money belongs to the Afghan people and should be released solely for their benefit. To do otherwise is to perpetuate the cycles of violence that harm and endanger us all.

## SUMMARY OF ARGUMENT

The attachment proceeding cannot properly continue without the joinder of the State of Afghanistan, because it is an indispensable party to the proceeding.

Attachment should not be allowed in any event, because the State of Afghanistan, not the Taliban, is the owner of and entitled to the DAB Assets. A contrary determination would have the legal consequence of treating the State of

4

Afghanistan as a state sponsor of terrorism, when it has never been designated as such. *Kirschenbaum v. 650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016), is not controlling; it had no occasion to consider the peculiar factual situation presented here.

## ARGUMENT

### I. The State of Afghanistan Must Be Joined in the Attachment Proceeding.

The United States has raised a number of important considerations relevant to the decisions to be made in this proceeding in a Statement of Interest ("SOI") filed February 11, 2022 (Case No. 03-md-01570, ECF #7661). Among these is that "while the 'funds of foreign central banks' are managed through those banks' accounts in the United States, those funds are, in fact, the 'reserves of the foreign states' themselves." SOI at 24 (quoting *NML Capital, LTD v. Banco Central de la Republica Argentina*, 652 F.3d 172, 195 (2d Cir. 2011) (quoting H.R. Rep. No. 94-1487 at 31, *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6630) (brackets omitted)). Because it clearly has "an interest relating to the subject of the action [*i.e.*, the "DAB Assets"] and is [so] situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest," Fed. R. Civ. P. 19(a), the ***State of Afghanistan*** must be considered a "required" party. *See Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008).

In such a circumstance, "the court must determine whether, in equity and

good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). One might consider whether the participation of Afghanistan's central bank, DAB, in the proceeding would suffice. Arguably, it would suffice if the State of Afghanistan's "interests are so aligned with those of the remaining [party, DAB,] that [DAB's] participation in the litigation protects [the State of Afghanistan] against potential prejudice from the suit proceeding in [the state's] absence." *De Csepel v. Republic of Hungary*, 2022 WL 678076, at *14 (D.C. Cir. March 8, 2022). But if the Appellant-Creditors have been clear about one thing, it is that, currently, DAB's interests are definitely ***not*** aligned with the interests of the State of Afghanistan, because DAB is being controlled by the Taliban and is serving the ends of the Taliban, not the ends of the State of Afghanistan or of the Afghan people. Consequently, even if DAB were properly joined in the proceeding,[2] the proceeding still could not go forward without the joinder of the State of Afghanistan. The State of Afghanistan is an indispensable party to this proceeding.

As a foreign state as defined in 28 U.S.C. § 1603(a) (a provision of the Foreign Sovereign Immunities Act ("FSIA")), the State of Afghanistan must be

---

[2] It is not clear that such steps as the Appellant-Creditors have taken to make service on and otherwise give required notices to DAB conform to the service requirements of the FSIA.

6

served in accordance with the service rules set forth in 28 U.S.C. § 1608(a).[3]  Strict

compliance with the hierarchy of steps set forth in § 1608(a) is required in order

to make proper service; "the rule of law demands adherence to strict requirements

even when the equities of a particular case may seem to point in the opposite

direction." *Republic of Sudan v. Harrison*, 139 S. Ct. 1057, 1062 (2019).  In the

event that proper service under § 1608(a) cannot be made for a period of time, this

proceeding should be suspended until such time as service is made.

## II.    Attachment of the DAB Assets Should Not Be Allowed.

The Appellant-Creditors contend that the decision in *Kirschenbaum v.*

*650 Fifth Ave.*, 830 F.3d 107 (2d Cir. 2016), is controlling.  However, as the United

States has observed, "[t]he Second Circuit had no occasion in that case to consider

whether, and under what circumstances (if any), an agency or instrumentality of a

foreign state can simultaneously also be an agency or instrumentality of a non-

state entity.  . . . [T]he relevant legal considerations may differ when a court is

---

[3] "'[T]o the extent that the DAB Assets are the property of the State of Afghanistan, the Court may consider whether the Judgment Plaintiffs have provided adequate notice to the State consistent with the provisions of FSIA. *See* 28 U.S.C. §§ 1608, 1610(c).'"  SOI at 25 n.8.  Adherence to proper procedures should be of concern especially where central bank deposits at the Federal Reserve Bank of New York ("FRBNY") are concerned.  A significant portion of global exchange reserves are held in U.S. dollars at the FRBNY.  A failure properly to protect such reserves from unwarranted attachment and execution could cause states to move their reserves to other jurisdictions.

asked to assess whether a foreign state, including its agency or instrumentality, can also act as an agency or instrumentality of a non-state entity."  SOI at 22.  And, if two such simultaneous existences are possible, it leads to the further conundrum of which of these is actually the owner of the property at issue.

DAB is undeniably an "agency or instrumentality" under both the FSIA and the Terrorism Risk Insurance Act of 2002, *codified at* 28 U.S.C. § 1610 note ("TRIA"), as interpreted by *Kirschenbaum*.  The property, as the property of a foreign state agency or instrumentality, would not be subject to attachment unless the State of Afghanistan had been designated as a state sponsor of terrorism.  *See* TRIA §§ 201(d)(4), 201(a).  An order exposing the property to attachment would treat the State of Afghanistan as having been designated as a state sponsor of terrorism:[4] "Where a state is not designated as a state sponsor of terrorism, TRIA does not authorize the attachment of a foreign state's assets to satisfy a judgment against the foreign state. Permitting a foreign state's assets to be attached indirectly to satisfy the judgment against a nonstate terrorist organization would supplant the discretion that Congress afforded to the Executive Branch in designating state sponsors of terrorism."  SOI at 27 n.9.

---

[4] It does not matter whether this occurs "either expressly or by implication."  SOI at 27.  The Appellant-Creditors seem to imply that the legal implications will not exist if the Court just does not articulate them.  Even if the Court does not say the exact words, the legal implication, and the result, would still be there.

This unacceptable result can be avoided if it is determined, correctly, that the State of Afghanistan, not the Taliban, is the owner of the property. As far as U.S. law is concerned, the Taliban cannot claim to own the property through DAB as the recognized government of the State of Afghanistan and as legitimately entitled to operate DAB on behalf of the State; "the United States has not yet made a decision as to whether to recognize the Taliban or any other entity as the Government of Afghanistan or as part of such a government." SOI at 26. Moreover, "'a regime not recognized as the government of a state is not entitled to property belonging to that state located in the United States.' RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 205(1)." SOI at 26.

Where there is a judgment against a terrorist party on a claim based upon an act of terrorism, TRIA § 201(a) subjects to attachment "the blocked assets *of* that terrorist party" and "the blocked assets *of* any agency or instrumentality of that terrorist party" (emphasis added). Thus, it is necessary to determine "whether a terrorist party (or an agency or instrumentality thereof) has an ownership interest in the DAB Assets." SOI at 20. *See, e.g.*, *Heiser v. Islamic Repub. of Iran*, 735 F.3d 934, 937-40 (D.C. Cir. 2013) (applying TRIA § 201 only against assets that the terrorist party owns); *Hausler v. JP Morgan Chase, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014). This ownership requirement is consistent with the common law

principle that "a lienholder enjoys rights in property no greater than those of the debtor himself." *See* Govt's Br. At 18-19, *Hausler v. JP Morgan Chase Bank, N.A.*, No. 12-1264 (2d Cir. Jul. 9, 2012) (EFC No. 133). TRIA's "statutory language reflects a legislative choice to focus TRIA attachment on the terrorist party itself, and not to authorize the unpredictable, varied, and potentially problematic effects that could arise if TRIA were read more broadly." U.S. Br., *Calderon-Cardona v. Bank of N.Y. Mellon*, No. 12-75, ECF No. 210, at 15 (2d Cir. Sept. 21, 2012). To the question of ownership presented here, the United States has already provided the answer: "To the extent the assets of a foreign central bank represent the foreign state's reserves, such assets belong necessarily to the ***foreign state*** and thus would not be the assets of a private party." SOI at 25 (emphasis added).

*Kirschenbaum* does not compel a different result.[5] That case involved an effort by plaintiffs with judgments against Iran, a designated state sponsor of terrorism, to enforce the judgments against Iran's assets. There was no competing

---

[5] It is not altogether clear that the reasoning of *Kirschenbaum* is actually mandated by TRIA, or that its reasoning took into account all of the various factual scenarios that might arise. "The Second Circuit's unitary interpretation [of the term 'agency or instrumentality' in TRIA] was not compelled by the text and appears to be a novel conclusion." *Foreign Relations Law - Foreign Sovereign Immunities Act Terrorism Exceptions - Second Circuit Holds that the Terrorism Risk Insurance Act, but not the FSIA, Allows Recovery against U.S. Companies Owned by State Sponsors of Terrorism*, 130 Harv. L. Rev. 1257, 1263 (2017).

claim to ownership of the assets at issue.[6]  *Kirschenbaum* also did not involve

foreign central bank assets.  These are provided special protection under the FSIA.

*See* 28 U.S.C. § 1611(b)(1).  It is true that under TRIA, the FSIA's immunities and

exemptions are inapplicable, but as the United States has noted, "there would be a

series of potential implications to a determination that the DAB Assets are the

property of a central bank. [7]  To the extent the assets of a foreign central bank

represent the foreign state's reserves, such assets belong necessarily to the ***foreign***

***state*** . . . ." SOI at 24-25.

Finally, TRIA § 201(a)'s "notwithstanding any other provision of law"

language does not expose to attachment all properties which judgment creditors

---

[6] The United States has pointed out that "[i]n applying *Kirschenbaum*, the *Caballero* court [*Caballero v. Fuerzas Armadas Revolucionarias de Columbia*, No. 20-MC-0040-LJV (W.D.N.Y. Dec. 18, 2020)], did not pass upon whether the assetholder's status as a state-owned entity required a different analysis." SOI at 27 n.9.  *See id.* at 23.

[7] The House of Representatives report to the FSIA observed that without the necessary sovereign immunity protection, "deposit of foreign funds in the United States might be discouraged." H.R. REP. NO. 94-1487, at 31 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6630.  Even before the FSIA was enacted, Acting State Department Legal Adviser Charles Brower noted that without an effective immunity regime for central banks, "[s]ome governments might ultimately remove all or a substantial portion of their reserves . . . [and] place their dollar reserves with commercial banks abroad, while others might seek to move their reserves into other currencies. In either event, withdrawal of foreign official funds could have an unsettling effect on foreign exchange markets, which would be contrary to the United States interest in international monetary stability."  Letter from Charles N. Brower, U.S. Dep't of State Acting Legal Adviser, to Elliot L. Richardson, Attorney General (July 24, 1973), *quoted in* Arthur W. Rovine, Dep't of State, Digest of United States Practice in International Law 228–29 (1973).

holding terrorism-related judgments might wish to attach. "TRIA's 'notwithstanding' clause should not work like 'legal kryptonite.'" Gov't's Br. At 307, *United States v. Assa Co.,* No. 17-3658 (2d Cir. Aug 31, 2018) (ECF 105). Where TRIA does not actually conflict with other U.S. law and can be interpreted harmoniously with other law, it should be so interpreted. And, as the United States has observed, "exceptions to execution immunity are, as a general matter, to be narrowly defined." SOI at 26. "Seizing a foreign state's property is a serious affront to its sovereignty." *Rubin v. Islamic Repub. of Iran*, 830 F.3d 470, 480 (7th Cir. 2016). *See* SOI at 26. There is always also the issue of reciprocity—that what a U.S. court does to foreign property may be done by a foreign court to U.S. property: "Correspondingly, judicial seizure of a foreign state's property carries potentially far-reaching implications for American property abroad." *Rubin*, 830 F.3d at 480; *see also* SOI at 26.

## CONCLUSION

For the reasons set forth above, the DAB Assets should not be made subject to attachment.  This is an appropriate result.  The DAB Assets in their entirety should be preserved until such time as the State of Afghanistan is able to make use of them for the benefit of the Afghan people, as determined by the U.S. Executive Branch through its recognition practice.

Respectfully submitted,

/s/ Sonya C. Bishop
Sonya C. Bishop
Baker & McKenzie LLP
452 Fifth Avenue
New York, N.Y. 10018
Phone: 332-215-5812
Fax: 212-310-1748
Sonya.Bishop@bakermckenzie.com

Dated: October 5, 2023          *Attorney for Amicus Curiae*
        New York, New York

13

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, the foregoing brief is in <u>14-Point Times New Roman</u> proportional font and contains 3125 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: October 5, 2023
      New York, New York

        /s/ Sonya C. Bishop
         Sonya C. Bishop
         Baker & McKenzie LLP
         452 Fifth Avenue
         New York, N.Y. 10018
         Phone: 332-215-5812
         Fax: 212-310-1748
         Sonya.Bishop@bakermckenzie.com

         *Attorney for Amicus Curiae*