UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 23-258(L) _____     _____ Caption [use short title] _____

Motion for: Leave to File as Amicus Curiae on Behalf of

Da Afghanistan Bank and the Afghan People

_____

_____

Set forth below precise, complete statement of relief sought:

The NGO Unfreeze Afghanistan, movant, seeks leave

to file an amicus curiae brief on behalf of Da Afghanistan

Bank and the Afghan people.

Havlish v. Bin-Laden

_____

_____

_____

MOVING PARTY: Unfreeze Afghanistan, Amicus Curiae    OPPOSING PARTY: Fiona Havlish

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Samidh Guha    OPPOSING ATTORNEY: Lee S. Wolosky

[name of attorney, with firm, address, phone number and e-mail]

Guha PLLC    Jenner & Block LLP

1740 Broadway, 15th Floor, New York, New York 10019    1155 Avenue of the Americas, New York, New York 10036

(212) 399-8330; sguha@guhapllc.com    (212) 891-1628; lwolosky@jenner.com

Court- Judge/ Agency appealed from: Hon. George B. Daniels, U.S. District Court for the Southern District of New York

Please check appropriate boxes:                     FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                    INJUNCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):    Has this request for relief been made below?    ☐ Yes ☐ No
☑ Yes   ☐ No (explain):_____    Has this relief been previously sought in this court?    ☐ Yes ☐ No
_____    Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:                 _____
☐ Unopposed ☐ Opposed ☑ Don't Know                    _____
Does opposing counsel intend to file a response:              _____
☐ Yes   ☐ No   ☑ Don't Know                          _____

Is oral argument on motion requested?   ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

/s/ Samidh Guha_____ Date: 10/06/2023_____   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

FIONA HAVLISH *et al.*,
    *Plaintiffs-Appellants,*

KATHERINE SOULAS,
    *Plaintiff,*

JANE DOE,
    *Consolidated-Plaintiff,*

    *v.*

THE ISLAMIC EMIRATE OF
AFGHANISTAN, *et al.*,
    *Defendants-Appellees,*

FEDERAL RESERVE BANK OF
NEW YORK,
    *Garnishee-Interested-Party,*

SHEIKH USAMA BIN-LADEN *et
al.*,
    *Defendants.*

Docket No. 23-258(L), 23-263
(CON), 23-304 (CON), 23-346
(CON), 23-444 (CON)

*On Appeal from the United States
District Court for the Southern
District of New York*

## MOTION OF THE NGO UNFREEZE AFGHANISTAN FOR
## LEAVE TO FILE AS *AMICUS CURIAE* ON BEHALF OF
## DA AFGHANISTAN BANK AND THE AFGHAN PEOPLE

Samidh Guha
GUHA PLLC
*Attorneys for Amicus Curiae NGO
    Unfreeze Afghanistan*
1740 Broadway, 15th Floor
New York, New York 10019
212-399-8330

Unfreeze Afghanistan, a non-governmental organization, moves this Court, through its undersigned counsel, for permission to file an *amicus curiae* brief. As grounds, it states:

1.     Unfreeze Afghanistan was permitted to file a brief as an *amicus curiae* in this matter in the district court.

2.     It has a particular interest in this issue in that its members are women who have been engaged in matter relating to Afghanistan for more than twenty years. It formed after the Taliban takeover of Afghanistan to address the plight of the millions of Afghans facing extreme poverty and hunger in light of  the country's collapsing economy. It formed in response to an urgent appeal from the Teachers Association of Afghanistan, sounding the alarm that teachers had not been paid since June 2021 and were in dire circumstances. Other public sector workers also desperately need to be paid so they can perform their vital community services and feed their families. It is not political group and has no political message nor does it defend, support or otherwise endorse the Taliban government. It is concerned for the civilian population of Afghanistan.

3.     A copy of the proposed brief is attached to this motion.

Dated: October 6, 2023    Respectfully submitted,

           */s/ Samidh Guha*
           Samidh Guha
           GUHA PLLC
           1740 Broadway, 15th Floor
           New York, New York 10019
           Telephone: (212) 399-8330
           Facsimile: (212) 399-8331
           Email: sguha@guhapllc.com

           Medea Benjamin
           Cheryl Benard
           Masuda Sultan
           Sunita Viswanath
           Ann Wright
           UNFREEZE AFGHANISTAN
           666 G Street Northeast
           Washington, D.C. 20002
           Telephone: (415) 235-6517
           Email: medea.benjamin@gmail.com

           David Gespass
           GESPASS & JOHNSON
           40 Echo Lane
           Fairhope, AL 36532
           Telephone: (205) 566-2530
           Email: pass.gandjlaw@gmail.com

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 27(d)(2)(A)

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this motion contains 197 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally space typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Samidh Guha*
Samidh Guha

Dated: October 6, 2023



PROPOSED BRIEF FOR *AMICUS CURIAE*

# 23-258-cv(L)

## 23-263-cv(CON), 23-304-cv(CON), 23-346-cv(CON), 23-444-cv(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄



FIONA HAVLISH, RUSSA STEINER, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF WILLIAM STEINER, DECEASED, CLARA CHIRCHIRILLO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF PETER CHIRCHIRILLO, TARA BANE, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL A. BANE, GRACE M. PARKINSON-GODSHALK, IN HER OWN RIGHT AND ADMINISTRATIX OF THE ESTATE OF WILLIAM R. GODSHALK, ELLEN L. SARACINI, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF VICTOR J. SARACINI, DECEASED, THERESAANN LOSTRANGIO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF JOSEPH LOSTRANGIO, DECEASED, DEENA BURNETT, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF THOMAS E. BURNETT, JR., DECEASED,

*(Caption Continued on the Reverse and Following Page(s))*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR *AMICUS CURIAE* NGO UNFREEZE AFGHNISTAN IN SUPPORT OF DEFENDANTS-APPELLEES

Samidh Guha
GUHA PLLC
*Attorneys for* Amicus Curiae
  *NGO Unfreeze Afghanistan*
1740 Broadway, 15th Floor
New York, New York 10019
212-399-8330



THOMAS E. BURNETT, SR., AS THE PARENT AND ON BEHALF OF THE FAMILY OF THOMAS E. BURNETT, JR., JUDITH REISS, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JOSHUA SCOTT REISS, DECEASED, WILLIAM COALE, IN HIS OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JEFFREY ALAN COALE, DECEASED, PATRICIA J. PERRY, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF JOHN WILLIAM PERRY, DECEASED, BARBARA A. MINERVINO, IN HER OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF LOUIS J. MINERVINO, DECEASED, MATTHEW T. SELLITTO, IN HIS OWN RIGHT AND AS ADMINISTRATIX OF THE ESTATE OF LOUIS J. MINERVINO, DECEASED, RALPH MAERZ, JR., AS PARENT AND ON BEHALF OF THE FAMILY OF NOELL MAERZ, DECEASED, LINDA PANIK, AS PARENT AND ON BEHALF OF THE FAMILY OF LT. JONAS MARTIN PANIK, DECEASED, MARTIN PANIK, AS PARENT OF AND ON BEHALF OF THE FAMILY OF LT. JONAS MARTIN PANIK, DECEASED, MARTINA LYNE-ANN PANIK, AS THE SISTER OF LT. JONAS MARTIN PANIK, STEPHEN L. CARTLEDGE, AS HUSBAND OF SANDRA WRIGHT CARTLEDGE, DECEASED, LOISANNE DIEHL, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF MICHAEL DIEHL, DECEASED, TINA GRAZIOSO, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF JOHN GRAZIOSO, DECEASED, JIN LIU, IN HER OWN RIGHT AND AS EXECUTRIX OF THE ESTATE OF LIMING GU, DECEASED, ALL PLAINTIFFS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, MICHAELEDWARD PAIGE, SPECIAL ADMINISTRATOR OF THE ESTATE OF TIMOTHY RAYMOND WARD, DECEASED, BRIANNA L. GOMES, ADMINISTRATOR OF THE ESTATE OF DOYLE RAYMOND WARD, DECEASED, JOHN DOES 1 THROUGH 7, RAYMOND ANTHONY SMITH, AS ADMINISTRATOR OF THE ESTATE OF GEORGE ERIC SMITH, DECEASED, FEDERAL INSURANCE COMPANY, PACIFIC INDEMNITY COMPANY, CHUBB CUSTOM INSURANCE COMPANY, CHUBB INDEMNITY INSURANCE COMPANY, CHUBB INSURANCE COMPANY OF CANADA, CHUBB INSURANCE COMPANY OF NEW JERSEY, GREAT NORTHERN INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, TIG INSURANCE COMPANY, KATHLEEN ASHTON, AS ADMINISTRATOR OF THE ESTATE OF THOMAS ASHTON, DECEASED AND ON BEHALF OF ALL SURVIVORS OF THOMAS ASHTON, JOSEPHINE ALGER, AS ADMINISTRATOR OF THE ESTATE OF FREDERICK ALGER, AS COEXECUTORS OF THE ESTATE OF DAVID D. ALGER, DECEASED AND ON BEHALF OF THE SURVIVORS OF DAVID D. ALGER, ANGELICA ALLEN, AS ADMINISTRATOR OF THE ESTATE OF ERIC ALLEN, DECEASED AND ON BEHALF OF ALL SURVIVORS OF ERIC ALLEN, GEORGE ANDRUCKI, AS COADMINISTRATOR OF THE ESTATE OF JEAN ANDRUCKI, DECEASED AND ON BEHALF OF ALL SURVIVORS OF JEAN ANDRUCKI, MARY ANDRUCKI, AS COADMINIS-TRATOR OF THE ESTATE OF JEAN ANDRUCKI, DECEASED AND ON BEHALF OF ALL SUR-VIVORS OF JEAN ANDRUCKI,

*Plaintiffs-Appellants,*

KATHERINE SOULAS, IN HER OWN RIGHT, AS REPRESENTATIVE OF THE HEIRS, ON BEHALF OF HER MINOR CHILDREN, AND AS EXECUTRIX OF THE ESTATE OF TIMOTHY SOULAS, DECEASED, ON BEHALF OF THE SOLATIUM CLAIMANTS, INCLUDING KATHERINE SOULAS, FREDERICK SOULAS, II, TIMOTHY SOULAS, JR.,

*Plaintiff,*

JANE DOE, IN HER OWN RIGHT, ON BEHALF OF HER MINOR CHILDREN, AND AS EXECUTRIX OF THE ESTATE OF TOM SAWYER, A FICTITIOUS NAME, DECEASED,

*Consolidated-Plaintiff,*

*v.*

THE ISLAMIC EMIRATE OF AFGHANISTAN, THE TALIBAN, AL QAIDA/ISLAMIC ARMY, SHEIKH USAMAH BIN-MUHAMMAD BIN-LADEN, AKA OSAMA BIN-LADEN, REPUBLIC OF IRAQ,

*Defendants-Appellees,*

FEDERAL RESERVE BANK OF NEW YORK,

*Garnishee-Interested-Party,*

SHEIKH USAMA BIN-LADEN, MUHAMMAD OMAR, AL QAEDA/ISLAMIC ARMY, ISLAMIC REPUBLIC OF IRAN, AYATOLLAH ALI HOSEINI-KHAMENEI, SUPREME LEADER, IRANIAN MINISTRY OF INFORMATION AND SECURITY, THE ISLAMIC REVOLUTIONARY GUARD CORPS, HEZBOLLAH, AN UNINCORPORATED ASSOCIATION, IRANIAN MINISTRY OF PETROLEUM, IRANIAN MINISTRY OF ECONOMIC AFFAIRS AND FINANCE, IRANIAN MINISTRY OF COMMERCE, IRANIAN MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS, SADDAM HUSSEIN, PRESIDENT, IRAQI MINISTRY OF DEFENSE, IRAQI MINISTRY OF FINANCE, IRAQI MINISTRY OF OIL, IRAQI INTELLIGENCE SERVICE, QUSAY HUSSEIN, UNIDENTIFIED TERRORIST DEFENDANTS 1-500, ALI AKBAR HASHEMI RAFSANJANI, THE NATIONAL IRANIAN TANKER CORPORATION, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 2, THE NATIONAL IRANIAN OIL CORPORATION, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 3, THE NATIONAL IRANIAN GAS COMPANY, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 4, IRAN AIRLINES, PREVIOUSLY IDENTIFIED AS UNIDENTIFIED TERRORIST 5, THE NATIONAL IRANIAN PETROCHEMICAL COMPANY, THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, UNIDENTIFIED TERRORIST DEFENDANTS 8-500, AL-QAEDA, THE HAQQANI NETWORK, AL QAIDA, EGYPTIAN ISLAMIC JIHAD, OSAMA BIN LADEN, ESTATE OF MUHAMMAD ATEF, AYMAN AL ZAWAHARI, ABU ZUBAYDH,

*Defendants.*

# TABLE OF CONTENTS

**Page**

Introduction and Statement of Interest.......................................................................1

Argument........................................................................................................................3

I.  The Central Bank is not an agency or instrumentality of the
    Taliban. ........................................................................................................3

II. The Taliban are not the recognized government of Afghanistan. ...................5

III. The U.S. has not designated the de facto government of
     Afghanistan as a terrorist party, or as a state sponsor of
     terrorism.......................................................................................................8

IV. DAB cannot accurately be characterized as the Taliban's or the
    de facto regime's agency or instrumentality. ................................................10

Conclusion ...................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Carr,*
    369 U.S. 186 ...................................................................................7

*Oetjen v. Central Leather Co.,*
    246 U.S. 297, 38 S. Ct. 309, 62 L. Ed. 726 (1918) ...........................7

**Rules**

Fed. R. App. P Rule 29(a)(4)(E) .......................................................1

**Other Authorities**

The Afghanistan Bank Law,
    https://dab.gov.af/sites/default/files/
    2018-12/DABLaw1English_2.pdf ...................................................3

*Afghanistan Development Update: Towards Economic Stabilization
    and Recovery*, The International Bank for Reconstruction and
    Development / The World Bank (Apr. 2022)
    https://thedocs.worldbank.org/en/doc/5f01165822f3639224e0d4
    83ba1861fc-0310062022/original/ADU-2022-FINAL-
    CLEARED.pdf .....................................................................11, 12

*Afghanistan's Security Challenges Under the Taliban*,
    International Crisis Group (Aug. 12, 2022)
    https://www.crisisgroup.org/asia/south-asia/afghanistan/
    afghanistans-security-challenges-under-taliban...............................13

*Agreement for Bringing Peace to Afghanistan*,
    U.S. Department of State (Feb. 29, 2020), https://www.state.
    gov/wp-content/uploads/2020/02/Agreement-For-Bringing-
    Peace-to-Afghanistan-02.29.20.pdf .................................................8

ii

*Foreign Terrorist Organizations*, U.S. Department of State,
   https://www.state.gov/foreign-terrorist-organizations/ ..................................... 8

*Haibatullah Akhunzada Labels Attacks on Pakistan as "Haram"*,
   Samaa English TV (Aug. 7, 2023),
   https://www.samaaenglish.tv/news/40044781 .................................................. 9

Immigration and Nationalization Act.
   https://www.state.gov/foreign-terrorist-organizations/ ..................................... 8

*State Sponsors of Terrorism,* U.S. Department of State,
   https://www.state.gov/state-sponsors-of-terrorism/ .......................................... 8

*Taliban Are Collecting Revenue—But How Are They Spending It?*
   United States Institute of Peace (Feb. 2, 2022)
   https://www.usip.org/publications/ 2022/02/taliban-are-
   collecting-revenue-how-are-they-spending-it .................................................. 13

## INTRODUCTION AND STATEMENT OF INTEREST

Unfreeze Afghanistan, a non-governmental organization, files this *amicus* brief in the cases of *Havlish v. Bin Laden; John Does 1-7 v. The Taliban;* and related cases.[1] We submit this brief to urge the Court of Appeals for the Second Circuit to uphold the decision of the District Court for the Southern District of New York, which preserved the assets of Da Afghanistan Bank, which is Afghanistan's central bank ("**DAB**" or the "**Central Bank**"), for the benefit and welfare of the people of Afghanistan. We further request that those assets be made available to the people of Afghanistan, for their benefit, as soon as practically possible.

As stated in our motion for leave to file this brief, Unfreeze Afghanistan has a particular interest in this issue in that its members are women who have been engaged in matters relating to Afghanistan for more than twenty years. It formed after the Taliban takeover of Afghanistan to address the plight of the millions of Afghans facing extreme poverty and hunger due to the country's collapsing economy. We formed in response to an urgent appeal from the Teachers Association of Afghanistan, sounding the alarm that teachers had not been paid since June 2021 and were in dire circumstances.

---

[1] In compliance with Rule 29(a)(4)(E), Fed. R. App. P., *amicus* certifies that no party's counsel authored the brief in whole or in part, no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief and no one other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

We are not a political group and we do not have a political message. Our efforts are not in any way aimed at defending, supporting or otherwise endorsing the Taliban or the current government. For us, Afghanistan is its people and our concern is for the civilian population. After four decades of war and upheaval, they deserve a chance to rebuild their lives, to operate their small farms and businesses, find employment, and receive basic municipal services. None of this is possible without funds, and the country's funds are not merely frozen; currently, this appeal raises the possibility that the funds are given away permanently. We believe this would represent a grave injustice against the Afghan people.

We want to make clear that in filing this brief, we do not intend to minimize, in any way, the suffering and loss inflicted upon the families of the victims of the coordinated terrorist attacks that occurred on September 11, 2001, in New York City, Arlington, Virginia, and Shanksville, Pennsylvania. This terrible and immoral atrocity, which violated United States law, international law, and Islamic law, shocked the consciences of all reasonable people. We hope the families of the 9/11 victims, and the Court, understand that our expression of support for the rights of the Afghan people, in accordance with what we believe to be both U.S. and international law, in no way reflects any lack of respect for and appreciation of their suffering and loss.

We previously filed an *amicus* brief in these proceedings with the District Court, which was accepted. We have now read the arguments made by the lawyers for the plaintiffs, in their appeal to this Court. Besides reiterating the comments from our previous brief, we also wish to underscore for this Court what we believe are several factual errors underlying the case made by the appellants.

## ARGUMENT

## I. The Central Bank is not an agency or instrumentality of the Taliban.

DAB is a separate juridical person, established under The Afghanistan Bank Law to be the central bank of Afghanistan.[2] The Afghanistan Bank Law provides that the primary objective of DAB is to achieve and to maintain domestic price stability. Its other objectives are to foster the liquidity, solvency and effective functioning of a stable market-based financial system, and to promote a safe, sound and efficient national payment system. Clause 3.3 of the Afghanistan Bank Law provides that the Central Bank should operate with autonomy:

> Da Afghanistan Bank shall, in accordance with this law, be entirely independent in the pursuit of its objectives and no person shall seek to exercise improper influence on members of the decision-making bodies of Da Afghanistan Bank in the performance of their tasks or interfere in any other way in the activities of Da Afghanistan Bank.

---

[2] *See* The Afghanistan Bank Law, https://dab.gov.af/sites/default/files/2018-12/DABLaw1English_2.pdf.

To date, as best we are able to ascertain. the Taliban have made no attempt to overturn or negate the banking law. Had they done so, it would almost certainly have been publicly and widely reported. It is true that they have appointed current DAB officials, though arguably they had little choice, since the previous officials left the country when their government collapsed.

At present, the Central Bank is performing some of its designated functions but only to a limited extent. Because the freezing of its assets, combined with U.S. and UN sanctions, there has been a severe breakdown of the Afghan economy and a humanitarian crisis in the country.

We recognize the concerns inherent in releasing funds directly to DAB at this time, but contend that they must be weighed against the harm befalling ordinary Afghan citizens because of the bank's lack of funds to fully carry out its mission. There are means and methods available to maintain oversight over the use of any unfrozen funds, and they can be disbursed in small amounts with the disbursement ceased the moment any misuse is registered. Where this balance should be struck, and its modalities, is a difficult and nuanced question beyond the scope of this brief. What we do maintain is that the funds at issue rightfully belong to, and must be enjoyed by, the Afghan people as soon as reasonably possible.

## II.     The Taliban are not the recognized government of Afghanistan.[3]

The Taliban are a movement characterized by a particular and, to be generous, somewhat eccentric view of Islam and composed mostly of ethnic Pashtuns. During the previous Western-backed Afghan governments, they led an insurgency. After the U.S. withdrawal and the rapid collapse of the Afghan government, they took power under the name Islamic Emirate of Afghanistan. No other state has recognized them to date.

International organizations, the U.S. government and other governments have engaged in talks with them, both to coordinate logistics for humanitarian aid and to attempt to persuade them to change their harsh social policies. The country's administration is located in Kabul, but much of its policy is made by a reclusive group of hardliners including Haibatullah Akhunzada, the nominal head of state, who is based in Kandahar. Some of their policies have been constructive, for example, the banning of the drug trade. Others, including the banning of female education above Grade 6, are unacceptable, if not reprehensible and detrimental to the Afghan people. There is, however, no realistic challenger to their regime on the horizon. Unfreeze Afghanistan therefore maintains its focus on the country's civilian

---

[3] The word "taliban" is Pashto for "students," and refers to the men studying Islam in Afghan and Pakistani madrasas, or religious schools. These students were organized into fighting units, and armed by the United States and Pakistan during the 1980s to fight to free Afghanistan from Soviet domination following the Soviet Union's invasion in 1979.

5

population, seeking to avoid its being cut off from international banking and contacts, and facilitating the establishment of livelihoods to allow the people to go forward with their lives as best they can.

To be sure, while the DAB, like any central bank, is not an agency, and is independent of the government, it is not immune from government pressure and influence. The same is, of course, true of the Federal Reserve board of governors in the U.S., an independent body but one whose members are nominated by the president and confirmed by the Senate.[4]

For this Court's purposes, the decision to be made is not whether the Taliban regime, a/k/a Islamic Emirate, is a desirable or even an acceptable government. That question has been resoundingly answered by the international community. The question, rather, is whether the monies in dispute should be returned to or held for their lawful owners, the people and country of Afghanistan. There should be no doubt that they should, whether by paying it directly and immediately to DAB or, if it is deemed problematic at this time, by securing the funds until such time as the situation in Afghanistan assures that the Bank can administer the funds properly for the benefit of the population.

---

[4] Afghanistan's central bank law is based upon the law establishing and regulating the Federal Reserve.

How and when release of the funds to the people of Afghanistan should be made is likely a political question not subject to this Court's jurisdiction. More than a century ago, the Supreme Court affirmed in *Oetjen v. Central Leather Co.*, 246 U.S. 297, 298, 38 S. Ct. 309, 62 L. Ed. 726 (1918) that "(t)he conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative 'the political'—departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Baker v. Carr,* 369 U.S. 186, 82 S. Ct. 7 L. Ed. 2d 663 (1962) slightly limited *Oetjen*, holding that a determination of whether or not something is beyond court review should be decided on a case-by-case basis. That being said, it is difficult to separate access to the disputed funds from U.S. foreign policy, which is delegated almost exclusively to the executive branch and, certainly, only to the political branches. The fact that the government chose to participate in this matter in opposition to the plaintiffs' complaint underscores the importance of this matter to U.S. foreign policy and, therefore, strengthens the conclusion that the judiciary should not intervene.

### III. The U.S. has not designated the de facto government of Afghanistan as a terrorist party, or as a state sponsor of terrorism.

The current governmental regime in Kabul is not included on the list of entities or groups designated as foreign terrorist organizations.[5] It is also not designated as a state sponsor of terrorism under the Export Administration Act.[6] While the regime has engaged in a range of abusive policies, violating the rights of women and minorities, it has not, so far as can be determined, engaged in terrorist activities.[7] In the Doha Agreement, the Taliban committed to refrain from supporting, and to assist in preventing, attacks on the U.S. and its allies that might emanate from their country.[8]

---

[5] *See Foreign Terrorist Organizations*, U.S. Department of State, https://www.state.gov/foreign-terrorist-organizations/.

[6] *See State Sponsors of Terrorism,* U.S. Department of State, https://www.state.gov/state-sponsors-of-terrorism/.

[7] The U.S. Secretary of State has also not designated the Taliban as a foreign terrorist organization in accordance with the Immigration and Nationalization Act. *See* https://www.state.gov/foreign-terrorist-organizations/. While it has designated Tehrik-e Taliban Pakistan (TTP) under that Act, that is a different organization based in Pakistan. As the U.S. has not designated either the *de facto* government of Afghanistan or the Taliban a foreign terrorist organization or designated the Afghan government a state sponsor of terrorism under the Export Administration Act, and as neither is a "terrorist" and these are the three categories included in the definition of "terrorist party" in TRIA, it is not clear to us how Section 201 of TRIA can be said to apply.

[8] *See Agreement for Bringing Peace to Afghanistan*, U.S. Department of State (Feb. 29, 2020), https://www.state.gov/wp-content/uploads/2020/02/Agreement-For-Bringing-Peace-to-Afghanistan-02.29.20.pdf.

In 2023, in response to cross-border issues with Pakistan, Haibatullah issued a religious prohibition against attacks on neighboring states.[9] To be clear, we are not saying that this is in any way a laudable government, merely that on some important issues, it has thus far been behaving in a relatively responsible fashion.

The current regime's violations of human rights law and principles, including its systematic discrimination against and disenfranchisement of a majority of the citizens of the country, is diametrically opposed to everything our organization and its members stand for, and have worked on behalf of, for decades. But we agree with and follow the decision of the U.S. government which, while not recognizing the current regime in Kabul, has through the Secretary of State recognized it as the "*de facto* government of Afghanistan."

We hope the day will come when the people of Afghanistan can enjoy good governance by leaders who have political legitimacy by way of fair elections or some similar process beyond the primitive power of guns, and who respect the human rights of their citizens, including women and girls. But in the meantime, we view it as critical to enable the population, and the remnants of civil society, to achieve some measure of normality and basic needs and to not have their property and their resources withheld or worse, given away.

---

[9] *See Haibatullah Akhunzada Labels Attacks on Pakistan as "Haram"*, Samaa English TV (Aug. 7, 2023), https://www.samaaenglish.tv/news/40044781.

## IV.  DAB cannot accurately be characterized as the Taliban's or the de facto regime's agency or instrumentality.

We understand from the plaintiffs' arguments that, for the DAB to be deemed an agency or instrumentality of the Taliban, it would have to be "a means through which a material function of the [Taliban] is accomplished," or to have "provided material services to, on behalf of, or in support of the [Taliban]," or to be "owned, controlled or directed" by the Taliban. Fortunately, none of these pertain.

The Central Bank was not, at least for the approximately 20 years prior to the fall of Kabul in August 2021, a means through which any function of the Taliban was accomplished, nor has it been an entity that provided material services to or on behalf or in support of the Taliban. Since that date, the Central Bank has been, and at present it remains, minimally functional, carrying out only the most skeletal aspects of its mandate. Nearly all its assets have been frozen, not just in the United States but in many other countries in which it has deposits. As a result, DAB is only able to perform small scale currency exchange functions and banking supervision. It needs access to the frozen reserves to stabilize the currency.

This is an essential function, especially during an ongoing humanitarian disaster which coincides with worldwide food price inflation in the wake of the Ukraine war. Thus far it has been kept somewhat at bay with humanitarian aid injections, but such aid. however is not guaranteed and a status of permanent

10

dependency on charitable donations is not desirable, especially not for what otherwise could be a productive agricultural country.

Plaintiffs have argued that the Taliban have used DAB to generate "hundreds of millions of dollars in revenue," but they support their claim by alleging access to "sensitive financial intelligence information, nonpublic supervisory information and other economic data." This is not evidence, but speculation. The claim is both mysterious and implausible; what classified information could they have, and why would they have obtained access to it? Certainly, the U.S. government, in its opposition to plaintiffs' claims, has not acknowledged the existence of any such documents.

The *de facto* government has not misappropriated or otherwise stolen any DAB assets. For instance, DAB has in its vaults a gold reserve. There was nothing to prevent the Taliban from storming the vaults and seizing the gold, but they have made no attempt to do so.

To state facts is not the same as praising, though in an emotionally charged environment, the two can easily be conflated. We are the last group that would ever be inclined to praise the Taliban, yet the fact is that they have opposed corruption and extortion as reported by the World Bank[10] and have, according to reports of

---

[10] *See Afghanistan Development Update: Towards Economic Stabilization and Recovery*, The International Bank for Reconstruction and Development / The World

11

Afghan and Afghan-American business owners and operators, not only permitted but encouraged private enterprise and trade. They have not seized private property or nationalized assets. They have not touched the inestimably precious Bactrian Gold collection, which was within their grasp when they took over the Palace where it was being kept. There is no reason to suppose that they intend to steal from the Central Bank.

They have also focused on establishing security. According to the International Crisis Group, which cannot in any way be numbered among the apologists or supporters of the Taliban or their current regime:

> As the former insurgents took power, the world's attention focused at first on the disastrous humanitarian and economic fallout. Few outside observers took note of the dramatic shifts in the security situation, including a slowdown in the pace of violence to a level that most Afghans had not witnessed in their lifetimes. Afghans certainly noticed the change. They had grown accustomed to a drumbeat of death and destruction: an estimated 20,000 to 40,000 battle fatalities per year, a toll that for several years had surpassed those of Syria, Yemen and Iraq, and more U.S. airstrikes than in any other part of the world. All of a sudden, after the Taliban seized power, the emergency wards were not full of Afghans suffering shrapnel cuts and blast injuries. In the early months of 2022, by UN estimates, fighting diminished to only 18 percent of previous levels. Another comparison, of the first ten months of Taliban government against the same period a year earlier, found that the rate of battles,

---

Bank (Apr. 2022) https://thedocs.worldbank.org/en/doc/5f01165822f3639224e0d4
83ba1861fc-0310062022/original/ADU-2022-FINAL-CLEARED.pdf.

explosions and other forms of violence per week had fallen fivefold.[11]

This is known as the "peace dividend" - the benefit that accrues to a country when war and violence end or abate, and normal life can appear possible. It would be tragic if, after our country and our military invested 20 years in the betterment of Afghans, we were now instrumental in obstructing that peace dividend by withholding or even permanently disposing of their resources, which they need for rebuilding.

There are no indications that the Taliban *de facto* government is pursuing a robber baron approach to the economy. As the U.S. Institute of Peace, another critic of the Taliban, notes:

> [T]he Taliban have taken some positive steps toward financial stability by publishing a fiscally responsible three-month budget and raising considerable amounts of domestic revenue — especially through customs duties, which have risen with a crackdown on corruption.[12]

It seems unlikely that they would attempt to steal or divert the funds of the DAB Central Bank. In any event, the solution to this perceived danger is to sequester the funds until such time as they can be safely turned over to the DAB, or to disburse

---

[11] *See Afghanistan's Security Challenges Under the Taliban*, International Crisis Group (Aug. 12, 2022) https://www.crisisgroup.org/asia/south-asia/afghanistan/afghanistans-security-challenges-under-taliban.

[12] *See Taliban Are Collecting Revenue—But How Are They Spending It?* United States Institute of Peace (Feb. 2, 2022) https://www.usip.org/publications/2022/02/taliban-are-collecting-revenue-how-are-they-spending-it.

them in small, traceable amounts. It is emphatically not to deprive the Afghan people of what is rightfully theirs. We reject the claim that the plaintiffs should be able to seize the Central Bank's assets to satisfy a default judgment against the Taliban organization.

The people of Afghanistan are the proper owners of the assets of the Central Bank. Indeed, these assets include the small savings of ordinary people, who because we do not like the group that has seized power, are now unable to retrieve their money. If DAB were able to function as a true central bank, the impact for the population would be significant. People could access their savings, the currency could be stabilized, the functioning of the banking system could be properly overseen, small loans could be made, transactions conducted. There are mechanisms to maintain transparency over the path of these funds, to ensure that they do not fall into unintended hands. Elevating the Afghan economy would help the situation of women and girls, and minorities - of everyone - in the near term. And, in our firm view, returning their own money to them is not only just, it is also preferable to continuing their dependency on humanitarian aid handouts. To summarize: we wish to underscore the lower Court's fair and correct determination, and to repeat that this money belongs to the Afghan people and that in the absence of a legitimate recognized government, DAB is the suitable vehicle and instrument for the return of those monies.

**CONCLUSION**

There are only two appropriate alternatives to resolving this matter. The first is to affirm the district court's ruling and sequester the disputed funds until such time as they can be safely returned to the DAB for it to fully carry out its function. The second is to turn the funds over to the DAB immediately, whether in their entirety or piecemeal. *Amicus* understands that which of these alternatives should be chosen is a complex question on which this brief does not presume to answer. Indeed, it is likely a question beyond the scope and jurisdiction of this Court. It is, however, clear that the alternative the plaintiffs seek – to take the money from the Afghan people – is one that this Court cannot condone. No matter how much sympathy one may have for the suffering the plaintiffs have endured and have had to live with for more than two decades, that cannot override the rights of the Afghan people, who have struggled and suffered through many decades of war and strife and who, at the least, deserve to keep what is theirs. We respectfully submit that the District Court's judgment was correct and should be affirmed.

Dated: October 6, 2023                    Respectfully submitted,

                                          */s/ Samidh Guha*
                                          Samidh Guha
                                          GUHA PLLC
                                          1740 Broadway, 15th Floor
                                          New York, New York 10019
                                          Telephone: (212) 399-8330
                                          Facsimile: (212) 399-8331
                                          Email: sguha@guhapllc.com

                                          Medea Benjamin
                                          Cheryl Benard
                                          Masuda Sultan
                                          Sunita Viswanath
                                          Ann Wright
                                          UNFREEZE AFGHANISTAN
                                          666 G Street Northeast
                                          Washington, D.C. 20002
                                          Telephone: (415) 235-6517
                                          Email: medea.benjamin@gmail.com

                                          David Gespass
                                          GESPASS & JOHNSON
                                          40 Echo Lane
                                          Fairhope, AL 36532
                                          Telephone: (205) 566-2530
                                          Email: pass.gandjlaw@gmail.com

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,622 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally space typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Samidh Guha*
Samidh Guha

Dated: October 6, 2023